MORGAN, LEWIS & BOCKIUS LLP
JAMI WINTZ MCKEON, State Bar No. 237923
jmckeon@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel:  415.442.1405
Fax:  415.442.1001

DAVID L. SCHRADER, State Bar No. 149638
dschrader@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:  213.612.2500
Fax:  213.612.2501

Attorneys for Plaintiff
Deutsche Bank National Trust Company, as Trustee for
certain residential mortgage-backed securitization trusts
sponsored by IndyMac Bank, F.S.B

FILED

2009 MAY 29  PM 2: 11

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **Deutsche Bank National Trust Company**, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B., <br><br> Plaintiff, <br><br> vs. <br><br> **Federal Deposit Insurance Corporation,** as Receiver of IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator and Receiver of IndyMac Federal Bank F.S.B.; Federal Deposit Insurance Corporation, in its corporate capacity; and Federal Deposit Insurance Corporation, as Government Entity, <br><br> Defendants. | Case No. CV09-3852 GAF (FFMx) <br><br> **COMPLAINT FOR BREACH OF CONTRACT; REPUDIATION; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING; BREACH OF FIDUCIARY DUTY; AND UNCONSTITUTIONAL TAKING** <br><br> **DEMAND FOR JURY TRIAL** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1

COMPLAINT

# I.

## INTRODUCTION

1.     This is an action by Deutsche Bank National Trust Company ("DBNTC") as trustee of more than 240 mortgage securitization trusts (each one a "Trust," and collectively the "Trusts") created by IndyMac Bank, F.S.B. ("IndyMac"). As more fully set forth herein, IndyMac breached its promises to the Trusts before it failed and was placed in receivership with the Federal Deposit Insurance Corporation (the "FDIC") in July of 2008. DBNTC brings this action against the FDIC as a successor to IndyMac in several capacities as described below. This Court has subject matter jurisdiction over this action pursuant to, <u>inter alia</u>, the Constitution of the United States, 28 U.S.C. § 1331, 12 U.S.C. §§ 1819(a), 1819(b)(2)(A) and 1821(d)(6), 28 U.S.C. § 1367, and 28 U.S.C. § 1349.

2.     This action follows the FDIC's disallowance of an administrative proof of claim filed with the FDIC in the receivership by DBNTC as Trustee on behalf of Trust investors seeking essentially the same relief requested herein.

3.     IndyMac created substantially all of the Trusts at issue in this action and did so in a manner designed to make itself the dominant actor in the creation and ongoing management of the Trusts' assets. IndyMac originated or acquired the mortgage loans that became the principal assets of the Trusts, caused the Trusts to be formed, made promises about the quality and servicing of the mortgage loans, serviced the mortgage loans before and after their sale into the Trusts, promised to handle the defective mortgage loans, and performed duties for the Trusts. In doing so, IndyMac promoted the benefits of having a single entity handle all of these functions..

4.     IndyMac breached its promises before it failed. The FDIC is now IndyMac's successor in several capacities and is liable for IndyMac's pre-failure breaches.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1

2

COMPLAINT

5.     The breaches continued after IndyMac's failure, during the period in which the FDIC operated the business of IndyMac and obtained the benefits of that operation, and the FDIC is liable for its failure to fulfill the obligations it assumed, expressly or by operation of law, after IndyMac failed.  In addition, the FDIC, a government agency, violated the United States Constitution because it took the property of the Trusts without just compensation and without due process of law.

6.     After assuming IndyMac's rights and obligations related to the Trusts, the FDIC purported to split the rights and obligations into pieces and to sell the rights, while making no provision for many of the obligations.  This purported partial transfer extracts the benefits of IndyMac's contracts related to the Trusts, while attempting to avoid the obligations central to IndyMac's promises to the Trusts and their investors.  It also destroys the promised value of having a single entity operate at the center of the Trusts.  These actions therefore violated contractual and fiduciary duties the FDIC owed to the Trusts.

7.     The failures, contractual violations, and breaches of duty described herein caused losses to the investors in the Trusts and to the Plaintiff of at least $6 billion to $8 billion.

## II.

## THE PARTIES

8.     Plaintiff DBNTC is a national banking association organized under the laws of the United States of America to carry on the business of a limited purpose trust company, and is a member of the Federal Reserve System.  DBNTC's main office and principal place of business is located at 300 South Grand Avenue, Suite 3950, Los Angeles, California, 90071-3175, and a site of its trust administration is located at 1761 East St. Andrew Place, Santa Ana, California, 92705.

9.     DBNTC serves as trustee, supplemental interest trustee, document custodian, and in certain other trust-related capacities (collectively, sometimes referred to hereinafter as the "Trustee") under the governing agreements and any

subsidiary or related fiduciary arrangements (collectively, the "Governing Agreements") for over 240 Trusts created by IndyMac between 2001 and 2007, and identified on Exhibit 1 hereto.

10.     The Trusts currently hold, as Trust assets or collateral, more than 150,000 mortgage loans that IndyMac originated or acquired, serviced, and sold into the Trusts.  As of the date that IndyMac was placed in receivership, the loans had an aggregate outstanding principal balance of over $81 billion.

11.     The Trustee brings this action for and on behalf of the Trusts, the investors in the Trusts, and itself as Trustee.

12.     The Trusts at issue are "express trusts" created by written instruments manifesting the express intention to create a trust and setting forth the subject, purpose, and beneficiaries of the Trusts.  The Trustee therefore brings this action pursuant to Federal Rule of Civil Procedure 17(a)(1)(E) as the trustee of an express trust for the benefit of the Trusts and the Trusts' investors.

13.     On information and belief, the Trusts' investors include state and local governments, federal government-sponsored entities, retirement plans (such as the Police & Fire Retirement System of the City of Detroit and the Orange County Public Employees Union Fund), mutual funds, insurance companies, and other investors residing throughout the United States and the world.

14.     Defendant FDIC is an agency of the United States created by the Federal Deposit Insurance Act, 12 U.S.C. § 1811 et seq. and related laws and regulations.  The FDIC acts, from time to time, as a receiver and/or conservator of banking institutions, as an insurer of bank deposits, and as a banking regulator.

15.     The FDIC is an independent agency of the United States government. It receives no Congressional appropriations and is funded by premiums that banks and thrift institutions pay for deposit insurance coverage and from earnings on investments in U.S. Treasury securities.  It has an insurance fund totaling more than $45 billion and insures more than $5 trillion of deposits in U.S. banks and thrifts.

16.     This Complaint asserts claims against the FDIC in its capacities as receiver of IndyMac; as conservator and receiver of IndyMac Federal Bank, F.S.B. ("IndyMac Federal"); as an independent agency (sometimes referred to as its "corporate capacity"); and as an entity of the United States government subject to the Constitutional restrictions on the exercise of the federal government's power. The term "FDIC" refers to the FDIC in all or any of its capacities.

## III.

## JURISDICTION AND VENUE

17.     This action arises under the Constitution and laws of the United States and is a suit on a claim submitted to the FDIC pursuant to 12 U.S.C. § 1821(d) related to a depository institution with a main office and principal place of business located within this district. This Court has subject matter jurisdiction over this action pursuant to, inter alia, the United States Constitution, 28 U.S.C. § 1331, 12 U.S.C. §§ 1819(a), 1819(b)(2)(A) and 1821(d)(6), and 28 U.S.C. § 1367. Jurisdiction also exists in this Court pursuant to 28 U.S.C. § 1349 because the FDIC is a corporation incorporated by an Act of Congress and the United States owns more than one half of its capital stock.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e), and 12 U.S.C. § 1821(d)(6), because: (a) a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of the action is situated, in this judicial district; (b) the Plaintiff resides in this judicial district; and/or (c) this action is a suit on a claim submitted to the FDIC related to a depository institution with a main place of business located within this judicial district.

19.     This Court has personal jurisdiction over the FDIC in its various capacities because it is an agency of the United States, and because many of the actions and omissions described herein occurred within this judicial district and caused foreseeable harm within this judicial district.

# IV.

# FACTUAL BACKGROUND

## A.   IndyMac and Its Successors

20.    Until July 11, 2008, IndyMac was an FDIC-insured federal savings bank chartered and regulated by the Office of Thrift Supervision (the "OTS").

21.    On July 11, 2008, the Director of the OTS, by Order Number 2008-24, closed IndyMac and appointed the FDIC as IndyMac's receiver.

22.    In the same Order, the OTS authorized the creation of a new federally-chartered savings bank, IndyMac Federal, for which the FDIC was appointed as conservator.

23.    On information and belief, on July 11, 2008, a purchase and assumption agreement was entered into by and among: the FDIC as receiver of IndyMac; the FDIC in its corporate capacity; and the FDIC as conservator of IndyMac Federal.  Pursuant to that purchase and assumption agreement, substantially all of IndyMac's assets and liabilities, including its operational platform, its personnel and many of its ongoing operations, were purportedly transferred to and assumed by IndyMac Federal.  The purportedly transferred assets and liabilities included all of IndyMac's interests, rights and obligations with respect to the securitization Trusts evidenced by the Governing Agreements.

24.    For more than 8 months thereafter, the FDIC operated the business of IndyMac, specifically purporting to perform the obligations and to be entitled to take (and taking) the rights and benefits associated with the Governing Agreements and related to the Trusts.

25.    On information and belief, on or before March 19, 2009, OneWest Bank, F.S.B., a Pasadena, California-based federal savings bank, was formed by IMB HoldCo LLC ("IMB HoldCo"), a thrift holding company controlled by IMB Management Holding LP, for the primary purpose of purchasing the assets and liabilities of IndyMac Federal.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1

6

COMPLAINT

26.     On information and belief, on or about March 19, 2009, a purchase and assumption agreement and certain related agreements were entered into by and among: the FDIC as conservator of IndyMac Federal; IMB HoldCo; and OneWest Bank F.S.B. or one or more of its affiliates (collectively "OneWest").  Pursuant to these agreements, substantially all of IndyMac Federal's assets and liabilities, including its operational platform, its personnel, and some, but not all, of the assets relating to all but three of the Trusts were purportedly transferred to and assumed by OneWest.

27.     On March 19, 2009, the Director of the OTS, by Order Number 2009-17, removed the FDIC as conservator for IndyMac Federal and made the FDIC the receiver for IndyMac Federal.  The term "conservator" is used in this Complaint to address both roles the FDIC occupied with respect to IndyMac Federal to avoid confusion with references to the FDIC's role as receiver of IndyMac.

**B.      The Securitization Trusts**

28.     Prior to its failure in July 2008, IndyMac operated as a mortgage securitizer.  This means that it originated and otherwise acquired mortgage loans and then sold the mortgage loans to the Trusts through one of several limited purpose intermediate entities (e.g., IndyMac ABS, Inc. and IndyMac MBS, Inc.) that were formed and controlled exclusively by IndyMac for the sole purpose of acting as the settlor of the Trusts.  On rare occasions, IndyMac also sold loans to, and serviced loans for, Trusts sponsored by third parties.  All allegations about the Trusts in this Complaint include the Trusts sponsored by third parties.

29.     IndyMac caused the settlor of the Trusts to issue and sell to investors certain residential mortgage-backed securities that were supported by the cash flows on the underlying mortgage loans.

30.     The proceeds from the sale of the mortgage-backed securities (which included the issuance to IndyMac of certain securities representing residual interests in the mortgage loans) were then used to pay IndyMac for the mortgage

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   loans that were transferred to the Trusts, and to compensate IndyMac for

2   performing its obligations to the Trusts. The payments to IndyMac provided

3   further funds for IndyMac to originate and acquire more mortgage loans that were,

4   in turn, used to create and sell more securities.

5       31.    IndyMac produced and sold into the Trusts an extensive array of non-

6   traditional mortgage loan products. Central to IndyMac's success in attracting

7   investors to purchase the mortgage-backed securities sponsored by IndyMac were

8   IndyMac's representations and promises that a single entity (i.e., IndyMac) would

9   perform the full range of interrelated functions necessary to protect, preserve and

10  service these complex Trust assets.

11      32.    Because of the large number and variety of non-traditional mortgage

12  loans sold into the IndyMac Trusts, it was and is important to the Trustee and

13  investors in the Trusts that the same entity that originated or originally acquired the

14  loans also be involved in servicing the loans for a number of reasons, including the

15  assurance that material defects in the mortgage loans could be promptly identified

16  and resolved by being cured or by having the loans substituted or repurchased by

17  IndyMac, which possessed information and expertise necessary to perform these

18  duties efficiently and effectively.

19      33.    To promote the sale of its mortgage-backed securities, and to induce

20  investors to purchase those securities, IndyMac issued a Prospectus about the

21  benefits of investing in one of its Trusts generally, and a Prospectus Supplement

22  about each Trust.

23      34.    In the typical Prospectus or Prospectus Supplement, IndyMac

24  promised potential investors that a single entity, "IndyMac Bank," would act as

25  sponsor, seller and servicer of the Trusts and its underlying mortgage loan assets.

26      35.    In the typical Prospectus or Prospectus Supplement, IndyMac also

27  induced investment in the Trusts by:

28

1    a. promising to deposit into the Trusts a pool of mortgage loans

2 with the particular attributes and characteristics described therein;

3    b. promising that the mortgage loans that would be sold into the

4 Trusts had been underwritten in accordance with IndyMac's underwriting

5 guidelines and making numerous representations regarding IndyMac's underwriting

6 process;

7    c. promising that the Trusts and the mortgage loans that would be

8 sold into the Trusts would be serviced by IndyMac, before and after the sale,

9 employing the same degree of skill and care that IndyMac employs in servicing

10 comparable mortgage loans for itself or others;

11    d. making numerous representations regarding IndyMac's servicing

12 process and the manner in which IndyMac would protect, preserve and administer

13 the Trusts and the underlying mortgage loans;

14    e. acknowledging its ongoing duty to notify other parties-in-interest

15 to the Trusts, including the Trustee, of breaches of IndyMac's representations or

16 warranties with respect to the underlying mortgage loans;

17    f. acknowledging its ongoing duty to notify other parties-in-interest

18 to the Trusts, including the Trustee, of defective documents with respect to the

19 mortgage loans in the Trusts;

20    g. acknowledging its obligations to repurchase or substitute a

21 similar mortgage loan for any mortgage loan with document deficiencies or an

22 uncured breach of any representation, warranty or covenant that materially and

23 adversely affects the interests of the Trusts' investors or insurers in that mortgage

24 loan;

25    h. specifying the limited circumstances and manner in which

26 modifications to the mortgage loans in the Trusts would be permitted;

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1        9        COMPLAINT

1    i.   confirming that it would perform default management services,

2  and make certain property preservation advances and advances of principal and

3  interest, on delinquent loans in the Trusts;

4    j.   prominently featuring the credit ratings issued on the mortgage-

5  backed securities issued by the Trusts; and

6    k.   emphasizing the control and minimization of risks to investors

7  through IndyMac's integrated process of underwriting, originating and servicing

8  loans and the Trusts.

