1  Michael H. Bierman, State Bar No. 89156
   mbierman@luce.com
2  Jess R. Bressi, State Bar No. 110264
   jbressi@luce.com
3  Jeffrey D. Wexler, State Bar No. 132256
   jwexler@luce.com
4  Sekita E. Grant, State Bar No. 259485
   sgrant@luce.com
5  Luce, Forward, Hamilton & Scripps LLP
   601 South Figueroa, Suite 3900
6  Los Angeles, California 90017
   Tel.: (213) 892-4992 / Fax: (213) 452-8029
7
   Attorneys for Defendants Federal Deposit
8  Insurance Corporation, as Receiver for IndyMac Bank,
   F.S.B. and as Receiver for IndyMac Federal Bank, F.S.B.
9

10                 UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12                      WESTERN DIVISION

| | |
|---|---|
| 13  Deutsche Bank National Trust Company, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B., | Case No. CV09-3852 GAF (FFMx) |
| 14 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER TO DISMISS AND TO STRIKE [Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(f)]** |
| 15 | |
| 16              Plaintiff, | |
| 17  vs. | |
| 18  Federal Deposit Insurance Corporation, as Receiver of IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator and Receiver of IndyMac Federal Bank, F.S.B.; Federal Deposit Insurance Corporation, in its corporate capacity; and Federal Deposit Insurance Corporation, as Government Entity, | Date:  June 14, 2010 Time:  9:30 a.m. Place:  Courtroom 740, Roybal Bldg. [The Honorable Gary A. Feess] |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23              Defendants. | |

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2
**<u>Page</u>**

3
INTRODUCTION ............................................................................... 1

4
FACTUAL BACKGROUND ............................................................... 4

5
PROCEDURAL HISTORY ................................................................. 7

6
LEGAL STANDARD .......................................................................... 7

7
LEGAL ARGUMENT ......................................................................... 9

8
I.      DEUTSCHE BANK'S CLAIMS BASED ON THE ONEWEST
        TRANSACTION ARE NOT VIABLE. ...................................... 9

9

10
        A.      Counts Three and Five for Breach of Contract and Breach of the
                Duty of Good Faith and Fair Dealing Should be Dismissed. ............. 9

11
                1.      The Consent Requirement in the Governing Agreements is
                        Abrogated by 12 U.S.C. § 1821(d)(2)(G). ........................... 10

12

13
                2.      The Alleged Promises, Representations, and
                        Understandings are Unenforceable under 12
                        U.S.C. § 1823(e). .......................................................... 11

14

15
                3.      Count Five is Not Actionable under New York Law
                        Because it is Based on the Same Factual Allegations as
                        Count Three. ................................................................ 13

16

17
        B.      Count Six for Breach of Fiduciary Duty Must be Dismissed. ........... 14

18
                1.      The Common Law Breach of Fiduciary Duty Claim is
                        Barred by the FTCA. .................................................... 15

19
                2.      There is No Implied Private Right of Action for Violation
                        of 12 U.S.C. § 1821(d)(13)(E). ...................................... 17

20

21
        C.      Counts Seven and Eight do Not Allege Actionable Taking in
                Violation of the Fifth Amendment. ..................................... 21

22
        D.      Counts Nine and Ten do Not Allege Actionable Violations of the
                Due Process Clause of the Fifth Amendment. ............................ 23

23

24
III.    DEUTSCHE BANK IS NOT ENTITLED TO ADMINISTRATIVE
        PRIORITY OR A CONSTRUCTIVE TRUST. ........................... 24

25
        A.      Deutsche Bank's Allegations Seeking Superpriority Should Be
                Stricken as Statutorily Barred and Lacking a Legal Basis. ............. 24

26

27
        B.      Count Eleven for Constructive Trust Should be Dismissed for
                Lack of Subject Matter Jurisdiction and Failure to State a Claim. ...... 28

28
CONCLUSION ................................................................................. 30

1

**TABLE OF AUTHORITIES**

2

**<u>CASES</u>**

Page

3
4

*19 Court St. Assocs.. LLC v. RTC*.
190 B.R. 983 (Bankr. S.D.N.Y. 1996) ........................................ 18

5

*Acacia Tech.. Inc. v. United States*.
458 F.3d 1327 (Fed. Cir. 2006) ................................................ 22

6
7

*Acceptance Ins. Cos. v. United States*.
503 F.3d 1328 (Fed. Cir. 2007) ................................................ 21

8

*Adams v. RTC*.
927 F.2d 348 (8th Cir. 1991) .................................................. 27

9
10

*Allen v. Veterans Admin.*.
749 F.2d 1386 (9th Cir. 1984) ................................................ 16

11

*Association of Am. Med. Coll. v. United States*.
217 F.3d 770 (9th Cir. 2000) .................................................. 8

12
13

*Battista v. FDIC*.
195 F.3d 1113 (9th Cir. 1999) ................................................ 26

14

*Bender v. CenTrust Mortg. Corp.*.
51 F.3d 1027.
*modified*, 60 F.3d 1507 (11th Cir. 1995) .................................. 29

15
16

*Branch ex rel. Maine Nat'l Bank v. United States*.
69 F.3d 1571 (Fed. Cir. 1995) ................................................ 22

17
18

*Bruns v. National Credit Union Admin.*.
122 F.3d 1251 (9th Cir. 1997) ................................................ 23

19

*California v. Sierra Club*.
451 U.S. 287 (1981) .......................................................... 19

20
21

*California ex rel. State Lands Comm'n v. United States*.
512 F. Supp. 36 (N.D. Cal. 1981) ............................................ 9

22

*California Housing Securities. Inc. v. United States*.
959 F.2d 955 (Fed. Cir. 1992) ................................................ 22

23
24

*Cannon v. University of Chicago*.
441 U.S. 677 (1979) .......................................................... 17

25

*Centennial Assocs. Ltd. Partnership v. FDIC*.
927 F. Supp. 806 (D.N.J. 1996) ......................................... 28, 29

26
27

*Conley v. Gibson*.
355 U.S. 41 (1957) ........................................................... 8

28

*Correctional Servs. Corp. v. Malesko*.
534 U.S. 61 (2001) .......................................................... 23

ii

1
2

**TABLE OF AUTHORITIES**
**(cont'd)**

3

**Page**

4

*Cort v. Ash*,
    422 U.S. 66 (1975) ...................................................................... 17, 19, 20

5

*Courtney v. Halleran*,
    485 F.3d 942 (7th Cir. 2007),
    *cert. denied*, 552 U.S. 1184 (2008) ...................................................... 25, 26

6
7

*Crowe v. Smith*,
    852 F. Supp. 533 (W.D. La. 1994) ............................................................ 18

8

*Dura Pharms. Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................ 8

9
10

*FDIC v. Craft*,
    157 F.3d 697 (9th Cir. 1998) .................................................................. 16

11
12

*FDIC v. Hopping Brook Trust*,
    941 F. Supp. 256 (D. Mass. 1996)
    *aff'd*, 117 F.3d 639 (1st Cir. 1997) .......................................................... 26

13
14

*FDIC v. Kooyomjian*,
    220 F.3d 10 (1st Cir. 2000) .................................................................... 27

15

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ....................................................................... 16, 21, 23

16
17

*First Indiana Federal Sav. Bank v. FDIC*,
    964 F.2d 503 (5th Cir. 1992) .................................................................. 27

18

*First Pacific Bancorp., Inc. v. Helfer*,
    224 F.3d 1117 (9th Cir. 2000) ................................................................ 18

19
20

*Freeman v. FDIC*,
    56 F.3d 1394 (D.C. Cir. 1995) ............................................................ 24, 28

21

*Grand Heritage Mgmt., LLC v. Murphy*,
    2007 U.S. Dist. LEXIS 83114 (S.D.N.Y. Nov. 6, 2007) ................................ 14

22
23

*Gunter v. Hutcheson*,
    674 F.2d 862, 865 (11th Cir. 1982) ......................................................... 12

24

*Hal Roach Studios v. Richard Feiner & Co.*,
    896 F.2d 1542 (9th Cir. 1990) .................................................................. 8

25
26

*Hanson v. FDIC as Receiver for New Bank of New England*,
    113 F.3d 866 (8th Cir. 1997) .................................................................. 28

27

*Harris v. Provident Life & Acc. Ins. Co.*,
    310 F.3d 73 (2[d] Cir. 2002) ............................................................... 13, 14

28

1

**TABLE OF AUTHORITIES**
**(cont'd)**

2

**Page**

3

*Hart v. Baca*,
204 F.R.D. 456 (C.D. Cal. 2001)............................................................. 9, 26

4

*Henrichs v. Valley View Dev.*,
474 F.3d 609 (9th Cir. 2007)................................................................ 27

5

*Hindes v. FDIC*,
137 F.3d 148 (3d Cir. 1998) .................................................17, 18, 19, 20, 21

6

7

*Holden v. Hagopian*,
978 F.2d 1115 (9th Cir. 1992) ............................................................. 8

8

*In re Wagner*,
87 B.R. 612 (Bankr. C.D. Cal. 1988)....................................................9

9

10

*Jordan v. Verizon Corp.*,
2008 U.S. Dist. LEXIS 100449 (S.D.N.Y. Dec. 10, 2008)............................. 14

11

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*,
2009 U.S. Dist. LEXIS 9207 (S.D.N.Y. Feb. 9, 2009)................................ 14

12

13

*Kokkonen v. Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994) ....................................................................... 8

14

*Langley v. FDIC*,
484 U.S. 86 (1987) ........................................................................ 12

15

16

*Lazar v. Trans Union LLC*,
195 F.R.D. 665 (C.D. Cal. 2000)........................................................9

17

*Lion Raisins, Inc. v. United States*,
416 F.3d 1356 (Fed. Cir. 2005) ......................................................... 22

