MORGAN, LEWIS & BOCKIUS LLP
JAMI WINTZ MCKEON, State Bar No. 237923
jmckeon@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1405
Fax: 415.442.1001

DAVID L. SCHRADER, State Bar No. 149638
dschrader@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel: 213.612.2500
Fax: 213.612.2501

Attorneys for Plaintiff
Deutsche Bank National Trust Company, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| Deutsche Bank National Trust Company, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B., <br><br> Plaintiff, <br><br> vs. <br><br> Federal Deposit Insurance Corporation, as Receiver of IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator and Receiver of IndyMac Federal Bank F.S.B.; Federal Deposit Insurance Corporation, in its corporate capacity; and Federal Deposit Insurance Corporation, as Government Entity, <br><br> Defendants. | Case No. CV09-3852 GAF (FFMx) <br><br> **OPPOSITION OF PLAINTIFF DEUTSCHE BANK NATIONAL TRUST COMPANY TO THE MOTION OF DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION IN ITS CORPORATE CAPACITY TO DISMISS THE COMPLAINT** <br><br> Date: September 13, 2010 <br> Time: 9:30 a.m. <br> Place: Courtroom 740, Roybal Building <br> Hon. Gary A. Feess |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21826930.1

PLAINTIFF'S OPPOSITION
TO MOTION TO DISMISS

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT .................................................................................. 2

STATEMENT OF FACTS ......................................................................................... 4

    A.    IndyMac and Its Successors ................................................................ 4

    B.    The Governing Agreements ............................................................... 4

    C.    Sale to OneWest ................................................................................. 6

LEGAL STANDARD ................................................................................................ 7

ARGUMENT .............................................................................................................. 7

I.    THE FACTUAL ALLEGATIONS AGAINST THE FDIC-C SATISFY RULE 8 ............................................................................................ 7

II.    FDIC-C CAN BE HELD LIABLE FOR BREACH OF CONTRACT AS A NON-SIGNATORY BECAUSE IT BENEFITED FROM THE SALE TO ONEWEST ................................................................................. 9

III.    IN THE EVENT THAT THE COURT WERE TO CONCLUDE THAT THE ALLEGATIONS OF THE COMPLAINT ARE NOT SUFFICIENT TO SUPPORT THE CLAIMS AGAINST THE FDIC-C, THE TRUSTEE SHOULD BE PERMITTED TO AMEND ITS COMPLAINT ............................................................................................. 11

IV.    CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................................................ 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................................... 7

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003) ................................................................................. 7

*Dial-A-Mattress Operating Corp. v. Mattress Madness*,
   847 F. Supp. 18 (E.D.N.Y. 1994) .......................................................................... 10

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................... 11

*Heiko v. FDIC*,
   No. 93-cv-8638, 1995 WL 117604 (S.D.N.Y. Mar. 17, 1995) .............................. 5

*Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc.*,
   No. 05-CV-7776, 2007 WL 1701813 (S.D.N.Y. June 12, 2007) ........................... 9

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) ................................................................................... 7

**Statutes**

12 U.S.C. § 1821(e)(8)(D)(i) ......................................................................................... 5

12 U.S.C. § 1821(e)(9) ................................................................................................... 5

**Other Authorities**

Williams, Shelia and Basharis, George,
   House Rep. No. 109-31, pt. 1, at 119 (2005) .......................................................... 5

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Palo Alto

DB2/21826930.1     ii     PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

Plaintiff Deutsche Bank National Trust Company, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B. (the "Trustee"), hereby submits its Opposition to the motion filed by defendant the Federal Deposit Insurance Corporation in its corporate capacity ("FDIC-C") to dismiss the claims made against FDIC-C in the Trustee's Complaint filed on May 29, 2009 pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "FDIC-C Motion").  The Trustee stated claims against the FDIC-C in the following counts of its Complaint:  Count 3 (Breach of Contract for Sale to OneWest), Count 7 (Unconstitutional Takings for Sale to OneWest and Splitting Obligations), Count 8 (Unconstitutional Takings for Right to Appoint Successor Servicer), Count 9 (Due Process Violation for Sale to OneWest and Splitting Obligations), Count 10 (Due Process Violations for Right to Appoint Successor Servicer), and Count 11 (Constructive Trust).

