1 | MORGAN, LEWIS & BOCKIUS LLP
2 | JAMI WINTZ MCKEON, State Bar No. 237923
  | jmckeon@morganlewis.com
  | One Market, Spear Street Tower
3 | San Francisco, CA 94105
  | Tel:  415.442.1405
4 | Fax:  415.442.1001

5 | DAVID L. SCHRADER, State Bar No. 149638
  | dschrader@morganlewis.com
6 | 300 South Grand Avenue
  | Twenty-Second Floor
7 | Los Angeles, CA  90071-3132
  | Tel:  213.612.2500
8 | Fax:  213.612.2501

9 |
10 | Attorneys for Plaintiff
   | Deutsche Bank National Trust Company, as Trustee for
   | certain residential mortgage-backed securitization trusts
11 | sponsored by IndyMac Bank, F.S.B.

12 |

13 | UNITED STATES DISTRICT COURT

14 | CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

15 |

| | |
|---|---|
| Deutsche Bank National Trust Company, as Trustee for certain residential mortgage-backed securitization trusts sponsored by IndyMac Bank, F.S.B., | Case No. CV09-3852 GAF (FFMx) |
| | **OPPOSITION OF PLAINTIFF DEUTSCHE BANK NATIONAL TRUST COMPANY TO DEFENDANTS' MOTIONS TO DISMISS AND TO STRIKE** |
| Plaintiff, | |
| vs. | |
| Federal Deposit Insurance Corporation, as Receiver of IndyMac Bank, F.S.B.; Federal Deposit Insurance Corporation, as Conservator and Receiver of IndyMac Federal Bank F.S.B.; Federal Deposit Insurance Corporation, in its corporate capacity; and Federal Deposit Insurance Corporation, as Government Entity, | Date:  September 13, 2010 Time:  9:30 a.m. Place: Courtroom 740, Roybal Building Hon.   Gary A. Feess |
| Defendants. | |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21828976.1

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ..................................................................... 1

LEGAL STANDARD ................................................................................ 3

ARGUMENT ............................................................................................ 4

I.    THE TRUSTEE HAS STATED CLAIMS FOR BREACH OF CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING ...................................................................... 4

    A.    The Governing Agreements Are QFCs and Were Required To Be Assumed or Transferred in Full ........................ 4

    B.    FIRREA Does Not Abrogate or Nullify Contractual Obligations in Assumed Pre-Receivership Contracts ................ 5

    C.    The Trustee Has Sufficiently Pleaded Provisions of the Governing Agreements that the FDIC Breached ................ 8

    D.    The Trustee May Assert a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing ................ 9

II.    THE TRUSTEE'S CLAIMS ARE ENTITLED TO ADMINISTRATIVE PRIORITY ................................................ 10

    A.    The Trustee is Entitled to Administrative Priority As a Result of the FDIC's Actions in Contravention of FIRREA ........... 10

    B.    FIRREA Does Not Bar Administrative Priority ................ 11

    C.    Prudential Mootness Does Not Bar The Trustee's Claims ............... 13

III.    A CONSTRUCTIVE TRUST IS NOT BARRED BY SECTION 1821(J) ................................................................................. 15

IV.    THE TRUSTEE HAS ASSERTED A VALID CLAIM FOR THE FDIC'S BREACH OF FIDUCIARY DUTY AS RECEIVER ................ 16

    A.    The FDIC Owes Common Law and Statutory Fiduciary Duties ...... 16

    B.    The Trustee's Valid Claim for Breach of Fiduciary Duty is Not Barred by the Federal Tort Claims Act ................ 18

    C.    The Trustee May Bring a Claim Against the FDIC for Breach of Fiduciary Duty ................................................................. 20

        1.    A Private Right of Action is Inherent in the FDIC's role as Receiver ................ 20

        2.    A Private Right of Action for Violation of Section 1821(d)(13)(E) is Implied ................ 22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

i

PLAINTIFF'S OPPOSITION TO MOTIONS
TO DISMISS AND TO STRIKE

|  |  | a. | FIRREA's receivership provisions were enacted for the benefit of the failed institution's creditors .............. 22 |
|  |  | b. | In enacting FIRREA, Congress intended to create a private right of action ..................................................... 23 |
|  |  | c. | A private right of action is consistent with the purposes of FIRREA ........................................................ 23 |
|  |  | d. | The cause of action is based solely on federal law ....... 24 |
|  | 3. | | Cases Cited by the FDIC Declining to Imply a Private Right of Action Under FIRREA are Distinguishable ............. 24 |

V. THE TRUSTEE HAS STATED A TAKINGS CLAIM ............................. 24

    A. The FDIC Is Not Immune to a Takings Claim .................................. 24

    B. A Constitutional Claim Against an Agency Need Not Be Brought in the Court of Claims ........................................................................ 25

    C. The FDIC's Conduct Constituted an Unconstitutional Taking ......... 27

VI. THE TRUSTEE HAS STATED A CLAIM FOR VIOLATION OF THE TRUSTS' AND ITS RIGHTS TO DUE PROCESS ................................. 28

VII. THE TRUSTEE'S ALLEGATIONS SEEKING SUPER-PRIORITY SHOULD NOT BE STRICKEN ............................................................... 29

VIII. CONCLUSION ......................................................................................... 30

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

ii

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

# TABLE OF AUTHORITIES

Page

**Cases**

*Adagio Inv. Holding Ltd. v. FDIC*,
   338 F. Supp. 2d 71 (D.D.C. 2004) .........................................................10, 13, 29

*Adams v. Resolution Trust Corp.*,
   927 F.2d 348 (8th Cir. 1991) ....................................................................14

*Allen v. Veterans Admin.*,
   749 F.2d 1386 (9th Cir. 1984) ..................................................................20

*Battista v. FDIC*,
   195 F.3d 1113 (9th Cir. 1999) ..................................................................12

*Branch ex rel. Maine Nat'l Bank v. United States*,
   69 F.3d 1571 (Fed. Cir. 1995).................................................................27

*Bureerong v. Uvawas*,
   922 F. Supp. 1450 (C.D. Cal. 1996) .........................................................3

*C.D. Barnes Assocs., Inc. v. Grand Haven Hideaway Ltd. P'ship*,
   406 F. Supp. 2d 801 (W.D. Mich. 2005) ..................................................25

*California Housing Secs., Inc. v. United States*,
   959 F.2d 955 (Fed. Cir. 1992)..................................................................28

*Cf Acceptance Ins. Cos. v. United States*,
   503 F.3d 1328 (Fed. Cir. 2007)................................................................26

*Conroy v. FDIC*,
   No. 95-11658, 1995 WL 598961 (D. Mass. Sept. 15, 1995).............................4

*Corbin v. Fed. Reserve Bank of New York*,
   458 F. Supp. 143 (S.D.N.Y. 1978) ......................................................18, 21

*Cort v. Ash*,
   422 U.S. 66, 95 S.Ct. 2080, 45 L. Ed. 2d 26 (1975)...................................22, 24

*Davis v. United States*,
   961 F.2d 53 (5th Cir. 1991) ......................................................................19

*E.I. du Pont de Nemours & Co. v. FDIC*,
   32 F.3d 592 (D.C. Cir. 1994) ....................................................................22

*Eberhard v. Marcu*,
   530 F.3d 122 (2d Cir. 2008)......................................................................17

*Elmco Props., Inc. v. Second Nat'l Fed. Savings Assoc.*,
   94 F.3d 914 (4th Cir. 1996) ......................................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

iii

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

*Ensign Financial Corp. & Hamilton Holding Co. v. FDIC*,
   785 F. Supp. 391 (S.D.N.Y. 1992) .................................................................26

*Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993) ............................29

*Fantozzi v. Axsys Technologies, Inc.*,
   No. 07-02667, 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008) ...............................9

*FDIC v. Craft*,
   157 F.3d 697 (9th Cir. 1998) .........................................................................20

*FDIC v. Hopping Brook Trust*,
   941 F. Supp. 256 (D. Mass. 1996) ..................................................................12

*FDIC v. Meyer*, 510 U.S. 471, 114 S. Ct. 966, 127 L. Ed. 2d 308 (1994).20, 25, 28

*FHM Constructors, Inc. v. Village of Canton Housing Auth.*,
   779 F. Supp. 677 (N.D.N.Y. 1992).................................................................26

*First Nat'l Ins. Co. v. FDIC*,
   977 F. Supp. 1051 (S.D. Cal. 1997) ...............................................................16

*First Pac. Bancorp, Inc. v. Helfer*,
   224 F.3d 1117 (9th Cir. 2000) ...................................................................23, 24

*Freeman v. FDIC*,
   56 F.3d 1394 (D.C. Cir. 1995) .......................................................................12

*Golden Pac. Bancorp v. FDIC*,
   375 F.3d 196 (2d Cir. 2004).......................................................................16, 22

*Guggenheim v. City of Goleta*,
   582 F.3d 996 (9th Cir. 2009) .........................................................................27

*Heiko v. FDIC*,
   No. 93-cv-8638, 1995 WL 117604 (S.D.N.Y. Mar. 17, 1995) ...........................4

*Henrichs v. Valley View Development*,
   474 F.3d 609 (9th Cir. 2007) .........................................................................14

*Hindes v. FDIC*,
   137 F. 3d 148 (3d Cir. 1998).........................................................................24

*Hoover v. FDIC*,
   Case No. SACV 09-0750 (Apr. 5, 2010)....................................................15, 19

*Hunt v. Imperial Merchant Servs., Inc.*,
   560 F.3d 1137 (9th Cir. 2009) .......................................................................13

*In re Cmty. Lending, Inc.*,
   No. 08-50030, 2010 WL 596445 (Bankr. N.D. Cal. Feb. 16, 2010) .................11

*Indus. Indemnity, Inc. v. Landrieu*,
   615 F.2d 644 (5th Cir. 1980) .........................................................................25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

iv

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

*Jackson Square Assocs. v. United States Dep't of Housing & Urban Dev.*,
   797 F. Supp. 242 (W.D.N.Y. 1992) ..................................................................26

*JPMorgan Chase Bank, N.A. v. IDW Group LLC*,
   No. 08-cv-9116, 2009 U.S. Dist. Lexis 9207 (S.D.N.Y. Feb. 8, 2009) ..............9

