1   Michael H. Bierman, State Bar No. 89156
    mbierman@luce.com
2   Jeffrey D. Wexler, State Bar No. 132256
    jwexler@luce.com
3   Luce, Forward, Hamilton & Scripps LLP
    601 South Figueroa, Suite 3900
4   Los Angeles, California 90017
    Tel.: (213) 892-4992 / Fax: (213) 452-8029
5
    Of Counsel:
6   Kathryn R. Norcross, Senior Counsel (admitted *pro hac vice*)
    Federal Deposit Insurance Corporation
7   Legal Division
    3501 Fairfax Drive,
8   Arlington, VA 22226
    Tel: (703) 562-2302
9

10  Attorneys for Defendants Federal Deposit
    Insurance Corporation, as Receiver for IndyMac Bank,
11  F.S.B. and as Receiver for IndyMac Federal Bank, F.S.B.

12                  UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14                         WESTERN DIVISION

15

16  Deutsche Bank National Trust Company,    Case No. CV09-3852 GAF (FFMx)
    as Trustee for certain residential
    mortgage-backed securitization trusts    **REPLY MEMORANDUM OF**
17  sponsored by IndyMac Bank, F.S.B.,       **POINTS AND AUTHORITIES IN**
                                             **SUPPORT OF MOTION OF**
18              Plaintiff,                   **DEFENDANT FEDERAL DEPOSIT**
                                             **INSURANCE CORPORATION AS**
19  vs.                                      **RECEIVER TO DISMISS AND TO**
                                             **STRIKE [Fed. R. Civ. P. 12(b)(1),**
20  Federal Deposit Insurance Corporation,   **12(b)(6), and 12(f)]**
    as Receiver of IndyMac Bank, F.S.B.;
21  Federal Deposit Insurance Corporation,   Date:  September 13, 2010
    as Conservator and Receiver of IndyMac   Time:  9:30 a.m.
22  Federal Bank, F.S.B.; Federal Deposit    Place:  Courtroom 740, Roybal Bldg.
    Insurance Corporation, in its corporate  [The Honorable Gary A. Feess]
23  capacity; and Federal Deposit Insurance
    Corporation, as Government Entity,
24
                Defendants.
25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

INTRODUCTION ...................................................................................... 1

4

LEGAL ARGUMENT ................................................................................ 3

5

I.    DEUTSCHE BANK'S CLAIMS SHOULD BE DISMISSED AS
MOOT. ..................................................................................................... 3

6

7

     A.   There is No Subject Matter Jurisdiction over Deutsche Bank's
Claims. ............................................................................................ 3

8

     B.   The Court Should Dismiss Deutsche Bank's Claims on
Prudential Mootness Grounds Because No Practical Relief can
be Granted. ..................................................................................... 5

9

10

II.   FIRREA BARS DEUTSCHE BANK'S CLAIMS FOR
SUPERPRIORITY AND A CONSTRUCTIVE TRUST. ............................ 7

11

12

     A.   Deutsche Bank's Allegations for Superpriority Should be
Dismissed. ....................................................................................... 8

13

     B.   Count Eleven for Constructive Trust Should be Dismissed for
Lack of Subject Matter Jurisdiction and Failure to State a Claim. ..... 11

14

15

III.  THE ONEWEST TRANSACTION DID NOT VIOLATE QFC
RULES. ................................................................................................... 12

16

IV.  COUNTS THREE AND FIVE FOR BREACH OF CONTRACT AND
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
MUST BE DISMISSED.......................................................................... 15

17

18

     A.   The Assignment Consent Clause in the Governing Agreements is
Subject to Section 1821(d)(2)(G)................................................. 15

19

20

     B.   Deutsche Bank has Not Alleged that the Governing Agreements
Prohibit an Assignment of Servicing Rights Without Seller
Obligations. .................................................................................. 18

21

22

     C.   Count Five is Not Actionable Because It Duplicates Count
Three. ............................................................................................ 19

23

V.   COUNT SIX (BREACH OF FIDUCIARY DUTY) MUST BE
DISMISSED. .......................................................................................... 19

24

25

     A.   Deutsche Bank has No Implied Private Right of Action for
Alleged Violation of FIRREA's Receivership Provisions. ............. 19

26

          1.   There is No Implied Private Right of Action for Violation of
Section 1821(d)(13)(E)............................................................. 20

27

          2.   No Inherent Fiduciary Duty is Applicable in This Case. ......... 23

28

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS
### (cont'd)

**Page**

B.   The Breach of Fiduciary Duty Alleged is Barred by the FTCA.........25

    1.   The Complaint Alleges No Contractual Basis for the Claim for Breach of Fiduciary Duty. .......................................................26

    2.   Deutsche Bank's Cases are Not Applicable Here. ...................26

    3.   Under the FTCA, Deutsche Bank's Claim would be Barred by the Discretionary Function Exception ......................................27

VI.   THE CONSTITUTIONAL CLAIMS MUST BE DISMISSED...................28

A.   Counts Seven and Eight do Not Allege Actionable Taking Claims. .........................................................................................28

B.   Counts Nine and Ten do Not Allege Actionable Due Process Claims. .........................................................................................29

CONCLUSION................................................................................................30

ii

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

Page

3   *19 Court St. Assocs.. LLC v. RTC.*
    190 B.R. 983 (Bankr. S.D.N.Y. 1996) ................................................ 20

4

5   *281-300 Joint Venture v. Onion.*
    938 F.2d 35 (5th Cir. 1991) ................................................................ 6

6   *Acadia Tech.. Inc. v. United States.*
    458 F.3d 1327 (Fed. Cir. 2006) ......................................................... 29

7

8   *Adams v. RTC.*
    927 F.2d 348 (8th Cir. 1991) ............................................................. 6

9   *Acceptance Ins. Cos. v. United States.*
    503 F.3d 1328 (Fed. Cir. 2007) ......................................................... 28

10

11  *Adagio Inv. Holding Ltd. v. FDIC.*
    338 F. Supp. 2d 71 (D.D.C. 2004) ........................................... 10, 29, 30

12  *Ali v. Cangemi.*
    419 F.3d 722 (8th Cir. 2005) ........................................................... 5, 6

13

14  *AmWest Sav. Ass'n v. Farmers Market of Odessa. Inc..*
    753 F. Supp. 1339 (W.D. Tex. 1990) ................................................ 4

15  *Ard v. FDIC.*
    2010 U.S. Dist. LEXIS 25113 (C.D. Cal. Mar. 17, 2010) .................. 6

16

17  *Bank of American Nat'l Ass'n v. Colonial Bank.*
    604 F.3d 1239 (11th Cir. 2010) ......................................................... 9

18  *Battista v. FDIC.*
    195 F.3d 1113 (9th Cir. 1999) ......................................................... 16

19

20  *Bender v. CenTrust Mortg. Corp..*
    51 F.3d 1027.
    *modified*, 60 F.3d 1507 (11th Cir. 1995) ...................................... 11

21

22  *Borten v. FDIC.*
    Case No. 09-5374 MMM (AJWx) (C.D. Cal. May 25, 2010) .............. 6

23  *Branch ex rel. Maine Nat'l Bank v. United States.*
    69 F.3d 1571 (Fed. Cir. 1995) ......................................................... 29

24

25  *Bruns v. National Credit Union Admin..*
    122 F.3d 1251 (9th Cir. 1997) ......................................................... 29

26  *Centennial Assocs. Ltd. Partnership v. FDIC.*
    927 F. Supp. 806 (D.N.J. 1996) ........................................................ 9

27

28  *Church of Scientology v. United States.*
    506 U.S. 9 (1992) ........................................................................... 5

iii

1

## TABLE OF AUTHORITIES
### (cont'd)

2

**Page**

3

*Colenzo v. FDIC*.
Case No. 09-0816 MMM (AJWx) (C.D. Cal. Apr. 28, 2010) ............................ 6

4

*Conroy v. FDIC*.
1995 WL 598961 (D. Mass. Sept. 15, 1995)............................................ 14, 15

5

6

*Corbin v. Federal Reserve Bank of New York*.
458 F. Supp. 143 (S.D.N.Y. 1978) ............................................................ 25, 26

7

*Cort v. Ash*.
422 U.S. 66 (1975) ........................................................................................ 19

8

9

*Courtney v. Halleran*.
485 F.3d 942 (7th Cir. 2007), ................................................................... 9, 10

10

*Davis v. United States*.
961 F.2d 53 (5th Cir. 1991) ...................................................................... 26. 27

11

12

*E.I. Du Pont de Nemours & Co. v. FDIC*.
32 F.3d 592 (D.C. Cir. 1994)......................................................................... 21

13

*Eberhard v. Marcu*.
530 F.3d 122 (2d Cir. 2008) .......................................................................... 24

14

15

*Elmco Props.. Inc. v. Second Nat'l Fed. Sav. Ass'n*.
94 F.3d 914 (4th Cir. 1996) ........................................................................... 10

16

*FDIC v. Craft*.
157 F.3d 697 (9th Cir. 1998) ......................................................................... 27

17

18

*FDIC v. Meyer*.
510 U.S. 471 (1994) ................................................................................ 27, 28

19

*First Indiana Fed. Sav. Bank v. FDIC*.
964 F.2d 503 (5th Cir. 1992) ....................................................................... 4, 6

20

21

*First Nat'l Ins. Co. v. FDIC*.
977 F. Supp. 1051 (S.D. Cal. 1997) .............................................................. 24

22

*First Pacific Bancorp.. Inc. v. Helfer*.
224 F.3d 1117 (9th Cir. 2000) ....................................................................... 23

23

24

*Foreman v. FDIC*.
Case No. 09-5474 SVW (JCx) (C.D. Cal. Apr. 27, 2010) ............................... 6

25

*Franks v. Bowman Transp. Co.*.
424 U.S. 747 (1976) ........................................................................................ 5

26

27

*Gator.com Corp. v. L.L. Bean. Inc.*.
398 F.3d 1125 (9th Cir. 2005) ..................................................................... 4, 6

28

iv

1

**TABLE OF AUTHORITIES**
**(cont'd)**

2

Page

3

*Golden Pacific Bancorp v. FDIC.*
375 F.3d 196 (2[d] Cir. 2004) ................................................6, 22, 24

4

*Hanson v. FDIC.*
113 F.3d 866 (8th Cir. 1997) ...................................................... 11

5

6

*Henrichs v. Valley View Dev..*
474 F.3d 609 (9th Cir. 2007) ..................................................... 5, 7

7

*Heiko v. FDIC.*
1995 WL 117604 (S.D.N.Y. Mar. 17, 1995).............................14, 15

8

9

*Herring v. FDIC.*
82 F.3d 282 (9th Cir. 1995) ........................................................ 6

10

*Hindes v. FDIC.*
137 F.3d 148 (3[d] Cir. 1998).............................................20, 21, 22

11

12

*Hoover v. FDIC.*
Case No. SACV 09-0750 (C.D. Cal. Apr. 5, 2010) ......................... 11

