1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LINKS:  21, 23

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

DEUTSCHE BANK NATIONAL TRUST
COMPANY,

    Plaintiff,

  vs.

FEDERAL DEPOSIT INSURANCE
CORPORATION, *as Receiver of IndyMac
Bank, F.S.B.; Federal Deposit Insurance
Corporation, as Conservator and Receiver
of IndyMac Federal Bank F.S.B.; Federal
Deposit Insurance Corporation, in its
corporate capacity; and Federal Deposit
Insurance Corporation, as Government
Entity,*

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. CV 09-3852 GAF (FFMx)**

MEMORANDUM & ORDER RE: MOTIONS
TO DISMISS BY FDIC AS RECEIVER AND
FDIC IN ITS CORPORATE CAPACITY

**I.**

**INTRODUCTION**

   Deutsche Bank brings suit on behalf of itself and as trustee for numerous

investors who hold mortgage-backed securities issued by IndyMac Bank, FSB.  The suit

asserts claims against the Federal Deposit Insurance Corporation ("FDIC") in various

capacities[1] as the successor to IndyMac, which failed in 2008.  The FDIC in its capacity

---

[1] The FDIC is named as a defendant in multiple capacities: (1) as Receiver of IndyMac; (2) as Receiver
and Conservator of IndyMac Federal Bank, a "pass through" institution created by the FDIC; (3) in its
corporate capacity; and (4) as "government entity."

as receiver ("FDIC-R") and in its corporate capacity ("FDIC-C") now bring motions to dismiss claims arising out of its sale of IndyMac assets to OneWest Bank in 2009.

**A. BACKGROUND**

Before the recent collapse of the real estate market, IndyMac Bank, FSB, ("IndyMac") aggressively marketed mortgage-backed securities that were sold to investors seeking an income-producing product.  These mortgage backed securities consisted of mortgage pools evidenced by certificates held in a trust managed by Deutsche Bank National Trust Company ("Deutsche Bank") as trustee.  The securities were created through complex contracts, so-called "Pooling and Servicing Agreements" ("PSAs"), that govern the relationship among Deutsche Bank, the trusts it managed, the investors in the certificates held in those trusts, IndyMac, and certain IndyMac affiliates.  One such agreement was created for each pool of mortgages.

For some period of years, the PSAs functioned without any notable difficulty; the mortgages were serviced in the usual course and investors received their periodic payments.  But then the real estate market collapsed, mortgage loan defaults skyrocketed, and IndyMac failed.  At the direction of the Office of Thrift Supervision ("OTS"), which declared IndyMac insolvent, the Federal Deposit Insurance Corporation ("FDIC") took control of the institution and acted aggressively to wind up IndyMac's affairs.  Now, in the aftermath of the failure, Deutsche Bank brings this lawsuit alleging that IndyMac, before it failed, and Defendant FDIC, as the successor to IndyMac, breached the PSAs, resulting in damage to Deutsche Bank, the trusts, and the trust's beneficiaries in a sum between six and eight billion dollars.  The issues now before the Court center around the FDIC's post-seizure conduct.

At the time of the seizure, OTS authorized the creation of a new federally-chartered savings bank, IndyMac Federal, to which FDIC-R as receiver for IndyMac transferred substantially all of IndyMac's assets.  FDIC operated the business of IndyMac for eight months and then sold a substantial portion of IndyMac's assets, including the right to service the mortgage loans deposited into the trusts, to a newly

formed financial institution, OneWest Bank.  OneWest acquired these rights without being required to assume liabilities that IndyMac had undertaken to maintain the quality of the mortgage loans that had been deposited into the trusts.  Deutsche Bank contends that, under the terms of its agreements with IndyMac, the FDIC could not sell the servicing rights without Deutsche Bank's consent, and that the sale of these rights, particularly without requiring an accompanying assumption of liabilities, constitutes a breach of the agreement.  Deutsche Bank further contends the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") does not preempt contractual rights of consent and does not authorize FDIC to breach contracts without paying damages.

**B.  THE MOTION TO DISMISS AND ISSUES PRESENTED**

The FDIC moves to dismiss all claims related to the sale of assets to OneWest Bank.  The FDIC asserts that Deutsche Bank's claims are barred by FIRREA, which it contends preempts any contractual obligation under the PSAs to obtain Deutsche Bank's consent to the sale of the servicing rights.  The FDIC also contends that Deutsche Bank, the trusts, and the trust beneficiaries are, at best, third-tier creditors, and that, given the limited assets available for distribution, the Court should dismiss the case on prudential mootness grounds because no recovery is possible.  FDIC also argues that FIRREA bars Deustche Bank from pursuing any equitable claims arising out of its seizure of IndyMac.  Finally, FDIC contends that Deutsche Bank cannot maintain claims for breach of the covenant of good faith and fair dealing or breach of fiduciary duty and that FDIC's conduct did not constitute a taking or violate due process under the Fifth Amendment of the United States Constitution.

Deutsche Bank vigorously opposes the motion.  Deutsche Bank argues that FIRREA does not preempt contractual rights of consent, that the FDIC had the option under FIRREA of performing or repudiating the agreements, and that, having failed to repudiate, it must answer for its breach.  Deutsche Bank also contends that, because the PSAs constituted so-called "Qualifying Financial Contracts" under FIRREA, the FDIC

3

acted in violation of FIRREA in transferring PSA assets while retaining the liabilities in an insolvent institution.  Deutsche Bank also contends that, because FIRREA does not give the FDIC the authority to breach a failed institution's contracts without paying damages, it is entitled to assert remedies, including equitable remedies, that will allow it to achieve proper compensation for the contract breach.

The motion therefore presents the following issues for resolution:

(1) Whether FDIC's transfer of servicing rights to One West Bank violated the terms of the PSAs between IndyMac and Deutsche Bank or the provisions of 12 U.S.C. § 1821(e)(9) relating to Qualified Financial Contracts.[2]

(2) Whether FIRREA, through 12 U.S.C. § 1821(d)(2)(G)(i)(II) in particular, permits FDIC to transfer rights and liabilities of a failed institution without obtaining consent as required under the terms of a contract between IndyMac and a third party such as Deutsche Bank.

(3)  Whether Deutsche Bank's claims should be dismissed under the prudential mootness doctrine because even if it prevailed, its claim for damages would not be entitled to priority and thus has no value given IndyMac's insufficient assets.

(4) Whether Deutsche Bank can pursue a claim for breach of the implied covenant of  good faith and fair dealing while also pursuing its breach of contract claim.

---

[2] This issue arises in part from a statement in the complaint that is ambiguous and probably the result of a drafting error.  The complaint alleges that the PSAs permit succession "only by a person or entity assuming all of IndyMac's business." (Compl. ¶ 56.)  The sample PSA provided, however, indicates that the Trustee, on an event of default by the Master Servicer (IndyMac Bank), shall assume all of the rights and obligations of the Master Servicer under this Agreement arising thereafter . . . ." (Docket No. 46, Opp., Ex. A [PSA] at 60, § 3.05.)  Similar language can be found in Section 7.02. (Id. at 94.)  Thus, while succession does not require that the successor assume "all of IndyMac's business," it does contemplate that the successor will assume rights, duties, liabilities and obligations of the Master Servicer under the PSA.  However, the agreement also provides that the Trustee, as successor, is exempt from certain obligations including the obligation "to effectuate repurchases or substitutions of Mortgage Loans hereunder, including repurchases or substitutions pursuant to Section 2.02 or 2.03." (Id. at 60, § 3.05.)

(5) Whether Deutsche Bank's request for equitable relief, including its request

for the imposition of a constructive trust, is barred by 12 U.S.C. § 1821(j).

(6) Whether the breach of fiduciary duty claim is barred by the Federal Tort

Claims Act (FTCA) and whether Deutsche Bank has a private right of action to

pursue that claim.

(7) Whether the alleged breach of contract gives rise to a "takings" claim under

the Fifth Amendment or constitutes a denial of due process.

The first issue is the most important, and the Court resolves the question in

favor of Deutsche Bank.  The Court concludes that FIRREA Section 1821(d)(2)(G)

does not permit FDIC to circumvent its statutory obligation either to honor a failed

institution's contracts, or to repudiate them and pay damages.  The Court provides a

fuller discussion of this, and of the other claims, below.

## II.

### DISCUSSION

**A. THE LEGAL STANDARD**

In considering a Rule 12(b)(6) motion to dismiss, the Court must accept as true

all factual allegations pleaded in the complaint and construe them "in the light most

favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

337–38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d

1116, 1120–21 (9th Cir. 2007).  Dismissal under Rule 12(b)(6) may be based on either

(1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal

theory.  SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th

Cir. 1996) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.