9  **C.   IndyMac's Duties under the Governing Agreements**

10    36.   The Trusts were created, the mortgage-backed securities were issued,

11  and the mortgage loans were sold, transferred and assigned to the Trusts pursuant to

12  one or more Governing Agreements by and among IndyMac, the settlor entity

13  controlled by IndyMac, the Trustee, and certain other parties, such as mortgage loan

14  insurers and bond insurers.  The Governing Agreements establish and regulate the

15  Trusts and the relationships among the parties-in-interest to the Trusts.  The

16  Governing Agreements include Pooling and Servicing Agreements, Sale and

17  Servicing Agreements, Indentures, Trust Agreements, and related ancillary

18  agreements.

19    37.   Under the Governing Agreements, IndyMac's duties to protect,

20  preserve, service and administer the Trusts and assets in those Trusts include, but

21  are not limited to:

22    a.   enforcing the borrowers' obligations to make monthly principal

23  and interest payments on the underlying mortgage loans;

24    b.   collecting payments from borrowers on the mortgage loans in the

25  Trusts, posting and processing payments properly, and pursuing borrowers who fail

26  to timely make required payments;

27    c.   administering and preserving the documents and files necessary

28  to enforce the borrowers' obligations on underlying mortgage loans;

1          d.    notifying other parties to the Governing Agreements when
2    IndyMac knew of the existence of missing or defective mortgage loan documents;

3          e.    notifying other parties to the Governing Agreements of mortgage
4    loans that did not comply with the representations or warranties IndyMac made
5    with respect to such mortgage loans;

6          f.    curing all breaches of any representation or warranty which
7    materially and adversely affect the interests of the Trust beneficiaries, including any
8    breach of representation or warranty for any loan for which coverage was rescinded
9    or a claim was denied by the mortgage pool insurer;

10         g.    repurchasing or substituting a similar mortgage loan for any
11   mortgage loan as to which an uncured material and adverse breach of a
12   representation or warranty exists, including mortgage loans for which coverage was
13   rescinded or a claim denied by the mortgage pool insurer, at the price and in the
14   manner specified in the Governing Agreements;

15         h.    making certain property preservation advances and cash
16   advances with respect to delinquent payments of principal and interest on the
17   mortgage loans;

18         i.    managing claims and proceedings to enforce the obligations of
19   borrowers to make timely payments of principal and interest on the mortgage loans,
20   including foreclosures, evictions, quiet title and bankruptcy filings, and the
21   administration of properties purchased at foreclosures or otherwise acquired from
22   the borrowers;

23         j.    modifying mortgage loans only when those loans were seriously
24   delinquent and when each proposed modification would benefit Trust investors by
25   minimizing losses on the modified loan;

26         k.    providing accurate and timely reports to the Trustee regarding
27   the status of the Trusts and the underlying mortgage loans; and

28

1           l.     indemnifying the Trustee for certain fees, costs and expenses

2  incurred by the Trustee in administering, protecting and defending the Trusts and

3  the underlying mortgage loan assets.

4         38.     As compensation for the performance of its duties, IndyMac received

5  the purchase price of the loans (which included, in some instances, residual

6  interests in the Trusts) and also received monthly fees and income from the Trusts

7  based on the aggregate outstanding principal balance of the mortgage loans in each

8  Trust.  IndyMac also retained certain additional fees and income from late payment

9  charges on the mortgage loans, as well as interest or other proceeds earned on assets

10  held in collection accounts.

11         39.     The Trustee and the Trust investors had the right to, and did, rely on

12  IndyMac's representations that a single entity, IndyMac, would sponsor the

13  transactions, sell mortgage loans into the Trusts, and thereafter service the Trusts

14  and the underlying mortgage loan assets unless either (a) IndyMac's rights and

15  obligations were terminated by them for cause or (b) the Trustee (and, in some

16  cases, other parties-in-interest to the Trusts) consented to IndyMac's transfer of its

17  rights and obligations.

18         40.     Neither the Trustee nor Trust investors terminated any of IndyMac's

19  rights and obligations relating to the Trusts or consented to any transfer of such

20  rights and obligations.

21         41.     The Governing Agreement for each Trust provides that the Trustee

22  shall not be required to expend, advance or risk its own funds or otherwise incur

23  financial liability in the performance of any of its duties thereunder or in the

24  exercise of any of its rights or powers.

25         42.     The Trustee and the Trusts' investors had the right to, and did, rely on

26  IndyMac's promises to indemnify the Trustee for the fees, costs and expenses

27  incurred by the Trustee in administering, protecting and defending the Trusts.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1

12

COMPLAINT

43.     The Governing Agreements represent an integrated set of contractual undertakings on behalf of IndyMac with respect to the formation and servicing of the Trusts.

44.     Each Governing Agreement is a unitary contract that is not divisible.

45.     IndyMac entered into each of the Governing Agreements as a single contracting party, making the representations and warranties both with respect to the due execution and enforceability of the Governing Agreements and with respect to the underlying mortgage loans.

46.     The Governing Agreements are executory contracts that involve obligations that are ongoing, mutual, and interrelated.

47.     The Governing Agreements:

    a.     are all in writing;

    b.     were all executed by IndyMac and DBNTC, as Trustee, at the time the associated property interests transferred;

    c.     were executed on behalf of IndyMac by individuals duly authorized by the IndyMac Board of Directors; and

    d.     have been continuously in existence, since the time of execution, and constitute official records of IndyMac.

**D.     IndyMac's Representations and Warranties**

48.     Under the Governing Agreements, IndyMac made numerous representations, warranties and covenants regarding the due execution and enforceability of those agreements and regarding the characteristics of the underlying mortgage loans.  These representations, warranties and covenants generally include, among other things, that:

    a.     IndyMac is duly organized as a federally insured savings bank, is validly existing and in good standing, and is qualified to transact any business contemplated by the Governing Agreements;

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1            b.     IndyMac has the full corporate power and authority to sell and

2    service each mortgage loan, to execute, deliver and perform the Governing

3    Agreements, and to enter into and consummate the transactions contemplated

4    thereunder;

5            c.     the execution, delivery, and fulfillment of it duties and

6    obligations under the Governing Agreements by IndyMac would not: (i) result in a

7    material breach of any term or provision of the charter or by-laws of IndyMac, (ii)

8    materially conflict with, or result in a material breach, violation or default under

9    any other material agreement to which IndyMac was bound, or (iii) constitute a

10   material violation of any statute, order or regulation applicable to IndyMac of any

11   court, regulatory body, administrative agency or governmental body having

12   jurisdiction over IndyMac (including without limitation the OTS and the FDIC);

13           d.     IndyMac was not in breach or violation of any material indenture

14   or other material agreement or instrument, or in violation of any statute, order or

15   regulation of any court, regulatory body, administrative agency or governmental

16   body having jurisdiction over it (including without limitation the OTS and the

17   FDIC) materially impairing IndyMac's ability to perform or meet any of its

18   obligations under the Governing Agreement; and,

19           e.     IndyMac is an approved servicer of mortgage loans by Federal

20   National Mortgage Association ("Fannie Mae") or other applicable authorities.

21       49.    Under the Governing Agreements, IndyMac also made numerous

22   representations, warranties and covenants with respect to the mortgage loans it sold

23   into the Trusts. Those representations, warranties and covenants generally provide,

24   among other things, that:

25           a.     a lender's policy of title insurance (or in the case of mortgaged

26   properties located in areas where title insurance policies are generally not available,

27   an attorney's certificate of title) or a commitment to issue the policy was effective

28   on the date of origination of each loan, other than cooperative loans, and that each

1   policy (or certificate of title as applicable) remained in effect on the date of transfer

2   by IndyMac into the Trust;

3         b.    IndyMac had good title to each mortgage loan and the mortgage

4   loan was subject to no valid offsets, defenses, counterclaims or rights of rescission

5   subject to certain exceptions;

6         c.    each mortgage loan was secured by a valid first lien on, or a first

7   perfected security interest with respect to, the mortgaged property (subject only to

8   permissible title insurance exceptions, if applicable, and certain other exceptions

9   described in the Governing Agreement) and the property was free of material

10   damage;

11         d.    the information provided on one or more schedules to the

12   Governing Agreements regarding the mortgage loans was true and correct in all

13   material respects at the time of execution;

14         e.    at the time of origination, there were no delinquent tax or

15   assessment liens against the mortgaged property;

16         f.    all regularly scheduled monthly payments due with respect to

17   each of the mortgage loans, up to and including their transfer into the Trusts, had

18   been made, and, as of the Trust cut-off date, no mortgage loan had a regularly

19   scheduled monthly payment that was seriously delinquent during the twelve months

20   before the cut-off date;

21         g.    to the best of IndyMac's knowledge, there was no fraud involved

22   in the origination of any mortgage loan by the mortgagee or by the mortgagor, any

23   appraiser or any other party involved in the origination of the mortgage loan;

24         h.    each mortgage loan was underwritten and serviced substantially

25   in accordance with IndyMac's guidelines, subject only to such variances as are

26   reflected on schedules accompanying the Governing Agreements;

27         i.    the mortgage loan files contained the documents specified in the

28   Governing Agreements and necessary to enforce the mortgage loans; and

j.      each loan at the time it was originated and on the date of transfer into the Trusts complied in all material respects with all applicable local, state and federal laws.

50.    The representations, warranties and covenants referenced in paragraphs 47 and 48 hereof, together with all of IndyMac's representations, warranties and covenants under the Governing Agreements, are referred to collectively hereinafter as the "Representations and Warranties" or the "Representations or Warranties."

51.    In the event of a breach of certain Representations or Warranties with respect to any mortgage loan, the Governing Agreements impose on IndyMac and/or its successors the obligation to:

a.      notify certain other parties to the Governing Agreements, including the Trustee;

b.      make certain cure payments; and/or

c.      repurchase the mortgage loan at a price specified in the Governing Agreements (typically equal to the unpaid principal balance of the related mortgage loan(s) plus accrued interest through the date of repurchase).

52.    IndyMac's Representations and Warranties are an integral part of the same Governing Agreements describing and establishing IndyMac's obligations to service the mortgage loans that it sold into the Trust and the corresponding right of IndyMac and its successors to receive servicing fees and income.

53.    The Governing Agreement for each Trust confers upon the Trustee the right to demand compliance with, and seek remedies for any breach of, IndyMac's Representations and Warranties from IndyMac and/or any of its successors.

54.    The Governing Agreements require IndyMac and its successors to indemnify the Trusts and the Trustee for any expenses incurred in enforcing any of the Representations and Warranties or seeking remedies for any breaches thereof.

**E.    Assignment, Resignation and Other Contractual Matters**

55.    The Governing Agreements do not permit IndyMac to assign or resign from its obligations under the Governing Agreements without the consent of the Trustee.

56.    Under the Governing Agreements, succession is permitted only by a person or entity assuming all of IndyMac's business.

57.    Only the Trustee has the power under Governing Agreements to act as or hire another qualified successor servicer to service the mortgage loans in the event of a default by IndyMac under the Governing Agreements or any inability by IndyMac to perform its continuing obligations under the Governing Agreements. In that event, the Trustee or its designated replacement successor servicer would have the right to receive the appropriate servicing fee.

**F.    The Role Of IndyMac's Successors**

58.    Pursuant to 12 U.S.C. § 1821(d)(2), by operation of law, the FDIC as receiver of IndyMac succeeded to all rights, titles, powers, and privileges of IndyMac, including those arising under the Governing Agreements or otherwise related to the Trusts.

59.    Pursuant to 12 U.S.C. § 1821(d)(2), by operation of law, the FDIC as conservator of IndyMac Federal succeeded to all rights, titles, powers, and privileges of IndyMac Federal, including those arising under the Governing Agreements or otherwise related to the Trusts.

60.    From July 11, 2008 to approximately March 19, 2009, the FDIC as conservator of IndyMac Federal administered the Trusts and serviced the mortgage loans in the Trusts on the purported basis that it possessed the "servicing rights" to those loans under the Governing Agreements.

61.    In order to exercise such "servicing rights," IndyMac Federal was obligated to, and by operation of law did, assume all of IndyMac's obligations under the Governing Agreements.

62.     On or about March 19, 2009, the FDIC as conservator of IndyMac Federal purportedly sold certain assets and rights of IndyMac Federal to OneWest for approximately $13.9 billion.

63.     The sale to OneWest included many valuable rights that IndyMac held under the Governing Agreements or that were otherwise related to the Trusts, but improperly excluded certain of IndyMac's obligations to the Trusts and the Trustee under those same Governing Agreements without making alternate arrangements to assure the performance of those excluded obligations.  Specifically, the sale to OneWest included what the FDIC characterized as the "servicing rights" under the Governing Agreements, including IndyMac's right to service the mortgage loans in the Trusts and the corresponding right to receive the servicing fees and income provided in the Governing Agreements.  The sale, however, excluded certain obligations imposed on IndyMac under the same Governing Agreements, including on information and belief, "any repurchase obligations for breaches of loan level representations, any indemnities relating to origination activities or securities laws or any seller indemnity."

64.     On information and belief, the sale to OneWest had the effect of treating the obligations of IndyMac and its successors to the Trusts and the Trustee differently than the obligations of IndyMac and its successors contained in similar contracts between IndyMac and certain government-sponsored entities, such as Fannie Mae, the Government National Mortgage Association (known as "Ginnie Mae") and the Federal Home Loan Mortgage Corporation (known as "Freddie Mac"), were treated.  Specifically, the FDIC expressly assumed and assigned to OneWest all of IndyMac's obligations and rights under its loan sale and servicing contracts with government-sponsored entities, while cherry picking selected  rights and obligations under the Governing Agreements for the Trusts and making no provision for the performance of IndyMac's other obligations to the Trusts and the Trustee under the Governing Agreements.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

65.     In attempting to sell, and thereby reap the benefits of, the Governing Agreements without assuming and assigning (or otherwise performing) the related obligations, the FDIC acted outside the scope of its statutorily defined authority.

66.     In the sale to OneWest, the FDIC purported to split unitary contracts and divide rights and obligations that are not severable.

67.     The FDIC failed to follow the procedures provided in the Governing Agreements for transferring servicing rights and obligations.

68.     The FDIC's effort to sell the benefits of the Governing Agreements without transferring the corresponding obligations deprived the Trusts and the Trustee of property without due process of law and took private property of the Trusts and the Trustee without just compensation.

69.     The FDIC's actions described herein discriminated against the Trusts and the Trustee as private parties, while benefiting other similarly situated entities that are affiliated with the United States government.

70.     On several occasions, the Trustee has attempted to obtain more detail from the FDIC about the sale to OneWest, including by making two requests to the FDIC pursuant to the Freedom of Information Act, 5 U.S.C. § 552, et seq. for information and documents regarding the sale to OneWest.