18

19

*Long v. Marubeni America Corp.*,
2006 U.S. Dist. LEXIS 41938 (S.D.N.Y. June 20, 2006)......................... 13, 14

20

*Love v. United States*,
915 F.2d 1242 (9th Cir. 1989) ........................................................... 15

21

22

*Lund v. Albrecht*,
936 F.2d 459 (9th Cir. 1991).............................................................. 29

23

*Meriden Trust & Safe Deposit Co. v. FDIC*,
62 F.3d 449 (2d Cir. 1995) ............................................................... 23

24

25

*Mosseri v. FDIC*,
2001 U.S. Dist. LEXIS 18899 (S.D.N.Y. 2001) ............................ 18, 19, 20, 21

26

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
150 Cal. App. 4th 384, 58 Cal. Rptr. 3d 516 (2007) .................................. 29, 30

27

28

iv

## TABLE OF AUTHORITIES
### (cont'd)

Page

*Pen-Del Mortgage Assocs. v. FDIC*,
1994 U.S. Dist. LEXIS 16741 (E.D. Pa. 1994) ........................................ 18, 20

*RPM Invs., Inc. v. RTC*,
75 F.3d 618 (11th Cir. 1996)............................................................................ 28

*RTC v. Titan Fin. Corp.*,
36 F.3d 891 (9th Cir. 1994) ............................................................................ 26

*RTC v. Villa Este Apartments Partnership*,
806 F. Supp. 595 (E.D. La. 1992) .................................................................. 18

*Sahni v. American Diversified Partners*,
83 F.3d 1054 (9th Cir. 1996)............................................................ 10, 16, 29

*Shabaz v. Polo Ralph Lauren Corp.*,
586 F. Supp. 2d 1205 (C.D. Cal. 2008) ............................................................ 9

*Sharpe v. FDIC*,
126 F.3d 1147 (9th Cir. 1997) ....................................................................... 29

*Sprewell v. Golden State Warriors*,
266 F.3d 979,
*amended on other grounds*,
275 F.3d 1187 (9th Cir. 2001)........................................................................... 8

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998)............................................................................................. 7

*Tam v. IndyMac Bank*,
Case No. CV 08-6458 MMM (AJWx) (C.D. Cal. Jan. 27, 2010) ............... 8, 27

*Tinoco v. IndyMac Bank, F.S.B.*,
Case No. CV 09-6174 JFW (JCx) (C.D. Cal. Feb. 5, 2010) ........................... 27

*Touche Ross & Co. v. Redington*,
442 U.S. 560 (1979) ........................................................................................ 19

*United States v. Gaubert*,
499 U.S. 315 (1991) ........................................................................................ 17

*Volges v. RTC*,
32 F.3d 50 (2d Cir. 1994) ............................................................................... 29

*Ward v. RTC*,
996 F.2d 99 (5th Cir. 1993) ...................................................................... 28, 29

## STATUTES

12 U.S.C. § 1441a(a)(14)(B)(viii) ...................................................................... 18

1

**TABLE OF AUTHORITIES**
**(cont'd)**

2

**Page**

3  12 U.S.C. § 1441a(b)(3)(C) ............................................................. 18

4  12 U.S.C. § 1815(e)(2)(C) ............................................................... 24

5  12 U.S.C. § 1821 ...................................................................... 12, 21

6  12 U.S.C. § 1821(d) ....................................................................... 22

7  12 U.S.C. §§ 1821(d)(2)(B)(i), (ii), (iv) ............................................ 16

8  12 U.S.C. § 1821(d)(2)(E) .......................................................... 16, 29

9  12 U.S.C. § 1821(d)(2)(G) .............................................. 2, 10, 22, 25, 26

10  12 U.S.C. § 1821(d)(2)(G)(i)(II) ........................................ 10, 11, 16, 29

11  12 U.S.C. § 1821(d)(2)(J)(i), (ii) ..................................................... 16

12  12 U.S.C. § 1821(d)(3) .................................................................. 15

13  12 U.S.C. § 1821(d)(11) ............................................................ 25, 26

14  12 U.S.C. § 1821(d)(11)(A) ........................................................ 24, 25

15  12 U.S.C. § 1821(d)(13) ............................................................ 15, 26

16  12 U.S.C. § 1821(d)(13)(C) .......................................................... 3, 29

17  12 U.S.C. § 1821(d)(13)(E) ............................... 15, 16, 17, 18, 19, 20

18  12 U.S.C. § 1821(d)(15) ................................................................ 18

19  12 U.S.C. § 1821(e) .................................................................... 3, 9

20  12 U.S.C. § 1821(e)(9) ..................................................................... 4

21  12 U.S.C. § 1821(j) ....................................................... 3, 24, 25, 28, 29

22  12 U.S.C. § 1823(d)(3) ............................................................ 15, 18, 20

23  12 U.S.C. § 1823(d)(3)(D) ............................................................. 15

24  12 U.S.C. § 1823(e) ........................................................... 3, 11, 12, 13

25  12 U.S.C. § 1823(e)(1) .................................................................. 12

26  28 U.S.C. § 1346(b) ..................................................................... 15

27  28 U.S.C. §§ 2671-80 .................................................................... 15

28  12 U.S.C. § 2679(a) ...................................................................... 16

## TABLE OF AUTHORITIES
### (cont'd)

Page

28 U.S.C. § 2680(a) ................................................................. 16, 17

### **RULES**

Fed. R. Civ. P. 8(a) .....................................................................8

Fed. R. Civ. P. 10(c) ...................................................................8

Fed. R. Civ. P. 12(b)(1) .............................................................7, 8

Fed. R. Civ. P. 12(b)(6) .............................................................4, 8

Fed. R. Civ. P. 12(f) .................................................................8, 24

Fed. R. Civ. P. 17(a) ...................................................................7

### **MISCELLANEOUS**

U.S. Const., Fifth Amendment ................................................ 21, 23

vii

# **INTRODUCTION**

IndyMac Bank, F.S.B. ("IndyMac") failed on July 11, 2008. As of November 12, 2009, the Federal Deposit Insurance Corporation in its corporate capacity ("FDIC-Corporate") had paid more than $8.4 billion to depositors with insured deposits, and other general creditors' claims totaled hundreds of millions of dollars. The assets of the IndyMac receivership were less than $64 million. The shortfall will likely be a loss to the Deposit Insurance Fund exceeding $8 billion.

On the day IndyMac failed, the Office of Thrift Supervision (the "OTS") appointed the FDIC as its receiver (the "IndyMac Receiver"). Most of IndyMac's assets were transferred to a newly chartered bank, IndyMac Federal Bank, F.S.B. ("IndyMac Federal"), for which the FDIC was appointed as conservator (the "Conservator"). The FDIC eventually reached agreement to sell substantially all of IndyMac Federal's assets to investors forming a new bank, OneWest Bank, F.S.B. ("OneWest"). On March 19, 2009, the OTS removed the Conservator and appointed the FDIC as Receiver for IndyMac Federal (the "IndyMac Federal Receiver"). The IndyMac Federal Receiver then sold the IndyMac Federal assets to the OneWest investors.

Deutsche Bank National Trust Company ("Deutsche Bank") brings this case on behalf of sophisticated investors (the "Certificate Holders") who purchased certificates in mortgage trusts for which Deutsche Bank is the trustee. IndyMac had sold mortgage loans to the trusts and contracted to repurchase them or effect other cures if certain warranties and representations were breached. IndyMac's failure has essentially eliminated this remedy, allegedly damaging the Certificate Holders.

In addition, IndyMac had contracted to service the mortgage loans on behalf of the trusts. Its servicing rights were among the assets transferred in the OneWest transaction. The OneWest buyer did not assume IndyMac's contractual obligations as the seller of the loans to repurchase or cure upon breach of the representations and warranties. Although the operative agreements generally required Deutsche

Bank's consent for the transfer of servicing rights, 12 U.S.C. § 1821(d)(2)(G), enacted as part of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), explicitly authorizes the FDIC as receiver to transfer assets without obtaining the consent of third parties.

In this action, Deutsche Bank seeks relief for: (1) alleged pre-failure contract breaches by IndyMac; (2) alleged post-failure contract breaches by the Conservator; (3) the transfer of servicing rights in the OneWest transaction without Deutsche Bank's consent and without also transferring IndyMac's seller obligations; and (4) the repudiation by the IndyMac Receiver of the agreements relating to three trusts. Deutsche Bank alleges that the transfer of servicing rights was a breach of contract, a breach of the covenant of good faith and fair dealing, a breach of fiduciary duties, and a violation of the Takings and Due Process Clauses of the United States Constitution.

Under the statutory priority scheme, Deutsche Bank's claims are general creditor claims, to be paid, if proven, out of receivership assets after the administrative expenses of the receiver and deposit liabilities. Deutsche Bank, however, seeks to have its Certificate Holders paid before the IndyMac depositors and the other general creditors. It asserts a right to payment as either a superpriority or administrative expense of the Receiverships or by FDIC-Corporate out of the Deposit Insurance Fund. Deutsche Bank bases its claim for special treatment on the Receivers' allegedly willfully exceeding their lawful authority and failing to comply with fiduciary duties, and the Conservator's failure to cure pre-failure breaches.

This motion to dismiss and to strike is based on two general grounds. First, Deutsche Bank's allegations based on the OneWest transaction do not state viable claims. Its breach of contract claim fails because that claim is based on: (1) the alleged breach of a contractual consent requirement for transfer of servicing rights, which is nullified by 12 U.S.C. § 1821(d)(2)(G); and (2) the alleged breach of promises, representations, and understandings rendered unenforceable against the

1   FDIC because they are not set forth in a writing meeting the requirements of 12

2   U.S.C. § 1823(e).  Its claim for breach of the duty of good faith and fair dealing fails

3   because that claim is based on the same allegations as the contract claim and is

4   therefore not permitted under New York law, which governs.