The FDIC-C adopted and incorporated by reference in its motion and brief the arguments with respect to Counts 7-11 of the Complaint made in the Motion to Dismiss and Strike (the "FDIC-R Motion") filed by the FDIC in its capacities as Receiver for IndyMac Bank, F.S.B. and IndyMac Federal Bank, F.S.B. ("FDIC-R"), and the Trustee likewise adopts and incorporates by reference herein the relevant portions of the Trustee's Opposition to the FDIC-R Motion.[1]   In this brief, the Trustee addresses only those arguments contained in the separate brief of the FDIC-C, i.e., the argument with respect to the sufficiency of the allegations against the FDIC-C, and the argument with respect to the breach of contract claim against the FDIC-C in Count 3.  The Trustee incorporates herein by reference from its Opposition to the FDIC-R Motion to be filed on July 19, 2010 the arguments related to the remaining counts against the FDIC-C.

---

[1]  Pursuant to a stipulation among the parties approved by the Court, the Trustee's Opposition to the FDIC-R Motion will be filed separately with the Court on July 19, 2010.

## SUMMARY OF ARGUMENT

The FDIC-C devotes its brief to arguing that the Trustee failed to plead that the FDIC-C was a party to the Governing Agreements or to the contract transferring the relevant servicing rights to OneWest, and thus cannot be liable for breach of contract. What the FDIC-C omits from the analysis, however, is that it participated in and was a contracting party to both (a) the transaction that first transferred virtually all of IndyMac's assets and liabilities to the FDIC, as receiver of IndyMac Federal Bank ("IndyMac Federal"), and (b) the second transaction in which FDIC, as receiver, sold those same assets to OneWest Bank, F.S.B. ("OneWest"). The FDIC-C benefited economically from the sale of those assets (the servicing rights) to OneWest because the proceeds reduced, dollar-for-dollar, the payments that had to be made out of the FDIC-C's Deposit Insurance Fund. The various transactions in this case, including the transfer of IndyMac's assets to IndyMac Federal, caused harm to the Trusts and the Trustee. The FDIC-C was a contracting party in the OneWest sale transaction, and had a direct financial stake in the transfers that wrongfully stripped the Trusts and the Trustee of their rights. The Complaint properly pleads as much.

The FDIC-C essentially argues in its motion that the Trustee failed to plead sufficiently against the FDIC-C because general allegations against the FDIC are not adequate. The FDIC-C is wrong for three reasons. First, the Complaint does contain allegations specifically directed to the FDIC-C as noted herein. In addition, the Complaint contains numerous allegations against the FDIC in its multiple capacities; what the FDIC-C is attempting to do in its motion is argue the merits of whether it should be held liable with respect to those allegations, but the allegations themselves are made against the FDIC-C and are sufficient at the complaint stage. Second, as discussed below, the FDIC failed to provide to the Trustee, despite its request, many of the contracts and schedules evidencing exactly which FDIC entity signed which agreement in which capacity, and thus

1  deprived the Trustee of the ability to provide more specificity at the time it was
2  required to file its Complaint.  Third, the Complaint alleges in detail a series of
3  transactions entered into by the FDIC in its various capacities from which the
4  FDIC-C received a direct economic benefit.  Given the above, the Complaint
5  meets the required legal standard and should not be dismissed.