*Landeen v. Riley Bennet Egloff LLC*,
   No 1:07-CV-0534, 2008 WL 1766961 (S.D. Ind. Apr. 11, 2008) ....................21

*Lazar v. Trans Union LLC*,
   195 F.R.D. 665 (C.D. Cal. 2000) ......................................................................4

*Love v. United States*,
   915 F.2d 1242 (9th Cir. 1989) ........................................................................20

*Microsoft Corp. v. Suncrest Enterprise*,
   No. C 03-5424, 2006 WL 1329881 (N.D. Cal. May 16, 2006) .........................15

*Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc.*,
   811 F.2d 1209 (9th Cir. 1987) ........................................................................19

*Mosseri v. FDIC*,
   No. 95-cv-0723, 2001 U.S. Dist. LEXIS 18899 (S.D.N.Y. Nov. 19, 2001) ......24

*MVB Mortgage Corp. v. FDIC*,
   No. 2:08-cv-771, 2010 WL 654051 (S.D. Ohio Feb. 19, 2010) ........................12

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................3

*O'Melveny & Myers v. FDIC*,
   512 U.S. 79, 114 S. Ct. 2048, 129 L. Ed. 2d 67,  (1994)..................................21

*Pen-Del Mortgage Assoc. v. FDIC*,
   No. 94-0067, 1994 U.S. Dist. LEXIS 16741 (E.D. Pa. Nov. 22, 1994)............24

*Reading v. Brown*,
   391 U.S. 471, 88 S. Ct. 1759, 1766, 20 L. Ed. 2d 751, 758 (1968)..................11

*Rennie & Laughlin, Inc. v. Chrysler Corp.*,
   242 F.2d 208 (9th Cir. 1957) ............................................................................4

*Sahni v. American Diversified Partners*,
   83 F.3d 1054 (9th Cir. 1996) ...............................................................8, 15, 19

*Schock v. FDIC*,
   118 F. Supp. 2d 165 (D.R.I. 2000) ..................................................................22

*Scholes v. Lehmann*,
   56 F.3d 750 (7th Cir. 1995) .............................................................................17

*SEC v. Sands*,
   902 F. Supp. 1149 (C.D. Cal. 1995) ..................................................................3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

v

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

*Seven Up Pete Venture v. Schweitzer*,
  523 F.3d 948 (9th Cir. 2008) ............................................................................25

*Sharpe v. FDIC*,
  126 F.3d 1147 (9th Cir. 1997) .....................................................7, 10, 11, 15

*Tam v. IndyMac Bank*,
  Case No. CV-08-06458 (C.D. Cal. Jan 27, 2010) ...............................13, 14, 15

*Tinoco v. IndyMac Bank F.S.B.*,
  Case No. 09-6174 JFW (JCx) (C.D. Cal. Feb. 5, 2010) ...........................14, 15

*Tyrer v. City of South Beloit*,
  456 F.3d 744 (7th Cir. 2006) ..........................................................................29

*U.S. v. Gaubert*,
  499 U.S. 315, 111 S. Ct. 1267, 113 F.Ed. 2d 335 (1991)................................20

*Waterview Management Co. v. FDIC*,
  105 F.3d 696 (D.C. Cir. 1997)....................................................................passim

*Woodbridge Plaza v. Bank of Irvine*,
  815 F.2d 538 (9th Cir. 1987) ....................................................................18, 19

*Z.A. v. St. Helena Unified Sch. Dist.*,
  No. 09-03557, 2010 U.S. Dist. LEXIS 12858 (N.D. Cal. Jan. 25, 2010) ..........29

**Statutes**

12 U.S.C. § 1819(a) .........................................................................................19

12 U.S.C. § 1821 .............................................................................................18

12 U.S.C. § 1821(d) .........................................................................................10

12 U.S.C. § 1821(d)(13)(E) .............................................................................17

12 U.S.C. § 1821(d)(20) ...................................................................................13

12 U.S.C. § 1821(e)(7)(B)(ii) ..........................................................................13

12 U.S.C. § 1821(e)(8)(D)(i) ..............................................................................4

12 U.S.C. § 1821(e)(9) ................................................................................4, 15

12 U.S.C. § 1821(j)..........................................................................11, 12, 15, 29

12 U.S.C. § 1823 (d)(11)(C)............................................................................23

12 U.S.C. § 1823 (i)(2) ....................................................................................23

12 U.S.C. § 1823(d) .........................................................................................19

12 U.S.C. § 1823(d)(3)(C)....................................................................17, 21, 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1    12 U.S.C. § 1823(e) .................................................................................8, 9, 15

2    12 U.S.C. § 1831g(d)..........................................................................................23

3    12 U.S.C. §1821(e)(1) ......................................................................................... 2

4    28 U.S.C. § 1491(a)(1) ......................................................................................25

5    28 U.S.C. § 2680(h) ...........................................................................................19

6    Fed. R. Civ. P. 12(f) ..........................................................................................29

7    **Treatises**

8    Clark on Receivers § 412
       (3rd ed. vol. 2 1992)........................................................................................17

9
     FDIC, *The First Fifty Years:*
10     *A History of the FDIC 1933-1983*, at 85 (1984)..............................................17

11   **Other Authorities**

12   FDIC Resolution Handbook, 2 (2003) ................................................................23

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Palo Alto

DB2/21828976.1                                    vii                  PLAINTIFF'S OPPOSITION TO MOTION
                                                                       TO DISMISS AND TO STRIKE

1    Plaintiff Deutsche Bank National Trust Company, as Trustee for certain

2    residential mortgage-backed securitization trusts (the "Trusts") sponsored by

3    IndyMac Bank, F.S.B. (the "Trustee"), hereby submits its Opposition to the Motion

4    to Dismiss and to Strike filed by defendant Federal Deposit Insurance Corporation

5    ("FDIC") in its capacity as Receiver for IndyMac Bank, F.S.B. ("IndyMac") and

6    for IndyMac Federal Bank, F.S.B. ("IndyMac Federal") ("FDIC-R").

7                              **SUMMARY OF ARGUMENT**[1]

8        The FDIC closed IndyMac, sold IndyMac's assets to itself, and then

9    purported to sell the benefits of IndyMac's rights under certain agreements with

10   the Trustee independent of and without otherwise providing for the satisfaction of

11   IndyMac's liabilities under those same contracts.  Through these efforts, the FDIC

12   was able to accomplish its goal of protecting the Deposit Insurance Fund, but only

13   by enriching itself at the expense of the Trusts and the Trustee, who were deprived

14   of the value of their agreements with IndyMac.  In its initial Motions, the FDIC

15   makes various arguments in an effort to escape liability for this unlawful use of its

16   power.  For reasons set forth below, these arguments fail to address the core

17   problems with the FDIC's actions with respect to the IndyMac and IndyMac

18   Federal receiverships: The manner in which the FDIC purported to assign rights

19   under the Governing Agreements, while stripping the Trusts and the Trustee of

20   their rights under those same contracts, exceeded its statutory authority and

21   violated the Trusts' and the Trustee's constitutional and contractual rights.

22       The FDIC had two statutory options with respect to the Governing

23   Agreements at issue in this case.  It could repudiate the contracts *in toto,* allowing

24   the Trusts and Trustee to bear both the burdens and the benefits of the repudiation

---

[1] Because the factual allegations in this case relate to all defendants and to avoid needless duplication and decrease the burden on the parties and the Court, *see* Fed. R. Civ. P. 10(c), the Trustee adopts and incorporates the Statement of Facts set forth in its Opposition to the FDIC in its Corporate Capacity's Motion to Dismiss, filed with this Court on July 16, 2010.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                        1                 PLAINTIFF'S OPPOSITION TO MOTIONS
                                                       TO DISMISS AND TO STRIKE

1    or it could assume the contracts, but only if it was willing to satisfy all of their

2    obligations.  It did neither.  Instead, the FDIC sought to reap selective benefits of

3    the Governing Agreements by selling IndyMac's valuable "servicing rights"

4    embedded in those agreements while not taking responsibility for all of IndyMac's

5    obligations under those same agreements.  This course of action was improper

6    because:  (1) the Governing Agreements are Qualified Financial Contracts

7    ("QFCs"), and under the express statutory provisions of the Financial Institutions

8    Reform, Recovery and Enforcement Act ("FIRREA"), the FDIC *must either*

9    *accept or reject QFCs in their entirety*; (2) it put the FDIC in a better position and

10   the Trusts and the Trustee in a worse position than if the FDIC had simply done

11   either of the things it had the statutory authority to do, i.e., accept the Governing

12   Agreements in their entirety or repudiate them; and (3) it has the effect of

13   compelling the Trusts and the Trustee to perform their side of the bargain under

14   the contracts while depriving them of the performance due to them, thus taking

15   valuable property rights without due process or just compensation in violation of

16   the United States Constitution.  The Trustee adequately alleged the FDIC's

17   wrongful conduct, and therefore, the FDIC's motions to dismiss should be denied.

18        **Contract Claims.**  The Trustee has stated a claim for breach of contract and

19   breach of the implied covenant of good faith and fair dealing.  The Governing

20   Agreements are QFCs and the FDIC's failure to assume or transfer them in full

21   constituted a breach of contract.  The FDIC's argument that certain provisions of

22   FIRREA "abrogate" or "nullify" contractual obligations in pre-receivership

23   contracts is wrong and has been expressly rejected by courts.  Moreover, Ninth

24   Circuit precedent prohibits the FDIC from breaching contracts it does not

25   repudiate.[2]  Finally, New York law, which governs disputes arising from the

26

27   _____

[2]    Although the FDIC is required to repudiate a contract "within a reasonable
      period" following its appointment as receiver, *see* 12 U.S.C. §1821(e)(1), to
28    this day the FDIC has never repudiated the Governing Agreements.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

2

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   Governing Agreements, allows the Trustee to assert claims for both breach of

2   contract and breach of the implied covenant of good faith and fair dealing.