13

*Hunt v. Imperial Merchant Servs.. Inc..*
560 F.3d 1137 (9th Cir. 2009).
*cert. denied*, 130 S. Ct. 154 (2010) ............................................ 6

14

15

*In re AOV Indus.. Inc..*
792 F.2d 1140 (D.C. Cir. 1986)..................................................... 5

16

*Independent Living Center of Southern California. Inc. v. Maxwell-Jolly.*
572 F.3d 644 (9th Cir.).
*cert. denied*, 129 S. Ct. 2828 (1995) ......................................... 25

17

18

*Kelleher v. FDIC.*
Case No. 09-5376 MMM (AJWx) (C.D. Cal. May 25, 2010) ............ 6

19

20

*Landeen v. Riley Bennet Egloff LLC.*
2008 WL 1766961 (S.D. Ind. 2008).............................................. 25

21

*McNeily v. United States.*
839 F. Supp. 426 (N.D. Tex. 1992) ............................................... 4

22

23

*Microsoft Corp. v. Suncrest Enter..*
2006 WL 1329881 (N.D. Cal. May 16, 2006) ............................... 12

24

*Mosseri v. FDIC.*
2001 U.S. Dist. LEXIS 18899 (S.D.N.Y. 2001) .....................20, 21, 22

25

26

*MVB Mortgage Corp. v. FDIC.*
2010 WL 654041 (S.D. Ohio Feb. 19, 2010)................................. 10

27

28

v

1

**TABLE OF AUTHORITIES**
**(cont'd)**

2

**Page**

3

*Nasoordeen v. FDIC,*
2010 U.S. Dist. LEXIS 32045 (C.D. Cal. Mar. 17, 2010) ................. 6

4

*O'Melveny & Myers v. FDIC,*
5
512 U.S. 79 (1994) ...................................................................... 24

6

*Pen-Del Mortgage Assocs. v. FDIC,*
1994 U.S. Dist. LEXIS 16741 (E.D. Pa. 1994) ..................... 20, 21, 22

7

*RPM Invs., Inc. v. RTC,*
8
75 F.3d 618 (11th Cir. 1996) ......................................................... 9

9

*RTC v. Villa Este Apartments Partnership,*
806 F. Supp. 595 (E.D. La. 1992) ................................................. 20

10

*Russell v. IndyMac Bank, F.S.B.,*
11
2010 U.S. Dist. LEXIS 38759 (N.D. Cal. Apr. 20, 2010) .................. 6

12

*Sahni v. American Diversified Partners,*
83 F.3d 1054 (9th Cir. 1996) ................................... 8, 11, 15, 27

13

*Schock v. FDIC,*
14
118 F. Supp. 2d 165 (D.R.I. 2000),
*aff'd on other grounds*, 254 F.3d 1 (1st Cir. 2001) ..................... 21, 22

15

*Scholes v. Lehman,*
16
56 F.3d 750 (7th Cir. 1995) ........................................................ 24

17

*Seven Up Pete Venture v. Schweitzer,*
523 F.3d 948 (9th Cir.),
18
*cert. denied*, 129 S. Ct. 258 (2008) ............................................. 29

19

*Sharpe v. FDIC,*
126 F.3d 1147 (9th Cir. 1997) ................................. 10, 11, 17, 18

20

*Tam v. IndyMac Bank,*
21
Case No. CV 08-6458 MMM (AJWx) (C.D. Cal. Jan. 27, 2010)......... 6

22

*Tinoco v. IndyMac Bank, F.S.B.,*
Case No. CV 09-6174 JFW (JCx) (C.D. Cal. Feb. 5, 2010) ............. 6, 7

23

*Tyrer v. City of South Beloit,*
24
456 F.3d 744 (7th Cir. 2006) ...................................................... 29

25

*Volges v. RTC,*
32 F.3d 50 (2d Cir. 1994) ............................................................ 9

26

*Wallis v. Indy Mac Federal Bank,*
27
2010 U.S. Dist. LEXIS 56074 (W.D. Wash. June 8, 2010) ............... 6

28

vi

1

## TABLE OF AUTHORITIES
### (cont'd)

2

Page

3

*Waterview Mgmt. Co. v. FDIC,*
   105 F.3d 696 (D.C. Cir. 1997)................................................................ 17

4

*Whittlestone, Inc. v. Handi-Craft Co.,*
   2010 U.S. App. LEXIS 17133 (9th Cir. Aug. 17, 2010) ...................... 8

5

*Woodbridge Plaza v. Bank of Irvine,*
   815 F.2d 538 (9th Cir. 1987) ............................................................... 26

6

7

## STATUTES

8

12 U.S.C. § 1787(c)(8)(D)(ii)(I) ................................................................ 12

9

12 U.S.C. § 1819(a) ................................................................................... 27

10

12 U.S.C. § 1821 ...............................................................................20, 23

11

12 U.S.C. § 1821(d)(2) ............................................................................... 8

12

12 U.S.C. § 1821(d)(2)(A) ......................................................................... 24

13

12 U.S.C. § 1821(d)(2)(B) ................................................................... 16, 24

14

12 U.S.C. § 1821(d)(2)(E) ..................................................................... 8, 24

15

12 U.S.C. § 1821(d)(2)(F) ......................................................................... 24

16

12 U.S.C. § 1821(d)(2)(G) ..........................................................2, 17, 18, 24

17

12 U.S.C. § 1821(d)(2)(G)(i)(II) ...............................................8, 15, 16, 17

18

12 U.S.C. § 1821(d)(9)(A) ......................................................................... 21

19

12 U.S.C. § 1821(d)(10)(A) ....................................................................... 24

20

12 U.S.C. § 1821(d)(11) ...................................................................7, 8, 21

21

12 U.S.C. § 1821(d)(11)(A) ................................................................... 8, 24

22

12 U.S.C. § 1821(d)(11)(A)(i) ............................................................... 8, 11

23

12 U.S.C. § 1821(d)(11)(A)(iv) ............................................................ 8, 11

24

12 U.S.C. § 1821(d)(11)(C) ....................................................................... 22

25

12 U.S.C. § 1821(d)(13)(C) ....................................................................... 11

26

12 U.S.C. § 1821(d)(13)(E) ............................................19, 20, 21, 22, 24, 27

27

12 U.S.C. § 1821(d)(15) ............................................................................ 23

28

1

# TABLE OF AUTHORITIES
## (cont'd)

2                                                                          **Page**

3    12 U.S.C. § 1821(d)(20) ............................................................................ 4

4    12 U.S.C. § 1821(e) ............................................................................ 16, 17

5    12 U.S.C. § 1821(e)(3) ............................................................................ 16

6    12 U.S.C. § 1821(e)(8)(D) ..................................................................... 2, 12

7    12 U.S.C. § 1821(e)(8)(D)(i) ........................................................ 2, 11, 13

8    12 U.S.C. § 1821(e)(8)(D)(ii)(I) .............................................................. 13

9    12 U.S.C. § 1821(e)(8)(D)(ii)(XI) ........................................................... 13

10   12 U.S.C. § 1821(e)(8)(D)(vii) .......................................................... 13, 14

11   12 U.S.C. § 1821(e)(9) .................................................... 1, 2, 12, 13, 14

12   12 U.S.C. § 1821(h) ................................................................................. 27

13   12 U.S.C. § 1821(i)(2) ..................................................................... 3, 4, 22

14   12 U.S.C. § 1821(j) .................................................................. 1, 7, 8, 9, 10

15   12 U.S.C. § 1823(d) ................................................................................. 25

16   12 U.S.C. § 1823(d)(3)(C) ......................................................... 22, 24, 25

17   12 U.S.C. § 1823(e) ............................................................. 11, 18, 21, 25

18   12 U.S.C. § 1831g(d) ............................................................................... 22

19   28 U.S.C. § 1346(b) ...................................................................... 27, 28, 29

20   28 U.S.C. § 2680(a) ................................................................................. 27

21   28 U.S.C. § 2680(h) ................................................................................. 27

22
### **RULES**

23   Fed. R. Civ. P. 12(b)(6) ............................................................................. 8

24   Fed. R. Civ. P. 12(f) .................................................................................. 8

25
### **MISCELLANEOUS**

26   Fed. Reg. 7027 (Feb. 28, 1990) .............................................................. 13

27   U.S. Const., Art III ................................................................................ 4, 5

28   U.S. Const., Art. III, § 2 ........................................................................... 4

The FDIC as Receiver for IndyMac Bank, F.S.B. (the "IndyMac Receiver") and the FDIC as Receiver for IndyMac Federal Bank, F.S.B. (the "IndyMac Federal Receiver") (together the "Receivers") submit their Reply Memorandum in further support of their motion to dismiss the claims asserted against them by Deutsche Bank National Trust Company ("Deutsche Bank") that are based on the transaction between the Receivers and OneWest Bank, F.S.B. ("OneWest").

## INTRODUCTION

In its Complaint, Deutsche Bank claims to be wronged by the transfer of servicing rights and obligations to OneWest without the transfer of Seller obligations. Deutsche Bank's claims are, at best, general liability claims that the Receivers will never have money to pay under the statutory priority scheme established by Congress. At least six courts in this Circuit, faced with similar realities, have dismissed claims against the IndyMac Receivers based on prudential mootness. The reasoning of these courts mandates dismissal of Deutsche Bank's damages claims in this case as well.

To avoid the practical reality of prudential mootness, Deutsche Bank claims it is entitled to enhanced priority for its claim and seeks a constructive trust. However, Deutsche Bank fails to cite any statutory authority for its claim for enhanced priority. Deutsche Bank has not presented any basis upon which the Receivers could deviate from the priority scheme in the depositor preference statute. Additionally, its request that the Court create a constructive trust is barred by 12 U.S.C. § 1821(j). Deutsche Bank argues that Section 1821(j) is inapplicable because the FDIC has engaged in "unlawful activity," but it does not acknowledge or discuss the cases which hold that allegations of unlawful actions do not avoid the jurisdictional bar of Section 1821(j).

Deutsche Bank further attempts to obtain a priority superior to other claimants by arguing that the FDIC's transfer of servicing rights and obligations in the OneWest transaction violated 12 U.S.C. § 1821(e)(9). However, by its terms, Section 1821(e)(9) restricts only the transfer of Qualified Financial Contracts ("QFCs"). The servicing rights and obligations that were transferred to OneWest is

1

1  not a QFC under the statutory definition set forth in 12 U.S.C. § 1821(e)(8)(D)(i).

2  Therefore, there was no violation of Section 1821(e)(9).  Moreover, Section

3  1821(e)(8)(D) expressly permits QFCs and non-QFCs to be treated separately even

4  when they are contained in the same master agreement.

5      Deutsche Bank alleges only one contractual breach in support of Count Three, a

6  supposed breach of the assignment consent clauses in the Governing Agreements.

7  However, under 12 U.S.C. § 1821(d)(2)(G), the IndyMac Federal Receiver was

8  expressly permitted to transfer the servicing rights at issue, despite the consent clauses.