1984)).

To plead sufficient facts to survive a motion to dismiss, a complaint must allege

facts that, "accepted as true, . . . 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief. Id. at 1950. And although the Court's consideration of the facts is ordinarily limited to the allegations of the complaint, documents to which a complaint refers and which are not reasonably contested may be considered in ruling on a 12(b)(6) motion. Inland Boatmen's Union, 279 F.3d 1075, 1083 (9th Cir. 2002); Branch v. Tunnell, 14 F.3d 449, 453–54 (9th Cir. 1994), cert. denied, 114 S. Ct. 2704.

**B. THE CONTRACT CLAIM**

### 1. THE ALLEGATIONS

The present motion focuses on those claims arising out of the sale of IndyMac assets to OneWest Bank. Although the sale implicates several legal theories, the arguments center primarily around Deutsche Bank's assertion that the sale breached the terms of the PSAs that governed the relations between IndyMac and Deutsche Bank in regard to the sale and servicing of the mortgage backed securities. Though the terms of the PSAs are lengthy and complex, the terms at issue here are relatively straightforward. Deutsche Bank alleges that IndyMac was given the right and obligation to service the mortgage loan pools for which it received servicing fees (Compl. ¶¶ 35c. & d.; 37–38; Docket No. 46, Opp., Ex. A at 59–74, Article 3); that IndyMac made certain warranties and representations regarding the mortgage pools and promised to take curative steps to maintain the quality of the mortgage pools (Compl. ¶¶ 49–51; Docket No. 46, Opp., Ex. A at 56–57, § 2.03.); that if IndyMac defaulted on its obligations, only Deutsche Bank had the power to act as or hire a successor servicer under the terms of the agreement (Compl. ¶ 56; Docket No. 46, Opp., Ex. A at 60–61, § 3.05); and that, except in limited circumstances not pertinent to this motion, IndyMac could not assign any of its rights under the PSAs without the written consent of the trustee and others. (Compl. ¶ 55; Docket No. 46, Opp., Ex. A at 111, § 10.07.)

Deutsche Bank contends that FDIC violated the contract by transferring the servicing rights to OneWest without transferring IndyMac's liabilities and obligations to honor the warranties and representations.  (Compl. ¶¶ 147, 149.)  In addition, they contend that the PSAs constituted "qualified financial contracts," which § 1821(e)(9) of FIRREA required to be conveyed in whole or not at all.  (Compl. ¶¶ 147–50.)

Deutsche Bank also contends that FDIC, in its capacities as receiver and conservator, became subject to the PSAs and therefore could not transfer the IndyMac servicing rights without the consent of Deutsche Bank.  (Compl. ¶ 148.)  FDIC's failure to obtain consent before transferring the rights to One West, according to Deutsche Bank, constituted a breach of the PSAs by FDIC in all its capacities.  (Compl. ¶ 153.)  Because the FDIC claims that its transfer of assets to OneWest was authorized under FIRREA, the Court must determine the FDIC's powers under the applicable provisions of the statute.

### 2. DEUTSCHE BANK DOES NOT HAVE A CLAIM BASED ON FDIC'S FAILURE TO TRANSFER ALL ASSETS AND LIABILITIES TO ONEWEST

Deutsche Bank contends that in transferring servicing rights to OneWest without also transferring all of IndyMac's obligations under the PSAs amounted to a breach of contract both because it violated the terms of the PSAs and because it violated § 1821(e)(9) of FIRREA.  Deutsche Bank cannot prevail under either of these theories.

First, although Deutsche Bank's complaint alleges that the PSAs permit succession "only by a person or entity assuming all of IndyMac's business," no such provision appears in the sample agreement that Deutsche Bank provided the Court.  (See generally Docket No. 46, Opp., Ex. A.)  The Court may properly refer to this sample PSA in deciding the motion to dismiss.  See Branch, 14 F.3d at 453–54.  To the extent that Deutsche Bank suggests that IndyMac made other "representations and promises" that a single entity would service the loans and bear the curative obligations (Compl. ¶ 31), it cannot pursue a breach of contract claim on that basis because only

1  written agreements executed by the bank are enforceable against FDIC.  12 U.S.C.

2  § 1823(e)(1).

3       Second, Deutsche Bank cannot pursue its claim on the theory that the transfer

4  violated § 1821(e)(9).  This provision places special limitations on the FDIC's ability to

5  transfer certain "qualified financial contracts," or "QFCs."  In particular, it provides

6  that, "[i]n making any transfer of assets or liabilities of a depository institution in

7  default which includes any qualified financial contract," the FDIC as conservator or

8  receiver must either:

9       transfer to one financial institution . . . (I) all qualified financial contracts
        between any person . . . and the depository institution in default; (II) all claims
10      of such person or any affiliate of such person against such depository institution
        under any such contract . . .; [and] (III) all claims of such depository institution
11      against such person or any affiliate of such person under any such contract . . .
        or . . . transfer none of the qualified financial contracts [or] claims . . . (with
12      respect to such person and any affiliate of such person).

13  12 U.S.C. § 1821(e)(9)(A).  QFCs include "any securities contract," which includes "a

14  contract for the purchase, sale, or loan of . . . a mortgage loan [or] any interest in a

15  mortgage loan."  Id. § 1821(e)(8)(D).  Such contracts also include:

16      a master agreement that provides for [such a contract], together with all
        supplements to any such master agreement, without regard to whether the
17      master agreement provides for an agreement or transaction that is not a
        securities contract under this clause, except that the master agreement shall be
18      considered to be a securities contract under this clause only with respect to each
        agreement or transaction under the master agreement that [qualifies as a
19      qualified financial contract].

20  Id. § 1821(e)(8)(D)(ii)(XI).  Deutsche Bank contends that the PSAs constitute QFCs,

21  and that FDIC accordingly violated § 1821(e)(9), and thus breached the contract, by

22  conveying the servicing rights without the related obligations to maintain the quality of

23  the mortgage pools.

24       As an initial matter, Deutsche Bank cites no authority allowing it to pursue a

25  breach of contract claim on the ground that FDIC failed to comply with statutory

26  restrictions.  The Court, however, will consider this claim in substance and analyze it as

27  a freestanding claim for violation of the statute.  Even assuming that FIRREA's

28  provisions on the transfer of QFCs gave rise to a private right of action, Deutsche Bank

could not prevail because the Court concludes that FDIC did not breach those provisions here.  Although each PSA is contained in a single document, the document contains two agreements that IndyMac entered into in two different capacities: as "Seller" and as "Master Servicer."  (See Docket No. 46, Opp., Ex. A at 14, 25.)  In its capacity as "Seller," IndyMac received money for selling, transferring, and assigning to the Deutsche Bank trusts certain mortgage loans.  (Compl. ¶ 36; Docket No. 46, Opp., Ex. A at 34.)  In its capacity as "Seller," IndyMac also made certain "representations and warranties," including that "(2) [a]ll regularly scheduled monthly payments due . . . have been made"; that "(4) [i]mmediately before the assignment of the Mortgage Loans to the Depositor, the Seller had good title to . . . each Mortgage Loan"; that "(6) [t]here is no valid offset, defense or counterclaim to any Mortgage Note or Mortgage"; that "(9) [e]ach Mortgage Loan at origination complied in all material respects with applicable local, state and federal laws and regulations"; and that "(11) [a] lender's policy of title insurance . . . was effective on the date of the origination of each Mortgage Loan and each such policy is valid and remains in full force and effect."  (Id. at 39, S-III-1–2.)  The PSAs further provide that if any party discovered a breach of any of those representations and warranties, IndyMac in its capacity as "Seller" had to cure the breach or substitute or repurchase the affected mortgage loan or loans.  (Id. at 39.)  In its capacity as "Master Servicer," IndyMac agreed to collect and process mortgage payments in return for servicing fees and other compensation.  (Id. at 44, 55.)  The PSAs do not require IndyMac, in its capacity as Master Servicer, to substitute or repurchase non-performing mortgages.

The agreement under which IndyMac, as Seller, transferred the mortgage loans to the Deutsche Bank trusts clearly constitutes a QFC.  See 12 U.S.C. § 1821(e)(8)(D)(ii)(I).  The agreement under which IndyMac, as Master Servicer, assumed servicing rights, however, does not.  It does not qualify as a sale or transfer of a mortgage loan, or as any other type of agreement constituting a QFC under FIRREA. Section 1821(e) provides that a "master agreement shall be deemed to be a qualified

financial contract only with respect to those transactions that are themselves qualified financial contracts." Id. § 1821(e)(8)(D)(vii).  Because the servicing transaction does not constitute a QFC, § 1821(e)(9) does not bar FDIC from transferring the servicing rights without also transferring the obligations to substitute and repurchase bad mortgages, which were part of the QFC transferring the mortgage loans.  Deutsche Bank therefore cannot succeed on its claim that FDIC's sale of the servicing rights to OneWest, without also transferring the obligations to substitute and repurchase bad mortgages, violated § 1821(e)(9).  Deutsche Bank's claim for violation of that provision is therefore **DISMISSED with prejudice**.