71.     To date, the Trustee has not received all of the information it has requested, nor has the FDIC provided the Trustee with a complete copy of the OneWest sale agreement, together with all of the related agreements, exhibits, and schedules.

72.     As a result of the FDIC's failure to provide all of the relevant documents and information, many of the details of the sale to OneWest, while known to and in control of the FDIC, remain unclear to the Trustee, notwithstanding that the sale affects significant and valuable rights of the Trusts and the Trustee.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1                                    19

COMPLAINT

G.     **Radian and Repudiation**

73.    The sale to OneWest also purported to exclude rights and obligations under the Governing Agreements with respect to three Trusts for which Radian Insurance, Inc. ("Radian") provides mortgage pool insurance (collectively, the "Radian Trusts"). Mortgage pool insurance is a guarantee against certain losses on the individual mortgage loans in the Radian Trusts.

74.    The Radian Trusts are: (1) IndyMac INDS Home Equity Mortgage Loan Trust Series 2006-2B; (2) IndyMac INDS Home Equity Mortgage Loan Trust Series 2006-3; and (3) IndyMac INDS Home Equity Mortgage Loan Trust Series 2007-1.

75.    Radian's obligations to the Radian Trusts, the Trustee and other parties are currently the subject of pending litigation and arbitration proceedings.

76.    On March 19, 2009, the FDIC as receiver of IndyMac notified the Trustee that it was formally repudiating certain of the Governing Agreements for the Radian Trusts pursuant to 12 U.S.C. § 1821(e), claiming that those Governing Agreements are "burdensome" and that repudiation would "promote the orderly administration of the institution's [IndyMac's] affairs."

77.    The FDIC has not notified the Trustee or, on information and belief, any other party in interest to any Trust, that it has repudiated any of the Governing Agreements other than those associated with the Radian Trusts.

H.    **Proof of Claim**

78.    On October 14, 2008, the Trustee timely filed with the FDIC as receiver for IndyMac a Proof of Claim on behalf of the Trusts and the Trustee pursuant to 12 U.S.C. § 1821(d) (together with all exhibits thereto, the "Proof of Claim"), outlining various claims against the FDIC under or related to the Governing Agreements.

79.    The Trustee hereby incorporates by reference as if set forth here in full the entirety of its Proof of Claim, along with the exhibits thereto and materials

referenced therein.  Accordingly, a copy of the Proof of Claim without exhibits is attached as Exhibit 2 hereto.  The exhibits to the Proof of Claim are incorporated herein by reference as if set forth in full, but because they include confidential and sensitive information, the Trustee would submit the exhibits to the Proof of Claim under seal if they must be filed.

80.     On information and belief, other parties with interests in or obligations to the Trusts filed proofs of claim with the FDIC, including insurers, monoline credit enhancement providers, underwriters, depositors, loan servicers, and investors.  The claims asserted in these other proofs of claim may be related or supplemental to the claims asserted by the Trustee and the Trusts in this action.  The Trustee hereby incorporates by reference any such proofs of claims, along with the exhibits thereto and any materials referenced therein to the extent appropriate and/or necessary.

81.     In its Proof of Claim, the Trustee identified the failure of IndyMac and its successors (including the FDIC in multiple capacities), in contravention of the Governing Agreements, to provide access to books and records, and to properly notify the Trustee of the ongoing multiple breaches of Representations and Warranties that were concealed from the Trustee.

82.     In its Proof of Claim and otherwise, the Trustee also requested that it be given reasonable access and time to investigate its claims (the "Requested Access"), so that, among other things, the Trustee could provide more information to the FDIC in support of its claims.

83.     In its Proof of Claim, the Trustee further reserved its rights to amend or supplement its Proof of Claim and made clear that its Proof of Claim was in no way intended to waive or release any claim it or the Trusts may have.

84.     On March 31, 2009, without providing or addressing the Trustee's Requested Access, the FDIC issued a Notice of Disallowance, rejecting the Trustee's Proof of Claim.  A copy of the Notice of Disallowance is attached as

1    Exhibit 3 hereto.  Pursuant to 12 U.S.C. § 1821(d)(5)(A)(iv), the FDIC was

2    required in the Notice of Disallowance to state "each reason for the disallowance."

3    The sole stated basis for the FDIC's denial was that the claim was not "fixed and

4    certain as of bank failure on July 11, 2008."

5         85.     Pursuant to 12 U.S.C. § 1821(d)(6)(A)(ii), the disallowance of the

6    Trustee's Proof of Claim triggered the right to "file suit on such claim in the district

7    or territorial court of the United States for the district within which the depository

8    institution's principal place of business is located or the United States District Court

9    for the District of Columbia (and such court shall have jurisdiction to hear such

10    claim)" within 60 days.  This action is therefore timely and appropriately brought in

11    this Court.

12    <div align="center">**V.**</div>

13    <div align="center">**BREACHES AND DAMAGES**</div>

14    **A.   IndyMac's Breaches of Its Representations and Warranties**

15         86.     IndyMac breached numerous provisions of the Governing Agreements.

16         87.     Without limiting the generality of the foregoing, and by way of

17    example only, IndyMac committed the following breaches of the Representations

18    and Warranties:

19         a.     Numerous mortgage loans IndyMac sold into the Trusts did not

20    comply with IndyMac's credit underwriting standards and origination process.

21    There was "little, if any review of borrower qualifications, including income, assets

22    and employment," as well as a failure to obtain proper property appraisals (see

23    Office of the Inspector General, Department of the Treasury, Audit Report,

24    "SAFETY AND SOUNDNESS: Material Loss Review of IndyMac Bank, FSB,"

25    Feb. 26, 2009, at 11-12);

26         b.     Many mortgage loans sold into the Trusts did not comply with

27    the applicable requirements even before they were sold into the Trusts;

28

c.    Many mortgage loan origination files did not contain required documentation;

d.    The origination of many mortgage loans did not comply with applicable laws; and

e.    Many mortgage loans did not comply with the characteristics set forth in the schedules to the Governing Agreements.

88.    IndyMac breached the Representations and Warranties as more fully described herein before it was placed in receivership, and the breaches continued during the period that the FDIC acted as receiver for IndyMac and as conservator for IndyMac Federal.

89.    These breaches were concealed by IndyMac, including by its refusal to provide the access to its books and records required by the Governing Agreements.

90.    The FDIC also failed to permit the Requested Access by the Trustee and thus concealed the continuing breaches.

91.    IndyMac failed to comply fully with and breached certain of its contractual obligations in the Governing Agreements to:

a.    notify the Trustee and other parties-in-interest to the Trusts of the breaches of the Representations and Warranties;

b.    make cure payments as required by the Governing Agreements;

c.    repurchase the mortgage loans that did not conform with or otherwise breached the Representations and Warranties; and/or

d.    indemnify the Trusts and the Trustee for the liabilities, expenses and losses associated with the breaches of the Representations and Warranties.

92.    The breaches of Representations and Warranties continued through the receivership period and continue to the present date.

93.    IndyMac Federal, as successor to IndyMac, also breached numerous Representations and Warranties in the Governing Agreements during the period in which the FDIC was managing its affairs.

94.    IndyMac's successors, including the FDIC as receiver of IndyMac, and as conservator and receiver of IndyMac Federal, also breached and have continued to breach the foregoing Representations and Warranties, and have failed to comply fully with their obligations pursuant to the Governing Agreements to:

a.    notify the Trustee and other parties-in-interest to the Trusts of the breaches of Representations and Warranties;

b.    make cure payments as required by the Governing Agreements;

c.    repurchase the mortgage loans that do not conform with or otherwise breach the Representations and Warranties; and/or

d.    indemnify the Trusts and the Trustee for the liabilities, expenses and losses associated with the breaches of the Representations and Warranties.

95.    In addition, despite provisions of the Governing Agreements permitting the Trustee and certain other parties-in-interest to the Trusts to have access to IndyMac's books and records concerning mortgage loans in the Trusts, IndyMac and its successors, both before and after IndyMac's failure, have consistently refused to allow the Trustee and, on information and belief, such other parties-in-interest to the Trusts, access to those books and records. As a result, although the Trustee believes that there are other breaches of Representations and Warranties that occurred before IndyMac's failure and have continued through the present, that information has been concealed from the Trustee.

96.    Moreover, because IndyMac and its successors have failed to comply with their obligations to notify the Trustee of breaches of Representations and Warranties, the Trustee is not aware of all of the breaches that have occurred.

97.    On information and belief, the breaches of Representations and Warranties more fully described herein have damaged the Trusts and the Trustee in the approximate amount of $6 billion to $8 billion or more.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.**     **Servicing Deficiencies**

98.     IndyMac failed to comply with its obligations to service the mortgage loans in the Trusts in accordance with applicable standards, the Representations and Warranties, and the other provisions of the Governing Agreements.

99.     IndyMac's successors, including the FDIC as receiver of IndyMac and as conservator of IndyMac Federal, also have failed to comply with applicable obligations to service the mortgage loans in the Trusts in accordance with applicable standards, the Representations and Warranties, and the other provisions of the Governing Agreements.

100.    Without limiting the generality of the foregoing, and by way of example only, IndyMac and its successors have failed to appropriately service the mortgage loans in the Trusts by:

a.     failing to notify the Trustee and others, and take appropriate steps, relating to mortgage loans failing to conform with the Representations and Warranties;

b.     failing to adequately staff, or improperly staffing, key functions involved in collections on mortgage loans, particularly with respect to delinquent mortgage loans, resulting in collection delays and losses;

c.     conducting loss mitigation activities, including loan modifications, that fall below the servicing standard set forth in the Governing Agreements or otherwise violate the Governing Agreements, including but not limited to: (i) failing to fully or consistently consider borrower assets, recent credit activity or prior loan purpose; (ii) imposing substantive and procedural biases against effective remedial activity and in favor of loan modifications, even when such modifications were not reasonably expected to minimize investors' losses on the mortgage loans; (iii) delaying the initiation of foreclosure proceedings; (iv) failing to properly preserve property; and (v) conducting loss mitigation activities with inadequate or improper controls over such activities;

1      d.      allowing the FDIC's policy objectives to override its obligations
2  under the Governing Agreements and applicable law;

3      e.      knowingly and intentionally deviating from required and
4  appropriate standards with respect to the individual servicing of numerous
5  mortgage loans; and

6      f.      failing to pursue recoveries and reimburse the Trusts in cases of
7  first payment default or early payment default.

8  **C.     Indemnification for Expenses**

9      101.   As a result of the breaches of Representations and Warranties set forth
10 herein and other breaches by IndyMac and its successors, the Trustee and the Trusts
11 have incurred, and will continue to incur, significant costs and legal expenses,
12 including attorneys' fees and costs, and face substantial liability for third-party
13 claims. These third-party claims include, but are not limited to, claims made in
14 civil litigation proceedings against the Trustee and/or the Trusts, including but not
15 limited to the pending litigation and arbitration proceedings relating to the Radian
16 Trusts and other lawsuits filed against the Trustee and/or the Trusts relating to
17 IndyMac and its origination and/or servicing of mortgage loans.

18     102.   Such third-party claims involve or relate to the acts and omissions of
19 IndyMac and its successors in connection with the origination and servicing of
20 mortgage loans in the Trusts.

21     103.   The expenses, costs and liabilities (including claims asserted by third
22 parties against the Trusts and the Trustee) incurred or suffered to date exceed $77
23 million, and will increase over time.

24     104.   Pursuant to the Governing Agreements, IndyMac and its successors
25 were and are obligated to indemnify the Trustee and the Trusts for these amounts.

26     105.   Such indemnification constitutes core consideration both for the
27 Trustee's initial and ongoing obligation and agreement to act as Trustee and for the
28 investors' purchase of securities issued by the Trusts.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

106.   IndyMac failed, and its successors have continued to fail, to comply fully with their indemnification obligations to the Trustee.

**D.**   **Damages From Sale to OneWest**

107.   Because of the breaches by IndyMac and its successors, the Trustee and the Trusts are entitled under the Governing Agreements and applicable law to exercise remedies of setoff and recoupment against any rights which IndyMac or its successors have to receive payments or reimbursements from the Trustee and/or the Trusts.

108.   Under terms of the Governing Agreements, IndyMac and its successors have the right to recover from Trust assets certain unpaid servicing fees and certain advances previously made by them for the benefit of the Trusts.

109.   On information and belief, as more fully set forth above, the sale to OneWest attempted to transfer to OneWest many of the benefits of the Governing Agreements, including the rights to recover amounts from the Trusts as described in the paragraph above, without transferring or otherwise assuring the performance of all of the related and/or necessary obligations and without expressly transferring the right of setoff or recoupment that the Trusts and the Trustee would have against those amounts.

110.   The failure of IndyMac, the FDIC and/or OneWest as IndyMac's successor-in-interest to perform these obligations inflicts economic harm on the Trusts and the Trustee, principally in the form of losses on loans that the Governing Agreements require IndyMac and/or its successors to repurchase and losses from liabilities and costs that the Governing Agreements required IndyMac and/or the FDIC to bear as indemnitors.

111.   In addition, on information and belief, the FDIC purported to sell and assign to OneWest all of IndyMac's and the FDIC's rights to recover the amounts described in paragraph 107 above free and clear of the Trusts' and the Trustee's rights of setoff and recoupment.

112.   OneWest therefore may contend that the Trusts and the Trustee do not have the setoff and recoupment rights that the Trusts and the Trustee would have if IndyMac or the FDIC still owned all of the assets transferred to OneWest.

113.   The Trustee notified the FDIC of its rights to setoff and recoupment both in its Proof of Claim and in communications preceding the closing of the OneWest sale transaction.

114.   The Trusts and the Trustee are directly damaged by the FDIC's actions in the OneWest sale transaction to the extent that the sale transaction deprives them of the benefits of such setoff and recoupment rights.

**E.   Damages from Repudiation**

115.   The Trustee and the Trusts have been damaged as a direct and proximate result of the repudiation of certain of the Governing Agreements related to the Radian Trusts.

116.   The repudiation of certain of the Governing Agreements related to the Radian Trusts constitutes an anticipatory breach of the related Governing Agreements in their entirety.

<center>

**VI.**

**CAUSES OF ACTION**

**COUNT ONE**

**PRE-FAILURE BREACH OF CONTRACT**

**(AGAINST FDIC AS RECEIVER OF INDYMAC AND FDIC AS**

**CONSERVATOR OF INDYMAC FEDERAL)**

</center>

117.   The Trustee incorporates by reference the previous and succeeding paragraphs of this Complaint as if they were set forth here in full.

118.   The conduct alleged above constitutes multiple breaches of contract by IndyMac, including breaches of the Governing Agreements.