5          Deutsche Bank's claim that the OneWest transaction breached fiduciary

6   duties fails for noncompliance with the Federal Tort Claims Act (the "FTCA") and

7   because there is no implied private right of action for breach of the statutory

8   obligations alleged by Deutsche Bank.  Finally, its claims that the OneWest

9   transaction violated the Takings and Due Process Clauses fail because: (1) the

10  "taking" alleged – the transfer of servicing rights without Deutsche Bank's consent

11  and without also transferring IndyMac's seller obligations – must be asserted against

12  the United States in the Court of Federal Claims and in any event does not rise to the

13  level of a constitutional violation; and (2) there is no private right of action against

14  federal agencies for violation of the Due Process Clause.

15         Second, there is no legal basis for two extraordinary remedies sought by

16  Deutsche Bank: administrative superpriority and a constructive trust.  Claim priority

17  is defined by statute, and courts have no jurisdiction to require the FDIC acting as

18  receiver to elevate the priority of the claims of creditors that have allegedly been the

19  victims of its illegal acts or otherwise to depart from the statutory scheme.  Without

20  an elevated claim priority, Deutsche Bank's claims are general creditor claims.

21  Since the Receiverships do not have sufficient assets to be able to satisfy the higher

22  priority claims, Deutsche Bank will never be able to recover anything on its claims

23  against the Receiverships and has no meaningful remedy.  The claims should

24  therefore be dismissed based upon the absence of a case or controversy and under

25  the doctrine of prudential mootness.  Finally, the constructive trust remedy sought

26  by Deutsche Bank is barred by 12 U.S.C. §§ 1821(d)(13)(C) and 1821(j).

27

28

# FACTUAL BACKGROUND[1]

IndyMac was an FDIC-insured federal savings bank chartered and regulated by the OTS. *See* Complaint, ¶ 20. IndyMac operated as a mortgage securitizer. *See id.*, ¶ 28. It originated and otherwise acquired mortgage loans and then sold the mortgage loans to, *inter alia*, more than 240 IndyMac-created Trusts for which Deutsche Bank served as trustee. *See id.*, ¶¶ 9, 28. "The Trusts were created, the mortgage-backed securities were issued, and the mortgage loans were sold, transferred and assigned to the Trusts pursuant to one or more Governing Agreements." *Id.*, ¶ 36. The Complaint alleges that the Governing Agreements are Qualified Financial Contracts ("QFCs") that must be transferred or retained in whole pursuant to 12 U.S.C. § 1821(e)(9).[2] *See* Complaint, ¶¶ 147, 150.

The Complaint alleges that "IndyMac produced and sold into the Trusts an extensive array of non-traditional mortgage loan products" and that "[c]entral to IndyMac's success in attracting investors to purchase the mortgage-backed securities sponsored by IndyMac were IndyMac's representations and promises that a single entity (<u>i.e.</u>, IndyMac) would perform the full range of interrelated functions necessary to protect, preserve and service these complex Trust assets." *Id.*, ¶ 31. *See id.*, ¶ 32 (alleging that "it was and is important to the Trustee and investors in the Trusts that the same entity that originated or originally acquired the loans also be involved in servicing the loans"). The Complaint further alleges that IndyMac issued a Prospectus concerning the Trusts generally, and a Prospectus Supplement about each trust, *see id.*, ¶ 33, and that "[i]n the typical Prospectus or Prospectus

---

[1]   The facts set forth herein are taken from Deutsche Bank's Complaint, in keeping with the general rule that the allegations of the complaint are taken as true for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). The Receivers do not, by summarizing the allegations, concede their accuracy.

[2]   QFCs are certain kinds of contracts, or portions of contracts, for the transfer of assets. They are granted special treatment under FIRREA and the Bankruptcy Code to minimize the disruption in the financial markets caused by the failure of a party to such contracts. They include contracts for the sale of home mortgages. Once the sale of the home mortgages provided for in the Governing Agreements was consummated, the sale provisions in those Agreements were no longer QFCs.

1   Supplement, IndyMac promised potential investors that a single entity, 'IndyMac

2   Bank,' would act as sponsor, seller and servicer of the Trusts and its underlying

3   mortgage loan assets," *id.*, ¶ 34.  *See id.*, ¶ 35 (identifying 11 other categories of

4   representations allegedly made in "the typical Prospectus or Prospectus

5   Supplement" to "induce[] investment in the Trusts").  The Complaint also alleges

6   that "[t]he Trustees and the Trust investors had the right to, and did rely on

7   IndyMac's representations that a single entity, IndyMac, would sponsor the

8   transactions, sell mortgage loans into the Trusts, and thereafter service the Trusts

9   and the underlying mortgage loan assets," absent termination for cause or consent to

10  transfer of rights and obligations.  *Id.*, ¶ 39.

11       On July 11, 2008, the OTS (1) closed IndyMac and appointed the FDIC as

12  IndyMac's receiver and (2) authorized the creation of a new federally chartered

13  savings bank, IndyMac Federal, and appointed the Conservator.  *See id.*, ¶¶ 21, 22.

14  Under a purchase and assumption agreement dated July 11, 2008, "substantially all

15  of IndyMac's assets and liabilities," "includ[ing] all of IndyMac's interests, rights

16  and obligations with respect to the securitization Trusts evidenced by the Governing

17  Agreements," were "transferred to and assumed by IndyMac Federal."  *Id.*, ¶ 23.

18  Deutsche Bank specifically alleges that IndyMac Federal assumed all of IndyMac's

19  obligations (including the exercise of servicing rights).  *See id.*, ¶¶ 60-61.

20       On October 14, 2008, Deutsche Bank filed a Proof of Claim with the

21  IndyMac Receiver.  *See id.*, ¶¶ 78-79, Ex. 2.  The Proof of Claim presented claims

22  for, *inter alia:* (1) damages for IndyMac's alleged breach of certain representations

23  and warranties in the Governing Documents; and (2) indemnification as to certain

24  lawsuits or claims arising from IndyMac's alleged defaults and breaches with regard

25  to the representations and warranties.  *See* Proof of Claim, ¶¶ 7-19 (Ex. 2 to

26  Complaint).  On March 31, 2009, the IndyMac Receiver issued a Notice of

27  Disallowance, rejecting the Proof of Claim.  *See* Complaint, ¶ 84, Ex. 3.

28

Under a March 19, 2009 purchase and assumption agreement, "substantially all of IndyMac Federal's assets and liabilities, including . . . some, but not all, of the assets relating to all but three of the Trusts [the 'Radian Trusts']," were transferred to and assumed by OneWest, a federal savings bank. *Id.*, ¶¶ 25-26, 73-74.  On the same day: (1) the OTS removed the Conservator and appointed the FDIC as the IndyMac Federal Receiver; and (2) the IndyMac Receiver formally repudiated certain of the Governing Agreements for the Radian Trusts. *See id.*, ¶¶ 27, 76.

Deutsche Bank alleges that "the sale to OneWest included what the FDIC characterized as the 'servicing rights' under the Governing Agreements, including IndyMac's right to service the mortgage loans in the Trusts and the corresponding right to receive the servicing fees and income provided in the Governing Agreements." *Id.*, ¶ 63.  Deutsche Bank further alleges that the sale "excluded certain obligations imposed on IndyMac under the same Governing Agreements, including on information and belief, 'any repurchase obligations for breaches of loan level representations, and indemnities relating to origination activities or securities laws or any seller indemnity.'" *Id.*  The Complaint alleges that the transfer of servicing rights but not seller obligations may have destroyed rights claimed by the trusts to setoff or recoup damages resulting from breach of seller obligations against certain monies the trusts owe for servicing. *See id.*, ¶¶ 107-11.

On November 12, 2009, the FDIC, by its Board of Directors, formally determined that the assets of IndyMac and IndyMac Federal are insufficient to make any distribution on claims of general unsecured creditors of IndyMac and therefore such claims have no value.[3]  *See* Request for Judicial Notice, Exs. A, B.  Thus, neither Receivership has assets available for distribution to IndyMac's general creditors.  *See id.*

---

[3]   In particular, the FDIC determined that: (1) the total assets of the IndyMac Receivership are $63 million while total deposit liabilities are $8.738 billion; and (2) the total assets of the IndyMac Federal Receivership are $5.3 billion while total administrative expenses are $7.964 billion.  *See* Request for Judicial Notice, Ex. A.

# PROCEDURAL HISTORY

The Complaint, filed on May 29, 2009, "asserts claims against the FDIC in its capacities as receiver of IndyMac; as conservator and receiver of IndyMac Federal . . . ; as an independent agency (sometimes referred to as its 'corporate capacity'); and as an entity of the United States government subject to the Constitutional restrictions on the exercise of the federal government's power."[4]  *Id.*, ¶ 16.  It seeks relief for four sets of acts and omissions by defendants: (1) IndyMac's pre-failure breaches of its obligations as seller and servicer under the Governing Agreements; (2) the Conservator's post-failure breaches of the same obligations; (3) the sale of IndyMac Federal's assets to OneWest; and (4) the repudiation of Governing Agreements for the Radian Trusts.  The first two sets of acts and omissions are the subjects of Counts One and Two, respectively, both for breach of contract.  The repudiation of the Radian Trust agreements is the subject of Count Four, seeking damages for repudiation.  This motion to dismiss is directed to the remaining claims, which seek redress for the OneWest transaction, *i.e.*, Counts Three (breach of contract), Five (breach of the duty of good faith and fair dealing), Six (breach of fiduciary duty), Seven and Eight (unconstitutional takings), Nine and Ten (due process violations), and Eleven (constructive trust).

# LEGAL STANDARD

**Rule 12(b)(1).**  "The requirement that [subject matter] jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998) (citation omitted). The courts have a "special obligation" to satisfy themselves that they have subject

---

[4]     The Complaint purports to state claims against the FDIC as Conservator and Receiver of IndyMac Federal, referred to in the Complaint as Conservator of IndyMac Federal.  *See* Complaint, ¶ 27.  On September 14, 2009, the parties submitted a stipulated Order [Docket 10] substituting IndyMac Federal Receiver for the Conservator pursuant to Fed. R. Civ. P. 17(a).