6       In fact, the factual allegations against the FDIC-C in the Complaint satisfy
7  Rule 8 and plausibly suggest that the FDIC-C participated in the overall process
8  that led to the sale of the servicing rights to OneWest, with the corresponding
9  legal and financial damage to the Trusts and the Trustee.  Moreover, the FDIC-C
10 can be held liable for breach of contract as a non-signatory to the Governing
11 Agreements because it participated in and benefited directly from the sale to
12 OneWest, which directly caused certain of the breaches of the Governing
13 Agreements alleged in the Complaint.  The FDIC-C received the proceeds from
14 the sale to OneWest, which helped replenish payments made from the Deposit
15 Insurance Fund as a result of IndyMac's failure.  Accordingly, the FDIC-C's
16 Motion should be denied.

17      In the alternative, the Complaint alleged that the Trustee had been denied
18 access to relevant documents and information relating to the transactions at issue.
19 The Trustee now has access to some of those documents (including, for example,
20 the guarantee that the FDIC-C was required to deliver as a condition precedent to
21 the closing of the OneWest sale transaction).  If the Court believes that the
22 Complaint is insufficient, the Court should grant leave to the Trustee to file an
23 amended complaint re-pleading its claims against the FDIC-C with additional
24 specificity.
25 ///
26 ///
27 ///
28 ///

## STATEMENT OF FACTS

### A. IndyMac and Its Successors

As detailed in the Trustee's Complaint, the Trustee serves as trustee of more than 240 mortgage securitization trusts created by IndyMac Bank, F.S.B. ("IndyMac"). *See* Compl., ¶ 1.  IndyMac was an FDIC-insured federal savings bank chartered and regulated by the Office of Thrift Supervision (the "OTS"). *Id.* at ¶ 20.  On July 11, 2008, the Director of the OTS closed IndyMac and appointed the FDIC as IndyMac's receiver. *Id.* at ¶ 21.  In the same Order, the OTS authorized the creation of a new federally-chartered savings bank, IndyMac Federal, for which the FDIC was appointed as conservator. *Id.* at ¶ 22.  On July 11, 2008, a purchase and assumption agreement was entered into by and among: the FDIC as receiver of IndyMac; the FDIC in its corporate capacity; and the FDIC as conservator of IndyMac Federal. *Id.* at ¶ 23.  Pursuant to that purchase and assumption agreement, substantially all of IndyMac's assets and liabilities, including its operational platform, its personnel and many of its ongoing operations, were purportedly transferred to and assumed by IndyMac Federal. *Id.* The purportedly transferred assets and liabilities included all of IndyMac's interests, rights and obligations with respect to the securitization Trusts evidenced by the Governing Agreements. *Id.* For more than 8 months thereafter, the FDIC operated the business of IndyMac, specifically claiming to perform the obligations and to be entitled to take (and taking) the rights and benefits associated with the Governing Agreements related to the Trusts. *Id.* at ¶ 24.

### B. The Governing Agreements

Prior to IndyMac's failure, the Trusts were created, the mortgage-backed securities were issued, and the mortgage loans were sold, transferred and assigned to the Trusts pursuant to the Governing Agreements. *Id.* at ¶ 36.  The Governing Agreements establish and regulate the Trusts and the relationships among the parties-in-interest to the Trusts. *Id.* As detailed in the Complaint, the Governing

Agreements set forth representations and warranties by IndyMac in its capacity as seller and servicer of the mortgage-backed securities, as well as the parties' rights and obligations. *Id.* at ¶¶ 37-54.

The Governing Agreements are "qualified financial contracts" under FIRREA, which defines "qualified financial contract" as "any securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, and any similar agreement." *See* 12 U.S.C. § 1821(e)(8)(D)(i). "Securities contract . . . means **a contract for the purchase, sale, or loan of** a security, a certificate of deposit, **a mortgage loan**, any interest in a mortgage loan . . . ." *See* 12 U.S.C. § 1821(e)(8)(D)(i).[2] QFCs have been recognized to include the transfer of mortgage loans on a secondary market. *See Heiko v. FDIC*, No. 93-cv-8638, 1995 WL 117604, at *5 (S.D.N.Y. Mar. 17, 1995) ("By the statute's terms, the provision [addressing QFCs] *reaches only a secondary market for mortgage obligations*; the loan itself is not to be considered a QFC.") (emphasis added). The PSAs are QFCs because they affect the sale and purchase of mortgage loans. As set forth in one of the PSAs, "the Seller, concurrently with the execution and delivery of this Agreement, **hereby transfers** to the Depositor, without recourse, **all the interest of the Seller in each Mortgage Loan."** *See, e.g.,* PSA § 2.01 attached hereto as Exhibit A (emphasis added). Because the Governing Agreements are QFCs, the FDIC is bound by the provisions of FIRREA that create special rules relating to QFCs, including the provision that QFCs may not be split. *See, e.g.,* 12 U.S.C. § 1821(e)(9) (stating that the FDIC cannot transfer only the assets or liabilities of a QFC, but must transfer all or none of the contract).