3   **Fiduciary Duty Claims.**  Courts have acknowledged that the FDIC owes

4   fiduciary duties to the creditors of a failed bank, and the Trustee has stated a claim

5   for the FDIC's breach of its fiduciary duty to administer the receivership estate in

6   accordance with law.  The FDIC's argument that this claim is barred by the

7   Federal Tort Claims Act is flawed and fails because the Trustee's claims derive

8   from contract, not tort.  The Trustee may bring an action against the FDIC for

9   breach of fiduciary duty because a private right of action is inherent in the FDIC's

10  role as receiver and is implied by FIRREA.

11  **Constitutional Claims.**  Finally, the Trustee sufficiently alleged that the

12  FDIC took the Trust's and the Trustee's property without just compensation and

13  violated their constitutional rights to due process of law.  The Trustee's takings

14  claim was correctly brought in this Court because the Trustee is seeking damages

15  from the FDIC's own funds and not from the general funds of the United States.

16  Accordingly, the FDIC's wrongful conduct gives rise to a priority right of

17  payment and the imposition of a constructive trust.

18  **LEGAL STANDARD[3]**

19  "Rule 12(f) motions are generally disfavored because they are often used as

20  delaying tactics, and because of the limited importance of pleadings in federal

21  practice." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996)

22  (internal citations omitted); *see also Neilson v. Union Bank of Cal., N.A.,* 290 F.

23  Supp. 2d 1101, 1152 (C.D. Cal. 2003).  Given their disfavored status, courts often

24  require "a showing of prejudice by the moving party" before granting the

25  requested relief.  *See SEC v. Sands,* 902 F. Supp. 1149, 1166 (C.D. Cal. 1995).

26

27

28

---

[3]   Because the legal standard pursuant to Rules 12(b)(1) and 12(b)(6) applies to all defendants, the Trustee adopts and incorporates the Legal Standard set forth in its Opposition to the FDIC in its Corporate Capacity's Motion to Dismiss, *see* Fed. R. Civ. P. 10(c).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

3

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1  "Further, courts must view the pleadings under attack in the light more favorable

2  to the pleader."  *Lazar v. Trans Union LLC,* 195 F.R.D. 665, 669 (C.D. Cal.

3  2000).  "Motions to strike are generally not granted unless it is clear that matter to

4  be stricken could have no possible bearing on the subject matter of the litigation."

5  *Id.* (internal citations omitted).  "Indeed, 'a case should be tried on the proofs

6  rather than the pleadings.'"  *Id.* (citing *Rennie & Laughlin, Inc. v. Chrysler Corp.,*

7  242 F.2d 208, 213 (9th Cir. 1957)).

8  <u>**ARGUMENT**</u>

9  **I.**     <u>**THE TRUSTEE HAS STATED CLAIMS FOR BREACH OF**</u>

10  <u>**CONTRACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**</u>

11  **A.**     <u>**The Governing Agreements Are QFCs and Were Required To Be**</u>

12  <u>**Assumed or Transferred in Full**</u>

13  The Governing Agreements, which provide for the sale of an interest in a

14  mortgage loan in the secondary market, constitute QFCs pursuant to 12 U.S.C. §

15  1821(e)(8)(D)(i).  *See, e.g., Conroy v. FDIC*, No. 95-11658, 1995 WL 598961, at

16  *4 (D. Mass. Sept. 15, 1995) ("Thus, [FIRREA] … considers options or ***contracts***

17  ***for the sale of a mortgage*** . . . as qualified financial contracts.") (emphasis

18  added); *Heiko v. FDIC*, No. 93-cv-8638, 1995 WL 117604, at *5 (S.D.N.Y. Mar.

19  17, 1995) (holding that refinancing agreement repudiated by the FDIC was not a

20  QFC because the agreement "did not involve the purchase, sale or loan of a

21  mortgage or a mortgage-related security").  FIRREA expressly prohibits the FDIC

22  from splitting QFCs:  "In making any transfer of assets or liabilities of a

23  depository institution in default which includes any qualified financial contract,

24  the conservator or receiver for such depository institution **shall . . . [transfer] all**

25  qualified financial contracts between any person . . . and the depository institution

26  in default . . . **or transfer none** of the qualified financial contracts."  *See* 12

27  U.S.C. § 1821(e)(9) (emphasis added).  The FDIC's improper act of splitting the

28  Governing Agreements and selling only the servicing rights to OneWest, without

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                                    4                    PLAINTIFF'S OPPOSITION TO MOTION
                                                                      TO DISMISS AND TO STRIKE

1   the related obligations and liabilities, constituted both a breach of contract and a

2   violation of FIRREA.  *See* Compl. ¶¶ 55-57, 147-49.  The FDIC does not dispute

3   that the Governing Agreements are QFCs or that it breached the Governing

4   Agreements.  Rather, it merely argues that it can split the Governing Agreements

5   regardless of whether they are QFCs or whether it would be a breach of the

6   Governing Agreements to do so.  The FDIC is wrong.

### B.   FIRREA Does Not Abrogate or Nullify Contractual Obligations in Assumed Pre-Receivership Contracts

9        The FDIC contends that because FIRREA uses the phrase "without any

10  approval, assignment or consent," the FDIC is free to ignore consent requirements

11  in contracts that it assumes.  However, the statutory provision means only that the

12  FDIC does not need to obtain approval or consent **from the failed bank's board**

13  **of directors**, officers, shareholders, or other individuals with former or apparent

14  authority for the failed bank.  In other words, the FDIC succeeds to the rights that

15  IndyMac had and does not need consent to exercise those rights.  It does not mean

16  that the FDIC gains more rights than IndyMac had.  And it certainly does not

17  mean that the FDIC can ignore IndyMac's obligations or the need to obtain

18  consent from a contracting third-party, particularly with respect to contracts that

19  the FDIC has assumed and not repudiated.  Finally, even if FIRREA were

20  interpreted to give the FDIC the right to assign a contract of a failed bank without

21  obtaining third party consents expressly required by that contract, that power

22  would give the FDIC only the right to assign the contract in its entirety, not to

23  rewrite it, as here, by cherry picking provisions of the contract to be assigned

24  while ignoring the remainder.

25       The FDIC's argument has been expressly rejected in *Waterview*

26  *Management Co. v. FDIC,* 105 F.3d 696 (D.C. Cir. 1997).  In *Waterview*, the RTC

27  argued that it was not bound by an exclusive option clause (or right of first

28  refusal) in a pre-receivership contract, which it failed to repudiate under FIRREA,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

5

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   because FIRREA "preempted" pre-receivership contractual obligations.  *See*

2   *Waterview*, 105 F.3d at 699.  The court disagreed, and explained that the section

3   the FDIC relies on here "does not permit the [FDIC] to increase the value of the

4   asset in its hands by simply 'preempting' out of existence pre-receivership

5   contractual obligations."  *See id.* at 701 ("Ensuring that the [FDIC] is bound by

6   pre-receivership contracts promotes stability and security of contract.").

7          Moreover, pre-receivership contracts create valid state law rights that are

8   not inconsistent with the FDIC's power as conservator or receiver to transfer the

9   assets of the failed institution without consent.  *See id.* at 698.  The FDIC can

10  repudiate such contracts under FIRREA, but it simply cannot claim that they are

11  "abrogated" or "nullified."  FDIC-R Motion, at 10-11.  The *Waterview* court's

12  ruling confirms that the FDIC cannot use the exact section it invokes in this case

13  to avoid pre-receivership contracts in an attempt to increase the value of an asset

14  beyond what originally was held by the financial institution.  The court's language

15  is directly applicable here:  "Indeed, to hold that the federal government could

16  simply vitiate the terms of existing assets, taking rights of value from private

17  owners with no compensation in return, **would raise serious constitutional**

18  **issues**." *See Waterview*, 105 F.3d at 699 (emphasis added).  Under FIRREA, the

19  FDIC can avoid the obligations imposed by pre-receivership contracts only by

20  repudiating them and paying damages.  *Id.*

21         The FDIC failed to repudiate the Governing Agreements, and contrary to

22  the FDIC's argument, FIRREA's "approval" provision does not "abrogate" or

23  "nullify" the pre-receivership obligation imposed on IndyMac by the Governing

24  Agreements to obtain the Trustee's agreement prior to assigning the servicing

25  rights.  To transfer the servicing rights, the FDIC had to comply with all terms of

26  the Governing Agreements which created those rights.  *See id.* at 701 ("Section

27  1821(d)(2)(G)(i)(II) permits the [FDIC], in its capacity as conservator or receiver,

28  to sell assets in its possession without obtaining any prior approval.  Section

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                                          6                    PLAINTIFF'S OPPOSITION TO MOTION
                                                                              TO DISMISS AND TO STRIKE

1   1821(e) explains how this power works with regard to contracts entered into pre-

2   receivership:  if the [FDIC] prefers to transfer an asset without pre-existing

3   limitations, then the [FDIC] can abrogate a contract containing limitations, such as

4   a purchase option or marketing rights, but it must pay damages to the option

5   holder.").   The FDIC's failure to repudiate the Governing Agreements renders it

6   bound by all of IndyMac's contractual obligations.  Its act of selling valuable

7   servicing rights created by some sections of those contracts, without the requisite

8   agreement of the Trustee, and without providing for performance of IndyMac's

9   other obligations under those same contracts, constituted a breach of contract.

10      Moreover, as the Ninth Circuit has recognized, "FIRREA does not

11   authorize the breach of contracts. . . [and it] does not preempt state law so as to

12   abrogate state law contract rights."  *See Sharpe v. FDIC*, 126 F.3d 1147, 1155 (9th

13   Cir. 1997).  The court recognized that the FDIC can escape the obligations of a

14   contract only by following the prescribed repudiation mechanism.  *See id.*

15   ("FIRREA does not permit the FDIC to breach contracts at will.").  Recognizing

16   that FIRREA does not address the consequences of the FDIC's breach of pre-

17   receivership contracts, the court nonetheless confirmed that **"*it cannot be the case***

18   **_that the FDIC is in a better position when it breaches a contract than when it_**

19   **_chooses to repudiate pursuant to 1821(e)._"**  *Id.* at 1157 (emphasis added).  In

20   other words, the FDIC is not free to restrike the bargain under a failed institution's

21   contracts by eliminating the burdensome provisions while selling beneficial rights

22   arising under other provisions of the same contracts.