9  The transfer under the statute did not amount to a breach of contract.  Nevertheless,

10  Deutsche Bank contends that Section 1821(d)(2)(G):  (1) means only that a receiver

11  does not need consent from officers and directors of the failed institution to make a

12  transfer under the statute; and (2) permits the FDIC to rewrite contracts at will.  Not

13  surprisingly, Deutsche Bank can cite no controlling authority for its contention, which

14  is meritless and contrary to the plain language of the statute.  Therefore, Count Three

15  should be dismissed.  Deutsche Bank's claim in Count Five for breach of the covenant

16  of good faith and fair dealing similarly fails and should be dismissed.

17      Count Six is based on an alleged implied private right of action arising from the

18  FDIC's statutory duty to maximize the receivership estate.  Every court to have

19  considered this implied private right of action has rejected it.  This Court should do the

20  same because Deutsche Bank, as a supposed creditor, stands in fundamentally the same

21  shoes as the shareholders and disappointed bidders whose claims of implied private

22  right of action have been rejected.  Moreover, Deutsche Bank does not allege a breach

23  of the statutory mandate to maximize the value of the receivership estate.  To the

24  contrary, Deutsche Bank alleges that by transferring the servicing rights without Seller

25  obligations, the Receivers unfairly maximized the value of the receivership estate at

26  Deutsche Bank's expense.  No statutory provision or case suggests that the FDIC as

27  Receiver has a fiduciary duty to third parties affected by its actions in carrying out its

28  statutory mandate.

1    Without an implied private right of action, the breach of fiduciary duty claim

2 must fail.  To the extent the claim is based in common law tort, it must be dismissed

3 under the FTCA because (1) it does not name the United States and (2) it is subject to

4 the discretionary function exception.  Deutsche Bank does not dispute this.  Rather, it

5 argues the claim arises from contract.  It does not specify the contract or contractual

6 provision creating the fiduciary duties, and the Governing Agreements contain none.

7 Deutsche Bank thus asserts that the alleged fiduciary duty sounds in contract because

8 the Receivers have a fiduciary duty not to breach a failed bank's pre-receivership

9 contracts.  Again, Deutsche Bank can cite no authority for this remarkable proposition.

10    Counts Seven through Ten allege constitutional torts of uncompensated takings

11 and violations of due process.  Deutsche Bank does not discuss – let alone dispute – the

12 Supreme Court rulings that:  (1) takings claims seeking more than $10,000 must (a) be

13 brought against the United States (b) in the Court of Federal Claims; and (2) due

14 process claims cannot be brought against federal agencies such as the FDIC.

15    In the end, the Complaint does not allege viable claims against the Receivers

16 based on the OneWest transaction, and there is neither precedent nor other authority

17 that would support Deutsche Bank's claims for priority enhancement or a constructive

18 trust.  Deutsche Bank's attempt to obtain more favorable treatment than other creditors

19 must fail, and the Court should grant the Receivers' motion to dismiss.

20 **LEGAL ARGUMENT**

21 **I.    DEUTSCHE BANK'S CLAIMS SHOULD BE DISMISSED AS MOOT.**

22    **A.    There is No Subject Matter Jurisdiction over Deutsche Bank's Claims.**

23    As a matter of law, Deutsche Bank is only entitled to recover from the

24 Receivers an amount it would have received upon the liquidation of the failed

25 institutions.  *See* 12 U.S.C. § 1821(i)(2).  However, the FDIC's no value

26 determination (*see* Docket 24-1, Ex. A) conclusively establishes there are insufficient

27 assets in the Receivership estates to make any distribution to IndyMac's and

28

3

1  IndyMac Federal's general creditors such as Deutsche Bank.  Because there is no

2  longer any circumstance under which this action could redress the harm Deutsche

3  Bank allegedly sustained – even if it were to prevail on the merits – its claims against

4  the Receivers have been rendered moot and are no longer justiciable.[1]  Accordingly,

5  Deutsche Bank's claims must be dismissed for lack of subject matter jurisdiction.

6       The Receivers' liability to any creditor is strictly limited by law to the amount

7  such creditor would have received had the institutions been liquidated.  *See* 12 U.S.C.

8  § 1821(i)(2).  "In enacting FIRREA, Congress unequivocally expressed its intent to

9  limit the maximum liability of the FDIC to the amount the claimant would have

10  received in a liquidation under federal priority regulations."  *First Indiana Fed. Sav.*

11  *Bank v. FDIC*, 964 F.2d 503, 507 (5th Cir. 1992).  Where there are insufficient

12  receivership assets to satisfy general creditors' claims, Section 1821(i)(2) mandates

13  that general creditors receive nothing.  *See id.*; *McNeily v. United States*, 839 F.

14  Supp. 426, 429 (N.D. Tex. 1992).

15       The no value determination bars Deutsche Bank from any recovery from the

16  Receivers because there is no longer (and never will be) sufficient assets to pay it on

17  its claims against the Receivers.  *See First Indiana*, 964 F.2d at 507 ("[T]here are no

18  set of circumstances under which [plaintiffs] can recover any money or property

19  [from the Receivership estate] as a result of [unsecured] claims."); *AmWest Sav.*

20  *Ass'n v. Farmers Market of Odessa, Inc.*, 753 F. Supp. 1339, 1346 (W.D. Tex. 1990).

21       Because general creditors of the Receiverships cannot recover anything, there

22  is no case or controversy before the Court.  Article III of the United States

23  Constitution grants federal courts jurisdiction to decide only actual "cases" or

24  "controversies."  *See* U.S. Const. art. III, § 2; *Gator.com Corp. v. L.L. Bean, Inc.*, 398

25  F.3d 1125, 1128 (9th Cir. 2005) (it is "an inexorable command of the United States

---

26  [1]     In Count II for alleged post-failure breach of contract, Deutsche Bank seeks an
27  administrative priority right of payment based on 12 U.S.C. § 1821(d)(20) for
    purported "post-receivership breaches."  Complaint, ¶ 141.  The FDIC's no value
    determination only applies to general unsecured claims, and the Receivers have not
28  moved to dismiss Count II based on that determination.

Constitution that the federal courts confine themselves to deciding actual cases and controversies"). This limited grant of jurisdiction bars federal courts from rendering "opinions upon moot questions or abstract principles of law which cannot affect the matter[s] in issue in the case[s] before [them]." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). *See, e.g., Henrichs v. Valley View Dev.*, 474 F.3d 609, 615 (9th Cir. 2007) (dismissing case for lack of subject matter jurisdiction over claims against the FDIC as receiver where "[n]o assets remain[ed] in the receivership to satisfy [the plaintiffs'] claim, thus rendering the claim moot").

Here, Deutsche Bank's claims against the Receivers should likewise be dismissed for lack of subject matter jurisdiction. Even assuming that Deutsche Bank prevails on its claims against the Receivers, the Court can no longer grant relief to Deutsche Bank that would redress its alleged harm. As the no value determination demonstrates, the IndyMac Receivership estates do not now, nor will they ever, have sufficient assets to satisfy general unsecured creditor claims like Deutsche Bank's claims. Because there is no possibility that Deutsche Bank will ever recover anything against the Receivers, there is no longer an actual "case or controversy" presented in this matter. Thus, the Court should dismiss Deutsche Bank's monetary claims against the Receivers for lack of subject matter jurisdiction.

**B.    The Court Should Dismiss Deutsche Bank's Claims on Prudential Mootness Grounds Because No Practical Relief can be Granted.**

Even if the Court determines that some theoretical case or controversy exists to permit subject matter jurisdiction over Deutsche Bank's claims, the Court should still grant the Receivers' motion to dismiss under the doctrine of prudential mootness. Specifically, dismissal for prudential mootness is plainly warranted where, as here, proceeding on the merits would serve no practical purpose and would waste judicial resources. *See In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 756 n.8 (1976). Thus, "[e]ven if a court has jurisdiction under Article III to decide a case, prudential concerns may

1  militate against the use of judicial power," and "the court should treat the case as

2  moot for prudential reasons."  *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005).

3      Here, Deutsche Bank's claims should be dismissed on prudential mootness

4  grounds because they are futile; there is no reason to further litigate its claims against

5  the Receivers because there is no possibility that it will obtain any recovery, even if it

6  prevails on their claims.  Under identical circumstances, courts have routinely

7  dismissed claims against the FDIC as Receiver on prudential mootness grounds.  *See,*

8  *e.g., First Indiana*, 964 F.2d at 507 (holding that, even if worthless claims against

9  FDIC as Receiver "constitute a 'case or controversy' under Article III, those claims

10  should be dismissed for prudential reasons because there is no practical purpose in

11  requiring their adjudication on the merits"); *281-300 Joint Venture v. Onion*, 938

12  F.2d 35, 38-39 (5th Cir. 1991); *Adams v. RTC*, 927 F.2d 348, 354 (8th Cir. 1991).

13      At least six cases in the Ninth Circuit have now dismissed monetary claims

14  against the Receivers because the FDIC's worthlessness determination meant that the

15  plaintiffs, if successful, could have no monetary recovery.[2]  While acknowledging that

16  the Ninth Circuit has not yet expressly adopted the doctrine of prudential mootness,

17  almost all of these courts recognized that no circuit or district court had rejected the

18  doctrine.  All then found application of the doctrine appropriate.[3]  *See, e.g., Ard v.*

19  *FDIC*, 2010 U.S. Dist. LEXIS 25113 at *18-20 (C.D. Cal. Mar. 17, 2010).

---

[2]    *See* Docket 23 at 27:18-27 (citing *Tinoco v. IndyMac Bank, F.S.B.*, Case No. CV 09-6174 JFW (JCx) at 4-5 (C.D. Cal. Feb. 5, 2010), and *Tam v. IndyMac Bank*, Case No. CV 08-6458 MMM (AJWx) at 10-20 (C.D. Cal. Jan. 27, 2010)); *Wallis v. IndyMac Federal Bank*, 2010 U.S. Dist. LEXIS 56074 at *7-14 (W.D. Wash. June 8, 2010); *Kelleher v. FDIC*, Case No. CV 09-5376 MMM (AJWx) at 18-29 (C.D. Cal. May 25, 2010); *Borten v. FDIC*, Case No. CV 09-5374 MMM (AJWx) at 17-29 (C.D. Cal. May 25, 2010); *Colenzo v. FDIC*, Case No. 09-0816 MMM (AJWx) at 16-26 (Apr. 28, 2010); *Foreman v. FDIC*, Case No. 09-5474 SVW (JCx) at 15-23 (C.D. Cal. Apr. 27, 2010); *Russell v. IndyMac Bank, F.S.B.*, 2010 U.S. Dist. LEXIS 38759 at *3-4 (N.D. Cal. Apr. 20, 2010); *Nasoordeen v. FDIC*, 2010 U.S. Dist. LEXIS 32045 at *15-28 (C.D. Cal. Mar. 17, 2010); *Ard v. FDIC*, 2010 U.S. Dist. LEXIS 25113 at *16-36 (C.D. Cal. Mar. 17, 2010).  While Deutsche Bank notes that *Tam* and *Tinoco* involved general unsecured claims for pre-receivership bank liabilities, *see* Docket 47 at 14:14 – 15:3, it makes no argument why those cases would not govern because Deutsche Bank's claims are not entitled to priority.