### 3. DEUTSCHE BANK DOES HAVE A CLAIM BASED ON FDIC'S FAILURE TO OBTAIN ITS CONSENT BEFORE TRANSFERRING THE SERVICING RIGHTS

Deutsche Bank also bases its breach of contract claim on FDIC's failure to obtain Deutsche Bank's consent to the transfer of the servicing rights, in violation of the PSAs' provision barring IndyMac from assigning any of its rights under the PSAs without the written consent of the trustee and others.  (Complaint ¶ 55; Opp., Ex. A at 94.)  This states a valid claim.

#### a.  The FIRREA Provisions Do Not Preempt State Contract Law

The FDIC argues that the contract claim, and those causes of action that are essentially derivative of the contract claim, fail in their entirety because FIRREA preempts any contractual provision that would require it to obtain consent before selling a failed institution's assets.  For this proposition, it relies on 12 U.S.C. § 1821(d)(2)(G)(i)(II), which provides:

> The Corporation may, as conservator or receiver--
> (I) merge the insured depository institution with another insured depository institution; or
> (II) subject to clause (ii), transfer any asset or liability of the institution in default (including assets and liabilities associated with any trust business) *without any approval, assignment, or consent with respect to such transfer*.

12 U.S.C. § 1821(d)(2)(G)(i)(II) (emphasis added).  According to the FDIC, the language of this provision of FIRREA conclusively ends Deutsche Bank's claim for

1    damages arising out of the sale of assets to OneWest without obtaining consent.  For

2    this proposition, the FDIC relies in significant part on the Ninth Circuit's decision in

3    Sahni v. American Diversified Partners, 83 F.3d 1054 (9th Cir. 1996).

4         In Sahni, the FDIC undertook a receivership of a failed bank's assets, which

5    included general-partnership interests in certain limited partnerships.  Sahni, 83 F.3d at

6    1056.  The FDIC then transferred the general partnership interests without obtaining the

7    consent of the partnerships' limited partner.  Id. at 1059.  The limited partner cried foul,

8    sued the FDIC, and claimed that "the FDIC violated California Corporations Code

9    § 15509 by failing to attain [his] consent, as limited partner, to the sale of the . . .

10   partnerships."  Id.  The Circuit held that Corporations Code section 15509 was

11   "preempted by federal law" as embodied by section 1821(d)(2)(G)(i)(II), and that the

12   FDIC was "exempted . . . from having to obtain any consent."  Id.  It is clear, however,

13   that Sahni's reasoning was directed to the issue of preemption of state partnership

14   statutes, not state contract law.  While § 1821(d)(2)(G)(i)(II) unmistakably preempts

15   state statutory consent requirements, other provisions of FIRREA and later circuit

16   decisions treat contracts differently.

17        Section 1821(e) expressly addresses the treatment of contracts made by a failed

18   institution prior to its seizure.  It provides in pertinent part:

19            (1) Authority to repudiate contracts
             In addition to any other rights a conservator or receiver may have, the
20           conservator or receiver for any insured depository institution may
             disaffirm or repudiate any contract or lease--
21               (A) to which such institution is a party;
                 (B) the performance of which the conservator or receiver, in the
22               conservator's or receiver's discretion, determines to be
                 burdensome; and
23               (C) the disaffirmance or repudiation of which the conservator or
                 receiver determines, in the conservator's or receiver's discretion,
24               will promote the orderly administration of the institution's affairs.

25   12 U.S.C. § 1821(e).  The FDIC must exercise its power to repudiate within "a

26   reasonable period following [its appointment]," id. § 1821(e)(2), and where the FDIC

27   has exercised its power of repudiation, the injured contracting party has the right to

28   recover damages subject to the measure established by FIRREA.  Id. § 1821(e)(3).

There can be no doubt that those acting on behalf of the FDIC in this case understood the requirements of § 1821(e) because the FDIC expressly repudiated three PSAs on the basis that they were "burdensome" and that repudiation would "promote the orderly administration of the institution's affairs." (Compl. ¶ 76.) Having decided not to repudiate the remaining agreements, FDIC was under an obligation to adhere to their terms and conditions. The failure to meet that obligation amounts to a breach of those agreements.

The D.C. Circuit came to this conclusion in Waterview Management Co. v. FDIC, 105 F.3d 696 (D.C. Cir. 1997). In that case, the failed institution had given Waterview Management Company an "exclusive option to market and purchase" certain real estate in Maryland. Id. at 697. Subsequently, the Resolution Trust Corporation ("RTC") was appointed receiver for the bank, and decided to advertise the real estate, in violation of the bank's contractual obligations. Id. at 698. Waterview sued, and on appeal, the D.C. Circuit held that the RTC had to comply with the contractual limitations. Noting that the District Court had dismissed on the basis of 12 U.S.C. § 1821(d)(2)(G)(i)(II), the D.C. Circuit noted that "[t]he District Court adopted the RTC's argument that this section should be construed to preempt any state law right that affects the receiver's ability to sell the property . . . . We reject the District Court's view of the statute." Id. at 699. Rejecting a claim of preemption, the Circuit further observed:

> Preemption occurs only where state law conflicts with federal law, and there is no conflict between the RTC's ability to transfer the assets held by the failed financial institution pursuant to 12 U.S.C. § 1821(d)(2)(G)(i)(II) and the enforcement of valid state law contract rights. Such state law contracts entered into pre-receivership serve to define the asset held by the failed financial institution.

Id. at 699–700 (emphasis added).

The Ninth Circuit adopted the reasoning of Waterview in Sharpe v. F.D.I.C., 126 F.3d 1147 (9th Cir. 1997). In that case, the plaintiffs had entered into a settlement agreement with Pioneer Bank on July 8, 1994, which at the end of the business day was

1   declared insolvent and seized by regulators who appointed the FDIC as receiver.  When

2   the FDIC failed to honor the settlement agreement, the plaintiffs brought a breach of

3   contract claim against the FDIC and sought the equitable remedies of declaratory relief

4   and rescission along with damages.  The trial court dismissed the case on the ground

5   that the claims were precluded by the jurisdictional bar imposed by § 1821(j).  Id. at

6   1151.  Plaintiffs appealed.

7          The Ninth Circuit decision expressly rejected the notion that the FDIC may

8   breach contracts with impunity.  "[T]o allow the FDIC to avoid its contractual

9   obligations by invoking the FIRREA administrative claims process would effectively

10  preempt state contract law. The statute does not indicate that Congress intended to

11  preempt state law so broadly."  Id. at 1157.  The Court wrote:

12         The District of Columbia Circuit recently held that FIRREA does not
           preempt state contract law, both because the language of the statute does
13         not indicate that Congress intended to preempt such a broad area of state
           law and because of the potential constitutional problems with so holding.
14         Waterview Management Co. v. FDIC, 105 F.3d 696, 699 (D.C. Cir.1997)
           ("Indeed, to hold that the federal government could simply vitiate the
15         terms of existing assets, taking rights of value from private owners with
           no compensation in return, would raise serious constitutional issues.").
16         We adopt the reasoning of that court.
           . . . .
17         Our conclusion is further supported by FIRREA's provision regarding
           the repudiation of contracts. 12 U.S.C. § 1821(e). Section 1821(e) allows
18         the FDIC to "disaffirm" any contract that it determines to be
           burdensome. When the FDIC chooses to repudiate a contract pursuant to
19         § 1821(e), it must inform the parties to the contract within a reasonable
           time and pay compensatory damages.
20
           Had the FDIC followed the § 1821(e) procedure in disaffirming the
21         settlement agreement with the Sharpes, this would have been a very
           different case. But rather than proceeding pursuant to § 1821(e), the
22         FDIC chose to breach the contract by recording the reconveyance
           delivered by the Sharpes without making a wire transfer of funds which
23         was its obligation under the settlement agreement. FIRREA does not
           address the consequences of the FDIC's breach of the Sharpes'
24         settlement agreement, but it cannot be the case that the FDIC is in a
           better position when it breaches a contract than when it chooses to
25         repudiate.