119.   Without limiting the generality of the foregoing, IndyMac breached the Governing Agreements by:

a.   selling materially defective mortgage loans into the Trusts that did not comply with IndyMac's express Representations and Warranties;

b.   failing to repurchase the mortgage loans that did not comply with IndyMac's Representations and Warranties; and

c.   failing to notify the Trustee of the existence of these breaches of Representations and Warranties.

120.   As a direct and proximate cause of IndyMac's breaches of contract, the Trusts and the Trustee have suffered significant damages.

121.   The Trustee is fully performing and has not breached its obligations under the Governing Agreements or excused the performance by IndyMac and its successors of their obligations thereunder.

122.   The FDIC as the receiver of IndyMac is the successor in interest to IndyMac.

123.   In addition, IndyMac Federal, and the FDIC as conservator of IndyMac Federal, is the successor in interest to IndyMac.

124.   As successor in interest to IndyMac in both capacities, the FDIC was required by law either to assume in their entirety IndyMac's obligations under the Governing Agreements, if it wished to obtain the benefits of the Governing Agreements, or to repudiate the Governing Agreements in their entirety.

125.   Having elected to assume IndyMac's obligations under the Governing Agreements in order to gain the benefits of the Governing Agreements, the FDIC was bound by those obligations in their entirety and was required to perform them, including the obligations to notify the Trustee of breaches and to cure them and/or repurchase any affected mortgage loans as a condition to transferring IndyMac's obligations and assets to IndyMac Federal.

1  126.  The FDIC failed to cure IndyMac's breaches of the Governing

2  Agreements.

3  127.  As receiver of IndyMac, the FDIC is liable for IndyMac's breaches of

4  contract arising before the failure of IndyMac.

5  128.  In addition, the FDIC's breaches of the Governing Agreements, and its

6  failure to cure IndyMac's breaches, constitute breach of contract and wrongful

7  conduct in its administration of the IndyMac receivership.

8  129.  The FDIC's conduct gives rise to a priority right of payment that is

9  superior or equivalent to an administrative claim under the preference scheme

10  outlined in 12 U.S.C. § 1821(d)(11).

11  130.  The Trusts and the Trustee are entitled to an award of damages caused

12  by IndyMac's pre-failure breaches of contract, which are currently estimated at $6

13  billion to $8 billion or more.

14  131.  The Trusts and the Trustee are entitled to recover these damages either

15  in full or as an administrative priority claim in light of the FDIC's failure to cure

16  IndyMac's pre-failure breaches of contract.

17  WHEREFORE, the Trusts and the Trustee demand judgment in their favor

18  against the FDIC as receiver of IndyMac, and as conservator of IndyMac Federal to

19  the extent of any IndyMac assets transferred to IndyMac Federal, in an amount to

20  be determined, plus pre- and post-judgment interest, costs of suit, attorneys' fees,

21  and such other relief to which they may be entitled.

22  <u>**COUNT TWO**</u>

23  <u>**POST-FAILURE BREACH OF CONTRACT**</u>

24  <u>**(AGAINST FDIC AS CONSERVATOR OF INDYMAC FEDERAL)**</u>

25  132.  The Trustee incorporates by reference the previous and succeeding

26  paragraphs of this Complaint as if they were set forth here in full.

27  133.  The FDIC, as conservator of IndyMac Federal, assumed IndyMac's

28  obligations under the Governing Agreements as of approximately July 11, 2008,

1   including the obligations to service and administer the Trusts and the mortgage
2   loans included in the Trusts.

3       134.   Upon assuming IndyMac's obligations, the FDIC was required to cure
4   IndyMac's breaches of the Governing Agreements.

5       135.   In addition, the FDIC was required to abide by the Governing
6   Agreements it assumed.  In fact, the FDIC acknowledged its obligation and
7   represented to the Trustee that it would abide by those agreements by letter dated
8   September 8, 2008.

9       136.   The FDIC failed to cure IndyMac's breaches of the Governing
10  Agreements.

11      137.   The FDIC's failure to cure IndyMac's breaches constitutes wrongful
12  conduct in its administration of the IndyMac Federal conservatorship that gives rise
13  to a priority right of payment that is superior or equivalent to an administrative
14  claim under the preference scheme outlined in 12 U.S.C. § 1821(d)(11).

15      138.   In addition, the FDIC as conservator of IndyMac Federal committed
16  several breaches of the Governing Agreements it had assumed.

17      139.   Without limiting the generality of the foregoing, the FDIC breached
18  and continues to breach the Representations and Warranties in the Governing
19  Agreements and also failed to:

20      a.   repurchase loans that the FDIC knew were subject to material
21  breaches of Representations and Warranties;

22      b.   notify the other parties to the Governing Agreements of the
23  existence of material breaches of the Representations and Warranties;

24      c.   service the loans in accordance with and pursuant to the
25  Governing Agreements as more fully set forth above; and

26      d.   provide for the due performance of all of IndyMac's
27  indemnification obligations to the Trusts and the Trustee under the Governing
28  Agreements.

140.   The FDIC's conduct of the conservatorship of IndyMac Federal, specifically including its breaches of the Governing Agreements, exceeds the FDIC's lawful authority as conservator and renders the FDIC liable for full repayment of any damages arising as a result of the breaches.

141.   At a minimum, the FDIC's post-receivership breaches of the Governing Agreements give rise to an administrative priority right of payment under 12 U.S.C. § 1821(d)(20).

142.   As a direct and proximate cause of the FDIC's wrongful conduct and breaches of contract, the Trusts and the Trustee have suffered significant damages.

143.   The FDIC is liable for breaching the Governing Agreements during its conservatorship of IndyMac Federal.

144.   The Trusts and the Trustee are entitled to an award of damages caused by the FDIC's failure to cure IndyMac's pre-failure breaches of contract and the FDIC's post-failure breaches of contract, which are currently estimated at $6 billion to $8 billion or more.

145.   The Trusts and the Trustee are entitled to recover these damages either in full or as an administrative priority claim in light of the FDIC's willful conduct in failing to cure the pre-failure breaches of contract by IndyMac and in light of the FDIC's further breaches of the Governing Agreements during the conservatorship period.

WHEREFORE, the Trusts and the Trustee demand judgment in their favor against the FDIC as conservator of IndyMac Federal for damages in an amount to be determined, plus pre- and post-judgment interest, costs of suit, attorneys' fees, and such other relief as they may be entitled to receive.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## COUNT THREE

## BREACH OF CONTRACT FOR SALE TO ONEWEST

## (AGAINST FDIC AS RECEIVER OF INDYMAC, FDIC AS

## CONSERVATOR OF INDYMAC FEDERAL, AND FDIC IN ITS

## CORPORATE CAPACITY)

146.   The Trustee incorporates by reference the previous and succeeding paragraphs of this Complaint as if they were set forth here in full.

147.   The Governing Agreements are fully integrated "Qualified Financial Contracts" under 12 U.S.C. § 1821(e)(8)(E) and, as such, they must be transferred or retained in whole.  12 U.S.C. § 1821(e)(9)(i), (ii).

148.   IndyMac, as servicer, could not assign its rights and obligations under the Governing Agreements without the prior written consent of the Trustee, and, if IndyMac was no longer the servicer for any reason, the Governing Agreements provided that the Trustee would become the successor servicer with the right to appoint a replacement successor servicer.

149.   The FDIC, in its capacities as receiver of IndyMac, conservator of IndyMac Federal, and in its corporate capacity, breached the Governing Agreements by purporting to transfer to OneWest all of IndyMac's servicing rights and obligations under the Governing Agreements without transferring  IndyMac's liabilities and obligations to honor all of the Representations and Warranties and other key provisions of the Governing Agreements.

150.   The FDIC, in each of its capacities, violated 12 U.S.C. § 1821(e)(9) when it purported to transfer only a portion of the Governing Agreements to OneWest.

151.   On information and belief, the FDIC in its corporate capacity benefited from the sale of IndyMac's servicing rights to OneWest because it used the profits to pay IndyMac's insured depositors and to protect the deposit insurance fund. The evidence of the precise distribution of such assets, however, is in the hands of the

1  FDIC and has been concealed from the Trusts, the Trustee, and the investors in the
2  Trusts.

3       152.   As a direct and proximate cause of the breaches of contract and
4  violation of 12 U.S.C. § 1821(e)(9), the Trusts and the Trustee have suffered
5  significant damages.

6       153.   The breaches of the Governing Agreements exceed the lawful
7  authority of the FDIC as receiver of IndyMac, conservator of IndyMac Federal, and
8  in its corporate capacity, and render the FDIC, in each capacity, jointly and
9  severally, liable for full repayment of any damages arising therefrom.

10      154.   At a minimum, the aforesaid conduct by the FDIC in all capacities
11 gives rise to a priority right of payment that is superior or equivalent to an
12 administrative claim under the preference scheme outlined in 12 U.S.C. §
13 1821(d)(11).

14      155.   In addition, the purported transfer of rights to OneWest has deprived
15 the IndyMac Federal conservatorship or receivership estate of substantial assets to
16 the disadvantage of the Trusts and the Trustee.

17      WHEREFORE, the Trusts and the Trustee demand judgment in their favor
18 against FDIC in its capacities as receiver of IndyMac, as conservator of IndyMac
19 Federal, and in its corporate capacity for damages in an amount to be determined,
20 plus pre- and post-judgment interest, costs of suit, attorneys' fees, and such other
21 relief as they may be entitled to receive.

<div align="center">

**COUNT FOUR**

**REPUDIATION RELATED TO RADIAN TRUSTS**

**(AGAINST FDIC AS RECEIVER OF INDYMAC)**

</div>

25      156.   The Trustee incorporates by reference the previous and succeeding
26 paragraphs of this Complaint as if they were set forth here in full.

27      157.   Pursuant to 12 U.S.C. § 1821(e), the FDIC as receiver has the power to
28 disaffirm or repudiate a contract entered into by the failed institution that it deems

1   burdensome where the repudiation "will promote the orderly administration of the

2   institution's affairs."   12 U.S.C. § 1821(e)(1).

3       158.   As more fully set forth above, the FDIC as receiver of IndyMac

4   repudiated certain Governing Agreements pertaining to the three Radian Trusts.

5       159.   Pursuant to 12 U.S.C. § 1821(e)(3), the FDIC's repudiation of these

6   certain Governing Agreements pertaining to the three Radian Trusts gives rise to a

7   claim by the Radian Trusts and the Trustee for resulting damages.

8       160.   As a direct and proximate cause of the repudiation by the FDIC, the

9   Radian Trusts and the Trustee have suffered significant damages and will continue

10   to suffer such damages.

11       WHEREFORE, the Radian Trusts and the Trustee demand judgment in their

12   favor against FDIC as receiver of IndyMac for damages in an amount to be

13   determined, plus pre- and post-judgment interest, costs of suit, attorneys' fees, and

14   such other relief as they may be entitled to receive.

15   ## COUNT FIVE

16   ## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

17   ## (AGAINST FDIC AS RECEIVER OF INDYMAC AND FDIC AS

18   ## CONSERVATOR OF INDYMAC FEDERAL)

19       161.   The Trustee incorporates by reference the previous and succeeding

20   paragraphs of this Complaint as if they were set forth here in full.

21       162.   Applicable law implies a duty of good faith and fair dealing in the

22   contracts at issue in this case, including the Governing Agreements.

23       163.   A party breaches its duty of good faith and fair dealing when it

24   deprives another party to the contract of the essential or material benefits of the

25   contract.

26       164.   The FDIC as receiver of IndyMac and as conservator of IndyMac

27   Federal have such a duty of good faith and fair dealing to the Trustee and to the

28   Trusts.

165. The conduct of the FDIC as described herein breached that duty, by among other things:

    a. purporting to transfer to OneWest the rights and benefits of the Governing Agreements, while not transferring the associated obligations;

    b. structuring transactions so as to deprive the Trustee and the investors in the Trusts of the essential consideration provided to them under the Governing Agreements; and

    c. attempting to deprive the Trustee and the Trusts of setoff or recoupment rights that they have against servicing fees or advance reimbursement under the Governing Agreements, which OneWest and/or the FDIC may now contend not to exist.

WHEREFORE, the Trusts and the Trustee seek judgment in their favor and against the FDIC as receiver of IndyMac and as conservator of IndyMac Federal for damages in an amount to be determined, plus pre- and post-judgment interest, costs of suit, attorneys' fees, and such other relief as they may be entitled to receive.

## COUNT SIX

## BREACH OF FIDUCIARY DUTY

## (AGAINST FDIC AS RECEIVER OF INDYMAC AND AS CONSERVATOR OF INDYMAC FEDERAL)

166. The Trustee incorporates by reference the previous and succeeding paragraphs of this Complaint as if they were set forth here in full.

167. The FDIC as the receiver of IndyMac and as conservator and receiver of IndyMac Federal has a fiduciary obligation to manage the assets of the receivership in a manner that "maximizes the net present value return from the sale or disposition" and "minimizes the amount of any loss realized." 12 U.S.C. §§ 1821(d)(3) and 1821(d)(13).

168. As a receiver and a fiduciary, the FDIC must act for the benefit of all parties who may establish rights during the administration of the receivership.

169.   As receiver, the FDIC further has a fiduciary obligation to claimants to act in good faith, to act in accordance with the laws that establish its authority, to preserve the property in its possession, and to act in a manner that maximizes potential recovery by those claimants and to allocate the proceeds of such assets impartially and in accordance with rights established by claimants, and statutory priorities.

170.   The FDIC has failed to comply with its fiduciary duties as receiver, including but not limited to, its duties with respect to the management and disposition of IndyMac and IndyMac Federal assets, and its treatment of the Trustee and the investors in the Trusts.  The FDIC further breached its fiduciary duties as receiver by furthering its interests in its other capacities, including in its corporate capacity and as the insurer of bank deposits, at the expense of the Trusts, the Trustee, and the receivership estate.

171.   The conduct by the FDIC described herein in its administration of the IndyMac and IndyMac Federal receiverships gives rise to the personal and individual liability of the receiver (as opposed to just the assets of the receivership), and a priority right of payment that is superior or equivalent to an administrative claim under the preference scheme outlined in 12 U.S.C. § 1821(d)(11).

172.   As conservator of IndyMac Federal, the FDIC had an obligation either to honor in their entirety the Governing Agreements to which IndyMac Federal succeeded, and to lawfully and properly assign the rights and obligations transferred from IndyMac, or to repudiate these agreements in their entirety.  The FDIC breached this duty.

173.   The Trusts and the Trustee have suffered damages as a result of the FDIC's breaches of fiduciary duty.

174.   The Trusts and the Trustee are entitled to recovery of these damages either in full from the funds of the FDIC or as an administrative priority claim in light of the FDIC's wrongful conduct in failing to properly manage the assets of the

1   IndyMac receivership and transfer the assets of the IndyMac Federal

2   conservatorship.