1    matter jurisdiction, even if the parties are prepared to concede jurisdiction, and have

2    no power other than to dismiss the lawsuit if such jurisdiction is lacking.  *See id.*

3           Pursuant to Fed. R. Civ. P. 12(b)(1), a party may move to dismiss for lack of

4    subject matter jurisdiction.  The burden of proving subject matter jurisdiction is on

5    the party alleging subject matter jurisdiction.  *See, e.g.*, *Kokkonen v. Guardian Life*

6    *Ins. Co. of America*, 511 U.S. 375, 377 (1994).  "A defendant who seeks dismissal

7    of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) can

8    facially challenge the sufficiency of the jurisdictional allegations in the complaint;

9    when this type of attack is mounted, the court must accept as true all  well-pleaded

10   facts and draw all reasonable inferences in favor of the plaintiff."  *Tam v. IndyMac*

11   *Bank*, Case No. CV 08-6458 MMM (AJWx), at 10 (C.D. Cal. Jan. 27, 2010) (Ex. A

12   hereto) (citing *Association of Am. Med. Coll. v. United States*, 217 F.3d 770, 778-79

13   (9th Cir. 2000)).

14          **Rule 12(b)(6)**.  Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss for

15   "failure to state a claim upon which relief can be granted."  *Id.*  A Rule 12(b)(6)

16   motion is proper when the complaint fails to comply with the requirement of Fed. R.

17   Civ. P. 8(a) that it include a "short and plain statement of the claim showing that the

18   pleader is entitled to relief."  *Id.*  Although the Court takes the complaint's factual

19   allegations as true, the complaint must give the defendant fair notice of the grounds

20   of plaintiff's claims.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)

21   (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  When ruling on a motion to

22   dismiss, the Court may disregard conclusory allegations that are unsupported or

23   contradicted by the plaintiff's factual allegations.  *See Holden v. Hagopian*, 978

24   F.2d 1115, 1121 (9th Cir. 1992).  Under Fed. R. Civ. P. 10(c), documents attached to

25   the complaint and incorporated by reference are treated as part of the complaint for

26   purposes of a Rule 12(b)(6) motion.  *See Sprewell v. Golden State Warriors*, 266

27   F.3d 979, 988, *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *Hal Roach*

28   *Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990).

**Rule 12(f).**  Under Fed. R. Civ. P. 12(f), a party may move to strike "any redundant, immaterial, impertinent or scandalous matter," *id.*, including "parts of the prayer for relief when the relief sought is 'not recoverable as a matter of law.'" *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1208 (C.D. Cal. 2008) (quoting *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 668 (C.D. Cal. 2000)).  *See In re Wagner*, 87 B.R. 612, 619 (Bankr. C.D. Cal. 1988) (striking debtors' request to avoid defendants' lien because such avoidance was unavailable as a matter of law). "While disfavored, 'where [a] motion [to strike] may have the effect of making the trial of the action less complicated, or have the effect of otherwise streamlining the ultimate resolution of the action, the motion to strike will be well taken.'"  *Hart v. Baca*, 204 F.R.D. 456, 457 (C.D. Cal. 2001) (quoting *California ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981)).

## LEGAL ARGUMENT

### I.  DEUTSCHE BANK'S CLAIMS BASED ON THE ONEWEST TRANSACTION ARE NOT VIABLE.

#### A.  Counts Three and Five for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing Should be Dismissed.

In Counts Three and Five, Deutsche Bank alleges that the OneWest transaction breached the Governing Agreements and the covenant of good faith and fair dealing implied into them because: (1) the Receivers did not obtain Deutsche Bank's prior written consent to transfer the loan servicing rights; and (2) the transfer of the servicing rights without the seller obligations violated certain alleged representations, promises, and understandings.

Both counts fail.  The FDIC acting as a receiver is statutorily empowered to transfer receivership assets without obtaining the consent of third parties.  The alleged promises, representations, and understandings not to transfer the servicing rights without seller obligations were not, and are not alleged to be, part of the Governing Agreements themselves, and are unenforceable against the Receivers pursuant to 12 U.S.C. § 1823(e) because, as alleged, they do not meet the

1    requirements of that statute.  Further, to the extent that Deutsche Bank's claim for

2    breach of the duty of good faith and fair dealing is based upon the same alleged

3    breach as its contract claim, New York law bars that claim.

### 1.    <u>The Consent Requirement in the Governing Agreements is Abrogated by 12 U.S.C. § 1821(d)(2)(G).</u>

6    Count Three alleges that the Receivers breached the Governing Agreements

7    by transferring the servicing rights for the Trusts to OneWest without Deutsche

8    Bank's prior consent.  *See* Complaint, ¶ 148 (alleging that "IndyMac, as servicer,

9    could not assign its rights and obligations without the prior written consent of the

10    Trustee, and, if IndyMac was no longer the servicer for any reason, the Governing

11    Agreements provided that the Trustee would become the successor servicer with the

12    right to appoint a replacement successor servicer").

13    However, 12 U.S.C. § 1821(d)(2)(G)(i)(II) expressly grants the FDIC the

14    right, in its capacity as conservator or receiver, to "transfer any asset or liability of

15    the institution in default (including assets and liabilities associated with any trust

16    business) ***without any approval, assignment, or consent with respect to such***

17    ***transfer*."  *Id.* (emphasis added).  On its face, the statute is narrowly tailored to

18    supersede only those consent provisions that require consent to the transfer of assets

19    or liabilities; the statute does not purport to invalidate any other types of consent

20    requirements.

21    The FDIC's statutory right to transfer assets and liabilities without consent is

22    necessary for the FDIC as receiver to fulfill its core function of disposing of the

23    assets and liabilities of insolvent financial institutions.  *See Sahni v. American*

24    *Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (identifying the FDIC's

25    power to transfer assets and liabilities without consent pursuant to Section

26    1821(d)(2)(G) as part of the "express statutory authority to dispose of receivership

27    assets" granted by Congress to the FDIC as receiver in order to "reduc[e] the losses

28    borne by federal taxpayers when federally insured financial institutions . . . fail").

The FDIC's ability to perform this core function would be severely impaired if prior to transferring servicing rights under agreements entered into by a failed institution such as IndyMac, it were required to obtain the consent of the more than 240 trusts suing here, each of which might be required to obtain the consent of thousands of its Certificate Holders.  The complications, negotiations, and consequent delay which would result from obtaining consent to transfer would render almost impossible the already difficult job of disposing of the assets of a failed bank.

This case vividly illustrates the need for Section 1821(d)(2)(G)(i)(II).  Because that section abrogates any contractual right that Deutsche Bank might claim to require the FDIC to obtain its consent to assignment of serving rights, Count Three must be dismissed.

### 2.  <u>The Alleged Promises, Representations, and Understandings are Unenforceable under 12 U.S.C. § 1823(e)</u>.

As alleged, Deutsche Bank's Count Five for breach of the duty of good faith and fair dealing is based on: (1) promises and representations allegedly made by IndyMac in its Prospectus and Prospectus Supplements that a single entity would act as the seller and servicer of the loans; and (2) the alleged understanding of Deutsche Bank and the Certificate Holders that having a single entity act in such capacity was desirable.  *See* Complaint, ¶¶ 31-35, 39.  These promises, representations, and understandings are extrinsic to the Governing Agreements, and any claim based on them is barred by 12 U.S.C. § 1823(e).

Section 1823(e) renders unenforceable any agreement diminishing the FDIC's rights in assets acquired by it unless, *inter alia*, the agreement is in writing, has been executed contemporaneously by the bank and any party claiming an adverse interest thereunder with the bank's acquisition of the assets, and has been approved by the

11

1   bank's board of directors or its loan committee as reflected in its minutes.[5]  *See id.*

2   Section 1823(e) is intended "to allow federal and state bank examiners to rely on a

3   bank's records in evaluating the worth of the bank's assets" where, *e.g.*, "the FDIC

4   is deciding whether to liquidate a failed bank, . . . or to provide financing for

5   purchase of its assets (and assumption of its liabilities) by another bank." *Langley v.*

6   *FDIC*, 484 U.S. 86, 91-92 (1987).  "The last kind of evaluation, in particular, must

7   be made 'with great speed, usually overnight, in order to preserve the going concern

8   value of the failed bank and avoid an interruption in banking services.'" *Id.*

9   (quoting *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir. 1982)).

10        Here, Deutsche Bank does not allege that the Governing Agreements

11  themselves included the promises, representations, and understandings that allegedly

12  created the asserted contractual right to have a single entity act as the seller and

13  servicer of the loans.  Deutsche Bank does not allege that: (1) the Prospectus and the

14  Prospectus Supplements were signed by IndyMac or by persons claiming an adverse

15  interest contemporaneously with IndyMac's acquisition of assets; or (2) the claimed

16

---

17  [5]    Section 1823(e)(1) provides:

18          No agreement which tends to diminish or defeat the interest of
        the Corporation in any asset acquired by it under this section or section
19      11 [12 U.S.C. § 1821], either as security for a loan or by purchase or as
        receiver of any insured depository institution, shall be valid against the
20      Corporation unless such agreement—

21          (A)  is in writing,

22          (B)  was executed by the depository institution and any
        person claiming an adverse interest thereunder, including
        the obligor, contemporaneously with the acquisition of the
23      asset by the depository institution,

24          (C)  was approved by the board of directors of the
        depository institution or its loan committee, which
25      approval shall be reflected in the minutes of said board or
        committee, and

26          (D)  has been, continuously, from the time of its
        execution, an official record of the depository institution.

27  *Id.  See*, *e.g.*, *Langley v. FDIC*, 484 U.S. 86, 90-93 (1987) (broadly interpreting the
    term "agreement" in Section 1823(e) to include all conditions to the parties'
28  performance of the bargain, including all representations, warranties, and promises).