---

[2] In 2005, the definition of "securities contracts" under FIRREA was amended to be consistent with Bankruptcy Code section 741(7). The legislative history and case law surrounding that term is incorporated into the legislative history of FIRREA. *See* Williams, Shelia and Basharis, George, House Rep. No. 109-31, pt. 1, at 119 (2005).

### C. Sale to OneWest

On or about March 19, 2009, the FDIC as conservator of IndyMac Federal purportedly sold certain assets and rights of IndyMac Federal to OneWest for approximately $13.9 billion. Compl. ¶ 62. The sale to OneWest included many valuable rights that IndyMac held under the Governing Agreements or that were otherwise related to the Trusts, but improperly excluded certain of IndyMac's obligations to the Trusts and the Trustee under those same Governing Agreements without making alternate arrangements to assure the performance of those excluded obligations. *Id.* at ¶ 63. Specifically, the sale to OneWest included what the FDIC characterized as IndyMac's "servicing rights," a construct that was not defined in the Governing Agreements and consisted of cherry-picked rights to receive servicing fees and income provided in certain sections of the Governing Agreements. *Id.* The sale, however, purported to exclude certain obligations imposed on IndyMac under the same Governing Agreements, including "any repurchase obligations for breaches of loan level representations, any indemnities relating to origination activities or securities laws or any seller indemnity." *Id.*

IndyMac, the Seller, made multiple ongoing representations pursuant to the PSAs. Pursuant to section 2.03(a) and (b), IndyMac made certain representations and warranties regarding the quality of the mortgage loans. If those representations and warranties are materially breached, IndyMac agrees that it "shall cure such breach in all material respects, and if such breach is not so cured, shall, (i) . . . remove the Mortgage Loan . . . from the Trust Fund and substitute in its place a Substitute Mortgage Loan . . . ; or (ii) repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price in the manner set forth below" in the PSA. *See* PSA § 2.03(c)

With this background in mind, the FDIC's motions to dismiss should be denied for the following reasons.

## LEGAL STANDARD

A complaint may not be dismissed for failure to state a claim where the allegations plausibly demonstrate that the pleader may be entitled to relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929, 940 (2007); s*ee also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (stating that "a claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")). For purposes of evaluating a motion to dismiss, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party. *See Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003).

## ARGUMENT

### I. THE FACTUAL ALLEGATIONS AGAINST THE FDIC-C SATISFY RULE 8

The FDIC-C argues that the factual allegations asserted against it do not satisfy Rule 8. *See* FDIC-C Motion, at 6. In the Ninth Circuit, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be **plausibly suggestive** of a claim entitling the plaintiff to relief. *See Moss*, 572 F.3d at 969 (citing *Iqbal*, 129 S. Ct. at 1949). *Iqbal* elaborated on the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and explained that "a claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Contrary to the FDIC-C's argument, the Trustee alleged facts that are plausibly suggestive that the FDIC-C personally participated in the overall process that led to the selling of the servicing rights to OneWest:

- The FDIC-C entered into a purchase and assumption agreement with the FDIC as conservator that transferred "all of IndyMac's assets and liabilities, including its operational platform, its personnel and many of its ongoing operations" to IndyMac Federal. *See* Compl. ¶ 23.
- The FDIC-C participated in the transaction by which all of IndyMac's obligations and rights under its loan sale and servicing contracts were assigned to OneWest, while cherry picking selected rights and obligations under the Governing Agreements and making no provision for the performance of IndyMac's other obligations to the Trusts and the Trustee. *See* Compl. ¶ 63.[3]
- In selling the Governing Agreements without assuming and assigning the related obligations, the FDIC acted outside the scope of its statutorily defined authority. *See* Compl. ¶ 65.
- The FDIC failed to follow the procedures provided in the Governing Agreements for transferring servicing rights and obligations. *See* Compl. ¶ 67.
- The FDIC-C benefited from the sale to OneWest because it received the proceeds and used them to protect the Deposit Insurance Fund. *See* Compl. ¶ 151.

This case does not involve a single transaction. Rather, through a web of transactions involving the FDIC in all its capacities, harm was caused to the Trusts and the Trustee. The FDIC-C executed and was a party to one of the most important contracts in this case -- the contract that transferred the Trusts' and the Trustee's property to IndyMac Federal -- which in turn led to the OneWest sale that harmed the Trusts and the Trustee and which was effected pursuant to a

---

[3] As explained in the Complaint, any references to "FDIC" should be read as allegations against the FDIC-C. *See* Compl. ¶ 16 ("The term 'FDIC' refers to the FDIC in all or any of its capacities.").

second integrated set of contracts to which the FDIC-C was a contracting party.[4] While the FDIC argues that it cannot be liable in one capacity for its conduct in another capacity, the FDIC cannot be permitted to accomplish through complicated transactions in its various capacities what amounts to a breach of its contracts and/or unconstitutional takings.  The FDIC took the Trusts and the Trustee's property and sold their assets, which provided proceeds that limited the dollars that needed to come out of the Deposit Insurance Fund.  The FDIC in all capacities, including as FDIC-C, benefited at the Trusts' and the Trustee's literal expense and cannot be permitted to shield its conduct by adopting a complex transaction structure which had the effect of obfuscating its very direct involvement in the transaction.  *See* Compl. ¶¶ 151, 182, 193.  The Complaint adequately pleads under Rule 8 the conduct by the FDIC in every capacity.

## II. FDIC-C CAN BE HELD LIABLE FOR BREACH OF CONTRACT AS A NON-SIGNATORY BECAUSE IT BENEFITED FROM THE SALE TO ONEWEST

The FDIC-C also tries to avoid liability by arguing that it was not a signatory to the Governing Agreements.  Despite recognizing the applicability of New York law, the FDIC-C relies mostly on Ninth Circuit cases interpreting California state law.  *See* FDIC-C Motion, at 7.  But under the applicable law, a party can be bound by the terms of a contract to which it is not a signatory based upon its actions.  *See Impulse Mktg. Group v. Nat'l Small Bus. Alliance, Inc.*, No. 05-CV-7776, 2007 WL 1701813, at *5-6 (S.D.N.Y. June 12, 2007).  In *Impulse*, the court found that a non-signatory which provided marketing services to the signatory defendant could be held liable for a breach of contract.  *See id.* at *6.  The

---

[4] Similarly, the FDIC-C argues that it cannot be sued "as a government entity," but that capacity is what gives rise to the Trustee's takings and due process claims.  It is because the FDIC is a government entity that it is subject to takings and due process claims.  The Trustee's response to the FDIC's motion to dismiss those claims is included in the Trustee's response to the FDIC-R Motion and incorporated here by reference.

1   court found that the plaintiff adequately alleged a breach of contract claim by
2   alleging that "defendants played a considerable role in the management and
3   performance of the contract" including by, among other things, making payments
4   on behalf of the signatory. *See id.*

5   Similarly, in *Dial-A-Mattress Operating Corp. v. Mattress Madness*, 847 F.
6   Supp. 18, 20 (E.D.N.Y. 1994), the defendants, who were not contract signatories,
7   received all payments made under contract. *See id*. at 20. The court ruled that
8   defendants "shared in the proceeds of the transaction" and held that sufficient to
9   pierce the corporate veil and bind the non-signatory defendants to the contract.
10  *See id*.