23      Had the FDIC followed the prescribed mechanism in FIRREA and

24   repudiated the Governing Agreements, the Trustee could have sold the servicing

25   rights, and the Trusts and the Trustee would have received the significant

26   economic benefits that instead were usurped by the FDIC.  *See* Compl. ¶ 155.  The

27   FDIC, however, simply chose to ignore the § 1821(e) procedure and, like it did in

28   *Sharpe*, breached the Governing Agreements.  The FDIC's breach of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

7

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1    Governing Agreements by selling the valuable servicing rights without providing

2    for the discharge of all related liabilities put it in a better position than if it had

3    repudiated the agreements.  *See* Compl. ¶ 151.  This is precisely what the Ninth

4    Circuit held that FIRREA does not allow.  Accordingly, the Trustee has stated a

5    claim for breach of contract.

6         The FDIC's reliance on *Sahni v. American Diversified Partners*, 83 F.3d

7    1054 (9th Cir. 1996), is misplaced.  First*, Sahni* involved a situation where the

8    FDIC held an asset as a partner, which is not the case here.  Second, in *Sahni* the

9    FDIC-Receiver sold an entire asset rather than shearing off the liabilities and

10   selling only the contractual benefits.  Finally, *Sahni* did not hold that the FDIC's

11   power is unlimited and allows it to breach pre-receivership contracts that it failed

12   to repudiate.  It thus does not support the FDIC's argument.

13        **C.    The Trustee Has Sufficiently Pleaded Provisions of the
             Governing Agreements that the FDIC Breached**

14

15        The FDIC argues that the promises and representations made by IndyMac

16   in the Prospectuses are unenforceable because they do not meet the requirements

17   of 12 U.S.C. § 1823(e), principally because they are not formally signed.  This

18   argument completely misses the point.  The Trustee's claims are based on the

19   Governing Agreements, which were signed by IndyMac as Seller/Servicer, not the

20   Prospectuses.  The Complaint references the Prospectuses only as background to

21   describe IndyMac's program of securitization, embodied in the Governing

22   Agreements, under which a single entity was to perform a full range of

23   interrelated functions. At the motion to dismiss stage, the Court need not resolve

24   whether the Prospectuses meet the requirements of § 1823(e) because the Trustee

25   has sufficiently cited multiple provisions of the Governing Agreements

26   themselves that the FDIC breached in support of its breach of contract claim.  *See,*

27   *e.g.,* Compl. ¶¶ 37-39, 41-42, 45, 47-49, 51, and 53-57.   The Governing

28   Agreements **are** formally signed and otherwise clearly meet the requirements of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                                        8                    PLAINTIFF'S OPPOSITION TO MOTION
                                                                          TO DISMISS AND TO STRIKE

1  12 U.S.C. § 1823(e), which the FDIC does not dispute.  *See* Compl. ¶ 47.

2  Because those agreements are signed and contain the promises that IndyMac as

3  Seller/Servicer breached, the issue of whether the representations in the

4  Prospectuses are enforceable is immaterial at this stage of the proceedings.

**D.    The Trustee May Assert a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

7         Contrary to the FDIC's argument, New York case law, including the cases

8  cited in the FDIC-R's Motion to Dismiss, makes clear that causes of action for

9  both the breach of implied covenant of good faith and fair dealing and breach of

10  contract can be asserted in certain circumstances.  For example, in *JPMorgan*

11  *Chase Bank, N.A. v. IDW Group LLC*, No. 08-cv-9116, 2009 U.S. Dist. Lexis

12  9207 (S.D.N.Y. Feb. 8, 2009), on which the FDIC relies, the court allowed

13  portions of the breach of implied covenant claim to go forward.  Specifically, the

14  court held that to state a separate claim for breach of the duty of good faith and

15  fair dealing, the plaintiff must "allege conduct that subverts the contract's purpose

16  without violating its express terms."  *Id.* at *15.  This case supports the Trustee's

17  position for the reasons detailed earlier about the FDIC's conduct.

18         It is proper to assert, as here, a breach of the covenant of good faith and fair

19  dealing claim in the alternative to a breach of contract claim.  In *Fantozzi v. Axsys*

20  *Technologies, Inc.*, No. 07-02667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6,

21  2008), the court held that there is an exception to the general rule that breach of

22  contract and breach of good faith and fair dealing are duplicative when the claims

23  are brought in the alternative.  The court stated that "New York courts allow the

24  [p]laintiff to defer making an election of remedies and damages in cases where

25  there is a dispute over the existence, scope, or enforceability of the putative

26  contract."  *See id.* at *8 (internal citations omitted).  Here, there is indeed a dispute

27  over the enforceability of the Governing Agreements because the FDIC contends

28  it is permitted to ignore the contractual limitations they impose on IndyMac and to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

9

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1    transfer the contractual rights without first obtaining the Trustee's consent and

2    without providing for the performance of all of IndyMac's other obligations under

3    those contracts.  *Compare* Compl. ¶¶ 55-57, 148 *with* FDIC-R Motion at 10.

4    There is also disagreement over the scope of the Governing Agreements, as the

5    FDIC suggests that it could sell their benefits without their attendant liabilities.

6    Accordingly, the Trustee has properly alleged both claims.

7    **II.    THE TRUSTEE'S CLAIMS ARE ENTITLED TO
           ADMINISTRATIVE PRIORITY**

8

9        **A.    The Trustee is Entitled to Administrative Priority As a Result of
                 the FDIC's Actions in Contravention of FIRREA**

10

11        The FDIC's argument that the Trustee's claims are not entitled to

12   administrative priority should be rejected.  The Trustee's claims should be

13   afforded a priority pursuant to 12 U.S.C. § 1821(d) because of the FDIC's failure

14   to compensate the Trusts and the Trustee for IndyMac's breaches of the

15   unrepudiated Governing Agreements and for the FDIC's post-receivership

16   wrongful sale of servicing rights and concurrent failure to comply with costly

17   obligations that has limited the Trusts' and the Trustee's pool of recoverable

18   assets.  As discussed above, FIRREA does not allow the FDIC to breach contracts

19   and it does not preempt state law contract rights.  *See Sharpe*, 126 F.3d at 1155.

20   Thus, where the FDIC does not repudiate a pre-receivership contract, it is liable

21   for breach of contract and claimants are entitled to full damages in cash.  *See id.*;

22   *see also Adagio Inv. Holding Ltd. v. FDIC*, 338 F. Supp. 2d 71, 76 n.10 (D.D.C.

23   2004) (holding that the strictures of the § 1821(d) administrative claims process

24   are not applicable where the FDIC has exceeded its lawful authority).

25        In *Sharpe*, the FDIC refused to honor the debtors' pre-receivership cashiers'

26   checks to claimants.  As discussed above, the court specifically noted that

27   although FIRREA gives the FDIC broad powers, it does not allow the FDIC to

28   breach a contract.  *See Sharpe*, 126 F.3d at 1155.  Here, the FDIC is liable for

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

1   IndyMac's breaches of contract because it assumed the obligations of IndyMac

2   upon becoming the receiver.  The FDIC itself also breached those same contracts

3   in its operation of IndyMac's receivership estate, including by wrongfully splitting

4   the contracts.  *See* Compl. ¶¶ 149, 153.  Accordingly, the FDIC is liable for its

5   conduct and is not protected by the administrative priority provisions of FIRREA

6   or any other provisions of FIRREA that limit its liability.

7        In the analogous bankruptcy context, courts have held that the Supreme

8   Court's *Reading*[4] Doctrine recognizes an administrative priority status for damage

9   awards resulting from the wrongful conduct of a trustee during its administration

10  of a bankruptcy estate.  *See, e.g., In re Cmty. Lending, Inc.*, No. 08-50030, 2010

11  WL 596445, at * 6 (Bankr. N.D. Cal. Feb. 16, 2010) (holding that had claimants'

12  damages arisen out of the trustee's post-petition misconduct rather than a pre-

13  petition transaction, claimants would have been entitled to an administrative

14  expense priority claim under the equitable standards enumerated in *Reading*).  The

15  *Reading* Doctrine applies here because the FDIC engaged in wrongful conduct

16  after July 11, 2008, while it was acting as receiver of IndyMac and running

17  IndyMac's business.  *See, e.g.,* Compl. ¶ 185.

18      **B.    FIRREA Does Not Bar Administrative Priority**

19       Where, as here, the FDIC seeks to benefit from its contractual breaches,

20  improper transfers, and other wrongful acts, such conduct is statutorily prescribed

21  and is not shielded by 12 U.S.C. § 1821(j).  Despite the FDIC's claim to the

22  contrary, § 1821(j) raises no such bar where the FDIC has acted beyond, or

23  contrary to, its statutorily-prescribed powers or functions.  *See Sharpe,* 126 F.3d at

24  1155 ("[t]he bar imposed by § 1821(j) does not extend to situations in which the

---

4   In *Reading v. Brown*, 391 U.S. 471, 483, 88 S. Ct. 1759, 1766, 20 L. Ed. 2d
751, 758 (1968), tort claimants sustained damages in a post-bankruptcy fire
caused by a receiver's negligence.  The Supreme Court held that where a
trustee operates a business for the benefit of creditors, and in the process
injures others, the injured are entitled to recover damages ahead of the
creditors for whom the business was being operated.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

11

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1  FDIC as receiver asserts authority beyond that granted to it as a receiver.").

2  Rather, "§ 1821(j) shields only the exercise of powers or functions Congress gave

3  to the FDIC." *Id.* (internal citations omitted).

4         None of the cases upon which the FDIC relies requires a contrary finding

5  because they do not involve the FDIC's unlawful activity.[5]  The law is clear that §

6  1821(j) is inapplicable where the FDIC has acted unlawfully.  *See, e.g., MVB*

7  *Mortgage Corp. v. FDIC*, No. 2:08-cv-771, 2010 WL 654051, at *6 (S.D. Ohio

8  Feb. 19, 2010) (rejecting the FDIC's claim that it was entitled to judgment on the

9  pleadings based solely on 12 U.S.C. § 1821(j) where the complaint alleged

10  sufficient facts to support an unjust enrichment claim); *see also Elmco Props., Inc.*

11  *v. Second Nat'l Fed. Savings Assoc.*, 94 F.3d 914, 923 (4th Cir. 1996) (holding

12  that RTC enjoyed no § 1821(j) protection when it acted "contrary to . . . its

13  statutorily prescribed constitutionally permitted, powers or functions" and

14  allowing claimant to proceed with its claims for breach of a settlement

15  agreement).