[3]    Other courts have reached the same result by holding plaintiffs lack standing to

1   Deutsche Bank asks the Court to reject the unanimous authority applying the

2   doctrine of prudential mootness in this context on the ground that *Hunt v. Imperial*

3   *Merchant Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 154

4   (2010), declined to apply prudential mootness.  *See* Docket 47 at 13:19-28.  In *Hunt*,

5   the issue was whether an appeal was "anticipatorily moot" because an impending

6   appeals decision on the merits might eliminate the controversy.  The Ninth Circuit

7   declined "to dismiss a live controversy as moot merely because it may become moot in

8   the near future."  *Hunt*, 560 F.3d at 1141-42.  *Hunt* does not suggest that the Ninth

9   Circuit would reject prudential mootness where, as here, events that ***have already***

10  ***occurred*** establish that the plaintiff could not recover any money even if it prevailed.[4]

11  Deutsche Bank contends that the claims against the Receivers should not be

12  dismissed because Deutsche Bank may be able to recover monies from FDIC-

13  Corporate.  Docket 47 at 14:9-14.  For the reasons set forth by FDIC-Corporate, the

14  Receivers and FDIC-Corporate act in separate capacities and may not be held liable for

15  each other's conduct.

16
    **II.    FIRREA BARS DEUTSCHE BANK'S CLAIMS FOR SUPERPRIORITY**
17  **AND A CONSTRUCTIVE TRUST.**

18  Even if Deutsche Bank could prevail on its claims against the Receivers, it

19  would never be paid any money because the claims are a "general liability of the

20  institution" under the statutory priority scheme set forth in 12 U.S.C. § 1821(d)(11).

21  To avoid this result, Deutsche Bank invites the Court either to create a superpriority, a

22  classification that does not exist in FIRREA, or to impose a constructive trust in direct

23  contravention of Section 1821(j).

24  _____
    pursue a claim against the FDIC if they will be unable to recover any damages because
25  receivership assets will be exhausted by senior creditors.  *See Golden Pacific Bancorp
    v. FDIC*, 375 F.3d 196, 205-06 (2d Cir. 2004) (citing *Herring v. FDIC*, 82 F.3d 282,
26  285 (9th Cir. 1995)).

27  [4]    As Deutsche Bank notes, *see* Docket 47 at 13:28 – 14:3, *Henrichs*, 474 F.3d at
    615, applied Article III mootness, not prudential mootness.  *Tinoco*, Case No. CV 09-
28  6174 JFW (JCx), at 4-5, relied on *Henrichs* in dismissing claims for monetary relief
    against the FDIC based on Article III mootness.

1

**A.**   **Deutsche Bank's Allegations for Superpriority Should be Dismissed.**[5]

2

Deutsche Bank demands that its claim for damages be treated as if it were an

3

administrative expense of the Receiver when it plainly is not.  Deutsche Bank has not

4

directly alleged that its claims are administrative expenses; instead, in a sleight of hand,

5

it alleges that the Receivers' unlawful acts harmed it in such a way that its claims

6

should be treated ***as if*** they were "superior to or the equivalent of" an administrative

7

expense.  Deutsche Bank essentially asks the Court to create a new "superpriority"

8

classification.  Nothing in the depositor preference statute, however, permits such

9

creation.   Even if a receiver's alleged unlawful acts cause harm to the claimant, as

10

Deutsche Bank alleges here, such alleged unlawful acts do not convert an otherwise

11

general unsecured claim under 12 U.S.C. § 1821(d)(11)(A)(iv) into an administrative

12

expense under 12 U.S.C. § 1821(d)(11)(A)(i).  Requesting that the Court order the

13

Receivers to treat a general unsecured claim as having enhanced or "superpriority"

14

status is asking this Court to disregard the statutory depositor preference set forth in

15

section 1821(d)(11).

16

Deutsche Bank does not, and cannot, dispute that the Receivers have no statutory

17

authorization to create a superpriority for Deutsche Bank's claims under the priority

18

scheme set forth in Section 1821(d)(11)(A).  Nor can Deutsche Bank dispute that the

19

IndyMac Federal Receiver exercised statutorily authorized powers to "realize upon the

20

assets of the institution" and to "transfer any asset or liability of the institution in

21

default (including any assets and liabilities associated with any trust business) without

22

any approval, assignment, or consent with respect to such transfer."  12 U.S.C.

23

§§ 1821(d)(2)(E), 1821(d)(2)(G)(i)(II).

24

---

[5]     In *Whittlestone, Inc. v. Handi-Craft Co.*, 2010 U.S. App. LEXIS 17133 at *6-10

25

(9th Cir. Aug. 17, 2010), the Ninth Circuit held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are

26

precluded as a matter of law" and that such "an attempt to have certain portions of [the] complaint dismissed" is "better suited for a Rule 12(b)(6) motion," *id.* (footnote

27

omitted).  Accordingly, the Receivers respectfully ask the Court to apply Rule 12(b)(6) – not Rule 12(f) – to the portion of their motion that sought to strike

28

Deutsche Bank's allegations seeking a claim priority advantage.

8

In attempting to obtain a superpriority, Deutsche Bank suggests that the statutory claims scheme should be disregarded "where the FDIC has acted beyond, or contrary to, its statutorily-prescribed powers or functions." Docket 47 at 10:20 – 11:6, 11:19 – 12:15. In essence, absent any statutory authority for "superpriority," Deutsche Bank seeks equitable relief. To the extent that Deutsche Bank's claim is for equitable relief, Section 1821(j) expressly bars it. *See Courtney v. Halleran*, 485 F.3d 942, 946-50 (7th Cir. 2007) (applying Section 1821(j) to bar equitable relief notwithstanding allegations that the FDIC receiver violated priority distribution scheme).[6]

In any event, Section 1821(j) applies even when the Receiver allegedly acts unlawfully. Deutsche Bank's arguments to the contrary have been repeatedly rejected by other courts, including the Ninth Circuit. *See Sahni v. American Diversified Partners*, 83 F.3d 1054, 1059-60 (9th Cir. 1996) ("courts have applied § 1821(j) to insulate the actions of the FDIC as receiver from restraint, even where the receiver is alleged to have violated state law and equitable remedies are available"). *See also Bank of America Nat'l Ass'n v. Colonial Bank*, 604 F.3d 1239, 1243-45 (11th Cir. 2010) ( Section 1821(j) bars judicial intervention even if the FDIC as receiver "violates its own procedures or behaves unlawfully in doing so"); *RPM Invs., Inc. v. RTC*, 75 F.3d 618, 620-21 (11th Cir. 1996) (Section 1821(j) barred the plaintiffs' claim for equitable relief notwithstanding "[t]he appellants' allegations that the RTC breached a contract"); *Volges v. RTC*, 32 F.3d 50, 51-53 (2d Cir. 2004) (Section 1821(j) barred the plaintiff's claim for an injunction against the sale of assets by the receiver even though such sale might constitute a breach of contract); *Centennial Assocs. Ltd. P'ship v. FDIC*, 927 F. Supp. 806, 812-13 (D.N.J. 1996) (Section 1821(j) applied notwithstanding the plaintiffs' claim that the FDIC's assignment breached a contract and violated statutory guidelines about maximizing the value of assets).

---

[6] Deutsche Bank apparently attempts to distinguish *Courtney* by asserting that "the FDIC relies solely on cases involving the proper repudiation of contracts in their entirety," Docket 47 at 12:17-18, but repudiation was not even at issue in *Courtney*.

1    None of the cases Deutsche Bank cites suggests that its allegations of breach of

2    contract or other unlawful activity render Section 1821(j) inapplicable.  There is no

3    such holding in *MVB Mortgage Corp. v. FDIC*, 2010 WL 654051 at *6 (S.D. Ohio

4    Feb. 19, 2010).  And, in *Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d

5    914, 918-23 (4th Cir. 1996), the court held that the RTC violated the plaintiff's due

6    process rights by extinguishing the claims of a plaintiff who lacked notice or

7    knowledge of a receivership and the accompanying administrative claims process, and

8    that Section 1821(j) did not bar the court from entering a decree allowing the plaintiff

9    to file an administrative claim.  *See id.*  Deutsche Bank's implication to the contrary,

10   *see* Docket 47 at 12:10-15, the court's Section 1821(j) holding was based upon a due

11   process violation, not a statutory violation or allegations of breach of contract, and the

12   remedy was to require the RTC to allow the plaintiff to participate in the administrative

13   claims process – the process in which Deutsche Bank is engaged now.

14   Deutsche Bank's attempt to justify its request for extraordinary relief on two

15   cases where the FDIC allegedly acted beyond its statutory powers is equally

16   unavailing.  *See* Docket 47 at 10:18-28.  Neither case can justify superpriority.  While

17   *Sharpe v. FDIC*, 126 F.3d 1147, 1154 (9th Cir. 1997), held that the FDIC acted

18   beyond, or contrary to, its powers, that case does not suggest that courts may change

19   the statutory claim priority scheme or order the FDIC acting as receiver to deviate from

20   it.  Additionally, *Adagio Inv. Holding Ltd. v. FDIC*, 338 F. Supp. 2d 71, 79, 83 (D.D.C.

21   2004), as noted by *Courtney*, 485 F.3d at 949, "deals with an entirely different

22   situation" than the statutory priority claim scheme, *id.*

23   Deutsche Bank asks the Court to follow a doctrine in "the analogous bankruptcy

24   context" "recogniz[ing] an administrative priority status for damage awards resulting

25   from the wrongful conduct of a trustee during its administration of a bankruptcy

26   estate."  Docket 47 at 11:7-17 & n.4.  However, Section 1821(j) deprives the courts of

27   jurisdiction to equitably grant relief affecting FIRREA's statutory priority scheme; the

28   Bankruptcy Code lacks an analogous statutory bar on modifying priority.

Deutsche Bank argues that "[t]he FDIC is essentially demanding unreviewable authority."  Docket 47 at 13:8-15.  Deutsche Bank misses the point.  The Receivers do not contend that a court cannot review a receiver's claim status determination under Section 1821(d)(11)(A)(i), but only that it cannot create a new category of claim "superior to or the equivalent of" an administrative expense or elevate the claims of a general unsecured creditor above those with a higher statutory priority.

### B.   Count Eleven for Constructive Trust Should be Dismissed for Lack of Subject Matter Jurisdiction and Failure to State a Claim.

Well-settled case law interpreting Section 1821(j) precludes Deutsche Bank's claim for constructive trust.  Thus, in arguing that alleged "unlawful activities" of the FDIC justify imposition of a constructive trust, Deutsche Bank simply ignores cases expressly holding that Section 1821(j) bars such relief.  *See Hanson v. FDIC*, 113 F.3d 866, 871 (8th Cir. 1997); *RPM Invs., Inc.*, 75 F.3d at 620-21.  It also ignores *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030-31, *modified*, 60 F.3d 1507 (11th Cir. 1995), which found that a constructive trust is in the nature of an attachment and therefore barred by 12 U.S.C. § 1821(d)(13)(C).