26  Id. at 1156-57.

27         Based on the foregoing authorities, the Court concludes that the FDIC cannot,

28  on the basis of federal preemption, avoid the terms and conditions of IndyMac's

                                       13

1   agreements with Deutsche Bank.  The FDIC had the option of repudiating those

2   agreements and paying damages under § 1821(e)(3).  But the FDIC chose to repudiate

3   only three of the 240 trust agreements with Deutsche Bank.  Accordingly, Deutsche

4   Bank may proceed with its breach of contract claim arising out of the sale of assets to

5   OneWest Bank.

6            ***b.  FIRREA Does Not Preclude Equitable Relief Relating to the Breach***

7            ***of Contract***

8            The FDIC also contends that Deutsche Bank cannot seek remedies of rescission,

9   restitution, or constructive trust because FIRREA bars the Court from granting any

10  injunction with respect to the actions of the FDIC except as provided in the statute.  The

11  FDIC cites to 12 U.S.C. § 1821(j), which provides:

12           Except as otherwise provided in this section, no court may take any
             action except at the request of the Board of Directors by regulation or
13           order, to restrain or affect the exercise of powers or functions of the
             Corporation as a conservator or a receiver.
14

15  12 U.S.C. § 1821(j).  The FDIC essentially contends that the equitable remedies

16  sought—namely, a constructive trust on the proceeds of the sale of the servicing rights

17  to OneWest—amount to injunctive relief that is banned under § 1821(j).  However,

18  Sharpe provides the answer to the FDIC's argument and allows for the remedies sought

19  in this case.  There, the Circuit held:

20           The damages claim is not affected by the jurisdictional bar imposed by
             § 1821(j), but the claims for rescission and declaratory relief must fall
21           under an exception to § 1821(j) in order to survive. The bar imposed by
             § 1821(j) does not extend to situations in which the FDIC as receiver
22           asserts authority beyond that granted to it as a receiver. Section § 1821(j)
             "shields only 'the exercise of powers or functions' Congress gave to the
23           FDIC; the provision does not bar injunctive relief when the FDIC has
             acted beyond, or contrary to, its statutorily prescribed, constitutionally
24           permitted, powers or functions." National Trust for Historic Preservation
             v. FDIC, 995 F.2d 238, 240 (D.C. Cir. 1993), judgment vacated, 5 F.3d
25           567 (D.C. Cir.1993), and reinstated in relevant part, 21 F.3d 469 (D.C.
             Cir. 1994).
26

27  Sharpe, 126 F.3d at 1155.  Because FIRREA "does not authorize the breach of

28  contracts" and "does not preempt state law so as to abrogate state law contract rights,"

1    the FDIC does not act "within its statutorily granted powers in breaching" a valid

2    contract between the failed institution and a third party.  Id.  In such circumstances,

3    claims for equitable relief are not barred by § 1821(j).  See id.

4          Accordingly, the Court concludes that Deutsche Bank may seek equitable

5    remedies arising out of the FDIC's breach of the PSAs.

6                  *c. The Claim Should Not Be Dismissed for Prudential Mootness*

7          FDIC argues that any claim that Deutsche Bank may have should be dismissed

8    under principles of prudential mootness based on several decisions from this district.

9    E.g., Nasoordeen v. F.D.I.C., No. 08-5631, 2010 WL 1135888 (C.D. Cal. Mar. 17,

10   2010).  In Nasoordeen, Judge Morrow discussed the doctrine in considerable detail:

11                "Under the doctrine of prudential mootness, there are circumstances
             under which a controversy, not constitutionally moot, is so 'attenuated
12           that considerations of prudence and comity for coordinate branches of
             government counsel the court to stay its hand, and to withhold relief it
13           has the power to grant.'" Fletcher v. United States, 116 F.3d 1315, 1321
             (10th Cir. 1997) (quoting Chamber of Commerce, 627 F.2d at 291).
14           "Where it is so unlikely that the court's grant of [remedy] will actually
             relieve the injury, the doctrine of prudential mootness—a facet of
15           equity—comes into play. This concept is concerned, not with the court's
             power under Article III to provide relief, but with the court's discretion
16           in exercising that power." Penthouse International, Ltd. v. Meese, 939
             F.2d 1011, 1019 (D.C. Cir. 1991).

17

18   Nasoordeen, 2010 WL 1135888, at *6.  Although the Ninth Circuit has never applied

19   the doctrine, it has been adopted by the First, Third, Fourth, Fifth, Sixth, Eighth, Tenth,

20   and D.C. Circuits, and courts within this circuit have consistently applied the doctrine.

21   Id. at *6 (collecting cases).  The doctrine applies when "there are no set of

22   circumstances under which [plaintiffs] can recover any money or property as a result of

23   [their] claims," such as when the amount realized from the liquidation of an insolvent

24   bank's assets is insufficient to meet its liabilities.  Id. at *8 (quoting First Ind. Fed. Sav.

25   Bank v. F.D.I.C., 964 F.2d 503, 507 (5th Cir. 1992)) (first alteration in original).

26         FDIC argues that all of Deutsche Bank's claims are prudentially moot because

27   the receiverships of IndyMac and IndyMac Federal have insufficient funds to meet any

28   general unsecured claims.  (Docket No. 23, Mem. at 3); see also Fed. Deposit Ins.

                                        15

1    Corp., Notice, Determination of Insufficient Assets to Satisfy Claims Against Financial

2    Institution in Receivership, 74 Fed. Reg. 59,540 (Nov. 18, 2009).  Therefore, FDIC

3    contends, Deutsche Bank will not be able to recover any money or property, even if it

4    prevails on its claims.  Deutsche Bank, however, maintains that it can recover because

5    its claims are not general unsecured claims, and that its claims are therefore not

6    prudentially moot.  In particular, Deutsche Bank contends that its claims must be paid

7    by the FDIC-R either as administrative expenses or from the proceeds of the sale of the

8    servicing rights and by the FDIC-C from its own funds.  (Docket No. 47, Opp. at 14.)

9          FIRREA provides for a priority order in which "amounts realized from the

10   liquidation or other resolution of any insured depository institution" must be

11   "distributed to pay claims."  12 U.S.C. § 1821(d)(11).  Under this priority order, FDIC-

12   R must pay claims in the following order: "(i) [a]dministrative expenses of the

13   receiver[,] (ii) [a]ny deposit liability of the institution[,] (iii) [a]ny other general or

14   senior liability of the institution . . . ."  Id. at § 1821(d)(11)(A).  When the FDIC, acting

15   as receiver, repudiates a contract, it must pay damages as a third-priority general

16   liability of the institution.  See Battista v. F.D.I.C., 195 F.3d 1113, 1120 (9th Cir. 1999)

17   (holding that claims for damages resulting from repudiation are subject to the

18   § 1821(d)(11) distribution priority and, unlike administrative expenses, are not entitled

19   to "super priority").  Thus, here, if FDIC had repudiated the Deutsche Bank contracts, it

20   would have owed damages as general liabilities.  Because of IndyMac's insufficient

21   assets, Deutsche Bank would not have actually recovered any amount of these damages.

22         FDIC did not repudiate the contracts, however, but rather breached them.  The

23   statute does not address the consequences of the FDIC's breach of a failed institution's

24   contract.  Sharpe, 126 F.3d at 1157.  The Ninth Circuit's decision in Sharpe, however,

25   makes clear that damages resulting from the FDIC's breach of a contract are not subject

26   to the § 1821(d)(11) distribution priority scheme.  In Sharpe, the court held that a claim

27   against the FDIC for breach of a pre-receivership contract did not qualify as a "claim"

28   for purposes of FIRREA's administrative exhaustion requirement.  Sharpe, 126 F.3d at

16

1    1157.  Just as FIRREA's administrative exhaustion requirement applies only to

2    "claims," the § 1821(d)(11) priority scheme applies only to "claims."  See

3    § 1821(d)(11)(A) (providing that "amounts realized . . . shall be distributed to pay

4    claims . . ." (emphasis added)).  Because Sharpe establishes that a claim against the

5    FDIC for post-seizure breach of contract does not constitute a "claim" under FIRREA,

6    that claim is not subject to the § 1821(d)(11) distribution priority.  It therefore does not

7    qualify as a third-priority general liability that will recover nothing because of

8    insufficient assets.