3        WHEREFORE, the Trusts and the Trustee demand judgment in their favor

4   against the FDIC as receiver of IndyMac and as conservator of IndyMac Federal,

5   jointly and severally, for damages in an amount to be determined, plus pre- and

6   post-judgment interest, costs of suit, attorneys' fees, and such other relief as they

7   may be entitled to receive.

8                            **COUNT SEVEN**

9   **UNCONSTITUTIONAL TAKINGS FOR SALE TO ONEWEST AND**

10                      **SPLITTING OBLIGATIONS**

11                 **(AGAINST FDIC IN ALL CAPACITIES)**

12        175.   The Trustee incorporates by reference the previous and succeeding

13   paragraphs of this Complaint as if they were set forth here in full.

14        176.   The Fifth Amendment to the Constitution prohibits the taking of

15   property for public use without just compensation.

16        177.   The FDIC's actions described herein violate the Fifth Amendment of

17   the Constitution.

18        178.   The contractual rights of the Trusts and the Trustee under the

19   Governing Agreements constitute property rights.

20        179.   The FDIC exercised government authority under the Financial

21   Institutions Reform, Recovery Enforcement Act ("FIRREA"), 12 U.S.C. § 1821, to

22   sell certain rights under the Governing Agreements to OneWest.

23        180.   By selling rights under the Governing Agreements without also

24   transferring the associated obligations, the FDIC has: (a) prohibited beneficial uses

25   and taken, destroyed and deprived the Trustee and the Trusts of economically

26   viable use of fixed and certain rights under the Governing Agreements; and (b)

27   frustrated, taken and deprived the Trustee and the Trusts of reasonable investment-

28   backed expectations of their property.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21132730.1                          38                          COMPLAINT

181.  The FDIC's actions caused the Trustee and the Trusts to be unable to profit or obtain a reasonable return on their investments.

182.  These actions further harmed the economic interest of the Trustee and the Trusts to benefit the economic interest of the United States Government.  The Trustee and the Trusts should not be forced to bear these burdens for the benefit of others.

183.  By these actions, the FDIC has taken the property of the Trusts and the Trustee without just compensation in violation of the Fifth Amendment to the Constitution.

184.  The Trusts and the Trustee are entitled to an award of just compensation for the taking of their property rights pursuant to FIRREA.

185.  Such wrongful conduct by the FDIC in its administration of the IndyMac receivership gives rise to a priority right of payment that is superior or equivalent to an administrative claim under the preference scheme outlined in 12 U.S.C. § 1821(d)(11).

186.  The Trusts and the Trustee are therefore entitled to recovery of damages either in full or as an administrative priority claim in light of the FDIC's wrongful conduct.

WHEREFORE, the Trusts and the Trustee demand judgment in their favor against the FDIC in all capacities in an amount to be determined representing just compensation, as well as pre- and post-judgment interest, costs of suit, attorneys' fees, and such other relief as they may be entitled to receive.

## COUNT EIGHT

## UNCONSTITUTIONAL TAKINGS FOR RIGHT TO APPOINT SUCCESSOR SERVICER

## (AGAINST FDIC IN ALL CAPACITIES)

187.  The Trustee incorporates by reference the previous and succeeding paragraphs of this Complaint as if they were set forth here in full.

188.   The Trustee's and the Trusts' contractual rights under the Governing Agreements constitute property rights.

189.   The FDIC exercised its authority under 12 U.S.C. § 1821, to sell certain rights under the Governing Agreements to OneWest.

190.   Pursuant to the Governing Agreements, the Trustee is the party who has the right to replace IndyMac as a servicer. This is a valuable right that would ordinarily bring substantial revenue to the Trustee and the Trusts.

191.   By purporting to sell the "servicing rights" under the Governing Agreements without allowing the Trustee to replace and/or appoint the successor servicer, the FDIC has: (a) prohibited beneficial uses and taken, destroyed and deprived the Trustee and the Trusts of economically viable uses of its rights under the Governing Agreements; and (b) frustrated, taken and deprived the Trustee and the Trusts of reasonable investment-backed expectations of their property.

192.   The FDIC's actions caused the Trustee and the Trusts to be unable to profit or obtain a reasonable return on their investments.

193.   The FDIC harmed the economic interests of the Trustee and the Trusts to benefit the United States government and the depositors and other creditors of IndyMac. The Trustee and the Trusts should not be forced to bear these burdens for the benefit of others.

194.   By these actions, the FDIC has taken the property of the Trusts and the Trustee without just compensation in violation of the Fifth Amendment to the Constitution.

195.   The Trusts and the Trustee are entitled to an award of just compensation for the taking of their property rights under the Governing Agreements pursuant to FIRREA.

196.   Such wrongful conduct by the FDIC in its administration of the IndyMac receivership gives rise to a priority right of payment that is superior or

1   equivalent to an administrative claim under the preference scheme outlined in 12

2   U.S.C. § 1821(d)(11).

3       197.   The Trusts and the Trustee are therefore entitled to recovery of

4   damages either in full or as an administrative priority claim in light of the FDIC's

5   wrongful conduct.

6       WHEREFORE, the Trusts and the Trustee demand judgment in their favor

7   against the FDIC in all capacities in an amount to be determined representing just

8   compensation, as well as pre- and post-judgment interest, costs of suit, attorneys'

9   fees, and such other relief as they may be entitled to receive.

10                          **COUNT NINE**

11   **DUE PROCESS VIOLATION FOR SALE TO ONEWEST AND SPLITTING**

12                          **OBLIGATIONS**

13                  **(AGAINST FDIC IN ALL CAPACITIES)**

14      198.   The Trustee incorporates by reference the previous and succeeding

15   paragraphs of this Complaint as if they were set forth here in full.

16      199.   The Fifth Amendment to the Constitution prohibits the taking of

17   property without due process of law.

18      200.   As more fully set forth above, the FDIC's conduct in all capacities

19   described herein constitutes a taking of property.

20      201.   The FDIC in all capacities failed to provide the Trustee or the Trusts

21   with due process of law in connection with the takings described herein.

22      WHEREFORE, the Trusts and the Trustee demands judgment in their favor

23   against the FDIC in all capacities in an amount to be determined representing just

24   compensation, as well as pre- and post-judgment interest, costs of suit, attorneys'

25   fees, and such other relief as they may be entitled to receive.

26

27

28

1   <center>**COUNT TEN**</center>

2   <center>**DUE PROCESS VIOLATIONS FOR RIGHT TO APPOINT SUCCESSOR**</center>

3   <center>**SERVICER**</center>

4   <center>**(AGAINST FDIC IN ALL CAPACITIES)**</center>

5   202.   The Trustee incorporates by reference the previous and succeeding

6   paragraphs of this Complaint as if they were set forth here in full.

7   203.   The Fifth Amendment to the Constitution prohibits the taking of

8   property without due process of law.

9   204.   As more fully set forth above, the conduct described herein constitutes

10   a taking of property.

11   205.   The FDIC failed to provide the Trustee or the Trusts with due process

12   of law in connection with the takings described herein.

13   WHEREFORE, the Trusts and the Trustee demand judgment in their favor

14   against the FDIC in all capacities in an amount to be determined representing just

15   compensation, as well as pre- and post-judgment interest, costs of suit, attorneys'

16   fees, and such other relief as they may be entitled to receive.

17   <center>**COUNT ELEVEN**</center>

18   <center>**CONSTRUCTIVE TRUST**</center>

19   <center>**(AGAINST THE FDIC IN ALL CAPACITIES)**</center>

20   206.   The Trustee incorporates by reference the previous and succeeding

21   paragraphs of this Complaint as if they were set forth here in full.

22   207.   As more fully set forth above, the sale to OneWest purported to

23   include assets that rightfully belong to the Trusts or the Trustee, including setoff

24   and recoupment rights, and the rights to replace the servicer.

25   208.   In addition, on information and belief, the FDIC made the sale to

26   OneWest in a manner that purported to eliminate the setoff and recoupment rights

27   of the Trusts of the Trustee.

28

1    209.   The Trusts and the Trustee have a superior right to some of the assets
2  that the FDIC purported to sell to OneWest.

3    210.   The Court should therefore impose a constructive trust on the proceeds
4  from the OneWest sale.

5    211.   For all the foregoing reasons, the Trustee and the Trusts respectfully
6  request that this Court impose a constructive trust on the proceeds of the sale of
7  valuable rights to OneWest.

8    WHEREFORE, the Trusts and the Trustee request that judgment be entered
9  in their favor and against the FDIC in each of its capacities imposing a constructive
10  trust on the proceeds of the sale to OneWest.

11  Dated:    May 29, 2009                MORGAN, LEWIS & BOCKIUS LLP
12                                        JAMI WINTZ MCKEON
                                          DAVID L. SCHRADER
13
14
15                                        By: _____
16                                          Attorneys for Plaintiff
                                            Deutsche Bank National Trust
17                                          Company, as Trustee for certain
                                            residential mortgage-backed
18                                          securitization trusts sponsored by
                                            IndyMac Bank, F.S.B.
19
20
21
22
23
24
25
26
27
28

1

## JURY TRIAL DEMAND

2            Plaintiff DBNTC hereby demands a jury trial to the fullest extent allowed by

3   the Constitution or other applicable law.

4

5   Dated:    May 29, 2009                    MORGAN, LEWIS & BOCKIUS LLP
                                              JAMI WINTZ MCKEON
6                                             DAVID L. SCHRADER

7

8                                             By: _____
                                                  Attorneys for Plaintiff
9                                                 Deutsche Bank National Trust
                                                  Company, as Trustee for certain
10                                                residential mortgage-backed
                                                  securitization trusts sponsored by
11                                                IndyMac Bank, F.S.B.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1.   IndyMac Residential Asset Securitization Trust Series 2002-A12