12

1  "understandings" were in writing (much less that they were in writings signed
2  contemporaneously by the necessary parties).

3       Deutsche Bank's allegations fall squarely within the language and rationale of
4  Section 1823(e).  Deutsche Bank is seeking to diminish the value of the servicing
5  rights that the IndyMac Receiver transferred in the OneWest transaction by claiming
6  that they are burdened by IndyMac's seller obligations as a result of promises,
7  representations, and understandings not contained in the Governing Agreements.
8  The FDIC was entitled to rely on the Governing Agreements in evaluating the value
9  of the servicing rights and in negotiating its agreement with the OneWest investors.
10  In this case, the evaluation process did not require "great haste," as it usually does.
11  Nonetheless, a ruling that the FDIC cannot rely solely on a failed bank's mortgage
12  trust and other relevant agreements in evaluating its servicing assets but must
13  instead review all of a failed bank's representations about its mortgage trusts would
14  make very difficult the task of quickly and accurately evaluating that asset.
15  Because, as alleged, the promises, representations, and understandings that form the
16  basis for Deutsche Bank's breach of contract claim are extrinsic to the Governing
17  Agreements, Count Five is barred by Section 1823(e).

18
19            **3.**      **<u>Count Five is Not Actionable under New York Law Because<br>it is Based on the Same Factual Allegations as Count Three.</u>**

20       Deutsche Bank cannot maintain its stand-alone claim for breach of the
21  implied covenant of good faith and fair dealing (Count Five) under New York law
22  (the law designated by the choice-of-law provisions in most if not all of the
23  Governing Agreements) because, as alleged, the claim is based upon the facts
24  alleged in the breach of contract claim (Count Three).  "It is well established . . . that
25  'New York law . . . does not recognize a separate cause of action for breach of the
26  implied covenant of good faith and fair dealing when a breach of contract claim,
27  based upon the same facts, is also pled.'"  *Long v. Marubeni America Corp.*, 2006
28  U.S. Dist. LEXIS 41938 at *2 (S.D.N.Y. June 20, 2006) (quoting *Harris v.*

1   *Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2ᵈ Cir. 2002)).  "That is because the

2   covenant of good faith and fair dealing is simply an implied term of every contract,

3   and its breach 'is considered to be a breach of the underlying contract.'"  *Id.* at *2-3

4   (quoting *Harris*, 310 F.3d at 81).

5       "Typically, 'raising both claims in a single complaint is redundant, and courts

6   confronted with such complaints under New York law regularly dismiss any

7   freestanding claim for breach of the covenant of fair dealing.'"  *JPMorgan Chase*

8   *Bank, N.A. v. IDW Group, LLC*, 2009 U.S. Dist. LEXIS 9207 at *13-14 & n.2

9   (S.D.N.Y. Feb. 9, 2009) (quoting *Jordan v. Verizon Corp.*, 2008 U.S. Dist. LEXIS

10  100449 at *7 (S.D.N.Y. Dec. 10, 2008)).  "'Consequently, a claim for breach of the

11  implied covenant of good faith can survive a motion to dismiss "only if it is based

12  on allegations different from those underlying the accompanying breach of contract

13  claims."'"  *Id.* (quoting *Grand Heritage Mgmt., LLC v. Murphy*, 2007 U.S. Dist.

14  LEXIS 83114 at *6 (S.D.N.Y. Nov. 6, 2007)).

15      Because Count Five for breach of the duty of good faith and fair dealing is

16  based on the same facts as Count Three for breach of contract, it must be dismissed.

17      **B.    Count Six for Breach of Fiduciary Duty Must be Dismissed.**

18      Count Six alleges, *inter alia*, that the FDIC has a fiduciary duty: (1) to "act

19  for the benefit of all parties who may establish rights during the administration of

20  the receivership"; (2) "to claimants to act in good faith, to act in accordance with the

21  laws that establish its authority, to preserve the property in its possession, and to act

22  in a manner that maximizes potential recovery by those claimants and to allocate the

23  proceeds of such assets impartially and in accordance with rights established by

24  claimants, and statutory priorities"; and (3) "either to honor in their entirety the

25  Governing Agreements to which IndyMac Federal succeeded, and to lawfully and

26  properly assign the rights and obligations transferred from IndyMac, or to repudiate

27  these agreements in their entirety."  Complaint, ¶¶ 168-69, 172.

28

1       Deutsche Bank asserts that, under FIRREA, the FDIC "has a fiduciary

2   obligation to manage the assets of the receivership in a manner that 'maximizes the

3   net present value return from the sale or disposition' and 'minimizes the amount of

4   any loss realized.'" *Id.*, ¶ 167 (quoting 12 U.S.C. §§ 1821(d)(3) [*sic*] and

5   1821(d)(13)).[6]  Otherwise, the Complaint cites no statutory basis for the fiduciary

6   duties it alleges.  In the meet-and-confer process, Deutsche Bank cited two cases

7   that suggested, without analysis, that state common law claims for breach of

8   fiduciary duty may be brought against the FDIC.

9       Deutsche Bank's claim for breach of fiduciary duty must be dismissed.

10  Because Count Six is based on the common law, it is subject to the FTCA, the

11  exclusive remedy for money damages in tort against a federal agency or its

12  employees, *see* 28 U.S.C. §§ 1346(b), 2671-80; Deutsche Bank has not brought suit

13  against the United States, the only proper defendant to a FTCA lawsuit, and its

14  FTCA claim is barred in any event by the discretionary function exemption to

15  FTCA liability.  In addition, there is no implied private right of action for violation

16  of 12 U.S.C. § 1821(d)(13)(E).

17      **1.**    <u>**The Common Law Breach of Fiduciary Duty Claim is**</u>
18             <u>**Barred by the FTCA.**</u>

19      For purposes of the FTCA, a claim for breach of fiduciary duty may sound in

20  contract or tort, depending on whether it is predicated on alleged contractual or

21  common law duties.  *See, e.g.*, *Love v. United States*, 915 F.2d 1242, 1245-48 (9th

22  Cir. 1989).  Count Six does not allege a contractual basis for the asserted fiduciary

23  duties, *see* Complaint, ¶¶ 167-74, and those duties do not appear to be contractual in

24  ———————————

25  [6]    Deutsche Bank presumably intended to cite 12 U.S.C. § 1823(d)(3), which imposes the same obligations on FDIC-Corporate as Section 1821(d)(13) imposes on the FDIC as receiver or conservator.  *See* 12 U.S.C. §§ 1821(d)(13)(E),

26  1823(d)(3)(D) (in exercising its powers with regard to any sale or disposition of assets, the FDIC in its capacity as receiver or conservator or in its corporate capacity

27  "shall conduct its operations in a manner which," *inter alia*: "(i) maximizes the net present value return from the sale or disposition of such assets"; and "(ii) minimizes

28  the amount of any loss realized in the resolution of cases").

nature.  Rather, Count Six alleges breach of common law fiduciary duties of the type

that a private receiver might owe.  Because Count Six sounds in tort, it is cognizable

under the FTCA, and it must be dismissed as against the Receivers because the

United States is the sole party amenable to suit for alleged tortious conduct by a

government agency.  *See FDIC v. Meyer*, 510 U.S. 471, 476 (1994) (the FTCA

remedy is exclusive; an agency cannot be sued in its own name).[7]

Furthermore, 28 U.S.C. § 2680(a) deprives the Court of jurisdiction over

Count Six because the Receivers' actions at issue involved the disposal of

receivership assets, actions that are at the core of the FDIC's statutory powers as a

receiver and are therefore committed to the FDIC's discretion.  *See Sahni*, 83 F.3d at

1058.  As the Ninth Circuit has explained:

> . . . Congress has granted the FDIC as receiver express statutory
> authority to dispose of receivership assets, thereby reducing the losses
> borne by federal taxpayers when federally insured financial institutions
> . . . fail.  As receiver, the FDIC has broad authority to "take over the
> assets . . . and conduct all business of the institution," "collect all
> obligations and money due the institution," and "preserve and conserve
> the assets and property of such institution."  12 U.S.C.
> § 1821(d)(2)(B)(i), (ii), (iv).  Moreover, the FDIC may "place the
> insured depository institution in liquidation and proceed to realize upon
> the assets of the institution. . . ."  12 U.S.C. § 1821(d)(2)(E).  The FDIC
> as receiver may also "transfer any asset or liability of the institution in
> default . . . without any approval, assignment, or consent. . . ."  12 U.S.C.
> § 1821(d)(2)(G)(i)(II).  Finally, the FDIC may "exercise . . . such
> incidental powers as shall be necessary to carry out such powers," and
> "take any action authorized by this Chapter, which the [FDIC]
> determines is in the best interests of the depository institution, its
> depositors, or the [FDIC]." 12 U.S.C. § 1821(d)(2)(J)(i), (ii).

*Sahni*, 83 F.3d at 1058.  *See also* 12 U.S.C. §§ 1821(d)(13)(E) (recognizing the

FDIC's right as conservator or receiver to engage in the "sale or disposition of assets

of any insured depository institution" so as to maximize return and minimize loss),

---

[7]    *See also FDIC v. Craft*, 157 F.3d 697, 706-07 (9th Cir. 1998) (the FTCA allows claims only against the United States; this restriction is not modified by the FDIC's sue and be sued jurisdiction); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984) (the United States is the sole party that may be sued for personal injuries arising out of the negligence of its employees).  Naming the proper party defendant is a non-waivable jurisdictional prerequisite to filing a legal action under the FTCA. *See* 28 U.S.C. § 2679(a).

16

1821(h) (recognizing the FDIC's discretion to consider various factors when

deciding what actions to take in connection with the resolution of an institution).

Thus, the Receivers' actions at issue are based on the FDIC's exercise or

performance or the failure to exercise or perform a discretionary function or duty.