11  The Trustee has alleged that the FDIC-C purported to transfer rights under
12  the Governing Agreements and received a significant benefit from the breach of
13  the Governing Agreements. *See* Compl. ¶¶ 64, 151, 182, 193. The FDIC-C
14  received the proceeds from the sale to OneWest, which helped to replenish
15  payments made out of the Deposit Insurance Fund as a result of IndyMac's
16  failure. The FDIC-C's failure to fulfill the obligations under the Governing
17  Agreements further enriched the FDIC-C. The FDIC has admitted that its conduct
18  benefited the Deposit Insurance Fund and that it participated in the sale of
19  substantially all of IndyMac's assets, including the servicing rights, to IndyMac
20  Federal. *See* FDIC-R Motion, at 23. The Trustee **has** sufficiently plead the FDIC-
21  C's involvement in the OneWest sale transaction which was the direct cause of
22  certain of the breaches alleged in the Complaint. Even if the FDIC-C was not a
23  signatory to certain of the agreements here at issue, the Trustee has adequately
24  pleaded facts that, at the motion to dismiss stage, are sufficient to support a claim
25  for breach of contract.
26  ///
27  ///
28  ///

### III. IN THE EVENT THAT THE COURT WERE TO CONCLUDE THAT THE ALLEGATIONS OF THE COMPLAINT ARE NOT SUFFICIENT TO SUPPORT THE CLAIMS AGAINST THE FDIC-C, THE TRUSTEE SHOULD BE PERMITTED TO AMEND ITS COMPLAINT

If the Court is inclined to grant the FDIC-C's motion to dismiss, the Trustee respectfully requests it be given the opportunity to replead. As alleged in the Complaint, on several occasions, the Trustee attempted to obtain more information from the FDIC about the sale to OneWest. *See* Compl. ¶¶ 70, 71. That information was not provided to the Trustee and, accordingly, the details of the OneWest transaction, including, but not limited, the involvement of the FDIC in its various different capacities were not known by, and unclear to, the Trustee as of the date it was required by statute to file the Complaint. *See* Compl. ¶ 72. As one example only, as of the date the Complaint was required to have been filed, the Trustee had not received all of the contracts and schedules evidencing the OneWest sale transaction. The Trustee still has not received all of the information it has requested to date, but it now has certain additional contracts related to that transaction and could at this point replead with some additional specificity the role of FDIC-C in the sale to OneWest. Although the Trustee believes this is not necessary, should the Court believe more specificity is required, the Trustee should be allowed to replead – especially where, as here, the information was in the control of the FDIC, which did not provide it before the expiration of the very brief statutory deadline for filing suit after the OneWest transaction. *See, e.g., Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (holding that "dismissal with prejudice and without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment.")

### IV. CONCLUSION

The FDIC-C was a direct participant in, and beneficiary of, each of the transactions that caused the Trusts' and the Trustee's losses, and the Complaint

1 adequately pleads the FDIC-C's participation in those transactions. Accordingly,
2 the FDIC-C's Motion should be denied or, in the alternative, the Trustee should be
3 granted leave to amend the Complaint.

4 Dated: July 16, 2010                    MORGAN, LEWIS & BOCKIUS LLP
                                          JAMI WINTZ MCKEON
5                                         DAVID L. SCHRADER

8                                         By: /s/ Jami Wintz McKeon
                                              Attorneys for Plaintiff
9                                             Deutsche Bank National Trust
                                              Company, as Trustee for certain
10                                            residential mortgage-backed
                                              securitization trusts sponsored by
11                                            IndyMac Bank, F.S.B.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21826930.1                12         PLAINTIFF'S OPPOSITION TO MOTION
                                              TO DISMISS AND TO STRIKE