16         Ignoring the Trustee's many allegations in the complaint that the FDIC

17  breached the Governing Agreements, the FDIC relies solely on cases involving

18  the **proper** repudiation of contracts in their entirety.  However, even the FDIC's

19  inapposite cases acknowledge that the administrative process established in §§

20  1821(d)(3)-(6) is inapplicable in circumstances where the claimant is aggrieved by

21  FDIC's *breach* of contract.  *See, e.g., Battista v. FDIC*, 195 F.3d 1113, 1119 (9th

22  Cir. 1999) (distinguishing between the FDIC's breach of contract, which is an

23  unlawful act that would allow an administrative priority claim, and its repudiation

24  of a contract, which is lawful and would not result in administrative priority).

---

25  [5]   The FDIC's cases are also factually distinguishable. *See, e.g., Freeman v.*
26  *FDIC*, 56 F.3d 1394 (D.C. Cir. 1995) (dismissing plaintiffs' claims because
     plaintiffs failed to exhaust their administrative remedies); *FDIC v. Hopping*
27  *Brook Trust*, 941 F. Supp. 256 (D. Mass. 1996) (dismissing plaintiffs' claim
     because they were suing the FDIC corporate based *solely* on the FDIC as
28  receiver's conduct and not joint conduct).

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Palo Alto

DB2/21828976.1                                    12            PLAINTIFF'S OPPOSITION TO MOTION
                                                               TO DISMISS AND TO STRIKE

1  *See also* 12 U.S.C. § 1821(d)(20) (breach damages on a contract executed or

2  approved by receiver afforded administrative priority).

3      Finally, a portion of the Trustee's indemnification claims under the

4  Governing Agreement constitutes claims for services performed after the

5  appointment of the receiver and prior to the repudiation of the Governing

6  Agreements (since none occurred).  *See* Compl. ¶¶ 101-106.  Accordingly they are

7  afforded administrative priority under 12 U.S.C. § 1821(e)(7)(B)(ii).

8      The FDIC is essentially demanding unreviewable authority, despite clear

9  and contrary law that "[a]ny assertion of unreviewable authority is contrary to

10  law."  *See Adagio*, 338 F. Supp. 2d at 82, n.19.  Consistent with *Adagio*, allowing

11  the Trustee to proceed with its claim for money damages against the FDIC

12  provides a necessary check on the FDIC's actions, and does not unduly limit its

13  legitimate authority to resolve a failed bank.  In fact, "if the FDIC could take

14  property without due process, serious constitutional problems would be presented

15  . . . ." *Id*.  Those problems are presented here.

16      In sum, by breaching the Governing Agreements and thereby violating

17  FIRREA, the FDIC removed itself from the protection of § 1821(j).

18      **C.    Prudential Mootness Does Not Bar The Trustee's Claims**

19      As noted in *Tam v. IndyMac Bank,* a case upon which the FDIC relies, the

20  "Ninth Circuit has never expressly adopted or rejected the doctrine of prudential

21  mootness."  *See Tam v. IndyMac Bank,* Case No. CV-08-06458, at 12 (C.D. Cal.

22  Jan 27, 2010).  In fact, the most recent Ninth Circuit case to have discussed this

23  issue, *Hunt v. Imperial Merchant Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009),

24  rejected its application.  Specifically, the *Hunt* court considered an assertion of

25  "anticipatory mootness" (i.e., an argument that an appeal might become moot

26  because of an impending decision in another appeal) and held that it need not

27  "dismiss a live controversy as moot merely because it may become moot in the

28  near future." *Id*. at 1142.  Ignoring *Hunt*, the FDIC references an earlier Ninth

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

13

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   Circuit case, *Henrichs v. Valley View Development*, 474 F.3d 609, 615 (9th Cir.

2   2007), that does not expressly address the concept of "prudential" mootness (but

3   rather "Article III" mootness).[6]   The FDIC's reliance on *Adams v. Resolution*

4   *Trust Corp.*, 927 F.2d 348, 354 (8th Cir. 1991), is similarly misplaced as the court

5   conceded that "in some instances a claim for damages is not mooted merely

6   because of the insolvency of the defendant." (internal citations omitted).   The

7   claim is moot only if it will never be possible for the defendant to provide any

8   relief.   *Id.* at 354, n.16.

9        Here, there is clearly a prospect of relief since the Trusts' and the Trustee's

10   claims are required to be paid (for reasons stated herein and in the Trustee's

11   Opposition to the FDIC-C's Motion to Dismiss): (a) by FDIC-R either as expenses

12   of administration or from the proceeds of the sale of the servicing rights arising

13   under the Governing Documents and (b) by the FDIC-C, from its own funds.   *See*

14   Compl. ¶¶ 62-72, 159-155.   The cases cited by the FDIC, including *Tinoco v.*

15   *IndyMac Bank F.S.B.*, Case No. 09-6174 JFW (JCx) (C.D. Cal. Feb. 5, 2010) and

16   *Tam*, are both factually and legally distinguishable in this regard.   Both *Tam* and

17   *Tinoco* dismissed suits based on general unsecured claims for pre-receivership

18   bank liabilities which will receive no distributions from FDIC-R due to IndyMac's

19   deep insolvency.   *See Tam*, Case No. CV-08-06458, at 4; *Tinoco*, Case No. 09-

20   6174, at 2.   Had the FDIC repudiated the Governing Agreements, the Trustee and

21   the Trusts would only have had such general unsecured claims - but would have

22   retained the valuable servicing rights that the FDIC has taken by assuming the

23   contracts.   By choosing to assume, assign and take the value of those contracts,

24   however, the FDIC has created post-receivership obligations to perform the

---

[6]   The distinction between the two concepts is set forth in the *Tam* case.   *See Tam* No. CV-08-06458, at *9.   A court is barred from adjudicating a case that is constitutionally moot under Article III, meaning that no actual or live controversy exists, but may exercise its equitable discretion to dismiss a case that is not constitutionally moot under the prudential mootness doctrine.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

14

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   contracts fully, or at least to pay for the value that was taken.  Thus, the kind of

2   mootness addressed in *Tam* and *Tinoco* does not exist here and the FDIC's

3   "prudential mootness" argument must fail.

4   **III.    A CONSTRUCTIVE TRUST IS NOT BARRED BY SECTION 1821(J)**

5           The FDIC also incorrectly asserts that a constructive trust is barred by 12

6   U.S.C. § 1821(j).  For the same reasons that the Trustee is entitled to

7   administrative priority, the FDIC is not entitled to protection under 12 U.S.C. §

8   1821(j) because it has acted outside its statutorily-prescribed powers.  *See, e.g.*,

9   *Sharpe*, 126 F.3d at 1155 (holding that section 1821(j) does not protect the FDIC

10  when it acts beyond, or contrary to, its statutorily defined powers).  In particular,

11  the FDIC breached the Governing Agreements by improperly assigning

12  IndyMac's rights under the Governing Agreements.  Further, the FDIC violated

13  FIRREA because it split a QFC in contravention of 12 U.S.C. § 1821(e)(9),

14  thereby depriving the Trusts and the Trustee of certain valuable rights and

15  economic benefits.  *See* Compl. ¶¶ 111-14.  FIRREA does not permit the FDIC to

16  breach the Governing Agreements and, therefore, it does not protect the FDIC for

17  having done so.  *See, e.g., Hoover v. FDIC*, Case No. SACV 09-0750, *13 (Apr.

18  5, 2010), attached hereto as Exhibit A (deciding that *Sharpe*, rather than *Sahni*,

19  applied to plaintiffs' claim that the FDIC's conduct warranted the imposition of a

20  constructive trust because the "protection from certain types of court action . . . is

21  not a per se bar to reformation or imposition of a constructive trust")[7].

22          Finally, to the extent the FDIC alleges that a constructive trust is a remedial

23  device and not a substantive claim, it would not support dismissal of the Trustee's

24  cause of action.  *See, e.g., Microsoft Corp. v. Suncrest Enterprise*, No. C 03-5424,

25  2006 WL 1329881, at *8 (N.D. Cal. May 16, 2006) (denying summary judgment

26  ─────────────────────

27  [7]    The court ultimately dismissed the plaintiffs' claims with prejudice because
       they were based on an agreement that did not comply with 12 U.S.C. §
       1823(e).  *See Hoover v. FDIC*, Case No. SACV 09-0750 (July 6, 2010),
28     attached hereto as Exhibit B.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                              15                PLAINTIFF'S OPPOSITION TO MOTION
                                                              TO DISMISS AND TO STRIKE

1    in favor of defendants who argued that a constructive trust is a remedy, rather than

2    a freestanding claim, because "as a matter of practice constructive trust commonly

3    is pleaded as a separate claim and the [c]ourt will not grant summary judgment on

4    this basis").  Thus, even if the FDIC were correct in characterizing a constructive

5    trust as a remedial device, it is appropriate to plead it separately to make clear that

6    it is a potential remedy for other asserted claims.  Moreover, to the extent the

7    FDIC claims that the proceeds of the sale of the servicing rights to OneWest have

8    been allocated in a way that will prevent the Trustee from recovering those

9    proceeds, the constructive trust claim is essentially an alternative to monetary

10   damages to allow the Trustee to trace the money from FDIC's improper transfer to

11   OneWest.

12   **IV.    THE TRUSTEE HAS ASSERTED A VALID CLAIM FOR THE**

13   **FDIC'S BREACH OF FIDUCIARY DUTY AS RECEIVER**

14          **A.    The FDIC Owes Common Law and Statutory Fiduciary Duties**

15          Courts have acknowledged that the FDIC owes a fiduciary duty to the

16   creditors of a failed bank.  *See, e.g., Golden Pac. Bancorp v. FDIC*, 375 F.3d 196,

17   201 (2d Cir. 2004) ("It is undisputed that, as a receiver, the FDIC owes a fiduciary

18   duty to the [b]ank's creditors and to [the bank's holding company]."); *First Nat'l*

19   *Ins. Co. v. FDIC*, 977 F. Supp. 1051, 1059 (S.D. Cal. 1997) (acknowledging, in

20   action alleging wrongdoing by the FDIC as receiver, "[j]ust as a trustee in

21   bankruptcy may breach his fiduciary duty to the bankruptcy estate by negligently

22   or intentionally taking actions which cause the estate to forfeit its assets, so may a

23   receiver breach its fiduciary duty by negligently or intentionally causing the

24   receivership estate to forfeit its assets.").  "When appointed receiver, the FDIC

25   assumes a fiduciary obligation to all creditors of the receivership and stockholders

26   of the bank, with the responsibility to maximize the amounts recovered for them

27   in as timely a manner as possible."  *See* FDIC, *The First Fifty Years: A History of*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                                    16                    PLAINTIFF'S OPPOSITION TO MOTION
                                                                       TO DISMISS AND TO STRIKE

1    *the FDIC 1933-1983*, at 85 (1984), *available at* http://www.fdic.gov/bank/

2    analytical/firstfifty.