Deutsche Bank's argument rests solely on its assertion that allegations of breach of contract render these statutory provisions inapplicable.  The only case cited for this proposition is *Hoover v. FDIC*, Case No. SACV 09-0750 at 13-14 (C.D. Cal. Apr. 5, 2010), which Deutsche Bank characterizes as "deciding that *Sharpe*, rather than *Sahni*, applied to plaintiffs' claim that the FDIC's conduct warranted the imposition of a constructive trust because the 'protection from certain types of court action . . . is not a per se bar to reformation or imposition of a constructive trust.'"  Docket 47 at 15:15-21.  In *Hoover*, the court stated in dicta that Section 1821(j) is not "a per se bar to reformation or imposition of a constructive trust."  *Hoover*, Case No. SACV 09-0750 at 13-14.  The court never reached the issue, however, because it held that the plaintiffs' claims were barred by Section 1823(e).  *See id.*  Whatever the *Hoover* court meant by

1   its dicta (in a footnote), Deutsche Bank has not alleged facts that would justify ignoring

2   the plain language of the statute.

3        Deutsche Bank also argues that "even if the FDIC were correct in characterizing

4   a constructive trust as a remedial device, it is appropriate to plead it separately to make

5   clear that it is a potential remedy for other asserted claims."  Docket 47 at 15:22 –

6   16:11.  The single case it cites acknowledged that "constructive trust is a remedy,

7   rather than a freestanding claim" but declined to dispose of a constructive trust claim

8   through summary judgment.  *Microsoft Corp. v. Suncrest Enter.*, 2006 WL 1329881 at

9   *8 (N.D. Cal. May 16, 2006) (designated not for citation).  The case does not suggest

10  that, at the pleading stage, the Court should allow a party to pursue a stand-alone claim

11  for constructive trust rather than asserting that claim – if available – as a remedy.

12  **III.   THE ONEWEST TRANSACTION DID NOT VIOLATE QFC RULES.**

13       Deutsche Bank asserts that because the Governing Agreements constitute

14  "qualified financial contracts" (QFCs) pursuant to 12 U.S.C. § 1821(e)(8)(D)(i), "[t]he

15  FDIC's improper act of splitting the Governing Agreements and selling only the

16  servicing rights to OneWest, without the related obligations and liabilities," violated

17  Section 1821(e)(9).  Docket 47 at 4:11 – 5:6.  Deutsche Bank's argument fails because

18  the servicing rights and obligations that were transferred to OneWest is not a QFC.

19  Additionally, even if the Governing Agreements contained QFCs, Section

20  1821(e)(8)(D) expressly permits treatment of non-QFCs separately from QFCs when

21  they are contained in the same master agreement.

22       Mortgage servicing agreements, such as the one that was transferred to

23  OneWest, are not included in the definition of QFCs in the statute.  Section

24  1821(e)(8)(D)(i) defines a QFC, in pertinent part, as "any securities contract."  A

25  securities contract, in turn, is a "contract for the purchase, sale, or loan of a security, a

26  certificate of deposit, a mortgage loan, any interest in a mortgage loan, a group or index

27  of securities, certificates of deposit, or mortgage loans or interests therein (including

28  any interest therein or based on the value thereof) or any option on any of the foregoing

. . . ." 12 U.S.C. § 1821(e)(8)(D)(ii)(I).  Contrary to Deutsche Bank's assertion, the servicing rights and obligations sold to OneWest are not a contract for the purchase, sale, or loan of any mortgage loan or interest in any mortgage loan.  Nor is it a contract for the sale of any of the other enumerated categories in 12 U.S.C. § 1821(e)(8)(D)(ii)(I) or any other type of instrument included in the statutory definition of QFC.  Rather, it is simply a contract for the servicing of mortgage loans. *See* Pooling and Servicing Agreement (included in Docket 46-1).

Deutsche Bank's assertion that, because the servicing rights and obligations are coupled with other documents, their transfer is prohibited by Section 1821(e)(9) is also wrong.[7]  Section 1821(e)(8)(D)(ii)(XI) contemplates that certain contracts, such as the Governing Agreements, may contain both QFCs and non-QFCs.  Only the QFC portions of the contract are subject to Section 1821(e)(9).  The definition of "securities contract" in 12 U.S.C. § 1821(e)(8)(D)(ii) excludes any part of a "master agreement" that is not itself a "securities contract," *i.e.*, any portion of the agreement that does not provide for the sale of a mortgage loan or interest in a mortgage loan or other interest or instrument specified in the definition of "securities contract."  *See* 12 U.S.C. § 1821(e)(8)(D)(ii)(XI).  This exclusion tracks the general provision governing "master agreements" for QFCs that specifies that such contracts are QFCs only with respect to those transactions that are themselves QFCs:

> . . . If a master agreement contains provisions relating to
> agreements or transactions that are not themselves qualified financial

---

[7]      In enacting the restrictions on QFC transfers, *see* 12 U.S.C. § 1821(e)(9), Congress intended to protect highly liquid financial instruments, generally used as hedging devices. *See* 55 Fed. Reg. 7027 (Feb. 28, 1990).  In sharp contrast, the mortgage servicing agreements are not highly liquid.  Nor are they hedging devices. They merely provide the purchaser with the right to service mortgage loans and to collect compensation for its work.

1         contracts, the master agreement shall be deemed to be a qualified
2         financial contract **only with respect to those transactions that are themselves qualified financial contracts**.

3    12 U.S.C. § 1821(e)(8)(D)(vii) (emphasis added).[8]

4         Deutsche Bank bases its claim that the transfer violated Section 1821(e)(9) on

5    its assertion that the QFC provisions render the Governing Agreements indivisible

6    (regardless of their terms) because provisions "expressly prohibit[] the FDIC from

7    splitting QFCs." Nothing in Section 1821(e)(9) prohibits the division of contracts

8    containing QFCs from contracts that are not QFCs. Section 1821(e)(9) requires that if

9    the FDIC acting as receiver transfers any QFC with a particular counterparty, it must

10   transfer all QFCs, claims, property, or credit enhancement with that counterparty. By

11   its terms, it applies only to "any transfer which includes any qualified financial

12   contract." It does not apply to a transfer that is not a QFC. The transfer of those rights

13   and obligations, *i.e.*, non-QFCs, is therefore not subject to Section 1821(e)(9).

14         Moreover, in the two cases cited by Deutsche Bank in support of its argument

15   that the Governing Agreements are QFCs, *see* Docket 47 at 4:13-21, the courts held

16   that the plaintiffs' mortgages were never QFCs. *See Conroy v. FDIC*, 1995 WL

17   598961 at *4 (D. Mass. Sep. 15, 1995); *Heiko v. FDIC*, 1995 WL 117604 at *5

18

19

---

20   [8]   The Governing Agreements are "master agreements," containing provisions both for the sale of mortgage loans and for other agreements and transactions that are not QFCs. As is illustrated by the exemplar Governing Agreement filed by Deutsche Bank in opposition to FDIC-Corporate's motion to dismiss, see Docket 46-1, IndyMac Bank, F.S.B. ("IndyMac") entered the Governing Agreements in two separate capacities – as Seller and Master Servicer, see Pooling and Servicing Agreement at 1, 14, 25 (included in Docket 46-1). Throughout the exemplar, the distinction between the capacities of Seller and Master Servicer is scrupulously observed. *Compare id.*, § 2.01 (Seller) *with id.*, §§ 3.01, 3.06 – 3.12, 3.14 – 3.21, 4.01, 7.01 (Master Servicer).

24       The exemplar contemplates that the rights and obligations of IndyMac as Seller can be separated from the rights and obligations of IndyMac as Master Servicer. It provides that Deutsche Bank as Trustee may assume all of the rights and obligations of IndyMac as Master Servicer if IndyMac were no longer the Master Servicer, *see id.*, § 3.05, and that "it may not be assigned by the Master Servicer without the prior written consent of the Trustee and Depositor," *id.*, § 10.07. The exemplar contains no analogous provisions with respect to the rights and obligations of IndyMac as Seller. Deutsche Bank's construction of Section 1821(e)(9) would render such a separation of rights and obligations illegal, with or without Deutsche Bank's consent.

14

1  (S.D.N.Y. Mar. 17, 1995).  Neither opinion suggests that the servicing portions of

2  pooling and servicing agreements are QFCs.  *See id.*

3       Deutsche Bank has not alleged any facts that demonstrate the OneWest

4  transaction was unlawful – either that the servicing rights that were transferred were

5  QFCs or that Section 1821(e)(9) does not permit the transfer of non-QFC portions of

6  the Governing Agreements.  Moreover, Deutsche Bank wholly fails to explain how the

7  purported violation of Section 1821(e)(9) may serve as a basis for Count Three,

8  alleging breach of the Governing Agreements.  Accordingly, to the extent that Count

9  Three is based upon this alleged violation, it must be dismissed.

10  **IV.   COUNTS THREE AND FIVE FOR BREACH OF CONTRACT AND
     BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
11   MUST BE DISMISSED.**

12       Counts Three and Five of the Complaint must be dismissed because 12 U.S.C.

13  § 1821(d)(2)(G)(i)(II) expressly allows the Receivers to assign the servicing rights

14  despite the consent clauses, and because Deutsche Bank does not allege any contractual

15  obligation imposed on IndyMac and its assignees not to assign servicing rights and

16  obligations without also assigning Seller obligations.

17
     **A.    The Assignment Consent Clause in the Governing Agreements is
18         Subject to Section 1821(d)(2)(G).**

19       Section 1821(d)(2)(G)(i)(II) grants the FDIC the right, in its capacity as

20  conservator or receiver, to "transfer any asset or liability of the institution in default

21  (including assets and liabilities associated with any trust business) ***without any***

22  ***approval, assignment, or consent with respect to such transfer***."  12 U.S.C.

23  § 1821(d)(2)(G)(i)(II) (emphasis added).  *See Sahni*, 83 F.3d at 1058.  By its terms,

24  Section 1821(d)(2)(G)(i)(II) allows the Receiver to transfer the servicing rights without

25  Deutsche Bank's consent.

26       To avoid this result, Deutsche Bank argues Section 1821(d)(2)(G)(i)(II) does not

27  mean what it says.  It contends the unqualified statutory language "means only that the

28  FDIC does not need to obtain approval or consent **from the failed bank's board of**

**directors**, officers, shareholders, or other individuals with former or apparent authority for the failed bank." Docket 47 at 5:9-24. Deutsche Bank does not and cannot cite any authority that supports this interpretation of the statute. Nothing in its language, or any other source, suggests that the "consent" referred to is limited to consent from the officers and directors of the failed bank. That limitation is meaningless, because under 12 U.S.C. § 1821(d)(2)(B), the FDIC as receiver may, by operation of law, operate the failed bank "with all the powers of the members or shareholders, the directors, and the officers of the institution and conduct all business of the institution." *Id.*

Deutsche Bank also argues that the statute should be read to "give the FDIC only the right to assign the contract in its entirety, not to rewrite it, as here, by cherry picking provisions of the contract to be assigned while ignoring the remainder." Docket 47 at 5:19-24. By its terms, Section 1821(d)(2)(G)(i)(II) applies to the assignment of "any asset or liability." Nothing in the section limits its scope to assignments of contracts as a whole, and no case suggests such a limitation. Moreover, what Deutsche Bank now characterizes as "cherry picking" is expressly contemplated by the Governing Agreements, which provide for assignment of servicing rights and obligations apart from assignment of Seller obligations. *See* Pooling and Servicing Agreement at 1, 14, 25, § 10.7 (included in Docket 46-1).