9         At this juncture, it is enough to conclude that Deutsche Bank's claim for

10   damages is not subject to the § 1821(d)(11) distribution priority, and the Court need not

11   determine at this stage whether damages will ultimately be payable from the

12   receivership or from FDIC-C's own funds.  Even if the damages will come from the

13   receivership, Deutsche Bank's claim will take priority over the categories identified in §

14   1821(d)(11), and there is accordingly a possibility of recovery.  The Court likewise

15   need not determine the measure of damages at this juncture.  No binding authority

16   identifies the measure of damages, see Sharpe, 126 F.3d at 1157, but the D.C. Circuit

17   has indicated that a party injured by the FDIC's breach of a pre-receivership contract is

18   at least entitled to damages equal to the damages it would have received had FDIC

19   repudiated the contract.  Waterview, 105 F.3d at 702.  Such damages are limited to

20   "actual direct compensatory damages."  Id. at 702 n.4; 12 U.S.C. § 1821(e)(3)(A)(I).

21   Deutsche Bank might also be entitled to full damages, including consequential

22   damages, resulting from FDIC's breach, as FIRREA limits damages only when FDIC

23   repudiates a contract, and does not address the consequences of a breach by the FDIC.

24   Regardless, because under Sharpe, Deutsche Bank's claim for damages is not subject to

25   the § 1821(d)(11) distribution priority, it can recover damages—whatever their

26   measure—ahead of the third-priority general creditors who will recover nothing.

27   Because there is a possibility that they can recover, their claims are not prudentially

28   moot.

1    For the foregoing reasons, Deutsche Bank may proceed with its breach of

2 contract claim arising out of the sale of assets to OneWest Bank.  FDIC-R's motion to

3 dismiss this claim is **DENIED**.

4    **4.  MOTION TO DISMISS CONTRACT CLAIM AS AGAINST FDIC IN ITS**

5    **CORPORATE CAPACITY**

6    The FDIC-C also brings a separate motion to dismiss the contract claim as

7 against the FDIC in its corporate capacity.  In its motion, FDIC-C contends (1) that it is

8 not liable for the actions that FDIC takes in its capacity as receiver, and (2) that it

9 cannot be liable for breach of a contract to which it was not a party, and Deutsche Bank

10 fails to adequately allege that FDIC-C was party to the contracts allegedly breached.

11    Deutsche Bank does not dispute that FDIC-C is legally distinct from FDIC-R,

12 and that actions taken by FDIC-R are not attributable to FDIC-C.  See Bullion Servs.,

13 Inc. v. Valley State Bank, 50 F.3d 705, 709 (9th Cir. 1995) (noting that, "[b]ecause

14 FDIC Corporate and FDIC Receiver perform two different functions and protect wholly

15 different interests, courts have been careful to keep the rights and liabilities of these two

16 entities legally separate"); FDIC v. Roldan Fonseca, 795 F.2d 1102, (1st Cir. 1986)

17 ("Corporate FDIC is not liable for wrongdoings by Receiver FDIC."); ABI Inv. Grp. v.

18 FDIC, 860 F. Supp. 911, 916 (D.N.H. 1994) ("FDIC/Corporate cannot be held liable for

19 the failure of FDIC/Receiver to disaffirm or repudiate a contract.").  Thus, FDIC-C

20 cannot be liable for any wrongdoing by FDIC-R.

21    Deutsche Bank contends that FDIC-C is nonetheless liable because it

22 "participated in and benefited directly from the sale to OneWest, which directly caused

23 certain of the breaches of the [PSAs] alleged in the Complaint."  (Docket No. 46, Opp.

24 at 3.)  Specifically, Deutsche Bank points to its allegations that FDIC-C entered into the

25 purchase and assumption agreement under which substantially all of IndyMac's assets

26 and liabilities were "transferred to and assumed by IndyMac Federal" (Compl. ¶ 23);

27

28

18

that "FDIC expressly assumed and assigned to OneWest"[3] parts of the PSAs without assigning all of the obligations under them (Compl. ¶ 64); that "FDIC acted outside the scope of its statutorily defined authority" in attempting to sell the PSAs without assuming and assigning related obligations (Compl. ¶ 65); that "FDIC failed to follow the procedures provided in the [PSAs] for transferring servicing rights and obligations" (Compl. ¶ 66); and that "FDIC in its corporate capacity benefit[t]ed from the sale of IndyMac's servicing rights to OneWest because it used the profits to pay IndyMac's insured depositors and to protect the deposit insurance fund" (Compl. ¶ 151).

These allegations do not suffice to state a breach of contract claim against FDIC-C. Under the applicable New York law[4], "a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." Crabtree v. Tristar Automotive Grp., 776 F. Supp. 155, 166 (S.D.N.Y. 1991). Deutsche Bank does not allege, nor could it, that FDIC-C is a signatory to the PSAs, which were executed before FDIC took over IndyMac. It also does not allege that FDIC-C was assigned the contract. Rather, it appears to suggest that FDIC-C assumed the contract by entering into the purchase and assumption agreement, selling parts of the PSAs to OneWest, and benefitting from the sale. These allegations do not amount to a plausible allegation that FDIC-C assumed the PSAs with Deutsche Bank sufficient to withstand the pleading standards established by Iqbal, 129 S. Ct. at 1949. First, Deutsche Bank does not explain—and the Court does not see—how entering into the purchase and assumption agreement in which IndyMac Federal assumed IndyMac's assets led FDIC-C to assume the PSAs. Second, even if FDIC-C did sell, or participate in the sale of, parts of the PSAs to OneWest, it does not follow that it had assumed the PSAs with Deutsche Bank. Without assuming the PSAs,

---

[3] In its complaint, Deutsche Bank explains that references to "FDIC" refer to FDIC "in all or any of its capacities." (Compl. ¶ 16.)

[4] The parties agree that, pursuant to choice-of-law provisions in the PSAs, New York law applies to the contract claims in this case.

1    FDIC-C could not be liable for their breach.  See Crabtree, 776 F. Supp. at 166.

2         Finally, the allegation that FDIC-C benefitted from the sale to OneWest is not

3    sufficient to render it liable for the breach of contract resulting from that sale.  In

4    support of its argument to the contrary, Deutsche Bank points to two cases in which

5    non-signatories to a contract were held susceptible to breach of contract claims.  See

6    Impulse Mktg. Grp. v. Nat'l Small Bus. Alliance, Inc., No. 05-CV-7776, 2007 WL

7    1701813, at *6 (S.D.N.Y. June 12, 2007); Dial-A-Mattress Operating Corp. v. Mattress

8    Madness, Inc., 847 F. Supp. 18, 20 (E.D.N.Y. 1994).  In Impulse Marketing, the court

9    held that allegations that the non-signatory defendant had "played a considerable role in

10   the management and performance of the contract," had stated "to the Plaintiff that [it]

11   was 'the real party in interest,'" and had made payments to Plaintiff under the contract

12   indicated that the non-signatory had assumed the role of a party to the contract.

13   Impulse Mktg., 2007 WL 1701813, at *6.  In Dial-A-Mattress, the court held that it

14   could pierce the corporate veil to hold the president of a corporation personally liable

15   for his corporation's contract where he received payment under the contract.  Dial-A-

16   Mattress, Inc., 847 F. Supp. at 20.  In contrast to the situations in these cases, here,

17   Deutsche Bank has not alleged conduct indicating that FDIC-C was the real party in

18   interest to the PSAs or that it had assumed the PSAs.  Even though FDIC-C ultimately

19   received the proceeds of the sale to OneWest, Deutsche Bank does not allege that those

20   proceeds were paid directly to FDIC-C.  In any event, Deutsche Bank does not allege

21   that FDIC-C received benefits from the contract itself, as opposed to the sale of that

22   contract.  And Deutsche Bank cites no authority suggesting that benefitting from the

23   sale of a contract is evidence that a party assumed that contract.

24        Because Deutsche Bank has alleged insufficient facts under which FDIC-C

25   could be liable for breach of the PSAs, the breach of contract claim against it is

26   **DISMISSED**.  Deutsche Bank, however, shall be granted leave to amend its complaint

27   to include further factual allegations establishing FDIC-C's liability for the breach.

28

**C. CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

FDIC next moves to dismiss Deutsche Bank's claim for breach of the implied covenant of good faith and fair dealing on the ground that New York law requires such a claim to be dismissed as duplicative where it is based on the same facts underlying a breach of contract claim. (Docket No. 23, Mem. at 13); see also Harris v. Provident Life and Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002) ("New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."). New York law, however, recognizes an exception to this general rule when the breach of the implied covenant of good faith and fair dealing and breach of contract claims are brought in the alternative. Fantozzi v. Axsys Techs., Inc., No. 07 Civ. 02667, 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008). "[W]here there is a dispute over the existence, scope, or enforceability of the putative contract," a plaintiff can bring these claims in the alternative. Id. at *8 (quoting Reilly v. Natwest Markets Grp., Inc., 181 F.3d 253, 263 (2d Cir. 1999)). A plaintiff can prevail on a claim for breach of the implied covenant of good faith and fair dealing where it proves that the defendant "act[ed] in a manner that, although not expressly forbidden by any contractual provision, . . . deprive[d] the other party of the right to receive the benefits under their agreement." Id. at *7 (quoting Aventine Inv. Mgmt, Inc. v. Canadian Imperial Bank of Commerce, 644 N.Y.S.2d 43, 47 (2nd Dept. 1999)).