2.   IndyMac Residential Asset Securitization Trust Series 2002-A13

3.   IndyMac Residential Asset Securitization Trust Series 2002-A14J

4.   IndyMac Residential Asset Securitization Trust Series 2002-A15

5.   IndyMac Residential Asset Securitization Trust Series 2002-A16

6.   IndyMac Residential Asset Securitization Trust Series 2003-A1

7.   IndyMac Residential Asset Securitization Trust Series 2003-A2

8.   IndyMac Residential Asset Securitization Trust Series 2003-A4

9.   IndyMac Residential Asset Securitization Trust Series 2003-A5

10.  IndyMac Residential Asset Securitization Trust Series 2003-A6

11.  IndyMac Residential Asset Securitization Trust Series 2003-A7

12.  IndyMac Residential Asset Securitization Trust Series 2003-A8

13.  IndyMac Residential Asset Securitization Trust Series 2003-A9

14.  IndyMac Residential Asset Securitization Trust Series 2003-A10

15.  IndyMac Residential Asset Securitization Trust Series 2003-A11

16.  IndyMac Residential Asset Securitization Trust Series 2003-A12

17.  IndyMac Residential Asset Securitization Trust Series 2003-A13

18.  IndyMac Residential Asset Securitization Trust Series 2003-A14

19.  IndyMac Residential Asset Securitization Trust Series 2003-A15

20.  IndyMac Residential Asset Securitization Trust Series 2004-A1

21.  IndyMac Residential Asset Securitization Trust Series 2004-A2

22.  IndyMac Residential Asset Securitization Trust Series 2004-A3

23.  IndyMac Residential Asset Securitization Trust Series 2004-A4

24.  IndyMac Residential Asset Securitization Trust Series 2004-A5

25.  IndyMac Residential Asset Securitization Trust Series 2004-A6

26.  IndyMac Residential Asset Securitization Trust Series 2004-A7

27.  IndyMac Residential Asset Securitization Trust Series 2004-A8

28.  IndyMac Residential Asset Securitization Trust Series 2004-A9

29.  IndyMac Residential Asset Securitization Trust Series 2004-A10

30.  IndyMac INDX Mortgage Loan Trust Series 2004-AR1

**EXHIBIT 1**
**Page 45**

31.    IndyMac INDX Mortgage Loan Trust Series 2004-AR2

32.    IndyMac INDX Mortgage Loan Trust Series 2004-AR3

33.    IndyMac INDX Mortgage Loan Trust Series 2004-AR4

34.    IndyMac INDX Mortgage Loan Trust Series 2004-AR5

35.    IndyMac INDX Mortgage Loan Trust Series 2004-AR6

36.    IndyMac INDX Mortgage Loan Trust Series 2004-AR7

37.    IndyMac INDX Mortgage Loan Trust Series 2004-AR8

38.    IndyMac INDX Mortgage Loan Trust Series 2004-AR9

39.    IndyMac INDX Mortgage Loan Trust Series 2004-AR10

40.    IndyMac INDX Mortgage Loan Trust Series 2004-AR11

41.    IndyMac INDX Mortgage Loan Trust Series 2004-AR12

42.    IndyMac INDX Mortgage Loan Trust Series 2004-AR13

43.    IndyMac INDX Mortgage Loan Trust Series 2004-AR14

44.    IndyMac INDX Mortgage Loan Trust Series 2004-AR15

45.    IndyMac Residential Asset Securitization Trust Series 2004-IP1

46.    IndyMac Residential Asset Securitization Trust Series 2004-IP2

47.    IndyMac Residential Asset Securitization Trust Series 2005-A1

48.    IndyMac Residential Asset Securitization Trust Series 2005-A2

49.    IndyMac Residential Asset Securitization Trust Series 2005-A3

50.    IndyMac Residential Asset Securitization Trust Series 2005-A4

51.    IndyMac Residential Asset Securitization Trust Series 2005-A5

52.    IndyMac Residential Asset Securitization Trust Series 2005-A6CB

53.    IndyMac Residential Asset Securitization Trust Series 2005-A7

54.    IndyMac Residential Asset Securitization Trust Series 2005-A8CB

55.    IndyMac Residential Asset Securitization Trust Series 2005-A9

56.    IndyMac Residential Asset Securitization Trust Series 2005-A10

57.    IndyMac Residential Asset Securitization Trust Series 2005-A11CB

58.    IndyMac Residential Asset Securitization Trust Series 2005-A12

59.    IndyMac Residential Asset Securitization Trust Series 2005-A13

60.    IndyMac Residential Asset Securitization Trust Series 2005-A14

61.    IndyMac Residential Asset Securitization Trust Series 2005-A15

**EXHIBIT 1**
**Page 46**

62.   IndyMac Residential Asset Securitization Trust Series 2005-A16

63.   IndyMac INDX Mortgage Loan Trust Series 2005-AR1

64.   IndyMac INDX Mortgage Loan Trust Series 2005-AR2

65.   IndyMac INDX Mortgage Loan Trust Series 2005-AR3

66.   IndyMac INDX Mortgage Loan Trust Series 2005-AR4

67.   IndyMac INDX Mortgage Loan Trust Series 2005-AR5

68.   IndyMac INDX Mortgage Loan Trust Series 2005-AR6

69.   IndyMac INDX Mortgage Loan Trust Series 2005-AR7

70.   IndyMac INDX Mortgage Loan Trust Series 2005-AR8

71.   IndyMac INDX Mortgage Loan Trust Series 2005-AR9

72.   IndyMac INDX Mortgage Loan Trust Series 2005-AR10

73.   IndyMac INDX Mortgage Loan Trust Series 2005-AR11

74.   IndyMac INDX Mortgage Loan Trust Series 2005-AR12

75.   IndyMac INDX Mortgage Loan Trust Series 2005-AR13

76.   IndyMac INDX Mortgage Loan Trust Series 2005-AR14

77.   IndyMac INDX Mortgage Loan Trust Series 2005-AR15

78.   IndyMac INDX Mortgage Loan Trust Series 2005-AR16IP

79.   IndyMac INDX Mortgage Loan Trust Series 2005-AR17

80.   IndyMac INDX Mortgage Loan Trust Series 2005-AR18

81.   IndyMac INDX Mortgage Loan Trust Series 2005-AR19

82.   IndyMac INDX Mortgage Loan Trust Series 2005-AR21

83.   IndyMac INDX Mortgage Loan Trust Series 2005-AR23

84.   IndyMac INDA Mortgage Loan Trust Series 2005-AR1

85.   IndyMac INDX Mortgage Loan Trust Series 2005-AR25

86.   IndyMac INDX Mortgage Loan Trust Series 2005-AR27

87.   IndyMac INDA Mortgage Loan Trust Series 2005-AR2

88.   IndyMac INDX Mortgage Loan Trust Series 2005-AR29

89.   IndyMac INDX Mortgage Loan Trust Series 2005-AR31

90.   IndyMac INDX Mortgage Loan Trust Series 2005-AR33

91.   IndyMac INDX Mortgage Loan Trust Series 2005-AR35

92.   IndyMac INDB Mortgage Loan Trust Series 2005-1

**EXHIBIT 1**
**Page 47**

93.    IndyMac Residential Asset Securitization Trust Series 2006-A1

94.    IndyMac Residential Asset Securitization Trust Series 2006-A2

95.    IndyMac Residential Asset Securitization Trust Series 2006-A3CB

96.    IndyMac Residential Asset Securitization Trust Series 2006-A5CB

97.    IndyMac Residential Asset Securitization Trust Series 2006-A6

98.    IndyMac Residential Asset Securitization Trust Series 2006-A7CB

99.    IndyMac Residential Asset Securitization Trust Series 2006-A8

100.   IndyMac Residential Asset Securitization Trust Series 2006-A9CB

101.   IndyMac INDS Home Equity Mortgage Loan Trust Series 2006-A

102.   IndyMac Residential Asset Securitization Trust Series 2006-A10

103.   IndyMac Residential Asset Securitization Trust Series 2006-A11

104.   IndyMac Residential Asset Securitization Trust Series 2006-A12

105.   IndyMac Residential Asset Securitization Trust Series 2006-A13

106.   IndyMac Residential Asset Securitization Trust Series 2006-A14CB

107.   IndyMac Residential Asset Securitization Trust Series 2006-A15

108.   IndyMac Residential Asset Securitization Trust Series 2006-A16

109.   IndyMac INDX Mortgage Loan Trust Series 2006-AR2

110.   IndyMac INDX Mortgage Loan Trust Series 2006-AR3

111.   IndyMac INDX Mortgage Loan Trust Series 2006-AR4

112.   IndyMac INDX Mortgage Loan Trust Series 2006-AR5

113.   IndyMac INDX Mortgage Loan Trust Series 2006-AR6

114.   IndyMac INDX Mortgage Loan Trust Series 2006-AR7

115.   IndyMac INDX Mortgage Loan Trust Series 2006-AR8

116.   IndyMac INDX Mortgage Loan Trust Series 2006-AR9

117.   IndyMac INDX Mortgage Loan Trust Series 2006-AR11

118.   IndyMac INDX Mortgage Loan Trust Series 2006-AR12

119.   IndyMac INDX Mortgage Loan Trust Series 2006-AR13

120.   IndyMac INDX Mortgage Loan Trust Series 2006-AR14

121.   IndyMac INDX Mortgage Loan Trust Series 2006-AR15

122.   IndyMac INDX Mortgage Loan Trust Series 2006-AR19

123.   IndyMac INDX Mortgage Loan Trust Series 2006-AR21

**EXHIBIT 1**
**Page 48**

124.   IndyMac INDX Mortgage Loan Trust Series 2006-AR23

125.   IndyMac INDX Mortgage Loan Trust Series 2006-AR25

126.   IndyMac INDX Mortgage Loan Trust Series 2006-AR27

127.   IndyMac INDX Mortgage Loan Trust Series 2006-AR29

128.   IndyMac INDX Mortgage Loan Trust Series 2006-AR31

129.   IndyMac INDX Mortgage Loan Trust Series 2006-AR33

130.   IndyMac INDX Mortgage Loan Trust Series 2006-AR35

131.   IndyMac INDB Mortgage Loan Trust Series 2006-1

132.   IndyMac INDA Mortgage Loan Trust Series 2006-AR1

133.   IndyMac INDA Mortgage Loan Trust Series 2006-AR2

134.   IndyMac INDA Mortgage Loan Trust Series 2006-AR3

135.   IndyMac INDX Mortgage Loan Trust Series 2006-FLX1

136.   IndyMac INDS Home Equity Mortgage Loan Trust Series 2006-1

137.   IndyMac INDS Home Equity Mortgage Loan Trust Series 2006-2B

138.   IndyMac INDS Home Equity Mortgage Loan Trust Series 2006-3

139.   IndyMac Home Equity Loan Trust Series 2006-H2

140.   IndyMac Home Equity Loan Trust Series 2006-H3

141.   IndyMac Residential Mortgage-Backed Trust Series 2006-L2

142.   IndyMac Residential Mortgage-Backed Trust Series 2006-L3

143.   IndyMac Residential Asset Securitization Trust Series 2006-A4IP

144.   IndyMac INABS Trust Series 2006-C

145.   IndyMac INABS Trust Series 2006-D

146.   IndyMac INDX Mortgage Loan Trust Series 2006-AR37

147.   IndyMac INDX Mortgage Loan Trust Series 2006-AR39

148.   IndyMac INDX Mortgage Loan Trust Series 2006-AR41

149.   IndyMac Residential Asset Securitization Trust Series 2007-A1

150.   IndyMac Residential Asset Securitization Trust Series 2007-A2

151.   IndyMac Residential Asset Securitization Trust Series 2007-A3

152.   IndyMac Residential Asset Securitization Trust Series 2007-A5

153.   IndyMac Residential Asset Securitization Trust Series 2007-A6

154.   IndyMac Residential Asset Securitization Trust Series 2007-A7

**EXHIBIT 1**
**Page 49**

155. IndyMac Residential Asset Securitization Trust Series 2007-A8

156. IndyMac Residential Asset Securitization Trust Series 2007-A9

157. IndyMac INDX Mortgage Loan Trust Series 2007-AR1

158. IndyMac INDX Mortgage Loan Trust Series 2007-AR5

159. IndyMac INDX Mortgage Loan Trust Series 2007-AR7

160. IndyMac INDX Mortgage Loan Trust Series 2007-AR9

161. IndyMac INDX Mortgage Loan Trust Series 2007-AR11

162. IndyMac INDX Mortgage Loan Trust Series 2007-AR13

163. IndyMac INDX Mortgage Loan Trust Series 2007-AR15

164. IndyMac INDX Mortgage Loan Trust Series 2007-AR17

165. IndyMac INDX Mortgage Loan Trust Series 2007-AR19

166. IndyMac INDX Mortgage Loan Trust Series 2007-AR21IP

167. IndyMac IMSC Mortgage Loan Trust Series 2007-AR1

168. IndyMac INDA Mortgage Loan Trust Series 2007-AR1

169. IndyMac INDA Mortgage Loan Trust Series 2007-AR2

170. IndyMac INDA Mortgage Loan Trust Series 2007-AR3

171. IndyMac INDA Mortgage Loan Trust Series 2007-AR4

172. IndyMac INDA Mortgage Loan Trust Series 2007-AR5

173. IndyMac INDA Mortgage Loan Trust Series 2007-AR6

174. IndyMac INDA Mortgage Loan Trust Series 2007-AR7

175. IndyMac INDA Mortgage Loan Trust Series 2007-AR8

176. IndyMac INDA Mortgage Loan Trust Series 2007-AR9

177. IndyMac INDS Home Equity Mortgage Loan Trust Series 2007-1

178. IndyMac INDX Mortgage Loan Trust Series 2007-FLX1

179. IndyMac INDX Mortgage Loan Trust Series 2007-FLX2

180. IndyMac INDX Mortgage Loan Trust Series 2007-FLX3

181. IndyMac INDX Mortgage Loan Trust Series 2007-FLX4

182. IndyMac INDX Mortgage Loan Trust Series 2007-FLX5

183. IndyMac INDX Mortgage Loan Trust Series 2007-FLX6

184. IndyMac IMJA Mortgage Loan Trust Series 2007-A1

185. IndyMac IMJA Mortgage Loan Trust Series 2007-A2

**EXHIBIT 1**
**Page 50**

186. IndyMac IMJA Mortgage Loan Trust Series 2007-A3

187. IndyMac IMJA Mortgage Loan Trust Series 2007-A4

188. IndyMac IMSC Mortgage Loan Trust Series 2007-F1

189. IndyMac IMSC Mortgage Loan Trust Series 2007-F2

190. IndyMac IMSC Mortgage Loan Trust Series 2007-AR2

191. IndyMac IMSC Mortgage Loan Trust Series 2007-F3

192. IndyMac IMSC Mortgage Loan Trust Series 2007-HOA-1

193. IndyMac SPMD Trust Series 2000-C

194. IndyMac SPMD Trust Series 2001-A

195. IndyMac SPMD Trust Series 2001-B

196. IndyMac SPMD Trust Series 2001-C

197. IndyMac SPMD Trust Series 2002-A

198. IndyMac SPMD Trust Series 2002-B

199. IndyMac SPMD Trust Series 2003-A

200. IndyMac Certificate Trust Series 2004-2

201. IndyMac Residential Mortgage-Backed Trust Series 2004-LH1

202. IndyMac SPMD Trust Series 2004-A

203. IndyMac SPMD Trust Series 2004-B

204. IndyMac SPMD Trust Series 2004-C

205. IndyMac Residential Mortgage-Backed Trust Series 2005-L1

206. IndyMac Residential Mortgage-Backed Trust Series 2005-L2

207. IndyMac Residential Mortgage-Backed Trust Series 2005-L3

208. IndyMac INABS Trust Series 2005-A

209. IndyMac INABS Trust Series 2005-B

210. IndyMac INABS Trust Series 2005-C

211. IndyMac INABS Trust Series 2005-D

212. IndyMac Home Equity Loan Trust Series 2006-H1

213. IndyMac Home Equity Loan Trust Series 2006-H4

214. IndyMac Residential Mortgage-Backed Trust Series 2006-L1

215. IndyMac Residential Mortgage-Backed Trust Series 2006-L4

216. IndyMac INABS Trust Series 2006-A

**EXHIBIT 1**
**Page 51**

217. IndyMac INABS Trust Series 2006-B

218. IndyMac INABS Trust Series 2006-E

219. IndyMac INDS Home Equity Mortgage Loan Trust Series 2007-2

220. IndyMac Home Equity Loan Trust Series 2007-H1

221. IndyMac Residential Mortgage-Backed Trust Series 2007-L1

222. IndyMac INABS Trust Series 2007-A

223. IndyMac INABS Trust Series 2007-B

224. Soundview Home Loan Trust Asset-Backed Certificates, Series 2007-2

225. Structured Asset Investment Loan Trust 2004-1

226. Harborview Mortgage Loan Trust Series 2006-8

227. Harborview Mortgage Loan Trust Series 2006-14

228. Harborview Mortgage Loan Trust Series 2007-7

229. Harborview Mortgage Loan Trust Series 2006-2

230. Harborview Mortgage Loan Trust Series 2004-7

231. GSAA Home Equity Trust Series 2005-4

232. BCAP Trust LLC Series 2007-AA1

233. GSR Mortgage Loan Trust Series 2006-OA1

234. GSAA Home Equity Trust Series 2006-17

235. GSAA Home Equity Trust Series 2007-4

236. GSAA Home Equity Trust Series 2004-8

237. GSR Mortgage Loan Trust Series 2007-AR2

238. GSR Mortgage Loan Trust Series 2007-OA2

239. Alliance Bancorp Bancorp Trust 2007-OA1

240. Deutsche ALT-A Securities Mortgage Loan Trust Series 2006-AR5

241. GSAMP Trust Series 2006-S4

242. Harborview Mortgage Loan Trust Series 2005-5

243. Harborview Mortgage Loan Trust Series 2006-6

244. Morgan Stanley Dean Witter Capital I Inc. Trust 2002-HE2

245. Morgan Stanley Mortgage Loan Trust 2004-1

246. IndyMac Loan Trust Series 2004-L1

**EXHIBIT 1**
**Page 52**

## Federal Deposit Insurance Corporation as Receiver for:
### 10007 – Indymac Bank, F.S.B.  Pasadena, CA
(Name of Bank/Financial Institution and Location)

### PROOF OF CLAIM

## CONFIDENTIAL TREATMENT REQUESTED

*Attachment A contains confidential, non-public financial information. Claimant Deutsche Bank National Trust Company requests that the claim, the information contained in Attachment A, and the non-public documents attached hereto be considered and treated as confidential.*

SSN/Tax ID # (1)    **see Attachment A**

The undersigned, (2) Barbara Campbell, Vice President

says that the    **Indymac Bank, F.S.B.**                                          now in liquidation is
(Name of Bank/Financial Institution)

justly indebted to (3)    **Deutsche Bank National Trust Company**            in the sum of
(Individual/Joint/Corporation/Partnership/Firm/Agency)

(4)    **$8,117,939,412 (approximately, see Attachment A)**            Dollars upon the following Claim:

| | Description of (invoice) claim: | Liability Number | Amount of Claim |
|---|---|---|---|
| C L A I M S | (5) **See Exhibit A** | 500006062-000 | **$5,439,292,941 to $8,117,939,412 approx., (see Attachment A).** |
| | | Total Claim: (6) | **Approximately $8,117,939,412, (see Attachment A).** |

The undersigned further states that he/she makes this Claim on behalf of

(7) **Deutsche Bank National Trust Company**

that no part of said debt has been paid, that

(8) **Deutsche Bank National Trust Company**
(Individual/Joint/Corporation/Partnership/Firm/Agency)
has given no endorsement or assignment of the same or any part thereof, and that there is no set-off or
counterclaim, or other legal or equitable defense to said Claim or any part thereof.