*See* 28 U.S.C. § 2680(a) (barring "[a]ny claim . . . based upon the exercise or

performance or the failure to exercise or perform a discretionary function or duty on

the part of a federal agency or an employee of the Government, whether or not the

discretion involved be abused"); *United States v. Gaubert*, 499 U.S. 315, 322-34

(1991) (discretionary function exception barred claim based on alleged negligence

of bank regulators in day-to-day management of savings and loan because "all of the

challenged actions of the federal regulators involved the exercise of discretion in

furtherance of public policy goals").  The discretionary function exception bars

Count Six.

## 2.   There is No Implied Private Right of Action for Violation of 12 U.S.C. § 1821(d)(13)(E).

A violation of a federal statute which results in harm to an individual "does

not automatically give rise to a private cause of action in favor of that person."

*Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979).  To the extent Count

Six is based on the alleged violation of 12 U.S.C. § 1821(d)(13)(e), Deutsche Bank

must show there is an implied private right of action for damages under that statute.

The courts have held, under the four factors identified in *Cort v. Ash*, 422

U.S. 66, 78 (1975), that there is no implied private right of action against the FDIC

for breaching its obligation under Section 1821(d)(13)(e) to maximize the net

present value return from the sale or disposition of assets and to minimize the

amount of any loss realized.  *See Hindes v. FDIC*, 137 F.3d 148, 169-70 (3[d] Cir.

1998) (affirming dismissal of bank shareholders' claims seeking "to enforce certain

statutory duties of the FDIC" "because there is no implied private right of action to

enforce the FDIC's duty to maximize gain and minimize loss in its disposition of

1   assets") (Section 1821(d)(13)(e));[8] *Mosseri v. FDIC*, 2001 U.S. Dist. LEXIS 18899

2   at *3-16 (S.D.N.Y. 2001) (dismissing plaintiff's contention that the FDIC, by not

3   accepting his offer concerning the disposition of a mortgage, "breached its duties to

4   maximize the net present value return from the sale, to minimize the amount of loss

5   realized in the resolution of the cases, and to ensure adequate competition and fair

6   and consistent treatment of offerors") (Section 1821(d)(13)(e)); *Pen-Del Mortgage*

7   *Assocs. v. FDIC*, 1994 U.S. Dist. LEXIS 16741 at *5-9 (E.D. Pa. 1994) (rejecting

8   disappointed bidder's attempt to bring private cause of action) (Section 1823(d)(3)).

9   The courts have reached the same result with regard to 12 U.S.C. § 1441a(b)(3)(C),

10  a statute which imposed the same statutory obligation on the Resolution Trust

11  Corporation in its corporate capacity.  *See RTC v. Villa Este Apartments*

12  *Partnership*, 806 F. Supp. 595, 597-98 (E.D. La. 1992) (rejecting attempt by

13  property owners to pursue a private right of action under the theory that RTC-

14  Corporate breached its duties through the sale of similar nearby properties); *19*

15  *Court St. Assocs., LLC v. RTC*, 190 B.R. 983, 992-95 (Bankr. S.D.N.Y. 1996)

16  (disappointed bidder could not assert private right of action based on the RTC's

17  alleged breach of duty to maximize net return value on assets).

18      In reaching this determination, these courts have relied upon the factors

19  typically considered by courts in determining whether a statute grants a private right

20  _____

21  [8]    The *Hindes* court also held that bank shareholders did not have a private right
    of action to enforce the duty of the FDIC, as receiver, to provide an accounting
    pursuant to 12 U.S.C. § 1821(d)(15).  *See Hindes*, 137 F.3d at 171-72.  In *First*

22  *Pacific Bancorp., Inc. v. Helfer*, 224 F.3d 1117, 1120-28 (9th Cir. 2000), the Ninth
    Circuit held, contrary to *Hindes*, that the plaintiff shareholders could pursue a

23  private claim for an accounting, stating that "[o]ur holding is limited to a finding
    that when inadequate or meaningless information is provided to a shareholder of a

24  bank in receivership with the FDIC, the shareholders may sue for an accounting
    'consistent with the accounting practices and procedures established by the

25  [FDIC].'"  *Id.  See Crowe v. Smith*, 852 F. Supp. 533, 537-40 (W.D. La. 1994)
    (allowing a disappointed bidder to assert a private right of action pursuant to 12

26  U.S.C. § 1441a(a)(14)(B)(viii) on the ground that the RTC allegedly violated
    mandatory provisions in its Strategic Plan requiring it to comply with procedures

27  and standards that protect and benefit offerors).  Neither *First Pacific Bancorp* nor
    *Crowe* suggested that there is a private right of action against the FDIC for its

28  alleged failure to maximize returns or minimize losses.

of action: "(1) whether the plaintiff is a member of the class for whose special benefit the statute was created; (2) whether there is either an explicit or implicit legislative intent to create or deny a private remedy; (3) whether an implied remedy is consistent with underlying policies of the statute; and (4) whether the cause of action is one that traditionally is relegated to state law and the area is a state concern so that it would be inappropriate to imply a federal cause of action." *Hindes*, 137 F.3d at 169-70 (citing *Cort*, 422 U.S. at 78). *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (holding that a right of action must be clear from the text of the statute). Because the implication of a private right of action depends upon congressional intent, courts are to focus their inquiry on the first two *Cort* factors, and the inquiry "ends upon our conclusion that the first two *Cort* factors are not met." *Id.* at 170-71 (quoting *California v. Sierra Club*, 451 U.S. 287, 298 (1981), for the proposition that "the second two factors 'are only of relevance if the first two factors give indication of congressional intent to create the remedy'").

First, Deutsche Bank is not a member of the class intended to benefit from the statute. "The FDIC's duty to maximize gain and minimize loss primarily is intended to benefit the insurance fund by minimizing the claims against it, thereby reducing the cost to the taxpayers." *Hindes*, 137 F.3d at 170. *See Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *8-9 (Section 1821(d)(13)(E) "imposes duties on the FDIC in an attempt to benefit the fund and taxpayers). "Thus, the benefits gained by the shareholders and other claimants are incidental to the primary intended beneficiaries, the insurance fund and the taxpayers." *Hindes*, 137 F.3d at 170. *See Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *9 ("a disappointed bidder . . . clearly is not a member of a class for whose special benefit Congress created" Section 1821(d)(13)(E); "any benefit to bidders for FDIC properties appears to be incidental to safeguarding the FDIC fund"). Moreover, there is no specific mention of trustees, or individuals in Deutsche Bank's position, in the text of the relevant statutes. *See Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *9 (no specific mention of bidders in the

statutes). Because Sections 1821(d)(13)(E) and 1823(d)(3) "clearly inure[] to the benefit of other classes, the first *Cort* factor militates strongly against granting a private remedy." *Hindes*, 137 F.3d at 171.

Second, there is no evidence of a legislative intent to create a private right of action under Sections 1821(d)(13)(E) or 1823(d)(3). *See Hindes*, 137 F.3d at 171 ("there is no statement in the legislative history which suggests that Congress intended either to create or deny a private right of action to enforce the FDIC's duty to maximize gain and minimize loss"); *Pen-Del Mortgage Assocs.*, 1994 U.S. Dist. LEXIS 16741 at *8-9 ("Congress in the legislative history of neither [the Federal Deposit Insurance Corporation Improvement Act] nor FIRREA evinced an intent to disturb the established line of cases holding that the FDIC or RTC owes its duty of care only to the insurance fund, not to the public at large, borrowers, or indeed to prospective purchasers"). To the contrary, "portions of the legislative history, when considered in combination with the statutory scheme in its entirety, evidence the intent on the part of Congress *not* to create such a private right of action." *Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *10-13 (emphasis in original) (because "two provisions of FIRREA expressly granted a private right of action, . . . the court can infer that Congress did not intend to create a private right of action with respect to the silent provisions of the statute").

Because the first two *Cort* factors do not demonstrate a congressional intent to create a private cause of action under Sections 1821(d)(13)(E) or 1823(d)(3), there is no need to consider the remaining two *Cort* factors. *See Hindes*, 137 F.3d at 171. However, as to the third *Cort* factor, implying a private cause of action "would be fundamentally inconsistent with the extensive latitude granted by Congress to the FDIC in the exercise of its statutory powers."[9] *Mosseri*, 2001 U.S. Dist. LEXIS

---

[9] The fourth *Cort* factor is satisfied because "actions against federal entities to enforce rights granted under federal law are not traditionally relegated to state law." *Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *14. However, this fact cannot support a private right of action where the other *Cort* factors do not support such a right of

20

18899 at *13-14.  Deutsche Bank thus cannot pursue a claim for breach of fiduciary duty against the FDIC based upon an alleged failure to comply with the statutes identified in the Complaint, and Count Six must therefore be dismissed.

### C.  Counts Seven and Eight do Not Allege Actionable Taking in Violation of the Fifth Amendment.

In Counts Seven and Eight, Deutsche Bank alleges, respectively, that the Receivers took Trust property without just compensation in violation of the Fifth Amendment (1) by transferring servicing rights to OneWest without also transferring seller obligations and (2) by depriving Deutsche Bank of the opportunity to replace or appoint the successor servicer for the Trusts.  *See* Complaint, ¶¶ 175-97.  The counts allege that the FDIC "exercised its authority under 12 U.S.C. § 1821," *id.*, ¶¶ 179, 189, and thereby deprived Deutsche Bank of rights under the Governing Agreements, *see id.*, ¶¶ 180-81, 190-91.  Deutsche Bank's takings claims fail because: (1) these counts purport to state an implied claim for damages against the FDIC based on an alleged constitutional violation, and the Supreme Court has refused to "impl[y] a *Bivens*-type cause of action directly against a federal agency," *FDIC v. Meyer*, 510 U.S. at 483-86 (such a remedy is available only as to federal officers); and (2) such claims must be asserted against the United States and, if seeking more than $10,000, they must be asserted in the Court of Federal Claims, *see Acceptance Ins. Cos. v. United States*, 503 F.3d 1328, 1337-38 (Fed. Cir. 2007) (holding that (a) a takings claim is properly brought against the United States, not against the agency whose actions give rise to the claim and (b) the Court of Federal Claims has exclusive jurisdiction notwithstanding agency sue-and-be-sued clause).