3       Moreover, Congress recognized that the FDIC owes fiduciary duties. *See*

4    12 U.S.C. § 1823(d)(3)(C) ("In exercising any right, power, privilege, or authority

5    described in subparagraph (A), the Corporation shall continue to be subject to the

6    *fiduciary duties and obligations of the Corporation as receiver* to claimants

7    against the insured depository institution in receivership.") (emphasis added).

8    Even the FDIC has recognized this responsibility. *See, e.g.,* FDIC 2009 Annual

9    Performance Plan, Receivership Management Program (In the FDIC's capacity as

10   receiver, "*it assumes responsibility for efficiently recovering the maximum amount*

11   *possible from the disposition of the receivership's assets . . . .*"), *available at*

12   http://www.fdic.gov/about/strategic/performance/2009/Rcvrship.html (last

13   updated Apr. 29, 2009) (emphasis added).

14       Pursuant to FIRREA, the FDIC, as receiver for a failed bank, has a statutory

15   duty to "maximize[] the net present value return from the sale or disposition of

16   assets" and to "minimize[] the amount of any loss realized in the resolution of

17   cases." *See* 12 U.S.C. § 1821(d)(13)(E). In addition, the duty to maximize the

18   value of the receivership's assets is inherent in the FDIC-R's role as a receiver.

19   *See, e.g., Eberhard v. Marcu,* 530 F.3d 122, 132 (2d Cir. 2008) ("[T]he receiver's

20   only object was to maximize the value of the corporations for the benefit of their

21   investors and any creditors.") (internal quotation marks and citation omitted);

22   *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) (same); Clark on Receivers

23   § 412 (3rd ed. vol. 2 1992) ("It is the affirmative duty of a receiver, when selling

24   property of the estate, to realize under lawful measures the largest possible

25   amount.").

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

17

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

**B.    The Trustee's Valid Claim for Breach of Fiduciary Duty is Not Barred by the Federal Tort Claims Act**

Contrary to the FDIC's allegations, the claims the Trustee asserts in its Complaint do not sound in negligence or any form of intentional tort, but rather derive from the Governing Agreements.  Specifically, as receiver, the FDIC "step[s] into the shoes" of the failed financial institution, assuming all the rights and obligations of the defunct bank.  *See Waterview Mgmt. Co.,* 105 F.3d at 701. In so doing, the FDIC had a duty to act in accordance with IndyMac's Governing Agreements, and to refrain from continuing breaches in that regard.  The FDIC did not do so here.  *See* Complaint ¶ 88.

Given the contractual basis of the FDIC's fiduciary duties, the FTCA is inapplicable here.  *See, e.g., Woodbridge Plaza v. Bank of Irvine*, 815 F.2d 538, 542-43 (9th Cir. 1987) (holding the FTCA inapplicable to plaintiff's claim that the FDIC violated California state banking law regarding the duties of receivers since "this is not a claim that sounds in tort.  There is no persuasive analogy with private conduct," which is "the requirement for invocation of FTCA remedies.") (internal citation and quotation marks omitted), *superseded on other grounds by statute*, FIRREA, 12 U.S.C. § 1821[8]*; see also Corbin v. Fed. Reserve Bank of New York*, 458 F. Supp. 143, 146 (S.D.N.Y. 1978) (allowing plaintiff to assert a claim against the FDIC for breach of its fiduciary duty as receiver arising from asset sale and transfer agreements because "[p]laintiff's claim is not a tort claim within the meaning of the FTCA" and because "12 U.S.C. §§ 1821(d) and (e)…do not give unlimited discretion to a [r]eceiver to fix the terms and conditions of a sale of receivership assets. . . .[T]he fairness of the terms to which [FDIC as receiver] agrees are not beyond the scope of traditional judicial review").

---

[8]   FIRREA superseded *Woodbridge* in part by repealing that portion of the Federal Deposit Insurance Act ("FDI Act") that subjected the FDIC to ratable distribution, but *Woodbridge* still stands for the proposition that the FTCA is inapplicable when the claims brought do not sound in tort.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

18

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1    Not only is the FTCA inapplicable here, it is patently inappropriate given

2   the facts at hand.  *Davis v. United States*, 961 F.2d 53 (5th Cir. 1991) is instructive

3   in this regard.  There, the FDIC-Receiver sold a promissory note to FDIC-

4   Corporate.  *See id.* at 55.  The borrower defaulted on the note and the property was

5   foreclosed.  *See id.*  The plaintiff alleged that the property was worth more than

6   the foreclosure price and – much like the Trustee here– sued the FDIC-Receiver

7   under the FTCA for conversion, breach of fiduciary duty, and misrepresentation.

8   *See id.*  The court held that all the claims sounded in contract and fell outside the

9   FTCA, because each of the claims was predicated on a breach of a condition in the

10   promissory note.  *See id.* at 57.

11    The FDIC's claim that 12 U.S.C. § 1823(d) and *Sahni* bars this Court's

12   exercise of jurisdiction over the Trustee's breach of fiduciary duty claim because

13   the FDIC has sovereign immunity is equally without merit.  The court in

14   *Woodbridge* held that the "sue-and-be-sued" language in the statute enumerating

15   the powers of the FDIC, 12 U.S.C. § 1819(a), constitutes a general waiver of

16   sovereign immunity from claims brought against the FDIC. *See Woodbridge*

17   *Plaza*, 815 F.2d at 542-43; *see also Morrison-Knudsen Co., Inc. v. CHG Int'l,*

18   *Inc.*, 811 F.2d 1209, 1223 (9th Cir. 1987) (holding that the Federal Savings &

19   Loan Insurance Corporation, in its capacity as receiver "bears an express duty to

20   pay such claims if they indeed are valid.  The FSLIC enjoys no immunity from

21   suit brought against it in that capacity."); *Hoover* (holding that "sovereign

22   immunity is inapposite here; the FDIC is not being sued in its capacity as

23   representative of the United States, but in its capacity as receiver of [the bank],

24   and as receiver, the FDIC steps into the shoes of the failed financial institution,

25   assuming all the rights and obligations of the defunct bank.").

26    Ignoring relevant law, the FDIC relies instead on inapposite cases to urge

27   dismissal of the Trustee's fiduciary duty claim.  For example, the FDIC cites cases

28   involving the "misrepresentation exception" codified at 28 U.S.C. § 2680(h),

Morgan, Lewis &
Bockius LLP
Attorneys At Law
Palo Alto

DB2/21828976.1

19

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

which preserves the FDIC's sovereign immunity for claims involving libel, slander, misrepresentation, assault and battery, deliberate misrepresentation, including fraud, and claims based on implied misstatements and negligent omissions. These circumstances are not at issue here. *See* FDIC-R Motion, at 16 n.7 (citing *FDIC v. Craft*, 157 F.3d 697, 707 (9th Cir. 1998)).[9] Similarly, the FDIC's reference to *FDIC v. Meyer*, in support of its claim that the "FTCA remedy is exclusive" and that "an agency cannot be sued in its own name," *see* FDIC-R Motion, at 16, is misleading because the Supreme Court in fact found that the FTCA was *inapplicable* to the alleged breach of plaintiff's due process rights, and that the claims fell within the "sue and be sued" waiver of sovereign immunity. *See Meyer*, 510 U.S. 471, 477, 483, 114 S. Ct. 966, 1001, 1004, 127 L. Ed. 2d 308, 317, 322 (1994). Accordingly, the Trustee's claim for breach of fiduciary duty is not barred by the FTCA.

## C.   The Trustee May Bring a Claim Against the FDIC for Breach of Fiduciary Duty

The Trustee's claim for breach of fiduciary duty is proper because a private right of action is both inherent in the FDIC's role as receiver and implied by FIRREA.

### 1.   A Private Right of Action is Inherent in the FDIC's role as Receiver

By its appointment as receiver for IndyMac, the FDIC accepted the obligations of a receiver to the creditors of the receivership, including a fiduciary

---

[9] The additional cases cited by the FDIC are factually distinguishable. *See, e.g., Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984)(barring plaintiff's personal injury suit for injury sustained while visiting a VA Hospital because the "FTCA provides that the United States is the sole party, which may be sued for personal injuries arising out of the negligence of its employees"); *U.S. v. Gaubert*, 499 U.S. 315, 334, 111 S. Ct. 1267, 1279, 113 F.Ed. 2d 335, 338 (1991) (holding that when government regulators provided management advice in a pre-closing (pre-receivership) context to a thrift institution, it fell within the FTCA); *Love v. United States*, 915 F.2d 1242, 1247-48 (9th Cir. 1989) (interpreting the breach of implied covenant of good faith and fair dealing under Montana law).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

20

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1    duty to the receivership's creditors, as expressly provided by FIRREA.  *See* 12

2    U.S.C. § 1823(d)(3)(C) (discussing "the *fiduciary duties and obligations of the*

3    *Corporation as receiver* to claimants against the insured depository institution in

4    receivership") (emphasis added).  The fiduciary duty to marshal the assets of the

5    receivership for the benefit of creditors is an essential responsibility of all

6    receivers.  This fiduciary duty would be meaningless if creditors have no recourse

7    against the receiver when it fails to execute its duties.  *See Corbin,* 458 F. Supp. at

8    146 (allowing the plaintiff to assert a claim against the FDIC for breach of its

9    fiduciary duty as receiver because "[the FDI Act] do[es] not give unlimited

10   discretion to a receiver to fix the terms and conditions of a sale of receivership

11   assets. . . [;] the fairness of the terms to which [the FDIC-R] agrees are not beyond

12   the scope of traditional judicial review").  Moreover, common law provides

13   creditors with a right of action personally against the [r]eceiver for breach of its

14   fiduciary duty to the creditors.  *See, e.g., Landeen v. Riley Bennet Egloff LLC,* No

15   1:07-CV-0534, 2008 WL 1766961, at *2 (S.D. Ind. Apr. 11, 2008) ("CORPUS

16   JURIS SECUNDUM teaches that [a] receiver who acts outside his statutory

17   authority or orders of the appointing court, or who is guilty of negligence or

18   misconduct in the administration of the receivership, *is personally liable for any*

19   *loss resulting therefrom*.") (emphasis added) (internal citations and quotation

20   marks omitted).