Deutsche Bank asserts pre-receivership contract rights may not be eliminated without repudiation of the underlying contracts pursuant to 12 U.S.C. § 1821(e). Thus, according to Deutsche Bank, the Receivers cannot avoid the assignment consent clauses in the Governing Agreements without repudiating the Governing Agreements and paying damages specified in 12 U.S.C. § 1821(e)(3). *See* Docket 47 at 5:25–8:5. This argument renders Section 1821(d)(2)(G)(ii)(II) meaningless.

The FDIC acting as receiver has the authority under Section 1821(e) to repudiate any contract as long as it does so in a timely fashion. *See Battista v. FDIC*, 195 F.3d 1113, 1116 (9th Cir. 1999). It could therefore always repudiate contracts containing assignment consent clauses under Section 1821(e). However, the reason for the special

consent abrogation provision in Section 1821(d)(2)(G) is to allow the Receiver to transfer assets, here a servicing contract, when it is beneficial for the Receiver to do so, without repudiation.  By arguing that the FDIC must repudiate a contract when Section 1821(d)(2)(G) would otherwise permit its transfer, Deutsche Bank would render illusory the power granted by that provision.

Deutsche Bank's discussion of the governing authority is not persuasive.  It attempts to distinguish *Sahni*, 83 F.3d at 1058, on its facts.  *See* Docket 47 at 8:6-12.  However, Deutsche Bank does not and cannot dispute the Ninth Circuit's recognition of the FDIC's express statutory authority to transfer assets and liabilities without consent pursuant to Section 1821(d)(2)(G), nor does it explain how its attempted factual distinctions have any bearing on the issue whether the FDIC has such authority.

Moreover, Deutsche Bank's reliance on the *Waterview* and *Sharpe* cases is misplaced.  For example, Deutsche Bank is wrong in claiming that *Waterview* "expressly rejected" the FDIC's straightforward reading of Section 1821(d)(2)(G)(i)(II).  *See* Docket 47 at 5:24 – 7:9; *Waterview Mgmt. Co. v. FDIC*, 105 F.3d 696, 699-702 (D.C. Cir. 1997).  *Waterview* held that Section 1821(d)(2)(G)(i)(II) did not preempt a state law claim for breach of a pre-receivership option to purchase real estate.  *See id.*  The case did not question the FDIC's power under Section 1821(d)(2)(G)(i)(II) to transfer contracts.  To the contrary, it expressly acknowledged that the statute "permits the RTC, in its capacity as a conservator or receiver, to sell assets in its possession without obtaining any prior approval."  *Id.* at 701.

In the same vein, Deutsche Bank argues, citing *Sharpe*, 126 F.3d at 1155-57, that in order to rely on Section 1821(d)(2)(G)(i)(II), the FDIC acting as receiver is required to repudiate the contract containing the assignment consent provision because "FIRREA does not authorize the breach of contracts" or  "preempt state law so as to abrogate state law contract rights."  Docket 47 at 7:10 – 8:5.  *Sharpe* did not involve state law assignment consent rights, and the FDIC was not acting pursuant to any express statutory authority in that case.  Nothing in *Sharpe* suggests that Section

17

1  1821(d)(2)(G)(i)(II) is inoperative or that the FDIC must repudiate the contract and pay

2  damages under Section 1821(e)(3) when it exercises its power under Section

3  1821(d)(2)(G)(i)(II).  Rather, when the IndyMac Federal Receiver exercised such

4  power under the statute, the transfer did not amount to a breach of contract.  The

5  transfer was simply an exercise of the Receiver's powers under FIRREA.

6        **B.**    <u>**Deutsche Bank has Not Alleged that the Governing Agreements**</u>

7              <u>**Prohibit an Assignment of Servicing Rights Without Seller**</u>
            <u>**Obligations.**</u>

8        As an alternative to its contention that the transfer under Section 1821(d)(2)(G)

9  breached the Governing Agreements, Deutsche Bank alleges in the Complaint that

10 IndyMac promised a single entity would serve as both Seller and Master Servicer.  The

11 Complaint does not allege that that obligation is in the Governing Agreements.  It

12 alleges instead that the obligation arose from promises and representations allegedly

13 made by IndyMac in its ***Prospectuses and Prospectus Supplements***.  *See* Complaint,

14 ¶ 34.  Deutsche Bank does not dispute that 12 U.S.C. § 1823(e) bars enforcement of

15 these alleged promises and representations against the Receivers because they are

16 extrinsic to the Governing Agreements.  *See* Docket 23 at 11:13 – 13:17.

17       Deutsche Bank nonetheless seeks to preserve its argument that the Governing

18 Agreements require that the Seller and Master Servicer be a single entity by arguing

19 that it "has sufficiently cited multiple provisions of the Governing Agreements

20 themselves that the FDIC breached in support of its breach of contract claim."  Docket

21 47 at 8:13 – 9:4 (citing Complaint, ¶¶ 37-39, 41-42, 45, 47-49, 51, 53-57).  Paragraph

22 39 alleges that "[t]he Trustee and the Trust investors had the right to, and did, rely on

23 IndyMac's representations that a single entity, IndyMac, would sponsor the

24 transactions, sell mortgage loans into the Trusts, and thereafter service the Trusts and

25 the underlying mortgage loan assets."  Complaint, ¶ 39.  This paragraph does not allege

26 that the Governing Agreements included any such representations.  Instead, the only

27 such "representations" identified in the Complaint were allegedly made in the

28 Prospectus or Prospectus Supplement.  *See id.*, ¶ 34.

1    The other paragraphs identified by Deutsche Bank relate to the breach of

2 contract claims in Counts One and Two, which are the subject of this motion only to

3 the extent that they should be dismissed on prudential mootness grounds.  Deutsche

4 Bank does not identify any contractual obligation alleged in Count Three to have been

5 breached by the OneWest transaction, except the assignment consent clauses.

6    **C.    Count Five is Not Actionable Because It Duplicates Count Three.**

7    Deutsche Bank does not dispute the general rule of New York law that

8 freestanding claims for breach of the covenant of good faith and fair dealing must be

9 dismissed unless they are based on allegations different than those underlying the claim

10 for breach of contract.  *See* Docket 23 at 13:18 – 14:16.  Nor does it contend that Count

11 Five is based on different factual allegations than Count Three.

12    Instead, Deutsche Bank notes that a claim for breach of the covenant of good

13 faith and fair dealing may in some circumstances be pled in the alternative to a breach

14 of contract claim based on the factual predicate.  *See* Docket 47 at 9:5 – 10:6.

15 However, Count Five is not pled in the alternative to Count Three, and if it is based on

16 the same factual predicate, it must be dismissed for the same reason.  Section

17 1821(d)(2)(G)(i)(II) permitted the transfer, despite any transfer consent requirement

18 allegedly embodied in a covenant of good faith and fair dealing just as the statute

19 permitted a transfer despite any consent requirement in the Governing Agreements.

20 **V.    COUNT SIX (BREACH OF FIDUCIARY DUTY) MUST BE DISMISSED.**

21

22    **A.    Deutsche Bank has No Implied Private Right of Action for Alleged Violation of FIRREA's Receivership Provisions.**

23    Deutsche Bank asserts that: (1) creditors have an implied private right of action

24 to sue for violation of 12 U.S.C. § 1821(d)(13)(E), which specifies broad requirements

25 for the FDIC's disposition of assets, including maximizing the return from such

26 disposition; and (2) the Receivers owe a general "inherent" fiduciary duty to creditors

27 to marshal the assets of the receivership for the benefit of creditors.  *See* Docket 47 at

28

20:16-18.  The cases have uniformly rejected an implied right of action for alleged violation of Section 1821(d)(13)(E), and no authority cited by Deutsche Bank suggests any inherent fiduciary duty for FDIC receiverships.  All of the FDIC's duties as receiver are defined by the extensive statutory framework of 12 U.S.C. § 1821.

1.    **There is No Implied Private Right of Action for Violation of Section 1821(d)(13)(E).**

At least five cases have held that there is no implied private right of action for violation of 12 U.S.C. § 1821(d)(13)(E) or the RTC's analogous statute.  *See Hindes v. FDIC*, 137 F.3d 148, 169-70 (3ᵈ Cir. 1998); *Mosseri v. FDIC*, 2001 U.S. Dist. LEXIS 18899 at *3-16 (S.D.N.Y. 2001); *Pen-Del Mortgage Assocs. v. FDIC*, 1994 U.S. Dist. LEXIS 16741 at *5-9 (E.D. Pa. 1994); *RTC v. Villa Este Apartments Partnership*, 806 F. Supp. 595, 597-98 (E.D. La. 1992); *19 Court St. Assocs., LLC v. RTC*, 190 B.R. 983, 992-95 (Bankr. S.D.N.Y. 1996).  Notwithstanding the precedent on the issue, Deutsche Bank asks the Court to analyze it anew by applying the factors from *Cort v. Ash*, 422 U.S. 66, 78 (1975).  *See* Docket 47 at 22:1 – 24:5.  Deutsche Bank's arguments regarding *Cort* should be rejected.

Under *Hindes*, 137 F.3d at 170-71, and *Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *8-9, Deutsche Bank is not a member of the class intended to benefit from Section 1821(d)(13)(E) because that statute was enacted to benefit the insurance fund and taxpayers, not claimants.  *See* Docket 23 at 19:15 – 16:3.  Deutsche Bank tries to distinguish these cases on the ground that they involved shareholders and disappointed bidders, rather than receivership creditors, *i.e.*, claimants.  *See* Docket 47 at 24:6-21.  However, Deutsche Bank does not explain the basis for its position that Congress intended the statute to provide a special benefit for receivership creditors but not for shareholders and disappointed bidders.  To the contrary, the *Hindes* court's analysis is equally applicable to claimants and creditors:

> First, appellants, as shareholders, are not members of a class for whose special benefit Congress created section 1821(d)(13)(E).  The duty to maximize gain in the disposition of assets has implications

1
2
3
4

> broader than to benefit shareholders.  The FDIC's duty to maximize gain and minimize loss primarily is intended to benefit the insurance fund by minimizing the claims against it, thereby reducing the cost to the taxpayers.  Thus, the benefits gained by the shareholders ***and other claimants*** are incidental to the primary intended beneficiaries, the insurance fund and the taxpayers.

5

*Hindes*, 137 F.3d at 170 (emphasis added).  *See Mosseri*, 2001 U.S. Dist. LEXIS 18899

6

at *8-9 (holding that Section 1821(d)(13)(E) "imposes duties on the FDIC in an

7

attempt to benefit the fund and taxpayers"); *Pen-Del Mortgage Assocs.*, 1994 U.S.