Here, the parties dispute the enforceability of the contractual provisions requiring Deutsche Bank's consent for the transfer of the servicing rights and dispute the existence of any contractual provision barring the transfer of some benefits of the PSAs without transferring all the obligations imposed by the PSAs. Deutsche Bank therefore can appropriately plead its breach of contract claim and breach of the covenant of good faith and fair dealing claim in the alternative. The FDIC contends that the claim must nonetheless be dismissed because it is not actually pled in the alternative. (Docket No. 49, Reply at 19.) FDIC, however, does not cite any authority

1    establishing that a plaintiff must use magic words to plead such claims in the

2    alternative.  Finding no such authority, the Court rejects this contention.  FDIC's

3    motion to dismiss Deutsche Bank's claim for breach of the implied covenant of good

4    faith and fair dealing is therefore **DENIED**.

5    **D.  CONSTRUCTIVE TRUST CLAIM**

6         FDIC-R next seeks dismissal of Deutsche Bank's constructive trust claim on the

7    grounds that (1) § 1821(j) bars such relief, and (2) constructive trust is a remedy, not an

8    independent claim for relief.  (Docket No. 23, Mem. at 28–29.)  These arguments fail.

9         First, as explained above, the Ninth Circuit established in Sharpe that "the bar

10   imposed by § 1821(j) does not extend to situations in which the FDIC as receiver

11   asserts authority beyond that granted to it as receiver."  Sharpe, 126 F.3d at 1155.

12   Where, as here, the FDIC breaches, rather than repudiates, a contract, it does not act

13   within its statutorily granted powers, and § 1821(j) therefore does not apply.  Id.

14   Section 1821(j) therefore does not preclude Deutsche Bank from pursuing its claim for

15   a constructive trust.

16        Second, FDIC-R is correct that a constructive trust is a remedy, not a

17   freestanding substantive claim.  See Lund v. Albrecht, 936 F.2d 459, 464 (9th Cir.

18   1991).  Nonetheless, "as a matter of practice constructive trust commonly is pleaded as

19   a separate claim."  Microsoft Corp. v. Suncrest Enter., No. 03-5424, 2006 WL 1329881,

20   at *8 (N.D. Cal. May 16, 2006).  Because Deutsche Bank's substantive claim for breach

21   of contract survives the FDIC-R's motion to dismiss, the Court will not dismiss the

22   claim for constructive trust as a remedy for the breach of contract claim.  For these

23   reasons, the Court **DENIES** FDIC-R's motion to dismiss Deutsche Bank's claim for

24   imposition of a constructive trust.  However, because the Court dismisses the breach of

25   contract claim against FDIC-C, Deutsche Bank has no substantive claim supporting its

26   construction trust claim against that entity.  The Court therefore **DISMISSES** the

27   constructive trust claim against FDIC-C.

28

**E. BREACH OF FIDUCIARY DUTY CLAIM**

In its complaint, Deutsche Bank also asserts a claim against FDIC-R for breach of fiduciary duty.  (Compl. ¶¶ 166–74.)  In particular, Deutsche Bank alleges that FDIC-R breached its duties "to manage the assets of the receivership in a manner that 'maximizes the net present value return from the sale or disposition' and 'minimizes the amount of any loss realized'" (id. ¶ 167 (quoting 12 U.S.C. § 1821(d)(13))); to "act for the benefit of all parties who may establish rights during the administration of the receivership" (id. ¶ 168); and "to act in good faith, to act in accordance with the laws that establish its authority, to preserve the property in its possession, and to act in a manner that maximizes potential recovery by those claimants and to allocate the proceeds of such assets impartially and in accordance with rights established by claimants, and statutory priorities" (id. ¶ 169).  Deutsche Bank alleges that FDIC breached these duties by "furthering its interests in its other capacities . . . at the expense of the Trusts, the Trustee, and the receivership estate" and by failing "either to honor in their entirety the Governing Agreements to which IndyMac Federal succeeded, and to lawfully and properly assign the rights and obligations transferred from IndyMac, or to repudiate these agreements in their entirety."  (Id. ¶¶ 170, 172.)  FDIC moves to dismiss this claim on the grounds that (1) it is barred by the Federal Tort Claims Act ("FTCA"), and (2) Deutsche Bank has no private right of action under which it can pursue this claim.  The Court addresses each argument in turn.

**1. FEDERAL TORT CLAIMS ACT**

The FTCA waives sovereign immunity in tort actions brought against any governmental employee acting within the course and scope of his employment.  28 U.S.C. § 1346(b).  The act further provides that no agency can be sued in its own name for claims cognizable under 28 U.S.C. § 1346(b).  28 U.S.C. § 2679(a).  Such claims must be brought against the United States and include "claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while

1   acting within the scope of his office or employment, under circumstances where the

2   United States, if a private person, would be liable to the claimant in accordance with the

3   law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  Section

4   1346(b) applies only to claims sounding in tort, not in contract.  <u>Davis v. United States</u>,

5   961 F.2d 53, 56 (5th Cir. 1991).  Where the United States, if a private person, would <u>not</u>

6   be liable to the claimant under analogous state law, § 1346(b) does not apply, and the

7   agency can be sued in its own name.  <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 477–78

8   (1994).

9        Here, Deutsche Bank contends that its claims are not barred by the FTCA

10  because its claims (1) sound in contract, not tort, and (2) because the United States, if it

11  were a private person, would not be liable under analogous state law.  The Court agrees.

12        First, to the extent that Deutsche Bank alleges that FDIC breached a fiduciary

13  duty by violating provisions of the PSAs, its claim arises from contract.  <u>See</u> <u>Davis</u>, 961

14  F.2d at (holding that claim for breach of fiduciary duty did not fall within FTCA where

15  claim was "predicated upon the breach of a condition in the promissory note").

16  Because such claims are not cognizable under FTCA's § 1346(b), they may be brought

17  against an agency in its own name.

18        Second, to the extent that Deutsche Bank alleges the breach of an independent

19  fiduciary duty that arises not from its contracts, but from FIRREA, its claim has no

20  state-law analog applicable to private parties.  Deutsche Bank contends that FDIC owed

21  it a duty under 12 U.S.C. § 1821(d)(13)(E), which requires the FDIC acting as receiver

22  to "maximize[] the net present value return from the sale or disposition of . . . assets [of

23  a failed bank]" and to "minimize[] the amount of any loss realized in the resolution of

24  cases," among other things.  12 U.S.C. § 1821(d)(13)(E).  This provision plainly applies

25  only to the FDIC-R, and FDIC points to no analogous state law imposing similar duties

26  on private parties.  Because this provision applies only to the FDIC-R, and because

27  there is no state-law analog, it does not fall within § 1346(b).  <u>See</u> <u>FDIC v. Meyer</u>, 510

28  U.S. at 477–78 (holding that constitutional due process claim did not fall under

1    § 1346(b) because federal law provided the "source of liability for [the] claim");

2    Woodbridge Plaza v. Bank of Irvine, 815 F.2d 538, 543 (9th Cir. 1987) (holding that

3    claim that FDIC violated state banking law regarding the duties of receivers was not

4    cognizable under § 1346(b) because "[t]here is no persuasive analogy with private

5    conduct").  Because Deutsche Bank's claim is not cognizable under § 1346(b), the

6    FTCA does not bar Deutsche Bank from asserting against FDIC-R a breach of fiduciary

7    duty claim based on the duties imposed by FIRREA.

8         To the extent that Deutsche Bank bases its breach of fiduciary duty claim on the

9    "inherent" duties of receivers (see Docket No. 47, Opp. at 20–21), however, the Court

10   concludes that the FTCA does bar its claim.  A common law breach of fiduciary duty

11   claim sounds in tort.  See McNeil v. United States, 78 Fed. Cl. 211, 236 (Fed. Cl. 2007).