NAME   Barbara Campbell                              , Vice
(9)                                                   President

                     (Signature of Person making the Claim)          (Title)
FIRM    **Deutsche Bank National Trust Company**
                                    (If applicable)
ADDRESS    **1761 East St Andrew Pl**
(10)

CITY/STATE/ZIP    **Santa Ana, CA 92705-4934**

TELEPHONE NUMBER    **714-247-6278**

The penalty for knowingly making or inviting reliance of any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both  (18 U.S.C. Section 1007).

RLS72

**CONFIDENTIAL TREATMENT REQUESTED**

**ATTACHMENT A**
**to**
**Proof of Claim of**
**DEUTSCHE BANK NATIONAL TRUST COMPANY,**
**AS TRUSTEE AND CUSTODIAN**

**A.  CAPACITIES AND DOCUMENTS.**

1.    This proof of claim ("Proof of Claim") is made by Deutsche Bank National Trust Company ("DBNTC") (a) as trustee ("Trustee") for the 243 securitization trusts listed on Exhibit A-1 attached hereto (the "Trusts"), on behalf of itself, the Trusts and the owners of certain residential mortgaged backed securities issued by the Trusts (the "Securities"), (b) as trustee of certain "net interest margin" trusts listed on Exhibit A-2 ("NIM Trusts", and collectively with the Trusts, the "Securitization Trusts") pursuant to which DBNTC owns, on behalf of NIM Trust beneficiaries, interests in certain Securities (the "NIM Trustee") and (c) as custodian (the "Custodian") under certain custody agreements listed on Exhibit A-3 (the "Custody Agreements") by and among DBNTC, and one or more of Indymac Bank, F.S.B. and/or its affiliates (collectively, "Indymac"), and/or third party lenders or purchasers of mortgage loans.

2.    Each of the Trusts holds, as Trust assets or collateral, mortgage loans originated by and/or sold into the Trusts by Indymac.

3.    With respect to each Trust, DBNTC entered into one or more Pooling and Servicing Agreements, Servicing Agreements, Indentures or Trust Agreements, and related ancillary agreements (collectively, the "Governing Documents").  The Governing Documents are voluminous and are in the possession of both the Trustee and Indymac. Accordingly it is impractical and wasteful to attach each and every one of them to this Proof of Claim.  However, electronic files containing a representative sample of Governing Documents relating to approximately 216 Trusts have been provided to the FDIC concurrently with a copy of this Proof of Claim.  Additional documentation regarding the Trusts is available on the SEC's EDGAR website at http://sec.gov/, and the monthly distribution reports and prospectus supplements for each Trust are available on the Trustee's investor reporting website at https://tss.sfs.db.com/investpublic/. Upon request by the FDIC, the Trustee will furnish electronic or hard copies of any additional Governing Documents in its possession.

4.    Pursuant to the Governing Documents for each Trust, Indymac sold, either directly or indirectly, mortgage loans into the related Trusts.  In connection with such sales, Indymac also made numerous representations, warranties and covenants ("Representations and Warranties") concerning the mortgage loans, which Representations and Warranties were ultimately assigned to the Trusts pursuant the Governing Documents and certain ancillary agreements.  The Trusts have claims for breach of such Representations and Warranties as further described herein.

107017776

DB2/20860024.6

**EXHIBIT 2**
**Page 54**

- 3 -

5.     DBNTC has also served as Custodian under the Custody Agreements. Pursuant to the Custody Agreements, DBNTC has held in custody mortgage loan files evidencing mortgage loans originated, purchased, financed and/or serviced by Indymac. In addition, pursuant to certain Custody Agreements, the Custodian held and disbursed funds with respect to the funding and/or financing of such mortgage loans in accordance with instructions furnished to the Custodian by Indymac, loan purchasers or lenders. The Custody Agreements are voluminous and are in the possession of both the Trustee and Indymac. Accordingly it is impractical and unnecessary to attach them to this Proof of Claim. However, electronic files containing a representative sample of Custody Agreements have been provided to the FDIC concurrently with a copy of this Proof of Claim.

6.     DBNTC is aware that certain other parties to the Trusts, including, without limitation, securities underwriters, depositors, loan servicers, insurers and investors, intend to file proofs of claim in these proceedings relating to the Governing Documents and ancillary agreements which may be duplicative of, or supplemental to, the claims stated herein (the "<u>Third Party Trust Related Claims</u>"). To the extent that such Third Party Trust Related Claims relate to or are property of the Trusts, DBNTC incorporates such Third Party Trust Related Claims herein by reference.

## B. DESCRIPTION OF CLAIMS.

### Claims Arising from Breach of Representations and Warranties (Estimated Range: $5.439 billion to $8.117 billion)

7.     Pursuant to the Governing Documents, Indymac, as seller and [master] servicer, made certain Representations and Warranties in connection with the sale of the mortgage loans to the Trusts. Indymac has breached certain of these Representations and Warranties. Pursuant to the Governing Documents, Indymac has express contractual obligations (i) to notify certain parties to the Governing Documents, including the Trustee, when Indymac becomes aware of breaches of Representations and Warranties, (ii) to make certain cure payments with respect to certain such breaches or (iii) to repurchase the mortgage loans affected by Indymac's breaches, at the repurchase price (the "<u>Repurchase Price</u>") specified in the Governing Documents (typically equal to the unpaid principal balance of such mortgage loans, plus accrued interest thereon through the date of repurchase) (the "<u>Repurchase Obligations</u>"). Further, as described below, Indymac is liable to the Trustee and the Trusts for all liability, loss, cost and expense arising from breaches of Representations and Warranties, including all costs and expenses of enforcement of these obligations.

8.     It is currently unclear to the Trustee whether Indymac Federal Bank, F.S.B., as successor-in-interest to Indymac ("Indymac Federal"), has or intends to assume or repudiate the Governing Documents. The Trustee is informed and believes, on the basis of the FDIC's public statements and on the basis of discussions with the FDIC, that Indymac Federal (or its successors and assigns) intends to assume Indymac's rights and obligations as [master] servicer of mortgages. The Trustee asserts that such servicing rights and obligations can only be assumed together with, and not separately from, Indymac's obligations with respect to Repurchase Obligations, since a single

- 4 -

entity—Indymac—generally entered into the Governing Documents both as seller and as [master] servicer and since the Representations and Warranties were typically made by Indymac "as seller and [master] servicer." In addition, the Governing Documents represent an integrated set of contractual undertakings on behalf of Indymac with respect to the formation and servicing of the Trusts and Indymac Federal (or its successors and assigns) cannot selectively assume the benefits of these undertakings while repudiating the related burdens. To the extent that Indymac has either (a) failed to notify the Trustee and other transaction parties of material breaches of Representations and Warranties of which it was aware, and/or (b) repudiates and fails to perform its obligations to replace or repurchase defective loans, the Trusts have claims for breach of such obligations (the "<u>Repurchase Claims</u>").

9.      As stated above, the Trustee serves as Trustee for 243 Trusts, which hold in excess of $81 billion in current principal balance outstanding of mortgage loans sold to the Trusts by Indymac.      Notwithstanding provisions of the Governing Documents permitting the Trustee and certain other parties access to Indymac's books and records concerning the mortgage loans, during the last 12 months, Indymac has consistently refused to allow the Trustee, bond insurers, and investors with an interest in the Trusts to perform any meaningful due diligence to determine whether Representations and Warranties were breached.  As sampling of correspondence regarding such parties' attempts to access to mortgage loan files is attached hereto as Exhibit A-4.  Moreover, immediately prior to the initiation of these receivership and conservation proceedings, disputes concerning these access rights gave rise to certain of the litigation described under "Indemnification Claims" below.  Since Indymac's denial of counterparties' contractual inspection rights has deprived those parties of the ability to detect and quantify specific breaches of Representations and Warranties, claimants must be given reasonable access and time to investigate their claims prior to specifying them with greater particularity.  Nevertheless, on the basis of the limited data currently available to the Trustee, the Trustee further describes these claims below.

10.     Assuming, for purposes of this Proof of Claim, that Indymac has and will continue to breach its obligations with respect to Repurchase Claims, the damages flowing from such breaches will vary depending on the losses suffered by the Trusts in respect of the related mortgage loans.  Certain of the properties underlying the mortgage loans subject to Repurchase Claims either (a) have been foreclosed upon and are owned by the Trusts as of the date of this Proof of Claim (the "<u>REO Loans</u>") or (b) are owned by the Mortgagors (the "<u>Mortgagor-Owned Loans</u>").  The dollar amount of any Repurchase Claims related to REO Loans and Mortgagor-Owned Loans will be affected by the value of those loans and their underlying collateral because the damages suffered by the Trusts as a result of Indymac's breach will be partially offset by the value of the collateral retained by the Trusts.  Due to the ever-changing nature of market forces impacting the value of REO Loans and Mortgagor-Owned Loans, the amount due to the Trusts on account of the REO Loans and Mortgagor-Owned Loans remains in flux. Until the amount of Indymac's exposure on REO Loans and Mortgagor-Owned Loans is finally determined, the Trusts' corresponding claim remains unliquidated and may decrease or increase as a result of fluctuations in the valuation of the underlying property and related loans, and payments of principal and interest either made or not made by the mortgagor of the underlying loans. Certain of

- 5 -

the properties underlying the mortgage loans subject to Repurchase Claims have been foreclosed upon and in turn sold ("REO Sold Loans"). The sale prices of the properties underlying the REO Sold Loans will be a partial offset to the Repurchase Price related to such REO Sold Loans.

11. On information and belief, using claims estimation methodologies that take into account (a) industry information regarding frequency of breaches of representations and warranties in portfolios of mortgage loans similar to those sold by Indymac to the Trusts, (b) the performance of the mortgage loans held by the Trusts and (c) the severity of losses experienced by the Trusts to date and anticipated in the future, the Trustee estimates that the Trusts have claims in respect to breaches of Representations and Warranties, in the estimated range of $5.439 to $8.117 billion.

12. Although Representations and Warranties were breached at the time that they were made, certain of the Repurchase Claims of the Trusts are unmatured, unliquidated and/or contingent in nature because, although breaches of Representation and Warranties exist for certain mortgage loans, such breaches have not been (a) discovered and/or (b) asserted, and/or (c) otherwise given rise to claims for the Repurchase Price as of the date hereof. The actual Repurchase Claims relating to such loans would be increased by accrued interest thereon and the Trusts' cost of enforcement, and be partially offset by the value of mortgage loan collateral and mortgage payments retained by the Trusts by reason of Indymac's failure to repurchase such loans.

13. On the basis of breaches of Representations and Warranties, two mortgage insurers have sought to rescind, in their entirety or in respect of particular loans, policies of insurance on mortgage loans held by the Trusts. Such rescission claims give rise to claims of the Trust against Indymac in the following amounts:

(a) Rescissions asserted by MGIC: approximately $4.9 million, plus interest and costs (See, e.g. Exhibit A-5 hereto - actual rescission letters will be provided upon request and are not attached hereto because they contain confidential borrower information).

(b) Rescissions asserted by Radian: approximately $77 million plus interest and costs (See, e.g. "Indemnification Claims" below).

14. In addition to the foregoing, under the Governing Documents, Indymac is also subject to Repurchase Claims with respect to missing or defective documents in mortgage loan files. The Governing Documents generally provide that if a material defect in any Mortgage File is discovered which may materially and adversely affect the value of the related Mortgage Loan, or the interests of the Trustee (as pledgee of the Mortgage Loans), the Noteholders or the Certificateholders in such Mortgage Loan, then the responsible party shall cure such defect, repurchase the related Mortgage Loan at the purchase price or substitute a qualified substitute mortgage loan for the related Mortgage Loan upon the same terms and conditions set forth for breaches of representations and warranties as to the Mortgage.

15. The Trustee or other document custodian has furnished Indymac, on an ongoing basis, document exception reports with respect to missing or defective loan file documents.

- 6 -

A copy of the Exception Report Summary for the Trusts is attached hereto as Exhibit A-6. If Indymac repudiates or fails to satisfy its obligations under the Governing Documents, the Trustee will require additional time to assess the materiality of the remaining missing defective documents and to calculate the amount of any Repurchase Claims with respect thereto. For purposes of this Proof of Claim, however, the Trustee asserts that all loans with missing or defective loan file documents are subject to Repurchase Claims for the Repurchase Price. The Trustee is not in a position to calculate the amount of such Repurchase Price until the population of such loans and the materiality of any document exceptions are finally determined (since borrowers continue to pay interest on some of these loans and, in many cases, other recoveries continue to be made on collateral securing such loans).

## Indemnification Claims (not less than $77 million)

16.    The Trusts have been damaged by virtue of Indymac's defaults and breaches with respect to the Representations and Warranties under the Governing Documents and ancillary agreements. Without limiting the generality of the foregoing, the Trusts have incurred, and will continue to incur, significant legal expenses enforcing mortgage loan documents and defending against borrower counterclaims and third party claims arising from breaches or alleged breaches of Representations and Warranties or of other obligations of Indymac (including loan servicing obligations) under the Governing Documents.

17.    Without limiting the generality of the foregoing, Indymac is obligated to indemnify, defend and hold the Trusts and the Trustee harmless all liability, loss, cost or expense arising from the claims asserted in the following litigation matters:

(a)    Radian Insurance Inc. v. Deutsche Bank National Trust Company et al, filed June 26, 2008, in the United States District Court, Eastern District of Pennsylvania, seeking to rescind mortgage insurance policies which provide certain Trusts with approximately $77 million of aggregate coverage for losses on Indymac-originated mortgage loans, by reason of Indymac's breach of Representations and Warranties. To the extent that Radian prevails in this suit, Indymac will be liable to the Trusts for the full amount of all lost coverage, plus all litigation expenses.

(b)    Indymac v. Radian Insurance Inc., filed on June 27, 2008 in the Superior Court of California, County of California, in which Indymac seeks to enforce the policies at issue in the foregoing matter. These matters are likely to be consolidated into a single matter for disposition.

(c)    Indymac v. Financial Guaranty Insurance Company ("FGIC") filed on July 1, 2008 in the United District Court, Central District of California, seeking a declaration that Indymac has not breached certain Governing Documents, as alleged by FGIC in correspondence and in the following matter.

(d)    FGIC v. Indymac filed on July 1, 2008 in the United States District Court, Southern District of New York. Suit for breach of contract, specific performance, declaratory relief by FGIC, a bond insurer with respect to securities issued by certain Trusts, alleging INDY has breached various obligations under Governing Documents

- 7 -

for those Trusts, including the obligation to furnish access to books and records concerning mortgage loans held by certain Trusts.

(e)  XL Capital Assurance v. Indymac filed on June 27, 2008 in the United District Court, Southern District of New York, A claim by a bond insurer with respect to securities issued by certain Trusts, claiming that Indymac has breached its obligations under relevant Governing Documents and seeking access to books and records relating to mortgage loans held by certain Trusts.