To the extent the takings claims are predicated upon the theory that the FDIC violated its statutory obligations, they fail because no takings claim can be based

action.  *See Hindes*, 137 F.3d at 171; *Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *14.

1  upon a governmental agency's violation of a statute.  *See*, *e.g.*, *Acacia Tech., Inc. v.*

2  *United States*, 458 F.3d 1327, 1330-31 (Fed. Cir. 2006); *Lion Raisins, Inc. v. United*

3  *States*, 416 F.3d 1356, 1369-70 (Fed. Cir. 2005).  Accordingly, the takings claims

4  must be predicated upon a contention that the FDIC acted in accordance with its

5  statutory obligations.

6      The factors that have "particular significance" in the regulatory takings

7  analysis are: "(1) the character of the government action; (2) the economic impact of

8  the regulation on the claimant; and (3) the extent to which the regulation has

9  interfered with reasonable investment-backed expectations."  *Branch ex rel. Maine*

10  *Nat'l Bank v. United States*, 69 F.3d 1571, 1578-79 (Fed. Cir. 1995).

11      The government did not appropriate Deutsche Bank's property for its own

12  use.  Rather, the alleged "interference with [Deutsche Bank's] property rights"

13  results from "a public program that adjusts the benefits and burdens of economic life

14  to promote the common good."  *Id.* at 1579 (internal quotation marks omitted).  The

15  Complaint alleges that "the FDIC in its corporate capacity benefited from the sale of

16  IndyMac's servicing rights to OneWest because it used the profits to pay IndyMac's

17  insured depositors and to protect the deposit insurance fund."  Complaint, ¶ 151.

18      Further, Deutsche Bank and the Certificate Holders whose interests it

19  represents could not have had a reasonable investment-backed expectation that the

20  FDIC would forego its statutory powers under FIRREA and, in particular, that they

21  would avoid the broad powers of the FDIC as receiver in the disposition of

22  IndyMac's assets and liabilities were that bank to fail.  Bankers have no

23  "expectation of compensation for the regulatory actions taken by the government,"

24  given the "expansive statutory regulatory system" and the history of frequent

25  statutory amendments.  *California Housing Securities, Inc. v. United States*, 959

26  F.2d 955, 958-59 (Fed. Cir. 1992).

27      FIRREA, and in particular 12 U.S.C. § 1821(d)(2)(G), had been enacted by

28  the time that the Trusts at issue were formed.  Deutsche Bank and the Certificate

1   Holders assumed their rights and obligations and derived their benefits under the

2   Governing Agreements knowing the Receivers had the statutory power to transfer

3   servicing rights without consent.  Having voluntarily subjected themselves to this

4   comprehensive regulatory framework by contracting with a federally insured bank

5   in a pervasively regulated industry, Deutsche Bank and the Certificate Holders

6   cannot claim a reasonable expectation that, were IndyMac to fail, the FDIC would

7   refrain from exercising its extremely broad statutory powers under 12 U.S.C.

8   § 1821(d) as it deemed appropriate for the benefit of the Deposit Insurance Fund and

9   the public.  *Cf. Meriden Trust & Safe Deposit Co. v. FDIC*, 62 F.3d 449, 455 (2[d]

10  Cir. 1995) (where a bank continued to conduct business after enactment of FIRREA,

11  it lacked reasonable investment-backed expectations as to application of FIRREA if

12  a bank failed).  If FIRREA's enactment after the formation of the contracts in

13  *Meriden* did not constitute a taking, then the exercise of statutory powers pursuant to

14  FIRREA – which was in effect at the time of contract formation in this case – cannot

15  be a taking either.

16
17           **D.    Counts Nine and Ten do Not Allege Actionable Violations of the**
                 **Due Process Clause of the Fifth Amendment.**

18          Counts Nine and Ten allege that "[t]he FDIC failed to provide the Trustee or

19  the Trusts with due process of law in connection with the takings described herein"

20  and thereby violated the Fifth Amendment.  Complaint, ¶¶ 198-205.  As a matter of

21  law, there is no implied cause of action for damages against the FDIC under the

22  Fifth Amendment's Due Process Clause.  *See Meyer*, 510 U.S. at 475-86; *Bruns v.*

23  *National Credit Union Admin.*, 122 F.3d 1251, 1255 (9th Cir. 1997) (no implied

24  cause of action against federal agency for alleged violation of Fifth Amendment due

25  process rights).  *See also Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66-70

26  (2001) (implied claim for damages based on alleged constitutional violation may be

27  brought only against individuals, not federal agencies).

28

                                          23

1
2
## II.   DEUTSCHE BANK IS NOT ENTITLED TO ADMINISTRATIVE SUPERPRIORITY OR A CONSTRUCTIVE TRUST.

3        In an attempt to obtain priority over other claimants, Deutsche Bank seeks

4   (1) priority "that is superior or equivalent to an administrative claim" in recovering

5   damages and (2) the imposition of a constructive trust.  These claims fail because 12

6   U.S.C. § 1821(j) deprives the Court of jurisdiction to grant such relief,[10] and the

7   requested relief is unsupported by law.

8
### A.   Deutsche Bank's Allegations Seeking Superpriority Should Be Stricken as Statutorily Barred and Lacking a Legal Basis.
9

10        Deutsche Bank seeks administrative or greater claim priority recovery from

11   the Receivership estates based on the Receivers' allegedly wrongful conduct.  *See*

12   Complaint, ¶¶ 129, 137, 185, 196 ("wrongful conduct in its administration of the . . .

13   receivership"); *id.*, ¶ 131 ("the FDIC's failure to cure" pre-failure breaches); *id.*,

14   ¶¶ 140, 145, 153 (the FDIC's conduct was willful and exceeded its lawful

15   authority); *id.*, ¶¶ 170, 174 (the Receivers acted wrongfully and failed to comply

16   with fiduciary duties).  These allegations should be stricken pursuant to Rule 12(f)

17   because under 12 U.S.C. § 1821(j) this Court lacks jurisdiction to compel the

18   Receivers to alter the priority scheme set forth in 12 U.S.C. § 1821(d)(11)(A).[11]

19   _____

20   [10]    Section 1821(j) provides:

21           Except as provided in this section, no court may take any action, except
         at the request of the Board of Directors by regulation or order, to
22       restrain or affect the exercise of powers or functions of the [FDIC] as a
         conservator or a receiver.

23   12 U.S.C. § 1821(j).  *See Freeman v. FDIC*, 56 F.3d 1394, 1398-99 (D.C. Cir.
     1995) (Section 1821(j) "effect[s] a sweeping ouster of courts' power to grant
24   equitable remedies to parties like the [plaintiffs]," barring not only injunctive
     relief but also declaratory relief that would restrain the FDIC from fulfilling
25   its statutory duties as receiver).

26   [11]    Section 1821(d)(11)(A) establishes the following priority scheme for payments
     by FDIC-Receiver:

27           (A)  Subject to [12 U.S.C. § 1815(e)(2)(C)], amounts realized
         from the liquidation or other resolution of any insured depository
28       institution by any receiver appointed for such institution shall be
         distributed to pay claims (other than secured claims to the extent of any

1   Neither the statute nor the applicable FDIC regulations suggest that alleged

2   "bad acts" by the FDIC as receiver or conservator will provide the "victim" of such

3   acts a claim priority advantage over (1) otherwise similarly situated claimants or

4   (2) claimants entitled to a higher priority.  Instead, 12 U.S.C. § 1821(j) bars courts

5   from taking any action to restrain or affect the FDIC's exercise of its powers as a

6   receiver, including the power to distribute liquidation funds under 12 U.S.C.

7   § 1821(d)(11)(A).

8   In *Courtney v. Halleran*, 485 F.3d 942, 946-50 (7th Cir. 2007), *cert. denied*,

9   552 U.S. 1184 (2008), the plaintiffs alleged that the FDIC had "fail[ed] properly to

10  implement the distribution priorities of § 1821(d)(11)," and they sought declaratory,

11  injunctive, and other equitable relief against the FDIC to enforce the statutory

12  priority scheme.  *Id.* at 946, 950.  The Seventh Circuit held that the relief sought by

13  plaintiffs was barred by "the anti-injunction language of § 1821(j)," which

14  "prohibits a court from taking any action either to restrain or affect the FDIC's

15  exercise of its powers as a receiver, unless authorization can be found elsewhere in

16  the section."  *Id.* at 948.  The Seventh Circuit recognized that "the FDIC had

17  specific statutory authorization for its actions" because "[i]t has the power, under

18  [12 U.S.C.] § 1821(d)(2)(G), to direct where funds should go."  *Id.* at 949.

19

---

20  such security) in the following order of priority:

  (i)  Administrative expenses of the receiver.

22  (ii)  Any deposit liability of the institution.

  (iii)  Any other general or senior liability of the institution (which is not a liability described in clause (iv) or (v)).

24  (iv)  Any obligation subordinated to depositors or general creditors (which is not an obligation described in clause (v)).

26  (v)  Any obligation to shareholders or members arising as a result of their status as shareholders or members (including any depository institution holding company or any shareholder or creditor of such company).

28  12 U.S.C. § 1821(d)(11)(A).