21         Congress has not provided differently in FIRREA.  In requiring the FDIC to

22   act as receiver for a failed bank, Congress also required that the FDIC take on the

23   obligations of a receiver, including the obligation of owing fiduciary duties to the

24   receivership's creditors.  *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86-87,

25   114 S. Ct. 2048, 2054-55, 129 L. Ed. 2d 67, 74-75 (1994) (holding that bank's

26   attorneys were subject to a state law duty of care standard because Congress did

27   not provide differently in FIRREA).

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                          21                  PLAINTIFF'S OPPOSITION TO MOTION
                                                            TO DISMISS AND TO STRIKE

### 2. A Private Right of Action for Violation of Section 1821(d)(13)(E) is Implied

Contrary to the FDIC's argument, application of the factors announced in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L. Ed. 2d 26 (1975), supports the finding that an implied private right of action for violation of FIRREA exists here: (a) the Trusts and Trustee are members of the class for whose benefit the statute was enacted; (b) there is legislative intent to create a private right of action; (c) a private right of action is consistent with the purposes of FIRREA; and (d) the cause of action is not one traditionally relegated to state law. *See Cort*, 422 U.S. at 78.

### a. FIRREA's receivership provisions were enacted for the benefit of the failed institution's creditors

FIRREA's appointment of the FDIC as the receiver for a failed bank is for the benefit of the failed bank's creditors. *See Schock v. FDIC*, 118 F. Supp. 2d 165, 169 (D.R.I. 2000) ("[A]ll actions taken by the FDIC in its role as receiver are done on behalf of the bank and for the benefit of the bank's depositors and creditors."). The FDIC-Receiver "*owes a duty of strict impartiality to all persons interested in the receivership estate*, and also must endeavor to realize the largest possible amount for assets of the estate." *See Golden Pac. Bancorp*, 375 F.3d at 201 (emphasis added) (internal citations and quotation marks omitted); *E.I. du Pont de Nemours & Co. v. FDIC*, 32 F.3d 592, 595 (D.C. Cir. 1994) (explaining that FDIC's duty "to marshal the assets of the bank and to distribute them to the bank's creditors and shareholders"). The FDIC's breach of its receivership duties in this action harms the Trusts and the Trustee by depriving them of the value that they should have realized from the sale of the servicing rights to OneWest. *See* Compl. ¶¶ 57, 155, 192.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

22

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

b.      **In enacting FIRREA, Congress intended to create a private right of action**

FIRREA contains several indicia of Congress's intent to create a private right of action for breach of fiduciary duty.  It sets the FDIC's maximum liability with respect to claims by the receivership's creditors, it recognizes the FDIC's fiduciary duty to receivership claimants, and it provides claimants with a right to an accounting of payments from the receivership, providing a mechanism to monitor the FDIC's actions.  *See* 12 U.S.C. §§ 1823(d)(3)(C), (i)(2) ), (d)(11)(C). Finally, Congress has expressly disclaimed the existence of a private right of action against the FDIC in other contexts.  *See* 12 U.S.C. § 1831g(d) ("This section may not be construed as creating any private right of action."). Yet Congress did not adopt such language in connection with FIRREA's receivership provisions.  Moreover, the Ninth Circuit has held that "[t]he absence of a statement of intent to create a remedy does not necessarily mean that no remedy is available." *See First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1124 (9th Cir. 2000).

c.      **A private right of action is consistent with the purposes of FIRREA**

Allowing a private right of action for the failed bank's creditors is consistent with FIRREA's purpose.  Congress enacted FIRREA to provide for the orderly resolution of failed banks and the purpose of FIRREA's receivership provisions is to distribute a failed bank's assets to its creditors.  *See* FDIC Resolution Handbook, 2 (2003) ("In its role as receiver for a failed depository institution, the FDIC has a statutory obligation generally to maximize the return on the sale or disposition of the receivership estate's assets.")(footnote omitted), *available at* http://www.fdic.gov/bank/historical/reshandbook/.  For these reasons, the Ninth Circuit found it "fair" to imply a private right of action from § 1821(d)(15) of FIRREA.  *See Helfer*, 224 F.3d at 1126.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

23

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1

       d.     **The cause of action is based solely on federal law**

2

     The FDIC agrees that the fourth *Cort* factor, whether the cause of action is

3

one that is traditionally relegated to state law, is met "because actions against

4

federal entities to enforce rights granted under federal law are not traditionally

5

relegated to state law." *See* FDIC-R's Motion, at 20 n.9.

6

        **3.**     **Cases Cited by the FDIC Declining to Imply a Private
Right of Action Under FIRREA are Distinguishable**

7

8

     Unlike in *Hindes v. FDIC*, 137 F. 3d 148, 169-70 (3d Cir. 1998), the

9

interested parties here are not shareholders in the failed bank.  The Ninth Circuit

10

in *First Pacific* recognized its disagreement with *Hindes* when it held that

11

shareholders had a private right of action under FIRREA to compel the FDIC to

12

produce annual reports of receivership.  *See Helfer*, 224 F.3d at 1127-28.

13

     The FDIC also relies on *Mosseri v. FDIC*, No. 95-cv-0723, 2001 U.S. Dist.

14

LEXIS 18899 (S.D.N.Y. Nov. 19, 2001), and *Pen-Del Mortgage Assoc. v. FDIC*,

15

No. 94-0067, 1994 U.S. Dist. LEXIS 16741 (E.D. Pa. Nov. 22, 1994).  In both

16

cases, the plaintiffs were disappointed bidders who alleged that they had a right to

17

recover from the FDIC under § 1821(d)(13)(E) because they allegedly submitted a

18

better offer than the winning bidders.  *See Mosseri*, 2001 U.S. Dist. LEXIS 18899,

19

at *1; *Pen-Del Mortgage*, 1994 U.S. Dist. LEXIS 16741 at *1.  Bidders, however,

20

are not similarly situated to receivership creditors, and thus these cases have no

21

bearing on the Trustee's right of action under FIRREA.

22

**V.**    **THE TRUSTEE HAS STATED A TAKINGS CLAIM**

23

     The FDIC attempts to raise a variety of arguments against the Trustee's

24

takings claim.  However, as the Trustee's takings claim is self-executing and seeks

25

the FDIC's own funds, its claim is viable and not bound by the Tucker Act.

26

     **A.**     **The FDIC Is Not Immune to a Takings Claim**

27

     The FDIC claims that the Trustee cannot maintain a takings claim against it

28

because "the Supreme Court has refused to 'impl[y] a *Bivens* type cause of action

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

24

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   directly against a federal agency.'" *See* FDIC-R Motion, at 21.  However, it fails

2   to offer any explanation as to why *Meyer* applies here.  In fact, *Meyer* does not

3   apply to this case.

4       First, the Trustee does not need *Bivens* to bring a takings claim against the

5   FDIC.  The just compensation clause is self-executing, and no other legal theory

6   must be relied upon when brining a claim.  *See, e.g., Seven Up Pete Venture v.*

7   *Schweitzer*, 523 F.3d 948, 953-54 (9th Cir. 2008).  Second, the Trustee's claim

8   does not raise the same concerns that were raised by the claim in *Meyer*.  Here, the

9   Trustee is seeking damages from the FDIC's own funds.  Accordingly, enabling

10   this action to go forward would not "be creating a potentially enormous financial

11   burden for the Federal Government."  *See Meyer*, 510 U.S. at 486.  In other words,

12   the Trustee's claim will not require the Court to be making decisions "involving

13   federal fiscal policy" because the damages sought are limited to the FDIC's funds.

14   *See id.*  (internal quotation marks and citation omitted).