8

Dist. LEXIS 16741 at *8 (the FDIC "owes its duty of care only to the insurance fund,

9

not to the public at large, borrowers, or indeed to prospective purchasers").

10

Claimants have the same interest as shareholders in the Receivers maximizing

11

the size of IndyMac's estate – increasing their likelihood of recovery.  However,

12

Deutsche Bank's claim is not that the Receivers failed to maximize the size of the

13

estate but that they maximized it in a way that was unfair to Deutsche Bank.  Thus,

14

Deutsche Bank's interest in that statutory duty is even more tenuous than that of

15

disappointed bidders who claim that the estate was not maximized and they were

16

treated less favorably than other bidders.  Nothing suggests that parties to pre-

17

receivership contracts of a failed bank are a class for whose special benefit either

18

Section 1821(d)(13)(E) or any other part of FIRREA was enacted.

19

Deutsche Bank cites three cases in support of its assertion that FIRREA's

20

receivership provisions were enacted for the benefit of an institution's creditors.  None

21

suggests an implied private right of action.  Two of the cases are breach of contract

22

cases that refer in dicta to the FDIC's duty under 12 U.S.C. § 1821(d)(11) to marshal

23

the assets of the failed bank and to distribute them to the bank's depositors and other

24

creditors.  *See E.I. Du Pont de Nemours & Co. v. FDIC*, 32 F.3d 592, 595 (D.C. Cir.

25

1994) (holding that 12 U.S.C. §§ 1821(d)(9)(a), 1823(e), and the *D'Oench* doctrine did

26

not bar the plaintiff from asserting in a breach of contract claim that a pre-receivership

27

escrow agreement was extended by the parties' pre-receivership conduct); *Schock v.*

28

*FDIC*, 118 F. Supp. 2d 165, 169 (D.R.I. 2000) (denying plaintiff's motion for

21

attorneys' fees under the Equal Access to Justice Act because the FDIC, acting as receiver, was not an agency of the United States for purposes of that Act), *aff'd on other grounds*, 254 F.3d 1 (1st Cir. 2001).  Deutsche Bank's third case, *Golden Pacific Bancorp v. FDIC*, 375 F.3d 196, 201 (2d Cir. 2004), assumed without deciding that the FDIC's duties in that case arose from New York state law, not FIRREA, and cited a single 1946 case for its general statement of a receiver's duties.  *See id.*  Thus, none of the cases cited by Deutsche Bank identifies the class of persons intended to benefit from 1821(d)(13)(E), nor do they contradict the holding of *Hindes*, 137 F.3d at 170, that the benefits gained by the shareholders and other claimants are incidental to the benefits to the insurance fund and the taxpayers.

Deutsche Bank also ignores the holdings of *Hindes*, *id.* at 171, *Pen-Del Mortgage Assocs.*, 1994 U.S. Dist. LEXIS 16741 at *8-9, and *Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *10-13, that there is no evidence of a legislative intent to create a private cause of action.  Indeed, there is evidence of an intent ***not*** to do so.  *See* Docket 23 at 20:4-19.  Nothing in the three sections of FIRREA to which Deutsche Bank refers  suggests any intent to create a private right of action.[9]  Moreover, *Mosseri* rejected Deutsche Bank's argument that Congress disclaimed a private right of action in 12 U.S.C. § 1831g(d).  *See* Docket 47 at 23:9-13; *Mosseri*, 2001 U.S. Dist. LEXIS 18899 at *10-13.

Deutsche Bank also argues that a private right of action would be consistent with the FDIC's duty to distribute a failed bank's assets to its creditors and to maximize the return on the sale or disposition of assets.  *See* Docket 47 at 23:17-28.  This argument

---

[9]    Section 1823(d)(3)(C) confirms that when the FDIC in its corporate capacity acquires assets from the FDIC as receiver, it has the same fiduciary duties as the FDIC as receiver; the statute does not state or suggest there is a private right of action under Section 1821(d)(13)(E).  *See* 12 U.S.C. § 1823(d)(3)(C).  Section 1821(d)(11)(C) requires the FDIC to provide an accounting report when making distributions to shareholders or members, while Section 1821(i)(2) caps the FDIC's maximum liability to any claimant at the amount that the FDIC would have received if it had liquidated the institution instead of setting up a bridge bank.  *See* 12 U.S.C. §§ 1821(d)(11)(C), 1821(i)(2).  These two provisions have no discernible relevance to the issue whether Congress intended to create a private cause of action under Section 1821(d)(13)(E).

1  proves too much – it would militate in favor of a private right of action in every case,

2  regardless of the effect of implying such a right would have on the statutory scheme as

3  a whole.

4        Finally, the holding in *First Pacific Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1126

5  (9th Cir. 2000), implying a private right of action from 12 U.S.C. § 1821(d)(15), does

6  not support Deutsche Bank's argument that a private right of action should be implied

7  here.  *See* Docket 47 at 23:26-28.  In *First Pacific Bancorp*, the Ninth Circuit found

8  that implying a private right of action for shareholders to obtain an accounting was

9  consistent with the purposes of FIRREA because no party had standing to enforce the

10  right to an accounting and the shareholders were expected to benefit from the

11  accounting.  *See id.* at 1126-27.  In so holding, the Ninth Circuit noted that the FDIC

12  was already required to prepare a report, so creating a private right of action would

13  impose no additional burden.  *See id.* at 1127.  Here, by contrast, implying a private

14  right of action would subject the FDIC to claims from any party with an interest in

15  maximizing receivership assets, creating a huge burden.

16        **2.      No Inherent Fiduciary Duty is Applicable in This Case.**

17        Deutsche Bank also asserts that the FDIC acting as receiver has an "inherent"

18  common law fiduciary duty to claimants.  However, none of the authorities Deutsche

19  Bank cites suggests such a duty, and the comprehensive framework of receivership

20  powers and duties established by 12 U.S.C. § 1821 fully defines any duties the FDIC

21  might have while disposing of assets in its receivership capacity.  Section 1821

22  provides that the FDIC as receiver, *inter alia*: (1) succeeds to all rights, titles, powers,

23  and privileges of the institution; (2) has the right to take over the assets of and operate

24  the institution; (3) may place the institution in liquidation and proceed to realize on its

25  assets; (4) may organize a new bank to take over assets; (5) may transfer the

26  institution's assets without approval, assignment, or consent; and (6) may pay allowed

27  creditors' claims in its discretion to the extent funds are available, provided that

28

23

1  distributions must be made according to the priorities established by statute.  *See* 12

2  U.S.C. §§ 1821(d)(2)(A), (B), (E), (F), (G), (d)(10)(A), (d)(11)(A).

3        Deutsche Bank cites *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86-87 (1994),

4  for the proposition that "Congress also required that the FDIC take on the obligations

5  of a receiver, including the obligation of owing fiduciary duties to the receivership's

6  creditors."  Docket 47 at 21:21-27.  However, *O'Melveny* says nothing about the FDIC

7  assuming fiduciary duties upon becoming a receiver; the fiduciary duty claim in that

8  case was brought by the FDIC against a law firm.  *See O'Melveny*, 512 U.S. at 83-89.

9  To the contrary, *O'Melveny* recognized that ordinary state law principles do not apply

10 "where some provision in the extensive framework of FIRREA provides otherwise."

11 *Id.* at 87.  The extensive provisions in FIRREA governing the disposition of assets,

12 including Section 1821(d)(13)(E), the provision on which Deutsche Bank relies, are

13 exactly the kind of provisions to which the Supreme Court was referring in *O'Melveny*.

14       None of Deutsche Bank's authorities suggests any source of fiduciary duties

15 other than FIRREA.[10]  The statute Deutsche Bank cites, 12 U.S.C. § 1823(d)(3)(C),

16 provides that when the FDIC in its corporate capacity acquires assets from the FDIC as

17 receiver, it "shall continue to be subject to the fiduciary duties and obligations of the

18 Corporation as receiver to claimants against the insured depository institution in

19

---

20 [10]    None of the other cases cited by Deutsche Bank for the proposition that the
   FDIC owes a fiduciary duty, *see* Docket 47 at 16:15 – 16:24, indicated that a claim

21 for breach of such duty is not cognizable under the FTCA; the cases are all consistent
   with tort claims, which would be subject to the FTCA.  *See Golden Pacific Bancorp*,

22 375 F.3d at 201 (stating that it was undisputed that the FDIC owed a fiduciary duty,
   without explaining the nature of that duty); *First Nat'l Ins. Co. v. FDIC*, 977 F. Supp.

23 1051, 1059 (S.D. Cal. 1997) (couched description of the FDIC's fiduciary duty in the
   language of tort: the FDIC as receiver "may breach its fiduciary duty by negligently

24 or intentionally causing the receivership estate to forfeit its assets").  Nor do the
   materials cited from the FDIC's website, *see* Docket 47 at 16:24 – 17:2, 17:8-13,

25 suggest a non-tort basis for the FDIC's obligations.  Of the cited statutes, 12 U.S.C.
   § 1823(d)(3)(C) states only that the FDIC continues to be subject to fiduciary duties

26 as receiver without identifying the nature of those duties, *see id.*, while, for the
   reasons discussed above, there is no implied right of action under Section

27 1821(d)(13)(E).  The remaining cases cited by Deutsche Bank, *see* Docket 47 at
   17:17-25, refer to general receivership duties not inherent to the FDIC, and they do

28 not suggest that such duties are non-tort in nature.  *See Eberhard v. Marcu*, 530 F.3d
   122, 132 (2^d Cir. 2008); *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995).

receivership." *Id.* Section 1823(d)(3)(C) does not define any fiduciary duties that the FDIC as receiver might owe to claimants, and it certainly does not suggest an inherent fiduciary duty to maximize assets apart from any duties implied by FIRREA.

Deutsche Bank relies on a statement in *Corbin v. Federal Reserve Bank of New York*, 458 F. Supp. 143, 146 (S.D.N.Y. 1978), that the FDI Act does not give a receiver unlimited discretion to fix the terms and conditions of a sale of receivership assets. That statement refers to 12 U.S.C. §§ 1823(d) and (e), provisions governing the sale of assets by the FDIC acting as receiver to the FDIC in its corporate capacity. Whatever duty the FDIC may have had – and the issue was not litigated – *Corbin* does not suggest any duty other than one that might be implied from the FDI Act. Since *Corbin* was decided before FIRREA was enacted, its guidance on the issue today is limited.

Deutsche Bank cites a case that held that, under Indiana state law, "an appointed receiver may be held liable in negligence when he has breached a duty owed to either creditors or others with whom the receiver is in privity." *Landeen v. Riley Bennet Egloff LLC*, 2008 WL 1766961 at *2 (S.D. Ind. 2008). To the extent that Deutsche Bank's fiduciary duty claim is based on this theory, it would clearly sound in tort. Deutsche Bank does not and cannot dispute that its claim for breach of fiduciary duty would be barred by the FTCA if it sounds in tort.[11]

### B.   The Breach of Fiduciary Duty Alleged is Barred by the FTCA.

Deutsche Bank does not dispute that its breach of fiduciary duty claim is barred if it is a common law tort cognizable under the FTCA. *See* Docket 47 at 18:11-25. Instead, it argues that its claim falls outside the FTCA because it is "contractually based," and it relies on three cases holding that various claims fall outside the FTCA. Deutsche Bank's argument should be rejected.