12   In addition, such duties arise from state law and apply to private parties acting as

13   receiver as well.  See Landeen v. Riley Bennet Egloff LLC, No. 1:07-cv-0534, 2008

14   WL 1766961, at *1–2 (S.D. Ind. Apr. 11, 2008) (discussing breach of fiduciary duty

15   claim against private parties acting as receiver for corporation).  Thus, the United

16   States, if a private party, could be liable under state law.  Because the FTCA therefore

17   applies, Deutsche Bank cannot pursue a claim based on the "inherent" duties of

18   receivers against FDIC-R, but rather must bring it against the United States.  If

19   Deutsche Bank wishes to pursue its breach of fiduciary claim based on the alleged

20   inherent duties, it must comply with the FTCA.

21        However, because Deutsche Bank asserts theories supporting its breach of

22   fiduciary duty claim that are not barred by the FTCA, the FTCA does not mandate

23   dismissal of all theories of relief.  The Court must therefore address the question of

24   whether Deutsche Bank has a private right of action to pursue such claim.

25            **2.  PRIVATE RIGHT OF ACTION**

26        FDIC further contends that, even if the FTCA does not bar Deutsche Bank's

27   breach of fiduciary duty claim, Deutsche Bank has no private right of action allowing it

28   to pursue that claim.  Deutsche Bank counters that a private right of action is both

1   inherent in the FDIC's role as receiver and implied by § 1821(d)(13)(E) of FIRREA.

2   (Docket No. 47, Opp. at 20.)

3        First, the Court concludes that Deutsche Bank cannot pursue its claim on the

4   basis that a private right of action is inherent in the FDIC's role as receiver.  Even if any

5   such "inherent" private right of action existed, Deutsche Bank could not pursue its

6   breach of fiduciary duty claim under it because, as explained above, its claims based on

7   "inherent" duties sound in tort and are barred by the FTCA.

8        Second, the Court concludes that § 1821(d)(13)(E) does not create an implied

9   private right of action.  That section provides:

10       In exercising any right, power, privilege, or authority as conservator or receiver
         in connection with any sale or disposition of assets of any insured depository
11       institution for which the Corporation has been appointed conservator or
         receiver, including any sale or disposition of assets acquired by the Corporation
12       under section 1823(d)(1) of this title, the Corporation shall conduct its
         operations in a manner which--
13                (i) maximizes the net present value return from the sale or disposition of
                  such assets;
14                (ii) minimizes the amount of any loss realized in the resolution of cases;
                  (iii) ensures adequate competition and fair and consistent treatment of
15                offerors;
                  (iv) prohibits discrimination on the basis of race, sex, or ethnic groups in
16                the solicitation and consideration of offers; and
                  (v) maximizes the preservation of the availability and affordability of
17                residential real property for low- and moderate-income individuals.

18   12 U.S.C. § 1821(d)(13)(E).  Although this provision may impose a fiduciary duty on

19   the FDIC-R, it does not create an implied right of action for breach of that duty.

20        In determining whether a statute gives rise to an implied private right of action,

21   the Court employs the test set forth in Cort v. Ash, 422 U.S. 66 (1975).  Under Cort, the

22   Court examines "(1) whether the plaintiff is 'one of the class for whose especial benefit

23   the statute was enacted'; (2) whether there is 'any indication of legislative intent,

24   explicit or implicit, either to create or to deny [a private right of action]'; (3) whether it

25   is 'consistent with the underlying purposes of the legislative scheme to imply' a private

26   right of action; and (4) whether 'the cause of action [is] one traditionally relegated to

27   state law.'"  Nisqually Indian Tribe v. Gregoire, 623 F.3d 923, 929 (9th Cir. 2009)

28   (quoting Cort, 422 U.S. at 78) (alterations in original).  Under this analysis, "the key

1   inquiry is whether Congress intended to provide the plaintiff with a private right of
2   action." First Pac. Bancorp, Inc. v. Helfer, 224 F.3d 1117, 1121 (9th Cir. 2000).

3         All courts that have considered whether § 1821(d)(13)(E) gives rise to a private
4   right of action have concluded it does not. See Hindes v. FDIC, 137 F.3d 148, 170 (3d
5   Cir. 1998) (holding that § 1821(d)(13)(E) confers no private right of action on
6   shareholders of a failed bank); Mosseri v. FDIC, No. 95 Civ. 0723, 2001 WL 1478809,
7   at *6 (S.D.N.Y. Nov. 20, 2001) (holding that § 1821(d)(13)(E) confers no private right
8   of action on disappointed bidders for FDIC assets); Pen-Del Mortg. Assocs. v. FDIC,
9   No. 94-0067, 1994 WL 675502, at *3 (E.D. Pa. Nov. 23, 1994) (holding that
10  substantially identical provision applicable to the Resolution Trust Corporation,
11  § 1441a(b), did not give rise to private cause of action for disappointed bidders); RTC
12  v. Villa Este Apartments P'ship, 806 F. Supp. 594, 597–98 (E.D. La. 1992) (holding
13  that § 1441a(b) did not give a private right of action to party that defaulted on a
14  mortgage loan held by the failed bank to pursue claim that RTC breached duties by
15  selling other properties in neighborhood, thereby decreasing property value); Donnelly
16  Inv. Sec. Corp. v. FDIC, No. 3:96-CV-2730-R, 1998 WL 460289, at *4 (N.D. Tex.
17  Aug. 5, 1998) (holding that §§ 1821(d)(13)(E) and 1441a(b) do not create a private
18  cause of action). To be sure, none of these cases specifically addresses whether
19  § 1821(d)(13)(E) gives rise to a private cause of action for creditors of a failed
20  institution. And the cases holding that the provision does not create a private right of
21  action for, e.g., disappointed bidders are of limited persuasive value. The Third
22  Circuit's decision in Hindes v. FDIC, 137 F.3d 148, holding that shareholders of a
23  failed bank had no private cause of action under § 1821(d)(13)(E) is sufficiently
24  analogous to the issue presented here, and the Court finds its reasoning particularly
25  persuasive.

26        In Hindes, the Third Circuit discussed the Cort factors. First, the court held that
27  the shareholders were not "members of a class for whose special benefit Congress
28  created section 1821(d)(13)(E)." Hindes, 137 F.3d at 170. Rather, the court explained,

1   "The FDIC's duty to maximize gain and minimize loss primarily is intended to benefit

2   the insurance fund by minimizing the claims against it, thereby reducing the cost to the

3   taxpayers. Thus, the benefits gained by the shareholders and other claimants are

4   incidental to the primary intended beneficiaries, the insurance fund and the taxpayers."

5   Id.  Second, the court noted that the statute and its legislative history were silent as to

6   whether Congress intended to create or deny a private right of action to enforce

7   § 1821(d)(13)(E).  Id. at 171.  The court further found no other factors supporting a

8   private right of action.  Because neither of the first two Cort factors suggested that the

9   court should imply a private right of action, the court did not reach the remaining two

10   Cort factors.

11          Hinde's analysis persuades the Court that FIRREA creates no private right of

12   action in these circumstances.  First, creditors like Deutsche Bank are not members of a

13   class for whose special benefit Congress created § 1821(d)(13)(E).  Like the

14   shareholders in Hindes, creditors stand to benefit from the duties imposed by §

15   1821(d)(13)(E) because compliance with those duties increases the amount of available

16   assets from which they can recover.  Also as with the shareholders in Hindes, this

17   benefit is only incidental to the benefits the section intends to confer on the fund and the

18   taxpayers.  See id. at 170.  The Ninth Circuit has explained that the first factor of the

19   Cort test is satisfied "when there is an explicit reference to the individuals for whose

20   benefit the statute was enacted," as opposed to a "generic imperative."  Helfer, 224 F.3d

21   at 1122–23 (recognizing a private right of action for shareholders to enforce §

22   1821(d)(15), which entitles shareholders to accounting reports).  Section

23   1821(d)(13)(E) does not mention creditors.  The subsections requiring FDIC-R to

24   maximize gains and minimize losses does not identify any beneficiaries at all.  See 12

25   U.S.C. § 1821(d)(13)(E)(i)–(ii).

26          Second, the Court finds no indication of any legislative intent to create a private

27   right of action under § 1821(d)(13)(E) for creditors.  Deutsche Bank is correct that

28   FIRREA expressly disclaims a private cause of action elsewhere.  12 U.S.C.

§ 1831g(d).  FIRREA, however, also expressly grants private rights of action in other provisions.  See id. §§ 1441a(c)(11)(B), 1441a(q).  Because Congress has both expressly granted and disclaimed private causes of action in other parts of the statute, the Court cannot infer anything from the statute's silence on the availability of a private right of action to enforce § 1821(d)(13)(E).