(f)  Suits and other proceedings against the Trusts and/or the Trustee by the cities of Buffalo, NY, Cleveland, OH, and other jurisdictions claiming that REO properties owned by the Trusts have not been maintained in accordance with law and constitute a nuisance.  In addition, the Trusts and/or the Trustee have been forced to address similar allegations.  Such property maintenance is the sole obligation of Indymac, as loan servicer, with respect to certain of the properties at issue in these matters.  The affected Trusts and the Trustee are entitled to indemnification by Indymac, its successors and assigns, against any liability, loss, cost or expense suffered in connection with such matters

(g)  Suits or counterclaims (typically asserted in the context of foreclosure proceedings) alleging breaches, inter alia, of the Truth in Lending Act, Fair Debt Collection Practices Act and other laws, in connection with the origination and/or servicing of Indymac-originated mortgage loans currently owned by Trusts.  The affected Trusts and the Trustee are entitled to indemnification by Indymac, its successors and assigns, against any liability, loss, cost or expense suffered in connection with such matters.

(h)  Allegations by certain Trust investors that Indymac, as [master] servicer, has failed to charge-off mortgage loans in accordance with the Governing Documents.

18.  Pursuant to the Governing Documents and applicable law, Indymac is liable to the Trusts and the Trustee for any losses, claims, expenses or damages, including legal fees and related costs, arising out of or based upon any breaches of any representation, warranty or covenant made by Indymac or any affiliate of Indymac in the Governing Documents.  Such liability arises both from Indymac's breach of its contractual obligation to the Trusts and the Trustee to perform all of its obligations under the Governing Documents and from Indymac's obligation to indemnify, defend and hold the Trusts and the Trustee harmless from any liability, loss, cost or expense arising from Indymac's failure to perform such obligations. To the extent that Indymac (a) assumes, or assumes and assigns, any of its rights under the Governing Documents, and (b) indemnifies, or causes its successor-in-interest to indemnify, the Trusts and the Trustee for such matters, such indemnification obligation will have been satisfied. Although, to date, Indymac Federal in conservation has performed certain of such obligations, Indymac, Indymac Federal and the FDIC have not expressly assumed, or assumed and assigned, such obligations. Accordingly, for purposes of this Proof of Claim, the Trustee assumes such obligations may not be fully satisfied.

- 8 -

19.    Based upon the foregoing, the Trustee asserts a claim against Indymac for indemnification for, *inter alia*, all losses, claims, expenses and damages, including legal fees and related costs, arising out of or based upon any breaches of any representation, warranty or covenant made by Indymac under the Governing Documents.

## Servicing Claims

20.    As stated above, Indymac generally served as "servicer" or "master servicer" with respect to the mortgage loans held by the Trusts. The Trustee is informed and believes, on the basis of the FDIC's public statements and on the basis of discussions with the FDIC, that Indymac Federal (or its successors and assigns) intends to assume Indymac's loan servicing rights and obligations. To the extent that such assumption takes place, and the successor-in-interest to Indymac, as [master] servicer, performs all obligations of Indymac, as [master] servicer, under the Governing Documents (including by curing any breaches that have occurred), Indymac will have mitigated claims with respect to Indymac's servicing of the loans. The Trustee reserves the right to amend this Proof of Claim to specify further any servicing claims in the event that such assumption does not take place. In addition, as a precaution, the Trustee describes below certain issues relating to Indymac's and Indymac Federal's servicing of loans, which issues may have given rise to and/or may, in the future, give rise to breaches of Indymac's and/or Indymac Federal's obligations in respect to the servicing of mortgage loans on behalf of the Trusts.

21.    On the basis of the Trustee's investigations to date, the Trustee notes the following possible inadequacies in Indymac and/or Indymac Federal's servicing of mortgage loans on behalf of the trusts:

        (a)   Loss mitigation activities may suffer from the material deficiencies that violate the Governing Documents, due to (i) inadequate or improper staffing of key functions, resulting in collections delays and losses, (ii) inadequate or improper controls over loss mitigation activities, (iii) substantive and procedural biases against effective collection activity and in favor of loan modifications, even when such modifications are likely to result in a lower net present value return on the mortgage loans to the Trusts, and (iv) poor organization and accountability regarding loss mitigation efforts.

        (b)   Failure to notify the Trustee and other transaction parties of breaches of Representations and Warranties known to Indymac.

        (c)   Allegations by certain Trust investors that Indymac, as [master] servicer, has failed to charge-off mortgage loans in accordance with the Governing Documents.

22.    In addition, in the event that any of the obligations of Indymac as [master] servicer are subsequently repudiated by the FDIC, the Trustee will be obligated, pursuant to the terms and conditions of the Governing Documents, to replace Indymac as [master] servicer. All loss, cost and expense of such replacement will constitute additional claims against Indymac and/or Indymac Federal Bank

## Claims as NIM Trustee

10701777.6

DB2/20860024.6

**EXHIBIT 2**
**Page 60**

Case 2:09-cv-03852-GAF-FFM   Document 1   Filed 05/29/09   Page 61 of 68   Page ID #:61

- 9 -

23. As NIM Trustee, the Trustee is the legal owner, for the benefit of securities holders under the NIM Trusts, of Securities issued by the Trusts. Since the NIM Trusts were formed concurrently and in conjunction with the corresponding Trusts, the NIM Trustee was the original purchaser of such Securities.

24. As purchaser of the such Securities on behalf of the NIM Trusts, the NIM Trustee hereby alleges that, to the extent that Indymac knew or should have known of the breaches of Representations and Warranties described above, the NIM Trusts have a claim for common law fraud and/or negligent misrepresentation and/or violation of applicable federal and state securities laws in connection with the issuance, distribution and sale of the such Securities to the NIM Trusts. Such claim is unliquidated and partially unmatured, but would be measured by the impact, if any, of such breaches on cash flows to the NIM Trusts.

### Claims as Custodian

25. Pursuant to the Custody Agreements, DBNTC is entitled to be paid certain fees stipulated therein, plus expenses incurred in connection with its serving as Custodian. In addition, where Indymac is seller/servicer under the Custody Agreement, Indymac has agreed to indemnify, defend and hold the Custodian harmless against all liabilities, loss, cost and expense incurred by the Custodian in the performance of its duties as Custodian. (See, e.g., Exhibit A-7).

26. Indymac has generally continued to pay the fees and expenses of DBNTC as Custodian upon invoicing thereof. As of the date hereof, however, approximately $243,122.35 in fees and expenses incurred by DBNTC as Custodian remain due and payable by Indymac. Additional invoices for fees and expenses that have been received by the Custodian to date have been submitted to Indymac for payment pursuant to the related Custody Agreements and Governing Documents. The Custodian will furnish to Indymac, under separate cover, copies of such invoices, together with invoices for fees incurred (and included in such amount) but not invoiced as of the date hereof.

### C. MISCELLANEOUS

27. By executing and filing this Proof of Claim, DBNTC does not waive any right to any security or any other right or rights with respect to any claim that DBNTC has or may have against Indymac or any other person or persons. The filing of this Proof of Claim is not intended and should not be construed to be an election of remedies or waiver of any past, present or future Defaults or Events of Default under the Governing Documents and ancillary agreements.

28. To the knowledge of the signatory hereto, the claims are not subject to any setoff or counterclaim, and no judgment has been rendered on the claims. The amount of all payments made prior to the date hereof, if any, have been credited and deducted.

29. DBNTC reserves its right to amend and/or supplement this Proof of Claim and to assert any and all other claims of whatever kind or nature that it has, or may have, that come to DBNTC's attention or arise after the filing of this Proof of Claim. The filing of this Proof of Claim shall not be deemed a waiver of any such claims or rights.

DB2/20860024.6

**EXHIBIT 2**
**Page 61**

- 10 -

30.   Nothing contained in this Proof of Claim shall be deemed or construed as: (a) a waiver of, or other limitation on, any rights or remedies of DBNTC or the Securitization Trusts, or any predecessor in interest to DBNTC or the Securitization Trusts, under the Governing Documents or ancillary agreements, at law, or in equity (including any setoff rights, lien rights, rights of recoupment, or any other rights that the Trustee or each Trust has or may have against Indymac or any other entity), all of which rights are expressly reserved; (b) a consent by DBNTC or the Securitization Trusts, or any predecessor in interest to DBNTC or the Securitization Trusts, to the jurisdiction of any court with respect to proceedings, if any, commenced in any action against, or otherwise involving DBNTC or the Securitization Trusts, or any predecessor in interest to DBNTC or the Securitization Trusts; (c) a waiver or release of, or any limitation on DBNTC's or the Securitization Trusts', or any predecessor in interest to DBNTC's or the Securitization Trusts', right to trial by jury in the Court or any other court in any proceeding; (d) a waiver or release of, or any other limitation on, DBNTC's or the Securitization Trusts', or any predecessor in interest to DBNTC or the Securitization Trusts', rights to have any orders entered only after de novo review by the applicable court; (e) a waiver of, or any other limitation on, DBNTC or the Securitization Trusts', or any predecessor in interest to DBNTC's or the Securitization Trusts', right to seek a withdrawal of the reference with respect to any matter, including any matter relating to this Proof of Claim; or (f) a waiver or release of, or any other limitation on, DBNTC's or the Securitization Trusts', or any predecessor in interest to DBNTC's or the Securitization Trusts', right to assert that any portion of the claims asserted herein are entitled to treatment as priority claims.   Without limiting the generality of the foregoing, the Trustee asserts, on behalf of each Trust and itself, the right to set off the amount of all claims of such Trust and itself as Trustee of such Trust, against all claims and amounts assertable by or distributable to Indymac (or its successors-in-interest under the Governing Documents) in any capacity, including, without limitation, any rights of Indymac to recover delinquency advances, servicing advances or other amounts distributable with respect to securities or other interests in such Trusts.

**EXHIBIT 2**
**Page 62**

107017777.6

DB2/20860024.6

**FDIC**

**Federal Deposit Insurance Corporation**
1601 Bryan Street, Dallas, TX 75201

Division of Resolutions and Receiverships

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED – 7008 1830 0000 8031 9925**

March 31, 2009

Deutsche Bank National Trust Company
Attn: Kellie Rodriguez
Case # 07CH18916 USDC=08 C 1183
1761 East Saint Andrew Place
Santa Anna, CA 92705

SUBJECT:     10007– IndyMac Bank, F.S.B.
             Pasadena, CA – In Receivership
             **NOTICE OF DISALLOWANCE OF CLAIM**

Dear Claimant:

The Receiver of IndyMac Bank, F.S.B. has reviewed your claim against the receivership. After a thorough review of your filed claim along with your supporting documentation, the Receiver has determined to disallow your claim for the following reason(s):

> Your claim was not fixed and certain as of bank failure on July 11, 2008 and therefore your claim is not proven to the satisfaction of the Receiver.

Pursuant to 12 U.S.C. Section 1821 (d) (6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver), in the United States District (or Territorial) Court for the District within which the failed institution's principal place of business was located or the United States District Court for the District of Columbia within 60 days from the date of this notice.

**IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM.** 12 U.S.C. Section 1821(d)(6)(B).

However, if a portion of your claim is for an insured deposit, your claim is not against the Receiver but rather is against the FDIC in its "corporate" capacity as deposit insurer. An insured depositor's rights are prescribed in 12 U.S.C. Section 1821(f) and differ from the rights described in the preceding paragraphs

If you have any questions about this letter, please contact the undersigned at (972) 761-2665.

Sincerely,

*[signature]*

Jeffry M. Quick
Claims Agent
Claims Department

RLS7218

**EXHIBIT 3**
**Page 63**

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | |
| Return Receipt Fee (Endorsement Required) | | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To _KELLIE RODRIGUEZ , DEUTSCHE BA_
Street, Apt. No.; or PO Box No. _1761 E. ST. ANDREW PL_
City, State, ZIP+4 _SANTA ANA , CA    92705_

7008 1830 0000 8031 9925

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Deutsche Bank National Trust Company
(For complete name see Attachment)

PLAINTIFF(S)

v.

Federal Deposit Insurance Corporation
(For complete name see Attachment)

DEFENDANT(S).

CASE NUMBER

CV09-3852 GAF (FFMx)

SUMMONS

TO:     DEFENDANT(S):  Federal Deposit Insurance Corporation (For complete name see Attachment at B)

A lawsuit has been filed against you.

Within __60__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Jami Wintz McKeon, _____, whose address is _Morgan Lewis & Bockius, One Market, Spear Street Tower, San Francisco, CA, 94105__.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___MAY 2 9 2009___

By: ___NATALIE LONGORIA___

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1198

# ATTACHMENT TO SUMMONS

**PLAINTIFF:**

**Deutsche Bank National Trust Company**, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B.

**DEFENDANT:**

**Federal Deposit Insurance Corporation,** as Receiver of IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator and Receiver of IndyMac Federal Bank F.S.B.; Federal Deposit Insurance Corporation, in its corporate capacity; and Federal Deposit Insurance Corporation, as Government Entity

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/21131898.2

ATTACHMENT TO SUMMONS

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Deutsche Bank National Trust Company, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B

**DEFENDANTS**
Federal Deposit Insurance Corporation (For complete name see Attachment)

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

MORGAN, LEWIS & BOCKIUS LLP, One Market, Spear Street Tower, San Francisco, CA 94105, Tel: 415.442.1405
Attorney of Record: Jami Wintz McKeon, State Bar No. 237923

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding     ☐ 2 Removed from State Court     ☐ 3 Remanded from Appellate Court     ☐ 4 Reinstated or Reopened     ☐ 5 Transferred from another district (specify):     ☐ 6 Multi-District Litigation     ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:     JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No     ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
See Attachment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☑ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:     CV09-3852

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                CIVIL COVER SHEET                                Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, *and* one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
  ☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
  ☑   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
  **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All claims arose in Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date May 29, 2009

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# ATTACHMENT TO CIVIL COVER SHEET

## I. DEFENDANTS:

**Federal Deposit Insurance Corporation,** as Receiver of IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator and Receiver of IndyMac Federal Bank F.S.B.; Federal Deposit Insurance Corporation, in its corporate capacity; and Federal Deposit Insurance Corporation, as Government Entity

## VI. CAUSE OF ACTION:

All causes of action are against the Federal Deposit Insurance Corporation (FDIC) in various capacities as more fully specified in the Complaint, and arise under the Constitution and laws of the United States including the Federal Deposit Insurance Act, 12 U.S.C. § 1811, et seq., as amended by the Financial Institutions Reform, Recovery Enforcement Act ("FIRREA"), 12 U.S.C. § 1821, et seq., or other applicable law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

DB2/21131885.3

ATTACHMENT TO CIVIL COVER SHEET