1    Here, the FDIC's specific statutory authorization for denying superpriority to

2  Deutsche Bank's claims is derived not only from its general power under 12 U.S.C.

3  § 1821(d)(2)(G) to direct funds, but from the priority scheme set forth in Section

4  1821(d)(11)(A).  Under *Courtney*, if courts lack jurisdiction to require the FDIC to

5  ***enforce*** the statutory priority scheme because Section 1821(d)(2)(G) grants the

6  FDIC the right to make payments as it sees fit, they certainly lack jurisdiction to

7  require the FDIC to ***depart from***  that scheme when the FDIC's power to enforce the

8  scheme is consistent with Section 1821(d)(11) as well as Section 1821(d)(2)(G).

9  The Court cannot grant Deutsche Bank a claim priority advantage.

10    Deutsche Bank presumably seeks to "jump the creditor queue" by claiming

11  administrative priority because it recognizes that it will be unable to recover most or

12  all of the $6 billion to $8 billion that it seeks if it is required "to advance [its] claims

13  against a limited, and perhaps inadequate, estate."  *FDIC v. Hopping Brook Trust*,

14  941 F. Supp. 256, 258-59 (D. Mass. 1996) (rejecting defendants' attempt to recover

15  from FDIC-Corporate for actions taken by the FDIC as receiver), *aff'd*, 117 F.3d

16  639 (1st Cir. 1997).  *Cf. Battista v. FDIC*, 195 F.3d 1113, 1116-17 (9th Cir. 1999)

17  (authorizing FDIC-Receiver's use of receiver's certificates as manner of payment

18  because "[t]o require the FDIC to pay certain creditors in cash would allow those

19  creditors to 'jump the line,' recovering more than their pro rata share of the

20  liquidated assets, if the financial institution's debts exceed its assets") (quoting *RTC*

21  *v. Titan Fin. Corp.*, 36 F.3d 891, 892 (9th Cir. 1994)).

22    By granting this motion to strike, the Court can resolve an issue that may be

23  dispositive of this matter regardless of the merits of Deutsche Bank's claims.

24  Because this motion to strike may have the effect of "streamlining the ultimate

25  resolution of the action," it is "well taken."  *Hart*, 204 F.R.D. at 457.

26    If the Court strikes Deutsche Bank's allegations seeking superpriority

27  recovery and determines that Deutsche Bank's claims are claims of general

28  creditors, the Board's November 12, 2009 worthlessness determination means that

even if Deutsche Bank were to obtain a money judgment on its claims against the FDIC-Receivers, it would not be able to obtain a distribution on the judgment from either of the receiverships.  Under these circumstances, courts have consistently dismissed actions on the grounds of the absence of a "case or controversy" or prudential mootness.  *See*, *e.g.*, *Henrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007) (holding that the plaintiff's claim against the FDIC for damages was moot and did not satisfy the case-or-controversy requirement where no assets remained in the receivership estate to satisfy the claim); *FDIC v. Kooyomjian*, 220 F.3d 10, 14-15 (1st Cir. 2000) (holding that a claim against a failed bank was prudentially moot and did not satisfy the case-or-controversy requirement when the FDIC had determined there were no assets with which to satisfy the claim); *First Indiana Federal Sav. Bank v. FDIC*, 964 F.2d 503, 506-07 & n.7 (5th Cir. 1992) (holding that the Board's worthlessness determination was conclusive and rendered plaintiff's damages claims moot); *Adams v. RTC*, 927 F.2d 348, 354 (8th Cir. 1991) (holding that a claim was moot where FSLIC would never possess any assets to satisfy the claim, and that the court was bound by the Board's worthlessness determination).

In the last month, the Central District has twice dismissed monetary claims against the IndyMac Receiver on this ground.  *See Tinoco v. IndyMac Bank, F.S.B.*, Case No. CV 09-6174 JFW (JCx), at 4-5 (C.D. Cal. Feb. 5, 2010) (Ex. B hereto) (holding that plaintiff's claims for monetary relief against the IndyMac Receiver were moot because "[d]ue to the FDIC's worthlessness determination, Plaintiff's alleged claims for monetary relief cannot be redressed by a favorable judicial decision"); *Tam*, Case No. CV 08-6458 MMM (AJWx), at 10-20 (Ex. A hereto) (holding that the doctrine of prudential mootness barred general liability claims brought against the FDIC as receiver of IndyMac and IndyMac Federal based upon the Board's no value determination).

1

2

**B.** <u>**Count Eleven for Constructive Trust Should be Dismissed for**</u>
<u>**Lack of Subject Matter Jurisdiction and Failure to State a Claim.**</u>

3     Count Eleven seeks imposition of a constructive trust on the proceeds of the

4   OneWest transaction against the FDIC in all capacities.  *See* Complaint, ¶¶ 206-11.

5   Deutsche Bank's claim for constructive trust is jurisdictionally barred by 12

6   U.S.C. § 1821(j), which "'effects a sweeping ouster of courts' power to grant

7   equitable remedies. . . .'"  *Hanson v. FDIC as Receiver for New Bank of New*

8   *England*, 113 F.3d 866, 871 (8th Cir. 1997) (quoting *Freeman v. FDIC*, 56 F.3d

9   1394, 1399 (D.C. Cir. 1995)).  "Imposition of a constructive trust would necessarily

10  'restrain or affect the exercise of powers or functions of the [FDIC] as a conservator

11  or a receiver" because such a constructive trust "would necessarily restrain (1) the

12  FDIC's rights to title over [IndyMac Federal's] assets, (2) the FDIC's rights to

13  realize upon [IndyMac Federal's] assets, and (3) the FDIC's rights to transfer

14  [IndyMac Federal's] assets."  *Id.* at 871-72 (quoting 12 U.S.C. § 1821(j)).  "As a

15  result, pursuant to § 1821(j), the district court is barred from hearing [Deutsche

16  Bank's] constructive trust claim."  *Id.  See RPM Invs., Inc. v. RTC*, 75 F.3d 618,

17  620-21 (11th Cir. 1996) (Section 1821(j) deprives the court of jurisdiction to grant

18  the specified relief, even if the RTC breached a contract or violated a statute).

19     In the meet-and-confer process, Deutsche Bank asserted that Section 1821(j)

20  does not apply because the FDIC allegedly deviated from its statutory authority.

21  However, the case law "distinguishe[s] between exercising a function or power that

22  is clearly outside the statutory authority of the receiver, and unlawfully exercising a

23  function or power authorized by federal banking law."  *Centennial Assocs. Ltd.*

24  *Partnership v. FDIC*, 927 F. Supp. 806, 812-13 (D.N.J. 1996) (discussing *Ward v.*

25  *RTC*, 996 F.2d 99, 103-04 (5th Cir. 1993)).  Where "the receiver "engag[es] in a kind

26  of activity in which it is expressly authorized by statute to engage," such as the sale

27  of institution assets, Section 1821(j) bars non-monetary relief regardless of the

28  wisdom of the receiver's actions.  *Ward*, 996 F.2d at 103 ("[w]hen the RTC

determines the method, terms and conditions of the disposition of assets, it is indisputably exercising its discretion and judgment in administering the affairs of a failed or troubled financial institution through liquidation of receivership assets").[12]

In the meet-and-confer process, Deutsche Bank also relied on *Sharpe v. FDIC*, 126 F.3d 1147, 1154-55 (9th Cir. 1997), which held that "the FDIC did not act within its statutorily granted powers in breaching [a] settlement agreement because recording of the reconveyance of the debtor's deed of trust cannot be considered a statutorily authorized function of the FDIC." *Id.* Here, by contrast, the FDIC exercised its statutorily authorized powers to "realize upon the assets of the institution" and to "transfer any asset or liability of the institution in default (including any assets and liabilities associated with any trust business) without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. §§ 1821(d)(2)(E), 1821(d)(2)(G)(i)(II).

Furthermore, Deutsche Bank's Count Eleven for a constructive trust fails to state a claim because 12 U.S.C. § 1821(d)(13)(C) provides that "no attachment or execution may issue by any court upon assets in the possession of the receiver." *Id.* Even though this provision does not specifically refer to constructive trusts, "the relief requested by [Deutsche Bank] to carve out a portion of the receivership assets for [its] benefit constitutes a form of attachment because it would preclude [the FDIC] as Receiver from disposing of receivership assets."[13] *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030-31, *modified*, 60 F.3d 1507 (11th Cir. 1995).

---

[12] *See Sahni*, 83 F.3d at 1059-60 ("courts have applied § 1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is alleged to have violated state law and equitable remedies are available"); *Volges v. RTC*, 32 F.3d 50, 52-53 (2d Cir. 1994) (the RTC's statutory right to dispose of assets means Section 1821(j) bars injunction even if disposition breaches a contract); *Centennial Assocs. Ltd. Partnership*, 927 F. Supp. at 812-13 (because "the FDIC's assignment of mortgages here was a function assigned to it under the statute . . . , it is irrelevant whether the receiver exercised its statutory authority unwisely or even illegally").

[13] In addition, "a constructive trust is a remedial device, not a substantive claim on which to base recovery." *Lund v. Albrecht*, 936 F.2d 459, 464 (9th Cir. 1991). *See, e.g., PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 398, 58 Cal. Rptr. 3d 516, 527 (2007) ("[a] constructive

1

## **CONCLUSION**

2        For the reasons stated herein, the Receivers respectfully ask the Court to

3    grant their motions to dismiss and to strike.

4    DATED:  February 23, 2010        LUCE, FORWARD, HAMILTON & SCRIPPS LLP
                                      Michael H. Bierman
5                                     Jess R. Bressi
                                      Jeffrey D. Wexler
6                                     Sekita E. Grant

7

8                                     By:  /s/ Michael H. Bierman
9                                          Michael H. Bierman
                                           Attorneys for Defendants Federal Deposit
10                                         Insurance Corporation, as Receiver for
                                           IndyMac Bank, F.S.B. and as Receiver for
11                                         IndyMac Federal Bank, F.S.B.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   201046411.3

27   _____

28   trust, however, is an equitable *remedy*, not a substantive claim for relief") (emphasis
     in original).  Deutsche Bank cannot seek a constructive trust via a stand-alone claim.

30