15       **B.    A Constitutional Claim Against an Agency Need Not Be Brought**

16       **in the Court of Claims**

17       The FDIC also claims that under the Tucker Act, the Court of Federal

18   Claims has exclusive original jurisdiction over "any claim against the United

19   States founded . . . upon the Constitution" in excess of $10,000.00.  *See* 28 U.S.C.

20   § 1491(a)(1).  This argument is specious.  The Trustee is seeking damages from

21   the FDIC's own funds, not the funds of the United States government.  The

22   authorities are clear that this means that this suit is not "against the United States"

23   and the Tucker Act does not apply.  *See Indus. Indemnity, Inc. v. Landrieu*, 615

24   F.2d 644, 646 (5th Cir. 1980) (finding suit against Secretary of HUD was not

25   "against the United States" where any recovery would not "expend itself in the

26   public treasury," but rather be paid from a separate fund); *see also C.D. Barnes*

27   *Assocs., Inc. v. Grand Haven Hideaway Ltd. P'ship*, 406 F. Supp. 2d 801, 818

28   (W.D. Mich. 2005) (deeming suit to be against HUD, not the United States where

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

25

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   "a judgment would not affect the public Treasury"); *Ensign Financial Corp. &*
2   *Hamilton Holding Co. v. FDIC*, 785 F. Supp. 391, 401 (S.D.N.Y. 1992) ("[a]s
3   long as the United States is not the immediate source of funds from which an
4   agency pays out a money judgment, a suit against the agency will not be
5   considered to be a suit against the United States"); *Jackson Square Assocs. v.*
6   *United States Dep't of Housing & Urban Dev.*, 797 F. Supp. 242, 244 (W.D.N.Y.
7   1992) (finding that the Tucker Act did not divest jurisdiction where action against
8   HUD was not an action against the United States because recovery sought would
9   "be paid out of separate funds in the control of [HUD]"); *FHM Constructors, Inc.*
10  *v. Village of Canton Housing Auth.*, 779 F. Supp. 677, 681 (N.D.N.Y. 1992)
11  (finding action against HUD was against the agency and not the United States
12  where plaintiff's recovery was limited to sums within the agency's control).  As
13  alleged in paragraph 15 of the Complaint, "the FDIC is an independent agency of
14  the United States government.  It receives no Congressional appropriations . . . ."
15  *See* Compl. ¶ 15; *Cf Acceptance Ins. Cos. v. United States*, 503 F.3d 1328, 1337-
16  38 (Fed. Cir. 2007) (plaintiff sought compensation from the Risk Management
17  Agency, an agency within the Department of Agriculture, which is funded by the
18  United States government).  The Trustee's lawsuit is against the FDIC and is
19  seeking damages from its funds.  The Tucker Act, thus, does not apply, and the
20  takings claim is proper in this Court.
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

26

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

## C.     The FDIC's Conduct Constituted an Unconstitutional Taking[10]

The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." *Guggenheim v. City of Goleta*, 582 F.3d 996, 1000 (9th Cir. 2009) (citing U.S. Const. amend. V). The Takings Clause "bar[s] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* (internal citation and quotation marks omitted).  Where government regulatory conduct results in a potential taking, the court considers several factors of "particular significance" to determine whether a taking occurred: (1) the character of the government action; (2) the economic impact of the regulation on the claimant; and (3) the extent to which the regulation has interfered with reasonable investment-backed expectations.  *See Branch ex rel. Maine Nat'l Bank v. United States*, 69 F.3d 1571, 1578-79 (Fed. Cir. 1995).

According to the FDIC, even if the Trustee can assert a takings claim against it, the claim is not viable because it is not supported by the particularly relevant factors.  *See* FDIC-R Motion, at 22-23.  The FDIC claims that its actions promoted the common good, and were in the public's interest.  *See id.* at 22.  However, the FDIC also admits that its actions benefited the Deposit Insurance Fund.  *See id*; Compl. ¶ 151.  Additionally, the FDIC claims that because the banking industry is so highly regulated, the Trustee could not have had a reasonable investment-backed expectation that the FDIC would not exercise its statutory powers.  *See* FDIC-R Motion, at 23.  This argument is inapposite when,

---

[10]   The Trustee does not dispute that a takings claim cannot be based on the FDIC's violation of FIRREA.  *See* FDIC-R Motion, at 21-22.  Rather, the Trustee is bringing the takings claim in the alternative to the breach of contract claim.  *See, e.g., Waterview Mgmt. Co.*, 105 F.3d at 699.  If the Court determines that the FDIC's conduct violated FIRREA, the FDIC is liable for breach of contract.  However, if the Court determines that the FDIC's conduct was in accordance with FIRREA, the FDIC has taken the Trustee's property without just compensation.  At this point in the litigation, the Court need not determine which claim will prevail.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

27

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1   as here, the contention is that FDIC's actions exceeded those powers.

2        The FDIC wrongly applies the relevant factors to the facts of this case.

3   First, the FDIC readily admits that the sale of the servicing rights to OneWest

4   benefited the Deposit Insurance Fund.  While it tries to claim it was merely

5   "adjusting the benefits and burdens of economic life to promote the common

6   good," *see* FDIC-R Motion, at 22, this is simply not the case.  The FDIC was

7   acting to protect its own assets – the $45 billion that makes up the Deposit

8   Insurance Fund.  By selling the servicing rights, the FDIC was receiving some

9   return on the money that it was required to pay.  Second, it is indisputable that the

10   Trusts and the Trustee were economically impaired by the FDIC's conduct, and

11   the FDIC does not even attempt to argue to the contrary.  The FDIC sold all of the

12   value of the Trust's and the Trustee's assets, but maintained the liabilities.

13   Finally, while the Trustee recognizes that the banking industry is heavily

14   regulated, there has to be some limit to the conduct that can reasonably be

15   expected.  For example, this is not a claim based on the FDIC seizing a failing

16   bank.  *See, e.g., California Housing Secs., Inc. v. United* States, 959 F.2d 955, 958

17   (Fed. Cir. 1992) (holding that the seizure and subsequent liquidation of a bank

18   "cannot constitute a physical fifth amendment taking").  Rather, this is a case

19   where the FDIC breached a contract, which is something that it is prohibited from

20   doing under Ninth Circuit precedent.  The FDIC is in a better position than

21   IndyMac would have been because it is breaching a contract essentially without

22   repercussion.  If the FDIC is allowed to engage in this conduct then it must pay

23   just compensation.  *See, e.g., Waterview*, 105 F.3d at 698.

24
25   **VI.    THE TRUSTEE HAS STATED A CLAIM FOR VIOLATION OF THE TRUSTS' AND ITS RIGHTS TO DUE PROCESS**

26        The FDIC also inappropriately relies on *Meyer* as support for its claim that

27   the Trustee's due process claim should be dismissed.  *See* FDIC-R Motion, at 23.

28   The Trusts' and the Trustee's rights to due process were violated when the FDIC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1

28

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS AND TO STRIKE

1    took their property without just compensation, and without allowing the Trustee to

2    be heard.  *See Tyrer v. City of South Beloit*, 456 F.3d 744, 753 (7th Cir. 2006)

3    ("government action effecting a taking is only valid if the plaintiff is compensated

4    justly *and* afforded due process of law")  (emphasis in original); *Adagio*, 338 F.

5    Supp. 2d at 82 n.19 ("[I]f the FDIC could take property without due process,

6    serious constitutional problems would be presented . . . .").  Further, as discussed

7    above in the Takings section, the Trustee's claim is quite different than the

8    plaintiff's in *Meyer*, specifically because the Trustee is not attempting to expand

9    the United State's liability.

10   **VII.   THE TRUSTEE'S ALLEGATIONS SEEKING SUPER-PRIORITY**
11   **        SHOULD NOT BE STRICKEN**

12       The allegations in the Complaint seeking administrative or greater claim

13   priority should not be stricken under Federal Rule of Civil Procedure 12(f).  Rule

14   12(f) provides that a court "may order stricken from any pleading . . . any

15   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

16   An "[i]mmaterial matter is that which has no essential or important relationship to

17   the claim for relief or the defenses being pleaded" and an "[i]mpertinent matter

18   consists of statements that do not pertain, and are not necessary, to the issues in

19   question." *See Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir. 1993)

20   (internal citation and quotation marks omitted).  "Courts are very reluctant to

21   determine disputed or substantial questions of law on a motion to strike."  *Z.A. v.*

22   *St. Helena Unified Sch. Dist.*, No. 09-03557, 2010 U.S. Dist. LEXIS 12858, at *7

23   (N.D. Cal. Jan. 25, 2010) (internal citation and quotation marks omitted).

24       The FDIC contends that allegations seeking superiority should be stricken

25   as "statutorily barred and lacking a legal basis" because administrative priority is

26   an unavailable remedy by application of 12 U.S.C. § 1821(j).  As discussed earlier

27   the FDIC is not entitled to the protection of 12 U.S.C. § 1821(j) because it seeks to

28   benefit from conduct that is statutorily prescribed and thus can seek an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                                          29                    PLAINTIFF'S OPPOSITION TO MOTION
                                                                              TO DISMISS AND TO STRIKE

1   administrative priority, i.e., it not only improperly severed a QFC, it also breached

2   the Governing Agreements.  *See* Compl. ¶¶ 149, 154.  Because there is a legal

3   basis supporting the Trustee's entitlement to an administrative priority, the

4   allegations supporting superiority are neither immaterial nor impertinent and

5   should not be stricken.[11]

6   ## VIII.  CONCLUSION

7         By acting unlawfully and beyond the powers conferred on it by FIRREA,

8   the FDIC breached contracts it had assumed, breached it fiduciary duties, and

9   violated the Trusts' and the Trustee's constitutional rights.  Accordingly, the

10   Trustee respectfully requests that this Court deny the FDIC-Receiver's Motion to

11   Dismiss and to Strike.  In the alternative, the Trustee should be permitted an

12   opportunity to amend with respect to any claim that the Court may be inclined to

13   dismiss.  As discussed in the FDIC-C brief filed on July 16, the FDIC did not

14   supply to the Trustee, before the bar date for filing suit, the agreements and

15   schedules which fully disclosed the transactions that are the subject of the

16   Complaint.  Although the Trustee still does not have all of these documents, it has

17   more information than it did when forced to file the Complaint, and it should be

18   given a chance to replead if necessary.

19   Dated:     July 19, 2010              MORGAN, LEWIS & BOCKIUS LLP
                                           JAMI WINTZ MCKEON
20                                         DAVID L. SCHRADER

21

22                                    By: /s/ Jami Wintz McKeon
                                          Attorneys for Plaintiff
23                                        Deutsche Bank National Trust Company, as
                                          Trustee for certain residential mortgage-
24                                        backed securitization trusts sponsored by
                                          IndyMac Bank, F.S.B.
25   _____

26   [11]  Moreover, a Rule 12(f) motion to strike is an inappropriate means for the FDIC to
        challenge the Trustee's entitlement to an administrative priority.  *See Chaconas v.*
27      *JP Morgan Chase Bank*, No. 09-cv-2479, 2010 U.S. Dist. LEXIS 45930, at *24-25
        (S.D. Cal. May 10, 2010) (denying motion to strike requests for statutory damages
28      and noting defendant "failed to show that a motion to strike is an appropriate vehicle
        to determine what statutory remedies are available").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
PALO ALTO

DB2/21828976.1                                30                    PLAINTIFF'S OPPOSITION TO MOTION
                                                                    TO DISMISS AND TO STRIKE