---

[11]   Such a state law claim would also be barred as a matter of conflict preemption because the claim would interfere with the FDIC's ability to achieve the congressional goals underlying FIRREA. *See Independent Living Center of Southern California, Inc. v. Maxwell-Jolly*, 572 F.3d 644, 653 (9th Cir.), *cert. denied*, 129 S. Ct. 2828 (2009).

1

2

**1.     The Complaint Alleges No Contractual Basis for the Claim for Breach of Fiduciary Duty.**

3     While Deutsche Bank does not dispute that the FTCA bars its claim for breach of

4   fiduciary duty if it sounds in tort, Deutsche Bank claims that the FTCA does not apply

5   to its claim for breach of fiduciary duty because that claim is based on a duty "to act in

6   accordance with IndyMac's Governing Agreements, and to refrain from continuing

7   breaches in that regard."  Docket 47 at 18:3-12.  However, the Complaint does not

8   allege any contractual basis for the claim for breach of fiduciary duty.  It relies upon

9   the FDIC's claimed statutory duties and receivership-specific duties, not based on the

10  Governing Agreements at all.  *See* Complaint, ¶¶ 168-69, 172.

11     In its Opposition, Deutsche Bank does not contend that the fiduciary duties on

12  which it is suing are imposed by any particular provisions in the Governing Agreement.

13  Nor does it cite any authority for the proposition that by "stepping into the shoes" of a

14  failed financial institution, the FDIC assumes not only an institution's contractual

15  duties under pre-receivership contracts, but also a fiduciary duty not to breach those

16  duties.  To the contrary, since the institution owed no such fiduciary duties, the FDIC

17  cannot assume such duties by stepping into its shoes.

18

**2.     Deutsche Bank's Cases are Not Applicable Here.**

19     None of the cases cited by Deutsche Bank as holding the FTCA inapplicable

20  suggests that its breach of fiduciary duty claim falls outside the scope of that statute.

21  *See* Docket 47 at 18:3 – 19:10.  The duties alleged in *Woodbridge Plaza v. Bank of*

22  *Irvine*, 815 F.2d 538, 540-43 (9th Cir. 1987), were California law statutory duties

23  imposed on the FDIC acting as a receiver pursuant to the California Financial Code.  In

24  *Corbin*, 458 F. Supp. at 146, a pre-FIRREA case, the FDIC assumed for purposes of a

25  motion to dismiss that it had a common law fiduciary duty arising out of its role as

26  receiver to administer a failed bank's liquidation in the interests of its creditors and

27  shareholders.  If there were such a duty, it would have been superseded by FIRREA.

28

26

1  Finally, in *Davis v. United States*, 961 F.2d 53, 55-57 (5th Cir. 1991), the plaintiff

2  brought tort claims against the United States under the FTCA for, *inter alia*, "breach of

3  fiduciary obligation" "predicated upon the breach of a condition in the promissory

4  note." *Id.*  The Fifth Circuit held that "the claims are based on a contract action and not

5  a tort action" and therefore were not subject to the FTCA.  *Id.* at 56.  The court did not

6  hold or suggest that the plaintiff had a contract claim for breach of fiduciary duty.

7       **3.    Under the FTCA, Deutsche Bank's Claim would be Barred by**
8              **the Discretionary Function Exception**

9       The disposal of receivership assets represented by the OneWest transaction is at

10  the core of the FDIC's statutory powers as a receiver and is committed to the FDIC's

11  discretion.  *See Sahni*, 83 F.3d at 1058; 12 U.S.C. §§ 1821(d)(13)(E), 1821(h).

12  Deutsche Bank thus does not dispute that if the FTCA were applicable, Count Six

13  would be barred by the discretionary function exception of 28 U.S.C. § 2680(a).  *See*

14  Docket 23 at 16:2 – 17:13.  Deutsche Bank attempts to distinguish *FDIC v. Craft*, 157

15  F.3d 697, 706-07 (9th Cir. 1998), as applying the "misrepresentation exception" of 28

16  U.S.C. § 2680(h).  *See* Docket 47 at 19:27 – 20-5.  However, the Ninth Circuit

17  dismissed all of the plaintiffs' claims ***against the FDIC*** for lack of jurisdiction because

18  such claims could be pursued only against the United States; its holdings as to Sections

19  2680(a) and 2680(h) were directed solely to the claims ***against the United States***.  *See*

20  *Craft*, 157 F.3d at 706-07.

21       Rather, Deutsche Bank contends the assertion of "sovereign immunity" inherent

22  in invoking the discretionary function exception is vitiated by the FDIC's sue-and-be-

23  sued clause, 12 U.S.C. § 1819(a).  Docket 47 at 19:11-25.  Its argument ignores the

24  Supreme Court's teaching in *FDIC v. Meyer*, 510 U.S. 471, 476 (1994), that even if a

25  claim falls within a sue-and-be-sued waiver, it is still necessary to determine "whether

26  the source of substantive law upon which the claimant relies provides an avenue of

27  relief."  *Meyer*, 510 U.S. at 483-84.  Thus, "if a suit is 'cognizable' under § 1346(b) of

28

1  the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in

2  its own name,' despite the existence of a sue-and-be-sued clause." *Id.* at 476.[12]

3  **VI.   THE CONSTITUTIONAL CLAIMS MUST BE DISMISSED.**

4          **A.   Counts Seven and Eight do Not Allege Actionable Taking Claims.**

5          Under longstanding Supreme Court precedent discussed in *Acceptance Ins. Cos.*

6  *v. United States*, 503 F.3d 1328, 1337-38 (Fed. Cir. 2007):  (1) a takings claim based

7  on the actions of an agency of the United States must be brought against the United

8  States, not against the agency; and (2) the Court of Federal Claims has exclusive

9  jurisdiction over a takings claim notwithstanding an agency's sue-and-be-sued clause.

10  This authority mandates dismissal of Deutsche Bank's takings claims.

11          In the face of this dispositive authority, Deutsche Bank argues that the district

12  court has jurisdiction over claims against agencies that seek agency funds, not the

13  funds of the United States government.  *See* Docket 47 at 25:15 – 26:20.  However,

14  none of the cases upon which Deutsche Bank relies alleges an unconstitutional taking.

15  The cases are therefore irrelevant to the issue of jurisdiction or the proper defendant for

16  a takings claim.

17          Deutsche Bank next argues it "does not need *Bivens* to bring a takings claim"

18  because "[t]he just compensation clause is self-executing."  Docket 47 at 25:4-5.

19  However, that does not change the requirement that its takings claims be brought in the

20  Court of Federal Claims against the United States, not in the district court against the

21  FDIC.  The case Deutsche Bank cites is not to the contrary, since it involved a takings

22

_____

[12]    Deutsche Bank claims that in *Meyer*, "the Supreme Court in fact found that the

23  FTCA was *inapplicable* to the alleged breach of plaintiff's due process rights, and that the claims fell within the 'sue and be sued' waiver of sovereign immunity."  Docket 47

24  at 20:5-12.  *Meyer* held that the plaintiff's constitutional tort claim was not cognizable under 28 U.S.C. § 1346(b) because under that statute "a claim must allege, *inter alia*,

25  that the United States 'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred,'" and "[a]

26  constitutional tort claim such as Meyer's could not contain such an allegation."  *Meyer*, 510 U.S. at 477-78 (quoting Section 1346(b)).  By contrast, because a tort claim for

27  breach of fiduciary duty may be brought against a private person, it is cognizable under Section 1346(b); as a result, the FTCA remedy is exclusive, and the FDIC cannot be

28  sued in its own name.  *See id.* at 476.

1    claim against state officers.  *See Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948,

2    953-56 (9th Cir.), *cert. denied*, 129 S. Ct. 258 (2008).  Nor does Deutsche Bank's

3    attempt to distinguish *Meyer*, *see* Docket 47 at 25:7-14, change that rule.

4         Deutsche Bank concedes that "a takings claim cannot be based on the FDIC's

5    violation of FIRREA."  Docket 47 at 27 n.10.  Yet it seeks to avoid as "inapposite" the

6    cases holding that Deutsche Bank "could not have had a reasonable investment-backed

7    expectation that the FDIC would not exercise its statutory powers" because "the

8    contention is that FDIC's actions exceeded those powers," *i.e.*, that the FDIC violated

9    FIRREA.  *Id.* at 27:19 – 28:1.  Because Deutsche Bank concedes that its takings claim

10   is based on the allegation that the FDIC violated FIRREA, its takings claims fail as a

11   matter of law.  *See*, *e.g.*, *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1330-31

12   (Fed. Cir. 2006).

13        Finally, Deutsche Bank argues that the Receivers' alleged actions could not be

14   promoting the common good because "[t]he FDIC was acting to protect its own assets

15   – the $45 billion that makes up the Deposit Insurance Fund."  Docket 47 at 28:2-9.

16   However, *Branch ex rel. Maine Nat'l Bank v. United States*, 69 F.3d 1571, 1573, 1578-

17   79 (Fed. Cir. 1995), found that a statute allowing the FDIC to seize a bank's assets to

18   offset losses resulting from the failure of a sister bank promoted the common good –

19   and did not constitute a taking – even though "the immediate effect" of the action "is to

20   minimize losses to government insurance funds." *Id.*

21        **B.    Counts Nine and Ten do Not Allege Actionable Due Process Claims.**

22        Under *Meyer*, 510 U.S. at 86, and *Bruns v. National Credit Union Admin.*, 122

23   F.3d 1251, 1255 (9th Cir. 1997), Deutsche Bank cannot bring a claim for damages

24   against the FDIC under the Fifth Amendment's Due Process Clause.  Deutsche Bank

25   simply ignores the operative holdings of these cases and cites two cases that do not

26   support a direct claim against the FDIC for alleged due process violations.  *See Tyrer v.*

27   *City of South Beloit*, 456 F.3d 744, 747, 753 (7th Cir. 2006) (action against a city for

28   alleged due process violations); *Adagio Inv. Holding Ltd.*, 338 F. Supp. 2d at 82 n.19

29

1  (suggesting that the *de novo* review process obviates the due process concerns).

2  Deutsche Bank's due process claims must therefore be dismissed.

3  ## CONCLUSION

4  For the reasons stated herein and in their opening memorandum, the Receivers

5  respectfully ask the Court to grant their motions to dismiss and to strike.

6

7  Dated: August 20, 2010          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

8          FEDERAL DEPOSIT INSURANCE CORP.

9

10          By: /s/ Michael H. Bierman
             Attorneys for Defendants Federal Deposit
11             Insurance Corporation, as Receiver for IndyMac
               Bank, F.S.B. and as Receiver for IndyMac
12             Federal Bank, F.S.B.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28