Deutsche Bank also contends that provisions setting the FDIC's maximum liability for claims by creditors, providing claimants with a right to an accounting, and recognizing the FDIC's duty to receivership claimants are indicia of congressional intent to create a private right of action here.  (Docket No. 47, Opp. at 23); see 12 U.S.C. §§ 1821(i)(2); 1821(d)(15); 1823(d)(3)(C).  These provisions, however, do not actually suggest that Congress intended a private right of action to enforce the duties imposed by § 1821(d)(13)(E).  Although the provision setting FDIC's maximum liability does contemplate suits against the FDIC, it does not specifically contemplate suits by creditors to enforce the duties imposed by § 1821(d)(13)(E).  Although the provision requiring FDIC to make accounting reports available to any member of the public does allow creditors to monitor the FDIC's actions, it does not follow that creditors therefore have a right to sue for any breaches of § 1821(d)(13)(E) they may find in the reports.  Finally, the provision recognizing that FDIC owes fiduciary duties to receivership claimants establishes only that FDIC-C retains the same fiduciary duties as FDIC-R when it acquires assets from the receivership.  12 U.S.C. § 1823(d)(3)(C).  Although this section indicates that FDIC-R does owe fiduciary duties to claimants, which includes creditors, it does not indicate that FDIC-R owes the § 1821(d)(13)(E) duties to all claimants, nor does it suggest that those duties are enforceable by creditors through a private right of action.  In sum, the Court finds no indication in the statute that Congress intended to create a private right of action under § 1821(d)(13)(E).  Moreover, because that section does not name creditors as intended beneficiaries, the Court concludes that even if a private right of action to enforce that section exists, it does not lie in creditors.

Third, the Court concludes that implying a private right of action would be inconsistent with the statute's purposes. As the Southern District of New York noted in Mosseri, FIRREA "repeatedly reaffirm[s] that the FDIC has broad discretion in discharging its statutory responsibilities." Mosseri, 2001 WL 1478809, at *5. Recognizing a private right of action for creditors to enforce § 1821(d)(13)(E) would be "fundamentally inconsistent with the extensive latitude granted by Congress to the FDIC in the exercise of its statutory powers." Id. Were the Court to recognize such a private right of action, every disposition of assets by the FDIC would be subject to challenge by every party having a potential claim on the assets of the failed bank. This would impose substantial burdens. In this way, the private right of action that Deutsche Bank asks the Court to imply here differs from the private right of action under § 1821(d)(15) that the Ninth Circuit recognized in Helfer, 224 F.3d at 1126–27. In Helfer, the court noted that implying a private right of action to enforce the provision requiring the FDIC to provide an annual accounting would not impose any additional burden. Id. at 1127. Rather, it would require the FDIC only to "provide a copy of the report it is already obliged to prepare" under the statute. Id. In contrast, implying a private right of action here could impose substantial new burdens: it would impede the FDIC's discretion in disposing of assets, and there would be no clear-cut way of ensuring that parties would deem the statutory obligations satisfied. While whether FDIC has provided the required report is easy to establish, parties could easily dispute whether any given transaction maximized gains and minimized losses. The Court is disinclined to subject the FDIC to the burden of defending against these potentially numerous claims. Finally, the Court acknowledges that the court in Helfer implied a private right of action in part because "where no enforcement mechanism is explicitly provided by Congress or an administrative agency, it is appropriate to infer that Congress did not intend to enact unenforceable requirements." Id. at 1126. Although the parties have not identified any mechanism to enforce § 1821(d)(13)(E), the Court nonetheless concludes that this lack of an enforcement mechanism does not support

1    implying a private right of action here.  Because FDIC has an inherent incentive to

2    maximize gains and minimize losses to ensure adequate compensation for the insurance

3    funds, the lack of private enforcement is less troubling in the context of §

4    1821(d)(13)(E).  Given this, and in light of the substantial burdens that recognizing a

5    private right of action could impose, the Court concludes that such a right of action is

6    inconsistent with FIRREA's purpose.

7         Finally, the fourth <u>Cort</u> factor is satisfied here.  Clearly, an action against a

8    federal entity to enforce a right created by federal law is not "traditionally relegated to

9    state law."  <u>Cort</u>, 422 U.S. at 78.  However, this fact does not support implying a private

10   right of action where the other <u>Cort</u> factors are absent.

11        Because, for the reasons set forth above, the Court concludes that Deutsche

12   Bank has no private right of action not barred by the FTCA to enforce any fiduciary

13   duties, the Court **GRANTS** the motion to dismiss the breach of fiduciary duty claim.

14   **F.  TAKINGS AND DUE PROCESS CLAIMS**

15        Deutsche Bank also asserts claims against FDIC under the Fifth Amendment for

16   takings and violations of due process.  (Compl. ¶¶ 175–205.)  In particular, Deutsche

17   Bank contends that FDIC effected a taking and violated due process by selling the

18   servicing rights without also transferring the obligations to replace or repurchase bad

19   mortgage loans and without obtaining Deutsche Bank's consent.  (<u>Id.</u>)  FDIC moves to

20   dismiss these claims.

21        The Court **GRANTS** the motion to dismiss the takings claims against FDIC.  In

22   "a takings case, [the court] assume[s] that the underlying action was lawful."  <u>Acadia</u>

23   <u>Tech., Inc. v. U.S.</u>, 458 F.3d 1327, 1331 (Fed. Cir. 2006) (citing <u>Rith Energy, Inc. v.</u>

24   <u>United States</u>, 270 F.3d 1347, 1352–53 (Fed. Cir. 2001)).  Unlawful government action

25   does not give rise to a takings claim.  <u>Id.</u>  "[I]f the authority to carry out certain acts

26   was validly conferred by Congress to an agent, and if those acts are within the

27   constitutional power of Congress, there is no liability on the part of the agent for

28   executing its will."  <u>Acceptance Ins. Cos. Inc. v. United States</u>, 503 F.3d 1328, 1337

(Fed. Cir. 2007).  Thus, "[a] takings claim is properly brought against the United States, not against the agent whose actions give rise to the claim."  Id.  Deutsche Bank cites no authority establishing that it can pursue a takings claim against the FDIC, as opposed to the United States.  The Court will therefore dismiss its takings claims.

Further, Deutsche Bank cannot amend its complaint in this case to assert its takings claims against the United States.  Under the Tucker Act, 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction to render judgment on any takings claim for money damages exceeding $10,000.  E. Enters. v. Apfel, 524 U.S. 498, 520 (1998).  "Accordingly, a claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute."  Id.  It has not.  Because Deutsche Bank must assert its takings claims against the United States and in the Court of Federal Claims, this Court **DISMISSES** its takings claims **without leave to amend**.

Deutsche Bank also alleges that FDIC violated its due process rights under the Fifth Amendment by depriving it of its property without due process of law.  (Compl. ¶¶ 198–205.)  Deutsche Bank, however, cannot maintain this claim against an agency.  A party can sue for a violation of a constitutional right only if he has a cause of action.  See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Bivens created an implied right of action against federal officials for tortious deprivations of constitutional rights.  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1255 (9th Cir. 1997).  However, as the Ninth Circuit has explained, this implied right of action does not extend to suits directly against a federal agency.  Id. (holding that plaintiff could not assert Fifth Amendment due process claim against an agency because "an individual may not bring a Bivens claim for damages directly against a federal agency").  Deutsche Bank offers no authority to the contrary.  The Court therefore **DISMISSES** Deutsche Bank's Fifth Amendment due process claims **with prejudice**.  Because the Court dismisses the takings and due process claims in their

entirety, it need not address FDIC-C's separate arguments that Deutsche Bank has failed to adequately plead that entity's liability for these alleged violations.

### III.

### CONCLUSION

For the foregoing reasons, the Court **DISMISSES with prejudice** the breach of contract claim to the extent it is based on FDIC-R's sale of the servicing rights without an accompanying transfer of obligations imposed by the PSAs.  The Court, however, **DENIES** the FDIC-R's motion to dismiss the breach of contract claim to the extent it is based on FDIC's failure to obtain consent before transferring the servicing rights in the PSAs.  The Court **DISMISSES** the breach of contract claim against FDIC-C **with leave to amend**.

The Court also **DENIES** the motion to dismiss the claim for breach of the covenant of good faith and fair dealing.  The Court **DENIES** the FDIC-R's motion to dismiss the constructive trust claim, but **GRANTS** the FDIC-C's motion to dismiss that claim.  Deutsche Bank, however, shall have the **opportunity to amend** its complaint to re-assert this claim against FDIC-C.

Finally, the Court **DISMISSES** the breach of fiduciary duty, takings, and due process claims **with prejudice**.

**IT IS SO ORDERED.**

DATED: January 7, 2011

_____
Judge Gary Allen Feess
United States District Court

33